IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KIRK C. FISHER, ) | CIVIL NO. CV11 00589BMK |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM IN SUPPORT OF |
| vs. ) | MOTION |
| ) | |
| LOUIS KEALOHA, as an individual ) | |
| and in his official capacity as Honolulu ) | |
| Chief of Police; PAUL PUTZULU, as ) | |
| an individual and in his official capacity ) | |
| as former Honolulu Acting Chief of ) | |
| Police; CITY AND COUNTY OF ) | |
| HONOLULU; HONOLULU POLICE ) | |
| DEPARTMENT and DOE ) | |
| DEFENDANTS 1-50, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

MEMORANDUM IN SUPPORT OF MOTION

Defendant LOUIS KEALOHA ("Kealoha"), by and through his counsel, Robert C. Godbey, Corporation Counsel, and D. Scott Dodd, Deputy Corporation Counsel, hereby submits this memorandum in support of his motion to dismiss.

I.  INTRODUCTION

Plaintiff Kirk C. Fisher ("Plaintiff") filed his Complaint ("Complaint") on September 28, 2011.  Plaintiff's Complaint alleges two Counts: 1) violation of his Second Amendment right to bear arms, applicable to the states through the Fourteenth Amendment; and 2) A violation of his Fourteenth Amendment due

process rights predicated upon a violation of his Second Amendment right to bear arms. Pursuant to Federal Rules of Civil Procedure Rule 12(b), Defendant Kealoha moves to dismiss Plaintiff's Complaint for failure to state a claim under both the Second and Fourteenth Amendments, and based upon his immunity from liability upon under the doctrine of qualified immunity.

II.   FACTUAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT

According to the Complaint, on November 5, 1997, Plaintiff was arrested on two counts of Abuse of Family or Household Member. See, Complaint, ¶ 15. Plaintiff pleaded guilty on December 3, 1997 to two counts of Harassment and sentenced to six months probation. Id., ¶ 18. On November 4, 1998, the Honorable Dan Kochi issued an "Order Permitting Return of Firearms, Ammunition, Permits and Licenses, With Conditions," which ordered the return of the firearms surrendered pursuant to Hawai'i Revised Statutes § 134-7(b) ("HRS"). Id., ¶ 20. Then in 2009, Plaintiff submitted an application for an additional firearm which was denied via letter dated October 9, 2009. Id., ¶ 23. In addition to denying the application, the letter further ordered Plaintiff to surrender any firearms in his possession pursuant to HRS § 134-7.

Plaintiff alleges that the denial of his application for a firearm permit violated his rights under the Second and Fourteenth Amendments to the Constitution of the United States ("Constitution"). Id., ¶ 48. Plaintiff further

alleges that Defendants "propagated customs, policies, and practices that violate Plaintiff's rights by arbitrarily and unconstitutionally denying his permit application." Id., ¶ 50.

III. APPLICABLE LAW

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to "state a claim to relief that is plausible on its face." Iqbal v. Ashcroft, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007) (emphasis added). Although the "plausibility standard" does not rise to the level of a "probability requirement," it does require plaintiff plead sufficient facts that show more than the mere "possibility" of defendant liability; and facts that are more than merely "consistent" with liability. Id.[1]

The Court in Iqbal applied the following two-prong approach for assessing the adequacy of a complaint:

---

[1] "Where the complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitled to relief." Id. (internal quotes and cite omitted).

    1)    Identify factual pleadings that are merely conclusory and not entitled to the assumption of truth; and

    2)    Determine whether the nonconclusory factual allegations that are plead give rise to a "plausible" theory of defendant liability.

Id., at 1950; see also Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Circuit 2009) (recognizing the afore-referenced "methodological approach for assessing the adequacy of a plaintiff's complaint" laid out by the Court in Iqbal).

With respect to the first prong, allegations that merely state **legal conclusions** are not entitled to assumption of truth. Id., at 1949. Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are also not entitled to the assumption of truth. Id.

With respect to the second prong, the Supreme Court noted that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, at 1250. Plaintiff's must plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S.Ct. at 1974.

IV. DISCUSSION

    A.    PLAINTIFF'S CLAIM AGAINST KEALOHA IN HIS OFFICIAL CAPACITY SHOULD BE DISMISSED AS DUPLICATIVE

The Supreme Court has ruled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304 (citing Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)). Further, "neither a State nor its officials acting in their official capacities are" persons "under § 1983." Ibid.

"A suit against a law enforcement official in his official capacity generally represents merely another way of pleading the action against the entity of which the official is an agent. Therefore, courts should treat such suits as suits against the governmental entity." Carnell v. Grimm, supra at 752 (citing Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)).

"Official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Cramer v. City & County of Honolulu, 2010 WL 2541804 (D. Haw. 2010) (quoting Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099 (1985); Kreines v. United States, 33 F.3d 1105, 1007 (9th Cir. 1994)). "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in his official capacity, the officer named in his official capacity is a redundant defendant and may be dismissed." Cramer, supra (citing King v. McKnight, 2008 WL

314407, *5 (E.D. Cal. 2008); accord Wong v. City & County of Honolulu, 333 F.Supp.2d 942, 947 (D. Haw. 2004).

Here, Plaintiff alleges claims against Defendant Kealoha in his "official" capacity. (Complaint, p. 5.) Plaintiff also names Defendant City & County of Honolulu ("the City"), the government entity that employs Kealoha. Consequently, Plaintiff's claims against Kealoha in his official capacity should be dismissed as duplicative with his claims against the City. Id. Additionally, such claims should be dismissed because Kealoha, in his official capacity, is not a "person" who may be sued under § 1983.

B. PLAINTIFF FAILS TO ALLEGE A VIOLATION OF HIS CONSTITUTIONAL OR STATUTORY RIGHTS

"Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004) (quoting Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002)) (quotations omitted). To state a claim under § 1983, "'a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" Jensen v. City of Oxnard, 145 F.3d 1078, 1082 (9th Cir. 1998) (quoting Wood v.

Ostrander, 879 F.2d 583, 587 (9th Cir. 1989)).[2] Here, Plaintiff fails to sufficiently allege a deprivation of a constitutional or statutory right upon which relief can be granted under 42 U.S.C. § 1983.

### 1. **Second Amendment**

Plaintiff fails to state claim upon which relief can be granted for violation of his Second Amendment right to bear arms. See Complaint, p. 13. Here, there are two statutory provisions that restrict Plaintiff's right to bear firearms: H.R.S. § 134-7 and 18 U.S.C. § 922(g)(9) ("Lautenberg Amendment"). Plaintiff's Complaint does not challenge the constitutionality of either HRS § 134-7 or the Lautenberg Amendment, both of which prohibit Plaintiff from possessing firearms. Rather, Plaintiff's Second Amendment claim against Kealoha is based upon Kealoha's actions, which were in compliance with said statutory restrictions and prohibitions. Consequently, Plaintiff fails to state a claim upon which relief can be granted on such claim because Plaintiff is prohibited from owning firearms under the federal and state laws noted above.

---

[2] Section 1983 of Title 42 of the U.S. Code states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

First, HRS § 134-7 prohibits anyone who "has been convicted…of committing…any **crime of violence**" from owning, possessing or controlling "any firearms or ammunition." H.R.S. § 134-7(b) (emphasis added). Additionally, H.R.S. § 134-1 defines a "crime of violence" as being "any offense…that involves **injury or threat of injury to the person or another.**" H.R.S. § 134-1 (emphasis added).

Here, it is undisputed that Plaintiff was convicted of Harassment under HRS § 711-1106(1)(a) (Complaint, p. 6), which states in pertinent part:

> A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
>
> (a) Strikes, shoves, kicks, or otherwise touches another person **in an offensive manner** or subjects the other person **to offensive physical contact**…

HRS § 711-1106 (emphasis added). Although, Plaintiff asserts the legal conclusion that harassment under H.R.S. § 711-1106(1)(a) is not a "crime of violence," such conclusion is not accepted as true for purposes of a Rule 12(b)(6) motion. <u>Iqbal</u>, 129 S.Ct. at 1249. Unlike the other subsections of Harassment, subsection (1)(a) involves actual offensive physical contact in the form of a strike, shove, kick or touch, or other **offensive** physical contact. H.R.S. § 711-1106(1)(a). To assert that a harasser, who intentionally causes offensive physical contact to the victim by a strike, shove or kick, does not at least **threaten injury** to the victim is

preposterous. It is clear that such conduct falls within the definition of "crime of violence" in that it "involves injury or threat of injury to the person or another." H.R.S. § 134-1. Thus, Plaintiff fails to state a Second Amendment claim because Plaintiff was lawfully barred from firearm ownership under H.R.S. § 134-7.

Second, even if Plaintiff was not lawfully barred under state law, Plaintiff is nevertheless barred from ownership of firearms pursuant to the Lautenberg Amendment. The Lautenberg Amendment prohibits firearm ownership by any person that "has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922 (g)(9). "Crime of violence" is defined as a crime that "has, as an element, **the use or attempted use of force**." 18 U.S.C. §921(a)(33)(A)(i). The United States Supreme Court has held, under the Lautenberg Amendment, the predicate offense need not have the "domestic relationship" as an element. United States v. Hayes, 555 U.S. 415, 129 S.Ct 1079 (2009)(affirming Hayes' conviction under § 922(g)(9) where the predicate offense was a generic misdemeanor assault that did not include a domestic relationship **as an element**, but did involve such relationship factually).

Here, Plaintiff was criminally convicted of two counts of harassment, a domestic violence crime, in the **Family Court** of the First Circuit against family members Nicole and Collete Fisher. See Complaint, p. 6, ¶ 15. H.R.S. § 711-1106(1), by definition, involves **use of force** by striking, kicking, shoving, or other

- 9 -

offensive **physical** contact. Thus, Plaintiff's harassment convictions meet the federal definition of "crime of violence" in that it involved "the use or attempted use of force." 18 U.S.C. § 921(a)(33)(A)(i). Consequently, under the Lautenberg Amendment, Plaintiff is prohibited from owning or possessing firearms. Thus, Plaintiff is unable to state a claim for a Second Amendment violation based on Kealoha's actions in compliance with federal law.

### 2. Fifth Amendment

"The Fifth Amendment's Due Process Clause does not apply to the States and is therefore inapplicable." Young, 548 F.Supp.2d 1151, 1172 (D.Haw.2008). See also Castillo v. McFadden, 399 F.3d 993, 1002 n. 5 (9th Cir.2005)(noting that the Fifth Amendment's Due Process Clause prohibits the federal government from depriving persons of due process of law). Because there is no federal defendant named in the Complaint, Plaintiff's Fifth Amendment claims should be dismissed.

### 3. Fourteenth Amendment

Plaintiff's Fourteenth Amendment claim is predicated upon the alleged wrongful deprivation of his Second Amendment right to bear arms. See Complaint, pp. 14-15. As noted above, Plaintiff does not have an actionable Second Amendment claim. Thus, Plaintiff's Fourteenth Amendment claim likewise fails.

Additionally, Plaintiff claims his Fourteenth Amendment rights were violated **by Kealoha** because he was denied a "meaningful opportunity to be heard" regarding the denial of his firearm permit.  See Complaint, p. 14, ¶ 54.  Plaintiff's conclusory statement is incorrect.  The procedural requirements and/or framework that resulted in the denial of Plaintiff's application were set forth by statute.  Kealoha was not involved in creating the procedural requirements under H.R.S. § 134-7 or the Lautenberg Amendment, nor does Plaintiff allege such.  Nor does Plaintiff allege that the prohibitions and procedures under said statutes violate his procedural due process rights.  Id.  Plaintiff likewise does not allege that Kealoha disregarded **procedural** requirements promulgated by said statutes.  Instead, the crux of Plaintiff's allegation against Kealoha is that Kealoha issued an erroneous decision (based upon such statutes).  Plaintiff has pled no facts in which to "plausibly" infer **that Kealoha** violated his procedural due process rights.  Iqbal, 129 S.Ct. at 1249.  Thus, Plaintiff's procedural due process claim against Kealoha should be dismissed.  Id.

    C.    PLAINTIFF'S CLAIMS AGAINST KEALOHA IN HIS INDIVIDUAL CAPACITY SHOULD BE DISMISSED FOR QUALIFIED IMMUNITY

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), overruled on other grounds by

Pearson v. Callahan, 555 U.S. 223 (2009). In applying the two-part qualified immunity analysis, the court "must determine whether, taken in the light most favorable to [Plaintiff], Defendants' conduct amounted to a constitutional violation, and ... whether or not the right was clearly established at the time of the violation." McCherry v. City of Long Beach, 584 F.3d 1129 (9th Cir. 2009). If no constitutional right was violated, the inquiry ends and the defendant prevails. Saucier, 533 U.S. at 201.

The Court is not required to address the two inquiries in any particular order. Rather, this Court may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236; Bull v. City and County of San Francisco, 595 F.3d 964, 971 (9th Cir. 2010).

A right is **clearly established** if under the "contours of the right," it is sufficiently clear that a reasonable official would understand that his conduct violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Such standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (citation omitted).

Here, even if Plaintiff had established a violation of his Second Amendment Right to bear arms, Kealoha is entitled to qualified immunity because a reasonable

official in his circumstances would not have understood that his conduct violated the Second Amendment. Anderson, 483 U.S. at 640.

First, there is no case law or legislative action invalidating H.R.S. § 134-7. Thus, Kealoha reasonably relied upon such statute. Second, Kealoha's interpretation of the statute is reasonable, especially given the particular subsection of the Harassment statute Plaintiff was convicted under. Here, Plaintiff was convicted of Harassment by "strikes, shoves, kicks" and/or other "offensive physical contact." Id. As noted above, common sense dictates that there is "threat of injury"[3] to the victim when the harasser intentionally strikes, shoves, kicks, and/or otherwise engages in offensive physical contact, especially when coupled with the specific intent to "harass annoy, or alarm" that person. Id.

Moreover, there is no Hawaii case law or legislative action which clearly establishes that this particular subsection of Harassment is excluded from the category of criminals prohibited from owning firearms under H.R.S. § 134-7(b).[4] Thus, Kealoha was reasonable in relying upon a common sense interpretation of H.R.S. § 134-7.

---

[3] See H.R.S. § 134-7(b).
[4] Cf. State v. Char, 80 Haw. 262, 269, 909 P.2d 590, 597 (Ct. App. 1995). Under Char, the Intermediate Court of Appeals held that Char's conviction for harassment did not authorize the court to order Char relinquish his firearms. However, Char's was convicted for harassment under subsection (1)(b), which involves **no physical contact**. Id. at 263, 909 P.2d at 591. H.R.S. § 711-1106(1)(b) involves "insults, taunts, or challenges" to another. Char's conviction was based upon his throwing garbage into his neighbor's yard. Id. at 264, 909 P.2d at 592.

Additionally, it is also clear that a reasonable official in Kealoha's position would understand their actions to be lawful under the Lautenberg Amendment. As noted above, under the Lautenberg Amendment a "crime of violence" is defined as "the use or attempted use of force." 18 U.S.C. § 921(a)(33)(A)(i). As with the state prohibition, there is no federal case law or statute that "clearly establishes" that kicking, shoving, striking and/or otherwise engaging in offensive physical contact is not "use of force" or threat thereof under the Lautenberg Amendment. Anderson, 483 U.S. at 640. Thus, Kealoha is entitled to qualified immunity because a reasonable official in Kealoha's position would not understand that his common sense interpretation of the law violates a convicted criminal's constitutional rights.

// // //

// // //

// // //

// // //

// // //

// // //

// // //

// // //

// // //

V.	CONCLUSION

For the foregoing reasons, the City respectfully requests that this Honorable Court grant its motion to dismiss Plaintiff's claims against Kealoha.

DATED:  Honolulu, Hawai'i, Tuesday, January 24, 2012

>	ROBERT CARSON GODBEY
>	Corporation Counsel
>
>
>	By:  /s/ D. Scott Dodd
>	         D. SCOTT DODD
>	         Deputy Corporation Counsel
>
>	Attorney for Defendants
>	CITY AND COUNTY OF
>	HONOLULU and
>	LOUIS KEALOHA

10-06858/210061