IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KIRK C. FISHER, | ) | CIVIL NO. 11-00589 ACK/BMK |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF MOTION FOR** |
| vs. | ) | **PRELIMINARY INJUNCTION** |
| | ) | |
| LOUIS KEALOHA, as an individual | ) | |
| and in his official capacity as Honolulu | ) | |
| Chief of Police; PAUL PUTZULU, as | ) | |
| an individual and in his official capacity | ) | |
| as former Honolulu Acting Chief of | ) | |
| Police; CITY AND COUNTY OF | ) | |
| HONOLULU; HONOLULU POLICE | ) | |
| DEPARTMENT and DOE | ) | |
| DEFENDANTS 1-50, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION**

## I.   <u>INTRODUCTION</u>

Defendants have deliberately deprived Mr. Fisher of his constitutional right

to keep and bear arms, notwithstanding Hawaii Revised Statutes ("H.R.S.")

Chapter 134 and 18 U.S.C. §§ 921 and 922.

The Second Amendment protects "the right of the people to keep and bear

Arms."  U.S. Const. amend II.  In 2010, the United States Supreme Court

specifically held that these rights are "fully" applicable to the states pursuant to the

1

Fourteenth Amendment.  McDonald v. Chicago, __ U.S. __, 130 S.Ct. 3020, 3026

(2010).  Accordingly, every American has the right to keep and bear arms.  The

right to keep and bear arms can only be denied when certain well-established

criteria have been met.  In the instant matter, Defendants denied Mr. Fisher his

Second Amendment rights without sufficient cause.

     Prior to October 2009, Mr. Fisher owned and possessed firearms.  During

the fall of 2009, Mr. Fisher applied for a permit to acquire additional firearms,

pursuant to H.R.S. §134-2.  However, Defendants Honolulu Police Department

("Defendant HPD"), Acting Chief of Police Paul Putzulu ("Defendant Putzulu"),

and Chief of Police Louis Kealoha ("Defendant Kealoha") denied the application

without providing Mr. Fisher with a meaningful opportunity for further review.

Mr. Fisher was further ordered to surrender all firearms already in his possession.

In or about October 2009, Mr. Fisher surrendered his firearms.

     The core of the Second Amendment is self-protection.  The denial of Mr.

Fisher's application for a permit to acquire, and further order to surrender,

firearms violated and continues to deprive Mr. Fisher of the fundamental

constitutional rights guaranteed by the Second Amendment and made applicable to

the states by the Fourteenth Amendment to the United States Constitution as Mr.

Fisher is deprived of any means to protect himself, and deprived of the personal

2

use and enjoyment of firearms.

Defendants have not established an appellate process and the denial of the application for a permit to acquire is not reviewable.  Because of this, Mr. Fisher was deprived of the minimal protection of Due Process of law, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.  There is no meaningful opportunity for an applicant, such as Mr. Fisher, to be heard.  There is also no means for that applicant to seek further review following the denial of the application.  Thus, an applicant can seek no administrative or appellate remedy.

Further, because Mr. Fisher's Motion and underlying lawsuit hinge on purely legal questions, the Court has the opportunity to streamline proceedings by consolidating the hearing of this Motion with trial on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.  The Court should accept the opportunity, a prompt resolution of the core legal claim will serve the interests of all involved.

## II.   THE PRELIMINARY INJUNCTION SHOULD ISSUE

The applicable standard for preliminary injunctive relief requires a party to demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

tips in his favor, and that an injunction is in the public interest." <u>Winter v. Natural Res. Def. Council, Inc.</u>, 55 U.S. 7, 19 (2008).

## A.   <u>Plaintiff has standing</u>

As a preliminary matter, Mr. Fisher has standing.   Article III restricts the judicial power to actual "cases" and "controversies," a limitation understood to confine the federal judiciary to "the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons cause by private or official violation of the law." <u>Ezell v. Chicago</u>, 651 F.3d 684, 694-695 (7th Cir. 2011) (citing <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 129 S.Ct. 1142, 1148 (2009); <u>see also</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559-560, 112 S.Ct. 2130 (1992); U.S. Const. Art. III, §1.

Standing exists when "the plaintiff suffers an actual or impending injury, not matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury." <u>Bauer v. Shepard</u>, 620 F.3d 704, 708 (7th Cir. 2010) (citing <u>Summers</u>, 555 U.S. 488, 129 S.Ct. 1142 and <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 118 S.Ct. 1003 (1998)).

In this case, Mr. Fisher's application for a permit to acquire firearms was denied by Defendants, even though he is fit and not statutorily disqualified.  Due

4

to the denial, Mr. Fisher has been deprived of liberty and property.  Mr. Fisher

wishes to keep and bear arms pursuant to the Second and Fourteenth amendments.

**B.**     **Mr. Fisher is likely to succeed on the merits**

      *Mr. Fisher is not statutorily disqualified*

**i.**     **Background**

On November 5, 1997, Mr. Fisher was arrested on two counts of

Harassment in violation of *Hawaii Revised Statutes* (H.R.S.) §711-1106(1)(a).  At

the time of his arrest, Mr. Fisher owned firearms.  In or around November 20,

1997, pursuant to a Family Court Order implementing H.R.S. §806-11 and §134-7,

Mr. Fisher transferred said firearms to Defendant HPD.

On December 3, 1997, Mr. Fisher pled guilty to two counts of Harassment

in the Family Court of the First Circuit, State of Hawaii (State of Hawaii v. Kirk

C. Fisher, FC-CR No. 97-3233).  Mr. Fisher was sentenced to six (6) months

probation.

On November 4, 1998, Honorable Dan Kochi issued an "Order Permitting

Return of Firearms, Ammunition, Permits and Licenses, With Conditions," and

ordered the return of Mr. Fisher's firearms.  Following this order, Defendant HPD

promptly returned Mr. Fisher's firearms.

More than ten years later, in the fall of 2009, Mr. Fisher submitted an

application to Defendant HPD to acquire an additional firearm.  Defendant Putzulu

denied the application on October 1, 2009.  Defendant Putzulu further ordered Mr.

Fisher to surrender to the chief of police or otherwise lawfully dispose of his

firearms and ammunition within thirty (30) days, and Mr. Fisher complied.

Mr. Fisher contacted Defendant HPD and was informed that he was

disqualified because of the prior Harassment conviction in <u>State of Hawaii v. Kirk</u>

<u>C. Fisher</u>, FC-CR No. 97-3233.  Mr. Fisher was also informed by Defendant HPD

that it was their custom, practice and policy to review the police reports to

determine whether or not a defendant's alleged crime was a crime of violence.  At

this time, Mr. Fisher was further informed that Defendant Putzulu's decision was

final and there were no appellate remedies.

On June 10, 2010, through undersigned counsel, Mr. Fisher filed a Motion

to Enforce Order Permitting Return of Firearms, Ammunition, Permits and

Licenses, with Conditions, in the Family Court of the First Circuit, State of Hawaii

FC-CR No. 97-3233.  Said Motion came on for hearing before the Honorable

Darryl Y.C. Choy in the Family Court of the First Circuit, State of Hawaii on June

22, 2010.  Said Motion was denied.  No Findings of Fact or Conclusions of Law

were entered.

On August 31, 2010, Mr. Fisher, through undersigned counsel, wrote to Defendant Kealoha and requested that Defendant HPD grant his Application for Permit to Acquire Firearms and to rescind the prior order instructing Mr. Fisher to surrender of dispose of his firearms.

On September 29, 2010, Defendant Kealoha responded to Mr. Fisher's inquiry by re-affirming Defendant Putzulu's prior denial of Mr. Fisher's Application.

### ii.    Applicable Hawaii law

H.R.S. §134-7(b) states, "No person who … has been **convicted** in this State or elsewhere of committing … any crime of violence … shall own possess, or control any firearm or ammunition therefore." (emphasis added). H.R.S. §134-7(b) reads exactly the same now as it did in 1997 and 1998 at the time of Mr. Fisher's guilty plea, sentence and Judge Kochi's Order.

H.R.S. §134-1 defines "crime of violence" as, "… any offense, as defined in title 37, that involves injury or threat of injury to the person of another." H.R.S. §134-1 reads exactly the same now as it did in 1997 and 1998 at the time of Mr. Fisher's guilty plea, sentence and Judge Kochi's Order.

H.R.S. §711-1106(1)(a) Harassment states, "(1) A person commits the offense of harassment if, with intent to harass, annoy or alarm the other person,

that person: (a) strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact." H.R.S. §711-1106(1)(a) reads exactly the same now as it did in 1997 and 1998 at the time of Defendant's guilty plea, sentence and Judge Kochi's Order.

The Commentary on H.R.S. §711-1106 states, "Subsection (1)(a) is a restatement of the common-law crime of battery, which was committed by any slight touching of another person in a manner which is known to be offensive to that person."

H.R.S. §134-7.3(a) states, "If any applicant is denied a permit, the chiefs of police of the perspective counties shall send, by certified mail, a notice setting forth the reasons for the denial and may require that the applicant voluntarily surrender all firearms and ammunition to the chief of police where the applicant resides or dispose of all firearms and ammunition …."

Prohibited ownership or possession of a firearm or ammunition is a class C felony, pursuant to H.R.S. §134-7.

H.R.S. §134-2 states that "the chief of police of the respective counties may issue permits to acquire firearms to citizens of the United States of the age of twenty-one years or more…."  H.R.S. §134-2 vests no discretion with the Chief of

Police to determine whether an applicant is qualified, pursuant to H.R.S. Chapter 134.

### iii.  <u>Applicable Federal law</u>

18 U.S.C. §922(g) states in relevant part that it shall be unlawful for any person - (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; ... or (9) who has been convicted in any court of a misdemeanor crime of domestic violence ... to ... possess in or affecting commerce, any firearm or ammunition."

"Misdemeanor crime of domestic violence" is defined as a misdemeanor and has, **as an element**, the use or attempted use of **physical force** ... committed by a current or former spouse, parent or guardian of the victim.  18 U.S.C. §921 (emphasis added).

### iv.  <u>Discussion</u>

"Injury" and "threat of injury" are not elements of Harassment (H.R.S. §711-1106.  "Use of physical force" and "attempted use of physical force" are not elements of Harassment (H.R.S. §711-1106).  "To constitute an element of a crime, the particular factor in question needs to be a constituent part of the offense that must be proved in *every case* to sustain a conviction under a given statute."

9

United States v. Beltran-Mungia, 489 F.3d 1042, 1045 (9th Cir. 2007) (citations and internal quotation marks omitted) (emphasis in original).

"The elements of an offense depend on the offense's definition under law, **not on the facts underlying an individual's conviction**.  In other words, '[w]hat [the defendant] actually did is **irrelevant** to whether the statute has [a particular] element.  The elements are the elements, and they can be determined only by reading and interpreting the statute itself."  United States v. Zuniga-Soto, 527 F.3d 1110, 1118 (10th Cir. 2008) (emphasis added) (quoting United States v. Maldonado-Lopez, 517 F.3d 1207, 1211 (10th Cir. 2008).  In United States v. Taylor, 495 U.S. 575, 110 S.Ct. 2143 (1990) the U.S. Supreme Court characterized this type of inquiry as a "categorical approach," which entails "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.  Zuniga-Soto, 527 F.3d at 1119.  The categorical approach limiting [a sentencing] court's inquiry to the statutory elements of [a] conviction is well-settled law.  United States v. Gamez, 577 F.3d 394, 401 (2nd Cir. 2009).

In United States v. Maldonado-Lopez, 517 F.3d 1207 (10th Cir. 2008) the Tenth Circuit found that a Colorado Harassment statute was not a crime of violence.  Id. at 1209.  The Colorado statute is substantially the same as Hawaii's Harassment statute.  Under that statute a person commits harassment if "with

intent to harass, annoy, or alarm another person," he "[s]trikes, shoves, kicks, or otherwise touches a person or subjects him to physical contact" (Colo. Rev. Stat. §18-9-111(1)(a) (2007)). The Tenth Circuit held that the statute was broad enough to cover conduct such as spitting on a person, which involved physical contact but not physical force, and was therefore not a crime of violence. See Maldonado-Lopez, 517 F.3d at 1209. Other recent cases have reached similar conclusions. See e.g. United States v. Zuniga-Soto, 527 F.3d 1110, 1121 (10th Cir. 2008) (recognizing that Tenth Circuit had recently deviated from the categorical approach as rigorously as law required, but holding that a strict categorical approach was proper and that "intentionally, knowingly, or recklessly caus[ing] bodily injury to another" is not categorically a crime of violence); United States v. Ruiz-Rodriguez, 494 F.3d 1273, 1277 (10th Cir. 2007) (holding that false imprisonment effected "under terrorizing circumstances or under circumstances which expose the person to the risk of serious bodily injury" is not categorically a crime of violence). In United States v. Herrera, 286 F.Appx. 546, 553 (2008), the court reasoned that Colorado's Harassment statute was broad enough to cover violent crimes, such as striking a victim, and also non-violent crimes, such as spitting on a victim. Maldonado-Lopez, 517 F.3d at 1209.

11

The Hawaii Harassment statute encompasses less violent behavior than the "use or attempted use of physical force" as set forth in 18 U.S.C. §921(a)(33) and therefore is too broad to qualify as a "misdemeanor crime of domestic violence." See United States v. Belless, 338 F.3d 1063 (9th Cir. 2003).  "Physical force," to which 18 U.S.C. § 921(a)(33)(A)(ii) refers, is not de minimis but means violent use of force against the body of another individual.  Id. at 1068.  This category does not include mere rude touching or impolite behavior.  Id.

Under the provisions of the Hawaii Harassment statute (§711-1106(1)(a)) at issue, a defendant could be convicted, not for causing injury, threatening injury, using physical force or threatening physical force, but by annoying or alarming another person by touching them in an offensive manner (i.e. spitting on).  Based on a mere allegation of physical injury without proof injury or threat of injury and/or use of physical force or threatened use of physical force, the Hawaii Harassment statute does not qualify as a crime of violence.  See Zuniga-Soto, 527 F.3d at 1126.  It is possible for a defendant to engage in behavior that violates §711-1106(1)(a) but without injury, threat of injury, use of physical force and/or threatened use of physical force.

Here, Mr. Fisher pled guilty to two counts of Harassment, in violation of H.R.S. §711-1106(1)(a).  As discussed above, harassment **is not** a crime of

violence because "injury", "threat of injury", "use of physical force," and/or "threatened use of physical force" is **not** required for conviction.  H.R.S. §134-1 and 18 U.S.C. §921 do not contemplate what one was arrested for, but rather what one is convicted of. Mr. Fisher was never **convicted** of a crime of violence as defined by H.R.S. §134-1, nor was he **convicted** of a misdemeanor crime of domestic violence as defined by 18 U.S.C. §921.  Therefore, he has met the objective criteria detailed in H.R.S. §§134-2 and 134-7, and the permit must be issued.

### Mr. Fisher's Second Amendment right has been unduly restricted

The Second Amendment protects the "right of the people to keep and bear arms." U.S. Const. amend. II.  The core of the Second Amendment is the right to self-defense.  District of Colombia v. Heller, 554 U.S. 570, 592 (2008).   In Heller, the Supreme Court invalidated a D.C. ban on handgun possession, as well as its requirement that all firearms in the home be kept inoperable.  Heller, 554 U.S. at 629-35.  "The Court said that these laws were unconstitutional '[u]nder any ... standard[] of scrutiny' because 'the inherent right to self-defense has been central to the Second Amendment right' and the District's restrictions 'extend[] ... to the home, where the need for defense of self, family, and property is most acute."

13

Ezell v. Chicago, 651 F.3d 684, 701 (citing Heller 554 U.S. at 628-629.)  Clearly,

the Supreme Court has recognized a right to possess and carry guns.

As stated above, the plain language of H.R.S. §134-2 vests no discretion

with the Chief of Police to determine whether an applicant is qualified, pursuant to

H.R.S. Chapter 134.  So long as an applicant meets the objective criteria detailed

in H.R.S. §§134-2 and 134-7, the permit must be issued.

### Mr. Fisher has been denied Due Process of law

The text of the due process clause - "nor shall any State deprive any person

of life, liberty, or property without due process of law" requires procedural

safeguards to accompany substantive choices.  U.S. Const. amend. XIV.

When analyzing procedural due process the court should apply the three

factor test articulated by the Supreme Court in Mathews v. Elridge, 424 U.S. 319

(1976).  There, the Supreme Court stated that in order to determine the adequacy

of due process, the following should be considered: "[t]he private interest that will

be affected by the official action; second, the risk of any erroneous deprivation of

such interest through the procedures used, and the probable value, if any, of

additional or substitute procedural safeguards; and, finally, the Government's

interest, including the function involved and the fiscal and administrative burdens

that the additional substitute procedural requirement would entail."  Id.

14

Mr. Fisher's liberty and property interests are being unduly restricted.  The risk of continued deprivation is great.

Other than completing a basic form application, an applicant has no opportunity to participate in the decision-making process; to present his or her position on whether the application should be issued; or to demonstrate his or her fitness and/or qualifications.

Furthermore, if an application is denied, there are no means by which the applicant can seek review of the police chief's decision.  Thus, all Hawaii citizens, including Mr. Fisher, whose application was wrongfully denied, are deprived of minimal protections of due process of law as there is no means to have the police chief's decisions reviewed by operation of any administrative procedure or judicial process.

Remedying this unfair decision would not unduly burden the government. Allowing citizens to exercise their Second Amendment rights has been shown to reduce crime (discussed below).  Thus, the government's anticipated argument that crime may increase is untrue, as it has been proven otherwise in other jurisdictions (discussed below).

For these reasons, Mr. Fisher has a likelihood of success on the merits of the case.

C.    **In the absence of an injunction, Mr. Fisher is irreparably harmed**

Mr. Fisher will suffer both an irreparable liberty interest and a property interest if not granted a preliminary injunction.  The United States Supreme Court has long held that "the loss of ... freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347 (1976).  When liberties are infringed, irreparable injury is presumed.  11A Charles Alan Wright et al., Federal Practice and Procedure §2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").  Accordingly, the Court of Appeals for the Seventh Circuit has recognized that because "[t]he Second Amendment protects similarly intangible and unquantifiable interests" as those secured by the First Amendment ... [i]nfringements of this right cannot be compensated by money damages." Ezell v. Chicago, 651 F.3d 684 (7th Cir. 2011)

Although the deprivation of liberty, alone, merits issuance of the requested injunction, Mr. Fisher has suffered and continues to suffer an irreparable loss of a property interest.  "Property is always unique under general principles of the law of equity and its possible loss or destruction usually constitutes irreparable harm." Bennet v. Dunn, 504 F.Supp. 981, 986 (DC Nev. 1980).

This factor weighs heavily in favor of the issuance of the requested

injunction.

**D.      <u>The balance of equities mandates relief</u>**

Mr. Fisher suffered, and if this motion is not granted will continue to suffer, the deprivation of a fundamental right.  Yet, it is not only Mr. Fisher that can be affected.  Anyone wishing to exercise their Second Amendment rights in Hawaii can be prohibited from doing so.  Thus, this case is analogous to <u>Klein v. City of San Clemente</u>, 584 F.3d 1196 (9th Cir 2009).  In <u>Klein</u>, plaintiffs challenged a prohibition of their fundamental right to free speech.  <u>Klein</u>, 584 F.3d 1196.  The Court ruled that since the state action affected "anyone seeking to express their views in this manner in the City of San Clemente[,] the balance of equities and the public interest thus tip *sharply* in favor of enjoining the ordinance."  <u>Id</u>. at 1208 (emphasis added).   The United States Court of Appeals for the Ninth Circuit has consistently recognized the "significant public interest" in upholding free speech principles as the ongoing enforcement of the potentially unconstitutional regulations would infringe not only the free expression interests of the plaintiffs, but also the interests of other people subjected to the same restrictions.  Similarly, the "customs, practices and policies" of HPD can affect anyone that wishes to exercise their fundamental right to keep and bear arms.  Accordingly, the balance of equities weigh heavily in favor of Mr. Fisher.

17

Even if the court ultimately rules in Mr. Fisher's favor he will have spent a great deal of time deprived of his right to lawful self-defense and of the personal use and enjoyment of his firearms.  No one has the capacity to give him the days in his life he will have spent deprived of his liberty and property.  Therefore, the burden of not issuing an injunction would be great on the Plaintiff.

As discussed above, irreparable harm is generally viewed as established when plaintiff's claim for preliminary injunction is based upon violation of plaintiff's constitutional rights.  As such, Defendants "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  Haynes v. Office of the AG, 298 F.Supp 2d 1154, 1160 (D. Kan., Oct. 26, 2004) (citing Zepeda v. U.S.I.N.S., 753 F.2d 719, 727 (9th Cir. 1983).

The government suffers no harm by issuing a permit.  Dangerous felons and citizens who are specifically adjudicated as unfit to keep and bear arms are already criminally prohibited from doing so pursuant to Hawaii statutes and 18 U.S.C. §922.  Mr. Fisher and other similarly situated persons are "low risk" because they are not statutorily disqualified and are mentally sound.

The issuance of the injunction imposes no burden on Defendants.  Rather, issuance of the injunction would promote the government's goal of protecting and

18

promoting the fundamental rights of its citizens.  Hawaii Constitution Article 1, section 2.  As the United States Supreme Court has ruled, the right to bear arms is a fundamental right incorporated to the states.  It is clearly within the Hawaii government's charter to protect the right.  See <u>McDonald</u>, *supra*.

The balance of hardships weighs heavily in Plaintiff's favor.

**E.**     **It serves the public interest to grant relief**

Finally, it is clearly in the public interest to issue a preliminary injunction in this matter.  The "customs, practices and policies" of HPD impact every person living in the State of Hawaii.  Those applicants who are not statutorily disqualified in the State of Hawaii could suffer deprivation of their Second Amendment rights because of HPD's unconstitutional actions.

The Ninth Circuit has stated "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated."  <u>Preminger v. Principi</u>, 422 F.3d 815, 826 (9th Cir. 2005).  A preliminary injunction vindicating Mr. Fisher's and other similarly situated citizens' fundamental Second Amendment rights would advance the shared interest of all citizens in enforcing the Constitution's guarantees and reinforce this "Nation's basic commitment to foster the dignity and well-being of all persons within its borders."  <u>Goldberg v. Kelly</u>, 397 U.S. 254, 264-265 (1970).

19

Hawaii law already prohibits and/or prevents unsuitable applicants from carrying firearms, including but not limited to the criminal prohibitions codified in 18 U.S.C. §922.  Thus, people who are statutorily disqualified to obtain and possess firearms will continue to be denied permits and/or criminally prosecuted.

Across the United States, firearm ownership has increased significantly. Specifically, in Hawaii, ownership has set unprecedented records for four consecutive years.[1]  However, violent crime has not increased.[2]  Over the last five years, Hawaii has experienced an eleven (11) percent decrease in crime.[3]

Therefore, it serves the public interest to grant relief.

## III.   CONCLUSION

Mr. Fisher is entitled to the requested relief.  Mr. Fisher is likely to succeed on the merits.  Mr. Fisher has and will continue to suffer irreparable harm in the

---

[1]Criminal Justice Data Brief, 2010 ("A record high total of 12,801 personal/private firearm permit applications were processed"), 2009 (setting a record of 12,606 firearms, 2008 (a record of 10,527 firearms), and 2007 (a record of 8,835 firearm permits).

[2]Crime in Hawaii, A Review of Uniform Crime Reports, 2010 (Hawaii's Index Crime rate decreased in 2010, down 8.6% from 2009.  The violent Crime Index in Hawaii decreased 4.0% in 2010.  Comparing 2010 to 2001 violent crime decreased 4.0%.)

[3]City and County of Honolulu, Service Efforts and Accomplishment Report (FY2010) Office of the Auditor.

20

absence of preliminary relief.  This harm includes not only a deprivation of liberty but a deprivation of property.  The balance of equities tips in his favor.  Not only is Mr. Fisher affected, but all of Hawaii's citizens are affected by HPD custom, practice and policy.  Thus, the injunction is also in the public interet.

Based on the foregoing, Mr. Fisher requests this court **GRANT** the instant Motion and issue an order:

• compelling Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive notice of the order to rescind the prior denial of Mr. Fisher's permit to acquire firearms and issue a permit authorizing Mr. Fisher to acquire firearms.

DATED: Honolulu, Hawaii, March 19, 2012.

_/s/ Te-Hina Ickes_
DONALD L. WILKERSON
TE-HINA ICKES
Attorneys for Plaintiff
KIRK C. FISHER