IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
_____
                              )
KIRK C. FISHER,               )
                              )
              Plaintiff,      )
                              )
       vs.                    )
                              )   Civ. No. 11-00589 ACK-BMK
LOUIS KEALOHA, as an individual)
and in his official capacity as)
Honolulu Chief of Police; PAUL )
PUTZULU, as an individual and in)
his official capacity as former)
Acting Honolulu Chief of Police;)
CITY AND COUNTY OF HONOLULU;   )
HONOLULU POLICE DEPARTMENT; and)
DOE DEFENDANTS 1-50,           )
                              )
              Defendants.     )
_____)
```

**ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR "PARTIAL" DISMISSAL OF THE COMPLAINT, AND GRANTING IN PART AND DENYING IN PART DEFENDANT LOUIS KEALOHA'S MOTION FOR "PARTIAL" DISMISSAL OF THE COMPLAINT**

For the following reasons, the Court: (1) GRANTS Defendant City and County of Honolulu's Motion for "Partial" Dismissal of the Complaint; and (2) GRANTS in part and DENIES in part Defendant Kealoha's Motion for "Partial" Dismissal of the Complaint. Plaintiff is granted leave to amend the Complaint,

-1-

except as to Count II (against all Defendants) insofar as it is
based upon violation of the Fifth Amendment, and as to
Plaintiff's claims against HPD, both of which are dismissed with
prejudice.[1]

## I.  PROCEDURAL BACKGROUND

This case concerns Plaintiff's contention that his
application for a permit to acquire firearms was wrongly denied
based upon his prior conviction for two counts of harassment.
See Compl. ¶¶ 2, 4, 25.  Plaintiff names the following defendants
in his Complaint: Louis Kealoha (as an individual and in his
official capacity as Honolulu Chief of Police); Paul Putzulu (as
an individual and in his official capacity as former Acting
Honolulu Chief of Police); City and County of Honolulu; Honolulu
Police Department; and Doe Defendants 1-50 (collectively, the
"Defendants").

The crux of this case is Plaintiff's allegation that
Defendants have propagated customs, policies, and practices that
violate Plaintiff's rights guaranteed by the Second, Fifth, and
Fourteenth Amendments of the United States Constitution.  Id. ¶¶
50, 54.  Namely, Plaintiff alleges that he was deprived of his
Second Amendment right to bear arms, and of the minimal due

---

[1] The Court observes that Defendant Putzulu has not yet
been served with the Complaint and is not represented in this
action; accordingly, he is not addressed in this Order.

process protections guaranteed by the Fifth and Fourteenth Amendments, when Defendants denied his application for a permit to acquire firearms some ten years after he had been convicted of harassment in Hawaii State Court.   Id.

There are two separate motions pending:  (1) Defendant City and County of Honolulu's Amended Motion for "Partial" Dismissal of the Complaint (erroneously called a motion for partial dismissal) (hereinafter, the "City Motion to Dismiss"); and (2) Defendant Kealoha's Motion for "Partial" Dismissal of the Complaint (again, erroneously called a motion for partial dismissal) (hereinafter, "Kealoha's Motion to Dismiss"). (Doc. Nos. 10, 16.)

Plaintiff filed the Complaint on September 28, 2011, alleging deprivation of civil rights and seeking the following relief: an order compelling Defendants to issue a permit authorizing Plaintiff to keep and bear arms; general and special damages; punitive and/or exemplary damages; attorneys' fees, costs, prejudgment and post-judgment interest; and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  Compl. at 16.  On December 9, 2011, Defendant City and County of Honolulu (hereinafter, "City") filed a Motion for "Partial" Dismissal of the Complaint, as well as a memorandum in support of the motion. (Doc. No. 6.)  On January 4, 2012, City filed an amended motion - the City Motion to Dismiss - as well as a memorandum in support

of the motion (Doc. No. 10-1, hereinafter, the "City MTD Mem."). Defendant Kealoha filed a separate motion - Kealoha's Motion to Dismiss - on January 24, 2012, as well as a memorandum in support of his motion (Doc. No. 16-1, hereinafter, "Kealoha's MTD Mem.").

On March 19, 2012, Plaintiff filed a Memorandum in Opposition to City's Amended Motion for "Partial" Dismissal of the Complaint (Doc. No. 19, hereinafter "P's City Opp. Mem."), as well as a separate Memorandum in Opposition to Defendant Louis Kealoha's Motion for "Partial" Dismissal of the Complaint (Doc. No. 20, hereinafter "P's Kealoha Opp. Mem."). On March 26, 2012, Defendants City and Kealoha submitted a joint Reply Memorandum to Plaintiff's Oppositions to the Motions for "Partial" Dismissal of the Complaint. (Doc. No. 23, hereinafter "Defs' Joint Reply Mem.".)

Plaintiff also filed a Motion for a Preliminary Injunction and a supporting memorandum on March 19, 2012. (Doc. No. 18.) However, this motion is set to be heard separately at a hearing on June 4, 2012, and is not addressed in this Order.

The Court held a hearing on these motions on Monday, April 9, 2012, and addresses the motions together herein.

## II.  FACTUAL BACKGROUND[2/]

The history of this case dates back to November 5,
1997, when Plaintiff was arrested on two counts of harassment in
violation of Hawaii Revised Statutes ("H.R.S.") § 711-1106(1)(a).
Compl. ¶ 15.[3/]  This statute provides, in relevant part:

> §711-1106  Harassment.  (1)  A person commits the
> offense of harassment if, with intent to harass, annoy,
> or alarm any other person, that person:
>
> (a)    Strikes, shoves, kicks, or otherwise touches
> another person in an offensive manner or subjects the
> other person to offensive physical contact . . . .

H.R.S. § 711-1106(1)(a).[4/]  The underlying State Court complaint
against Plaintiff alleges that on or about November 5, 1997,
"with intent to harass, annoy, or alarm Collette Fisher,
[Plaintiff] did strike, shove, kick, or otherwise touch Collette

---

[2/] The facts as recited in this order are for the purpose of
disposing of these motions and are not to be construed as
findings of fact that the parties may rely on in future
proceedings in this case.

[3/] The Court takes judicial notice of the December 3, 1997
judgment in State of Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233,
pursuant to Fed. R. Evid. 201.  See Skilstaf, Inc. v. CVS
Caremark Corp., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). This
judgment confirms that Plaintiff was convicted under Subsection
(1)(a) of the Harassment statute.  Plaintiff alleges that the
transcripts and/or audio recordings of the December 3, 1997
hearing have been destroyed pursuant to judiciary retention
statutes.  Compl. ¶ 19.

[4/] The Commentary regarding H.R.S. § 711-1106 states that
"Subsection (1)(a) is a restatement of the common-law crime of
battery, which was committed by any slight touching of another
person in a manner which is known to be offensive to that
person." (Emphasis added.)

Fisher in an offensive manner, or subject her to offensive physical contact, thereby committing the petty misdemeanor offense of harassment in violation of Section 711-1106(1)(a) of the Hawaii Revised Statutes." (State of Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233, Compl. p. 1.)  In Count II, the complaint sets forth the same allegations with respect to victim Nicole Fisher.  Id.  Plaintiff owned firearms on or around this time, and transferred those firearms to Defendant Honolulu Police Department (hereinafter, "HPD") pursuant to the Family Court Order implementing H.R.S. §§806-11 and 134-7.  Compl. ¶ 17.

On December 3, 1997, Plaintiff pled guilty to two counts of Harassment in the Family Court of the First Circuit, State of Hawaii, in the case of State of Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233.  Id. ¶ 18.[5/]  Plaintiff acknowledges that he had a domestic relationship with the victims.  See Compl. ¶¶ 16, 26.  Plaintiff was placed on probation for a period of six months, and was ordered to surrender all firearms, ammunition,

---

[5/] Notably, although Plaintiff was convicted of harassment under §711-1106(1)(a), the statute provides for other means by which an individual commits the offense of harassment, some of which – unlike subsection (a) – do not explicitly require physical contact.  For example, pursuant to subsection (b), a person "commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person" . . . "(b) [i]nsults, taunts, or challenges another person in a manner likely to provoke an immediate violent response or that would cause the other person to reasonably believe that the actor intends to cause bodily injury to the recipient or another or damage to the property of the recipient or another . . . ." H.R.S. §711-1106(1)(b).

permits and licenses to HPD pursuant to the order in that case. Id. ¶¶ 18, 20.

On November 4, 1998, the Family Court of the First Circuit, State of Hawaii, issued an Order Permitting Return of Firearms, Ammunition, Permits and Licenses, With Conditions. Id. ¶ 20. The order provided:

> IT IS HEREBY ORDERED that Honolulu Police Department shall return to [Plaintiff] all firearms and ammunition which were surrendered pursuant to the above-mentioned court order, provided that the provisions of H.R.S. Chapter 134 are satisfied and that there are no outstanding state or federal restraining orders, prohibitions under H.R.S. Section 134-7 or the Violence Against Women Act of 1994 (18 U.S.C. Section 2265 et. seq. and section 922(g)(9), or other outstanding federal or state (H.R.S. Section [sic] 804-7.1) court orders against [Plaintiff] which would prohibit [Plaintiff's] possession or control of firearms and ammunition. In the event that any permits or licenses were revoked, said permits or licenses shall be reissued by the Honolulu Police Department, but only to the extent of the original expiration date of such permits or licenses.

Id. (emphasis added). Following the issuance of this order, HPD promptly returned Plaintiff's firearms. Id. ¶ 21.

More than ten years later, in fall 2009, Plaintiff applied to HPD for a permit to acquire an additional firearm. Id. ¶ 22. In a letter dated October 1, 2009, Defendant Paul Putzulu – then Acting Chief of Police - informed Plaintiff that he was disqualified from firearms ownership or possession under the provisions of H.R.S. § 134-7, and directed Plaintiff to voluntarily surrender to the Chief of Police or otherwise lawfully dispose of all firearms and ammunition in his possession

-7-

within 30 days of receipt of the letter.  Id. ¶¶ 23-24.

Plaintiff promptly contacted HPD and was informed that the denial

was based upon his prior conviction for harassment in State of

Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233.  Id. ¶ 25.

Additionally, Plaintiff alleges, HPD informed Plaintiff that it

was HPD's "custom, practice and policy to review the police

reports to determine whether or not a defendant's alleged crime

was a crime of violence."  Id.  Plaintiff subsequently

transferred ownership and possession of all of his firearms to

his wife, Collette Fisher, after she obtained permits.  Id. ¶ 26.

H.R.S. Section 134-7 provides in relevant part:

> (b) No person who is under indictment for, or has
> waived indictment for, or has been bound over to the
> circuit court for, or has been convicted in this State
> or elsewhere of having committed a felony, or any crime
> of violence, or an illegal sale of any drug shall own,
> possess, or control any firearm or ammunition therefor.

H.R.S. § 134-7(b) (emphasis added).  The text of Section 134-7(b)

has remained unchanged since the time of Plaintiff's guilty plea,

sentencing, and the order returning his firearms in 1997-98.  See

H.R.S. § 134-7(b).[6]  The term "crime of violence" is defined as

---

[6] The legislative history for H.R.S. § 134-7 reveals that although the language of subsection (b) has not been amended between 1997 and today, the legislature did amend subsection (a) in 2006.  This subsection provides: "No person who is a fugitive from justice or is a person prohibited from possessing firearms or ammunition under federal law shall own, possess, or control any firearm or ammunition therefor." H.R.S. § 134-7(a).  The phrase "or is a person prohibited from possessing firearms or
(continued...)

"any offense, as defined in title 37, that involves injury or threat of injury to the person of another."  H.R.S. § 134-1.[7] This definition also remains unchanged since the 1997-98 period wherein Plaintiff pled guilty and was sentenced for harassment. See H.R.S. § 134-1.

On June 10, 2010, Plaintiff submitted a Motion to Enforce Order Permitting Return of Firearms, Ammunition, Permits and Licenses, with Conditions, to the Family Court of the First Circuit, State of Hawaii FC-CR No. 97-3233.  Compl. ¶ 32. This motion was denied by the state court on June 22, 2010, and no findings of fact or conclusions of law were entered.  See id. ¶ 33.[8]

On August 31, 2010, Plaintiff wrote to Defendant Kealoha requesting that the HPD grant his application for a permit to acquire firearms and rescind the prior order to surrender or dispose of his firearms.  Id. ¶ 34.  And on September 29, 2010, Defendant Kealoha replied to Plaintiff by re-

_____

[6] (...continued)
ammunition under federal law" was added in a 2006 amendment effective April 25, 2006.  See H.R.S. § 134-7, Ed. note.

[7] Based upon the plain language of the statute, "injury" and "threat of injury" are not elements of harassment as it is defined in H.R.S. § 711-1106.

[8] The parties did not submit a copy of this Order.  At the April 9, 2012 hearing, Plaintiff's counsel stated that Plaintiff did not appeal the State Court order's denial of June 22, 2010.

affirming Defendant Putzulu's prior denial of the application.
Id. ¶ 35.

Plaintiff contends that he is "fit and qualified to keep and bear arms," but would be subject to arrest and prosecution should he seek to exercise that right without obtaining a permit; Plaintiff would face a class C felony for unlawful ownership or possession of a firearm under H.R.S. § 134-7. Id. ¶¶ 36-38. Plaintiff further alleges that the Chief of Police is not vested with any discretion to deny a permit if an applicant meets the objective criteria contained in H.R.S. §§ 134-2 and 134-7. Id. ¶ 42.[9/] Additionally, Plaintiff alleges that he has no opportunity to participate in the decision-making process, nor any means to seek review of the denial of his application. Id. ¶¶ 43-44.

Plaintiff asserts two causes of actions in his Complaint: (1) violation of Plaintiff's rights guaranteed by the

_____

[9/] H.R.S. § 134-2 provides, in relevant part:

**Permits to acquire.** (a) No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section.

Second and Fourteenth Amendments, in violation of 42 U.S.C. §
1983; and (2) wrongful denial of his application for a permit to
acquire firearms pursuant to H.R.S. § 134-2 without minimal due
process protection, as guaranteed by the Second, Fifth and
Fourteenth Amendments, and in violation of 42 U.S.C. § 1983.  <u>Id.</u>
¶¶ 47-57.

### III.   STANDARD OF REVIEW

**Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) ("Rule
12(b)(6)") permits dismissal of a complaint that fails "to state
a claim upon which relief can be granted."  Under Rule 12(b)(6),
review is generally limited to the contents of the complaint.
<u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir.
2001); <u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1479 (9th Cir.
1996).  Courts may also "consider certain materials — documents
attached to the complaint, documents incorporated by reference in
the complaint, or matters of judicial notice — without converting
the motion to dismiss into a motion for summary judgment."
<u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).
Documents whose contents are alleged in a complaint and whose
authenticity is not questioned by any party may also be
considered in ruling on a Rule 12(b)(6) motion to dismiss.  <u>See</u>
<u>Branch v. Tunnell</u>, 14 F.3d 449, 453-54 (9th Cir. 1994), <u>overruled</u>
<u>on other grounds by</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d

-11-

1119 (9th Cir. 2002).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  See Sprewell, 266 F.3d at 988; Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000); In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell, 266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted).  Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face." Id. at 570.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (internal quotation marks omitted).  "But courts have discretion to deny leave to amend a complaint for futility, and futility includes the inevitability of a claim's defeat on summary judgment." Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th Cir.1987) (citations and internal quotation marks omitted).

## IV.  DISCUSSION

Defendants City and Kealoha have submitted separate Motions for "Partial Dismissal" of the Complaint.  (<u>See</u> City Motion to Dismiss, Kealoha's Motion to Dismiss.)  This section will consider each motion in turn.

**A.  City's Amended Motion for "Partial" Dismissal of the Complaint**

On January 4, 2012, City submitted the City Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as a memorandum in support of the motion. (City MTD Mem.)  City moves to dismiss the Complaint for failure to state a claim upon which relief can be granted and because the Honolulu Police Department (hereinafter, "HPD") is not a separate legal entity from the City.  (City Motion to Dismiss at 2.)  The City Motion seeks dismissal of both counts in the Complaint, and asserts three central bases for dismissal:  (1)  Plaintiff fails to state a claim under 42 U.S.C. § 1983; (2) the DOE Defendants should be dismissed because pleading Doe defendants is impermissible in federal court; and (3) HPD is not a separate legal entity from the City.  <u>Id.</u>, at 11-15.  The City also asserts that 20 out of the 57 paragraphs in Plaintiff's Complaint are comprised of conclusory allegations.  <u>Id.</u> at 7.  This Order

-14-

addresses each of City's arguments in turn.

> **1. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983**

In its Motion to Dismiss, the City contends that

Plaintiff fails to state a claim under 42 U.S.C. § 1983. (City

Motion to Dismiss at 11.)  For the reasons discussed herein, the

Court agrees.  Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.  In order to establish municipal liability

under Section 1983, a plaintiff must demonstrate that he was

deprived of a constitutional right, and that the constitutional

violation "was the product of a policy, practice, or custom

adopted and promulgated by the city's officials." Levine v. City

of Alameda, 525 F.3d 903, 907 (9th Cir. 2008) (noting that in

order to establish liability, plaintiff must show that the city

had a policy, practice, or custom which amounted to "deliberate

indifference" to the constitutional right and was the "moving

force" behind the constitutional violation); see also Monell v.

Dep't of Soc. Servs. of New York, 436 U.S. 658 (1978).

In the past, the Ninth Circuit has not required parties

to provide much detail at the pleading stage regarding the "policy or custom" alleged.  Citing <u>Monell</u>, courts have long recognized that "[i]n this circuit, a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." <u>Whitaker v. Garcetti</u>, 486 F.3d 572, 581 (9th Cir. 2007) (quoting <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1127 (9th Cir. 2002)).

However, in <u>Starr v. Baca</u>, the Ninth Circuit acknowledged and addressed the conflicts in the Supreme Court's recent jurisprudence on the pleading requirements applicable to civil actions.  <u>See</u> 652 F.3d 1202 (9th Cir. 2011) (addressing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002); <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336 (2005); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007); <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (per curiam); and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)). The court held:

> [W]hatever the difference between [<u>Swierkiewicz</u>, <u>Dura Pharmaceuticals</u>, <u>Twombly</u>, <u>Erickson</u>, and <u>Iqbal</u>], we can at least state the following two principles common to all of them. First, <u>to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively</u>. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued

litigation.

Starr, 652 F.3d at 1218 (emphasis added).  The Ninth Circuit has since held that this standard applies to Monell claims against government officials.  AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012).  In light of this authority, the Court acknowledges that in order to withstand the Motions for "Partial" Dismissal, Plaintiff's Complaint must present more than simply a recital of the elements of a cause of action for his two counts alleging constitutional violations and seeking relief pursuant to Section 1983; the allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require [Defendants] be subjected to the expense of discovery and continued litigation."  Starr, 652 F.3d at 1218.

The City asserts that in order to establish municipal liability under Section 1983, Plaintiff must prove one of the following three things: "that the alleged constitutional violation was committed pursuant to a formal policy or custom that constitutes the standard operating procedure; that an official with 'final policy-making authority' committed the constitutional tort, or 'that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.'"  (City MTD Mem. at 12 (quoting Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992); citing Sunn v. City & County of Honolulu, 852 F. Supp.

-17-

903, 908-09 (D. Haw. 1994))).  Further, the City argues, "[a] plaintiff may not assert a claim under Section 1983 merely by identifying conduct properly attributable to the municipality." Id. at 12 (citing Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).[10/]

The City is correct that "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  (City MTD Mem.(quoting Monell, 436 U.S. at 691)).  Generally, "the actions of individual employees can support liability against a municipality under § 1983 only if those employees were acting pursuant to an official municipal policy."  Id.

Additionally, the City argues, Plaintiff may not assert a Section 1983 claim "merely by identifying conduct properly attributable to the municipality," but rather "must also demonstrate that, through its deliberate conduct, the

---

[10/] As the Supreme Court explained in Bd. of the County of Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-04 (1996) "[l]ocating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." (citing Monell, 436 U.S. at 694).  Moreover, the Supreme Court noted, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id.

municipality was the 'moving force' behind the injury alleged."
(City MTD Mem. (citing Bd. of County Comm'rs v. Brown, 520 U.S.
397, 404 (1997)).  In other words, as the Supreme Court has
noted, "a plaintiff must show that the municipal action was taken
with the requisite degree of culpability and must demonstrate a
direct causal link between the municipal action and the
deprivation of federal rights."  Bd. of County Comm'rs, 520 U.S.
at 404.[11/]

        In the instant case, Plaintiff alleges that Defendant
HPD denied him a permit to obtain a firearm and informed him that
he was disqualified because of his prior conviction for
harassment.  Compl. ¶ 25.  Plaintiff claims that HPD informed him
that it was HPD's "custom, practice and policy to review the
police reports to determine whether or not a defendant's alleged
crime was a crime of violence."  Id.  Moreover, Plaintiff
alleges, although the chief of police is vested with the
authority to issue permits under H.R.S. § 134-2, he is vested
with no discretion to deny an applicant who meets the objective
criteria of the statute.  Id. ¶¶ 41-42.

---

        [11/]  Moreover, City asserts that "[t]he mere enforcement of
state law on the part of local government, in the absence of
express incorporation or adoption of state law into local
regulations, has been found insufficient to sustain a federal
action under § 1983."  (City MTD Mem. at 13 (citing Surplus Store
& Exchange, Inc. v. City of Delphi, 928 F.2d 788, 79 (7th Cir.
1991)).  The City goes on to allege that Defendant Putzulu's mere
enforcement of a lawful statute "could not be the basis of
municipal liability under § 1983."  (City MTD Mem. at 14.)

Plaintiff further asserts that Defendants Putzulu and Kealoha and/or their agents or those of HPD, acting under color of law, unlawfully denied his application for a permit to acquire firearms.  This action, Plaintiff alleges, was condoned by HPD and the City who "knew or should have known of this illegal deprivation of [Plaintiff's] rights, yet permitted the deprivation to occur and continue to permit [Plaintiff's] rights to be deprived."  Compl. ¶¶ 45-46.  Accordingly, Defendants allegedly are "propagating customs, policies, and practices that violate [Plaintiff's] [rights] guaranteed by the Second and Fourteenth Amendments to the United States Constitution, damaging [Plaintiff] in violation of 42 U.S.C. § 1983."  Compl. ¶ 50.

Plaintiff has not presented sufficient allegations to establish Section 1983 municipal liability against the City under any of the three recognized standards.  First, Plaintiff has failed to allege that the City has a longstanding policy of wrongly denying permits under Sections 134-2 and 134-7, other than his allegation that he was informed by HPD that it was HPD's custom, practice and policy of reviewing police reports to determine if an applicant's alleged crime was a "crime of violence." (See Compl. ¶ 25.)[12/]  Plaintiff has not alleged any

_____

[12/] Although there is no allegation that Kealoha relied on a police report in denying Plaintiff's application for a gun permit nor that Kealoha did not review other documents which provided the specific nature of the conduct for which Plaintiff was

(continued...)

instances of wrongful denials other than his own, nor has he
alleged that this is a "formal" policy or custom that
"constitutes the [municipality's] standard operating procedure."
See Gillette, 979 F.2d at 1346-47; see also Monell, 436 U.S. at
691.  Plaintiff does not sufficiently allege "the existence of a
widespread practice that . . . is so permanent and well settled
as to constitute a 'custom or usage' with the force of law."  Id.

　　　　Second, Plaintiff has not alleged that either Putzulu
or Kealoha was the final policy-maker, or that either was
responsible for establishing the municipal policy at issue in
this litigation, thereby failing to establish the causal link
necessary to create municipal liability under Section 1983.
Gillette, 979 F.2d at 1349.[13/]  Plaintiff does not present
sufficient allegations – above and beyond merely reciting the
elements of the cause of action for a Section 1983 claim – to
attach municipal liability to the alleged actions of the
individual Defendants.  Starr, 652 F.3d at 1218.  In essence,
Plaintiff merely alleges that the actions of the individual

---

　　　　[12/] (...continued)
convicted.

　　　　[13/] Plaintiff asserts in his Opposition that Kealoha and
Putzulu "are and were municipal officials with final decision-
making authority," and that both "made deliberate choices, []
from among various alternatives, to follow a course of action –
denial of [Plaintiff's] application for a permit to acquire."
(P's City. Opp. Mem., at 15.)  However, Plaintiff does not make
any such allegations in the Complaint.

-21-

Defendants and HPD were "condoned" by the City.  See, e.g., Compl. ¶ 46.  Finally, the Complaint does not present any allegations that extend municipal liability based upon ratification of subordinates' actions.  The Court concludes that the Complaint does not meet the pleading standards under Starr, 652 F.3d at 1218.

For these reasons, the Court will GRANT City's Motion for "Partial" Dismissal of Counts I and II of the Complaint as against the City.  Plaintiff is granted leave to amend the Complaint.

### 2.  The DOE Defendants

For the reasons described herein, the Court will GRANT the Motion to Dismiss the Doe Defendants from the instant action. The City alleges that "[p]leading fictitious Doe defendants is improper in federal court." (City MTD Mem. at 14 (quoting State Farm Mut. Auto Ins. Co. v. Ireland, Civ No. 2:07-CV-01541-RCJ-RJJ, 2009 WL 4280282, at *1 (D. Nev. Nov. 30, 2009) (citing Turner v. County of Los Angeles, 18 Fed. App'x 592, 596 (9th Cir. 2001) ("As a general rule, the use of Doe pleading is disfavored in federal court.")))).  According to the City, "[a] claim against Does has no effect in federal court," and "[d]ismissal without prejudice of the claims against the Doe defendants is proper."  (City MTD Mem. at 15 (quoting Graziose v. Am. Hope

Prods. Corp., 202 F.R.D. 638, 643 (D. Nev. 2011))).[14/]

Courts in the Ninth Circuit have recognized that "[g]enerally, 'Doe' pleading is improper in federal court" and is disfavored. See, e.g., Buckheit v. Dennis, 713 F. Supp. 2d. 910, 918 n.4 (N.D. Cal. 2010) (quoting Bogan v. Keene Corp., 852 F.2d 1238, 1239 (9th Cir. 1988)); see also Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) (upholding district court's dismissal of Doe defendants because plaintiff failed to show that further discovery would uncover their identities).  Indeed, the Federal Rules of Civil Procedure do not contain a provision permitting a plaintiff's use of fictitious defendants.  See Fifty Assocs. v. Prudential Ins. Co., 446 F.2d 1187, 1191 (9th Cir. 1970).

However, when situations arise "where the identity of alleged defendants will not be known prior to the filing of a complaint . . . . [t]he plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."  Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie, 629 F.2d at 642-43); see also Wilkes v. HCCC Central Hosp., Civ.

---

[14/] The Court notes that Plaintiff did not respond to the City's Motion to Dismiss the Doe Defendants in his Opposition (see P's City Opp. Mem.), nor did the City present any additional arguments on this subject in its Reply (Defs' Joint Reply Mem.).

No. 11-00041 HG-BMK, 2011 WL 563987, at *4 (D. Haw. Feb. 7, 2011) (noting that although use of "Doe" defendants is disfavored, plaintiff should be given an opportunity to identify unknown defendants when identity was not known prior to filing of the complaint).  Nevertheless, dismissal may still be appropriate when "even if Doe's identity is discovered, the complaint would have to be dismissed on other grounds." Wakefield, 177 F.3d at 1163.

Other than including the Doe Defendants in the caption of his Complaint, Plaintiff has provided no information as to the basis for Plaintiff's claims against them.  Accordingly, in its discretion, the Court will GRANT the motion to dismiss all Doe Defendants named in the Complaint.  Plaintiff is granted leave to amend the Complaint.

### 3.   HPD is Not a Separate Legal Entity From the City

The Court will GRANT the City's Motion for "Partial" Dismissal of both claims against HPD because HPD is not a proper party to this action.  In its Motion to Dismiss, the City asserts that HPD "is not an independent legal entity that is subject to suit." (City MTD Mem. at 15) (citing Dowkin v. Honolulu Police Dep't, Civ. No. 10-00087 SOM-LEK, 2010 WL 4961135, at *3 (D. Haw. Nov. 30, 2010) (internal citations omitted)).

The City is correct.  Courts in the Ninth Circuit

generally have treated police departments as part of a

municipality.[15/]  Plaintiff offered no opposition to the City's

Motion to Dismiss HPD in his Opposition.  (P's City Opp. Mem.)

Additionally, Plaintiff's counsel concurred that dismissal of HPD

was warranted at the April 9, 2012 hearing.  Based upon the

foregoing, the Court, in its discretion, GRANTS the City's Motion

to Dismiss all claims against HPD, with prejudice.


**B.  Defendant Kealoha's Motion for "Partial" Dismissal of
    the Complaint**


On January 24, 2012, Defendant Kealoha submitted

Kealoha's Motion to Dismiss and a memorandum in support of the

motion.  (Kealoha's MTD Mem.)  Kealoha presents three bases upon

which he seeks dismissal:  (1) the official capacity claims

---

[15/]  See, e.g., Headwaters Forest Def. v. County of Humboldt, et al., 276 F.3d 1125, 1127 (9th Cir. 2002) (treating police departments as part of their respective county or city); Young v. Hawaii, 548 F. Supp. 2d 1151, 1164-65 (D. Haw. 2008)(concluding that defendants HPD and the County of Hawaii should be treated as one party for purposes of municipal liability under § 1983); Hoe III v. City and County of Honolulu, et al., Civ. No. 05-00602 DAE-LEK, 2007 WL 1118288, at *5 (D. Haw. 2007) ("This Court treats claims against municipalities, such as the City and County of Honolulu, and their respective police departments as claims against the municipalities."). Additionally, the Hawaii Supreme Court has held that individual departments within the City are not separate entities.  City and County of Honolulu v. Toyama, 61 Haw. 156, 598 P.2d 168, 172 (1979) (the city's Building Department and Department of Housing and Community Development were "both departments of the executive branch of appellee" and "both supervised by appellee's managing director," and therefore did not constitute legal entities separate and apart from the City and County of Honolulu).

against Kealoha should be dismissed as duplicative of those against the City; (2) Plaintiff fails to allege a violation of his constitutional or statutory rights; and (3) Kealoha is entitled to qualified immunity.  (Kealoha's MTD Mem. at 2-14.) The Court will consider each of Kealoha's arguments in turn.

### 1.  Official Capacity Claims Against Kealoha

For the reasons described herein, the Court GRANTS Kealoha's motion to dismiss all official capacity claims against Kealoha for damages, however it DENIES this motion insofar as Plaintiff seeks injunctive relief against Kealoha in his official capacity.

Kealoha asserts that "when both an officer and the local government entity are named in a lawsuit and the officer is named in his official capacity, the officer named in his official capacity is a redundant defendant and may be dismissed." (Kealoha's MTD Mem. at 5 (quoting Cramer v. City & County of Honolulu, Civ. No. 09-00223 SOM-KSC, 2010 WL 2541804, at *7 (D. Haw. June 23, 2010) (quoting King v. McKnight, Civ. No. CV F 07-1078 LJO DLB, 2008 WL 314407, at *5 (E.D. Cal. 2008)))); see also Wong v. City & County of Honolulu, 333 F. Supp. 2d 942, 947 (D. Haw. 2004) (dismissing plaintiff's official capacity claims against local official because local government unit could be sued directly for damages and injunctive or declaratory

relief).[16/]

Kealoha is correct.  The Supreme Court ruled decades ago, and it is well settled, that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under Monell, . . . local government units can be sued directly for damages and injunctive or declaratory relief." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); see also Young v. Hawaii, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008) (same).  An official capacity suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166.  For that reason, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to

---

[16/] Kealoha also argues that Plaintiff's claim against Kealoha in his official capacity should be dismissed as duplicative because "'neither a State nor its officials acting in their official capacities are' persons 'under § 1983,'" (Kealoha's MTD Mem. at 4 (quotations omitted)).  The Court observes that Kealoha is incorrectly relying upon law that applies to states and state officials, rather than municipalities and local officials which do not face Eleventh Amendment issues when sued under Section 1983.  The term "person" under Section 1983 does in fact encompass municipalities, although it does not encompass states.  See Pittman v. Oregon, 509 F.3d 1065 (9th Cir. 2007).  Plaintiff's assertion that an official capacity claim for injunctive relief against Kealoha must be permitted is similarly misguided.  (P's Kealoha Opp. Mem. at 13.)  Plaintiff also improperly relies upon case law discussing a plaintiff's ability to bring suit against state officials for injunctive relief in light of the Eleventh Amendment bar against suits brought against a state.  This is inapposite, as Plaintiff in the instant action is suing a local government and local officials, and no Eleventh Amendment immunity issues are implicated.

be treated as a suit against the entity." Id. (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)).  Accordingly, because Plaintiff can sue the City directly for damages and injunctive relief, claims against a local official such as Kealoha in his official capacity are rendered unnecessary and duplicative.  Any allegation of an unlawful policy or custom against Kealoha in his official capacity would necessarily run against the City.[17]

However, as counsel for Defendant Kealoha conceded during the April 9, 2012 hearing, Defendants have not yet adequately briefed the issue of injunctive relief and the parties are scheduled to address this issue at a separate hearing on Plaintiff's Motion for a Preliminary Injunction, scheduled for June 4, 2012.  (See Doc. No. 18.)  Accordingly, the Court declines to dismiss Plaintiff's claim for injunctive relief against Kealoha in his official capacity at this time.[18]

In light of the foregoing, the Court GRANTS Kealoha's Motion to Dismiss all official-capacity claims insofar as they seek money damages; Plaintiff may obtain this relief directly

---

[17] Plaintiff does not offer any opposition to dismissal of his claim for monetary damages against Kealoha in his official capacity.  (See P's Kealoha Opp. Mem.)

[18] In light of the fact that the parties have not yet briefed the issue of injunctive relief, they have not addressed whether it is necessary to maintain an action against Kealoha in his official capacity in order to enforce the injunction, in the event that Plaintiffs are unable to establish municipal liability against the City.

from the City.  See Wong, 333 F. Supp. 2d at 947.  However, the
Court DENIES Kealoha's Motion to Dismiss the official capacity
claims against Kealoha to the extent Plaintiff seeks injunctive
relief; this issue will be revisited following the completion of
briefing on Plaintiff's Motion for a Preliminary Injunction and
the June 4, 2012 hearing.

### 2. Failure to Allege Violation of Plaintiff's Constitutional or Statutory Rights

Kealoha also attacks Plaintiff's Section 1983 claims
based upon failure to allege a violation of Plaintiff's
underlying constitutional or statutory rights.  Kealoha correctly
asserts that in order to state a claim under Section 1983, "'a
plaintiff must show (1) that the conduct complained of was
committed by a person acting under color of state law; and (2)
that the conduct deprived the plaintiff of a federal
constitutional or statutory right.'"  (Kealoha MTD Mem. at 6
(quoting Jensen v. City of Oxnard, 145 F.3d 1078, 1082 (9th Cir.
1998) (internal citations omitted))).  As discussed above,
Plaintiff's claims against Kealoha in his official capacity are
duplicative of those against the City; consequently, the Court
considers Plaintiff's Section 1983 claims against Kealoha in his
individual capacity.

Section 1983 "does not create any substantive rights;
rather it is the vehicle whereby plaintiffs can challenge actions

by government officials." <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 978 (9th Cir. 2004) (internal quotations omitted).

Additionally, "[a]n individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation." <u>See Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir.1989); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir. 1978).

In the instant Complaint, Plaintiff alleges that Kealoha and Putzulu, as well as their agents or those of HPD, were "acting under color of law." <u>See</u> Compl. ¶¶ 45-46. Plaintiff also presents allegations of Kealoha's personal involvement in the alleged constitutional deprivation. <u>See id.</u> ¶¶ 35, 46 (alleging that Kealoha re-affirmed Putzulu's denial of Plaintiff's application). However, Kealoha's attack on the Complaint focuses upon Plaintiff's purported failure to adequately allege deprivation of a constitutional or statutory right upon which relief can be granted under Section 1983. (Kealoha's MTD Mem. at 6-7.) This section addresses whether Plaintiff sufficiently alleges deprivation of a constitutional or statutory under the Second, Fifth, and Fourteenth Amendments, respectively.

### A.   Claims Based Upon the Second Amendment

The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In his Complaint, Plaintiff alleges that he was deprived of his Second Amendment right to bear arms when Defendants denied him a permit to acquire firearms pursuant to H.R.S. § 134-2.  Compl. ¶ 48.  Plaintiff asserts that the "right to bear operational firearms and ammunition," as well as "other weapons in common use for lawful purposes," is "a fundamental constitutional right guaranteed by the Second Amendment . . . ."  Id. ¶ 3.

Kealoha responds that Plaintiff has not been deprived of his Second Amendment right because he is clearly barred from possessing firearms by H.R.S. § 134-7.  (Kealoha's MTD Mem. at 9.)  Moreover, even if Plaintiff were not lawfully barred from firearm ownership under state law, Kealoha argues that Plaintiff is nevertheless barred under federal law pursuant to 18 U.S.C. § 922(g)(9) (the "Lautenberg Amendment).[19/]  Id.

### i.   Prohibitions Based Upon State Law

A violation of state law "can serve as the basis of a

---

[19/] The Lautenberg Amendment prohibits any person who "has been convicted in any court of a misdemeanor crime of domestic violence" from owning a firearm.  18 U.S.C. § 922(g)(9).  This is discussed in greater detail in subsection (ii).

[S]ection 1983 action '[w]here the violation of state law causes the deprivation of rights protected by the Constitution.'" Draper v. Coombs, 792 F.2d 915, 921 (9th Cir. 1986) (citations omitted).

In District of Columbia v. Heller, the Supreme Court recognized that the Second Amendment protects the individual right to keep and bear arms for self-defense.[20]  554 U.S. 570 (2008).  The Supreme Court suggested that the core purpose of the right conferred by the Second Amendment was to permit "law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 635.  Accordingly, Supreme Court jurisprudence establishes that there is an individual constitutional right to bear arms, and that this right is particularly acute in connection with the right to self-defense in the home.  In the instant litigation, Defendants' denial of a permit to acquire a firearm, as well as their order that Plaintiff relinquish all firearms and ammunition in his possession, impact Plaintiff's ability to bear arms for self-defense in the home.

Nevertheless, the Supreme Court also stated that its decision in Heller should not call into question "longstanding

---

[20] Two year later, in McDonald v. City of Chicago, the Supreme Court held that the Second Amendment right to keep and bear arms is fully applicable to the states by virtue of the Fourteenth Amendment.  130 S.Ct. 3020 (2010).

prohibitions on the possession of firearms" by certain classes of persons, such as the mentally ill and convicted felons, and in certain places constituting security concerns.  Id. at 626-27 & n. 26.

That said, Plaintiff correctly notes that numerous courts to have considered the issue have held that harassment is not a categorical crime of violence.[21/]  Defendants assert that harassment clearly "falls within the definition of 'crime of violence' in that it 'involves injury or threat of injury to the person of another." (Kealoha's MTD Mem., at 9).  However, Defendants have not provided any case law support – and the Court

---

[21/]   See, e.g., Singh v. Ashcroft, 386 F.3d 1228, 1234 (9th Cir. 2004) ("harassment" under Oregon statute was not categorical crime of violence because it may be violated simply by "'causing spittle to land on the person' of another") (citations omitted); United States v. Maldonado-Lopez, 517 F.3d 1207 (10th Cir. 2008) (Colorado harassment statute was not a crime of violence, because the language of the statute was broad enough to cover non-violent crimes such as spitting on a person); United States v. Insaulgarat, 378 F.3d 456, 471 (5th Cir. 2004) (because there are forms of harassment that do not by their nature involve conduct that presents serious risk of physical harm, violation of aggravated stalking statute cannot categorically be a crime of violence); Archuleta v. Wagner, 523 F.3d 1278 (10th Cir. 2008) (violation of municipal ordinance that prohibits when a person "strikes, shoves, kicks, or otherwise touches a person or subjects him to physical contact" "with intent to harass, annoy, or alarm another person" was not a crime of violence); Szucz-Toldy v. Gonzales, 400 F.3d 978 (7th Cir. 2005) (district court erred in concluding that harassment by telephone was a crime of violence). In most instances, the issue arose in the context of the propriety of sentencing enhancements.  The Court also notes that these cases are not directly on point in that the courts are not considering "crime of violence" as it is defined in the Hawaii Revised Statutes § 134-1, nor are they interpreting the exact language of Hawaii's harassment statute.

is not aware of any – interpreting "harassment," as defined in the Hawaii Revised Statutes, as a "crime of violence."[22/]

Additionally, the State of Hawaii Intermediate Court of Appeals has held, albeit in a case that is distinguishable, that harassment and contempt of court convictions did not authorize a district court to order a defendant to relinquish his firearms. See State v. Char, 909 P.2d 590, 597 (Haw. Ct. App. 1995).[23/] Finally, the Court notes that the Family Court of the First Circuit, State of Hawaii, ordered the return of Plaintiff's firearms and ammunition in 1998 - so long as there were no prohibitions under Section 134-7 or applicable federal law - and the HPD promptly returned them.[24/]   Thereafter, Plaintiff lawfully

---

[22/] The Court also recognizes that the Chief of Police may rely upon bases other than a prior conviction for a "crime of violence" in rejecting an application for a permit pursuant to H.R.S. § 134-7, such as a diagnosis of significant behavior, emotional or mental disorders or treatment for addiction to drugs.  See H.R.S. § 134-7.

[23/] This is the only available case analyzing whether harassment qualifies as an offense that prohibits individuals from firearm ownership pursuant to Section 134-7. In that case, the court concluded that the defendant was prohibited from possessing firearms pursuant to another subsection of H.R.S. § 134-7(f), which prohibits those under a restraining/protective order.  The Court observes, however, that the court in Char considered the crime of harassment pursuant to H.R.S. § 711-1106(b), rather than (a).  See Char, 909 P.2d at 597.  Subsection (b) does not require physical contact, whereas subsection (a) - the provision pursuant to which Plaintiff pled guilty - requires physical contact.

[24/] Although, as counsel conceded at the April 9, 2012 hearing, it is possible that HPD did so erroneously, given that
(continued...)

possessed firearms for some ten years following his conviction for harassment.  In addition to state law, the Court also considers whether Defendants correctly denied Plaintiff a permit to acquire a firearm based upon federal prohibitions.

### ii.  Prohibitions Based Upon Federal Law

Kealoha asserts that even if Plaintiff were not lawfully barred from firearms ownership pursuant to Hawaii state law, he is nevertheless barred pursuant to the Lautenberg Amendment, which "prohibits firearm ownership by any person that 'has been convicted in any court of a misdemeanor crime of domestic violence.'"  (See Kealoha's MTD Mem. at 9 (quoting 18 U.S.C. § 922(g)(9))).

The Lautenberg Amendment is a provision of the Gun Control Act of 1968 (18 U.S.C.A. § 921 et seq.), added in 1996, which prohibits any person who "has been convicted in any court of a misdemeanor crime of domestic violence" from owning a firearm.  18 U.S.C. § 922(g)(9).  Under this federal statute, "misdemeanor crime of violence" is defined as a crime that is "a misdemeanor under Federal, State, or Tribal law; and "has, as an element, the use or attempted use of physical force, or the

---

24/ (...continued)
the court's order provided that reinstatement of Plaintiff's firearms and ammunition also hinged on Plaintiff qualifying under Section 134-7 and applicable federal law provisions.

threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim."  18 U.S.C. § 921(a)(33)(A)(i) (emphasis added).[25]

The Court acknowledges the significant policy concerns that animated the legislature's intent in passing the Lautenberg Amendment.  When Congress amended the 1968 Gun Control Act to add a prohibition against anyone convicted of a "misdemeanor crime of domestic violence" from possessing a firearm, it "did so for a compelling reason: the protection of victims of domestic violence."  Koll v. Dep't of Justice, 317 Wis.2d 753, 762 (Wis. Ct. App. 2009).  Senator Frank Lautenberg, who sponsored the amendment, explained, "[t]here is no question that the presence

---

[25] The United States Supreme Court has held that the predicate offense need not have the "domestic relationship" as an element under the Lautenberg Amendment. United States v. Hayes, 555 U.S. 415 (2009) (affirming conviction under 922(g)(9) where predicate offense was misdemeanor assault that did not include domestic relationship as an element, but did involve such relationship factually).  In Hayes, the Supreme Court concluded that the "definition of 'misdemeanor crime of domestic violence,' contained in § 921(a)(33)(A), imposes two requirements.  First, the crime must have, 'as an element the use or attempted use of physical force, or the threatened use of a deadly weapon.' § 921(a)(33)(A)(ii).  Second, it must be 'committed by' a person who has a specified domestic relationship with the victim.'"  555 U.S. at 415.  Here, the Complaint establishes that Plaintiff's crime was committed against family members.  See Compl. ¶ 16.

of a gun dramatically increases the likelihood that domestic violence will escalate into murder. According to one study, for example, in households with a history of battering, the presence of a gun increases the likelihood that a woman will be killed threefold." See 142 Cong. Rec. S11227 (Daily ed. Sept. 25, 1996).

The Court of Appeals for the Ninth Circuit has held that the phrase "physical force" pursuant to 18 U.S.C. § 921(a)(33)(A)(i) means "the violent use of force against the body of another individual." See United States v. Belless, 338 F.3d 1063, 1068 (9th Cir. 2003).[26/]  The court reasoned that the physical force requirement could not possibly include "any touching" in the "sense of Newtonian mechanics" and held that the physical force requirement cannot be satisfied by "de minimis" touching. Id. at 1067-68. In stark contrast, the commentary on H.R.S. § 711-1106 states that subsection (a) "is a restatement of the common-law crime of battery, which was committed by any slight touching of another person in a manner which is known to

_____

[26/] The Courts of Appeal for the Fourth, Seventh and Tenth Circuits have also concluded that the "touching" element of common law battery is not "physical force" as contemplated in 18 U.S.C. § 921(a)(33)(A) or similar statutes. See United States v. White, 606 F.3d 144 (4th Cir. 2010); United States v. Hays, 526 F.3d 674 (10th Cir. 2008); Flores v. Ashcroft, 350 F.3d 666 (7th Cir. 2003). In contrast, the Courts of Appeal for the First, Eighth and Eleventh Circuits have concluded that the "touching" element of common law battery - no matter how slight - falls within the plain meaning of the statutory term "physical force" as intended by Congress. See United States v. Griffith, 455 F.3d 1339 (11th Cir. 2006); United States v. Nason, 269 F.3d 10 (1st Cir. 2001); United States v. Smith, 171 F.3d 617 (8th Cir. 1999).

be offensive to that person." See Commentary, H.R.S. § 711-1106.

When a federal statute refers to generic crimes, courts in the Ninth Circuit apply the categorical and modified categorical approaches, set forth in Taylor v. United States, 495 U.S. 575 (1990), in order to determine whether the state conviction falls within the generic federal definition. See, e.g., Fregozo v. Holder, 576 F.3d 1030, 1038 (9th Cir. 2009).[27] Under the categorical approach, the court will "'compare the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by the [state] statute is broader than the generic federal definition,' looking only at the fact of conviction and the statutory definition." Id. (quoting Quintero-Salazar v. Keisler, 506 F.3d 688, 692 (9th Cir. 2007)).  However, "[i]f the statute of conviction criminalizes conduct that would not satisfy the federal definition of the crime at issue, then the conviction does not qualify as a predicate offense under the categorical approach." Id.

If there is no categorical match, courts in the Ninth Circuit in some circumstances apply a modified categorical

---

[27] This is the so-called Taylor rule, espoused by the Supreme Court in Taylor v. United States, 495 U.S. 575 (1990). The Taylor rule is discussed more widely in the context of immigration and in case law addressing the definition of "violent felony" under 18 U.S.C. 924(e)(2)(B)(i) and (ii), rather than "misdemeanor crimes of domestic violence."

approach, pursuant to which the inquiry is limited to "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Shepard v. United States, 544 U.S. 13, 16 (2005).  Further, under the modified categorical approach, courts may also consider "comparable" judicial documents of sufficient reliability.  See United States v. Snellenberger, 548 F.3d 699, 701-02 (9th Cir. 2008) (en banc) (minute orders are judicial documents of "equal reliability as those listed in Shepard and may be consulted under the modified categorical approach).

As Plaintiff asserts, numerous courts to have considered the issue have held that harassment is not a categorical crime of violence.  See supra, n. 25.  In applying the categorical approach, harassment will not be a categorical "match" with the federal statute if its statutory definition includes both conduct that is of a non-violent nature and conduct that is of a violent nature.  It appears that generally, under a modified categorical approach, the outcome depends upon whether the underlying conduct - as it can be determined by reliable documents - is of a violent nature.

The Court concludes that Plaintiff's Section 1983 claim for violation of his Second Amendment rights withstands the Motion to Dismiss.  The Court recognizes that there are important

policy issues to support the prohibition of gun ownership among individuals convicted of misdemeanor domestic violence crimes. However, Plaintiff's Complaint sufficiently alleges that he was not prohibited under federal or state law from gun ownership when Defendants denied his permit to acquire a firearm under H.R.S. § 134-7, and consequently sufficiently alleges that Plaintiff's Second Amendment right to bear arms was infringed.[28/]  For these reasons, the Court DENIES Kealoha's Motion to Dismiss Count I based upon alleged violations of Plaintiff's Second Amendment rights.

### B.  Claims Based Upon the Fifth Amendment

Kealoha correctly asserts that Plaintiff cannot state a claim upon which relief may be granted based upon alleged violations of the Fifth Amendment's due process clause. (Kealoha's MTD Mem. at 10.)  Plaintiff's counsel conceded this issue at the April 9, 2012 hearing.  The Ninth Circuit has plainly held that "[t]he Due Process Clause of the Fifth Amendment . . . [applies] only to actions of the federal government – not to those of state or local governments."  Lee v.

---

[28/] This conclusion, of course, is made in the absence of considering certain appropriate documents such as the written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented, which might shed some light on the nature of the underlying conduct for which Plaintiff was convicted; as the parties have not provided such documents to the Court (and it is questionable whether they are still available).

City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001); see also

Binque v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) ("The

Fifth Amendment's due process clause only applies to the federal

government."); Castillo v. McFadden, 399 F.3d 993, 1002 n. 5 (9th

Cir. 2005) ("The Fifth Amendment prohibits the federal government

from depriving persons of due process, while the Fourteenth

Amendment explicitly prohibits deprivations without due process

by the several States . . . .").

      Here, Plaintiff has only named a municipality, its

police department, and local HPD employees as defendants, and has

not alleged that the federal government or any federal actor

played a role in the events giving rise to Plaintiff's due

process claim.  See Low v. City of Sacramento, No. 2:10-cv-01624

JAM KJN PS, 2010 WL 3714993, at *7(E.D. Cal. Sept. 17, 2010).

Further, Plaintiff offers no response to the City's argument.

(P's Kealoha Opp. Mem.)  Accordingly, the Court will GRANT

Kealoha's Motion to Dismiss Plaintiff's Fifth Amendment claim.

Although the City did not specifically raise this issue in its

Motion to Dismiss, the Court concludes that Plaintiff also fails

to state a claim upon which relief may be granted based upon

violation of the Fifth Amendment as to the City, HPD, and the Doe

Defendants.  Accordingly, the Court dismisses Plaintiff's Fifth

Amendment claim against all Defendants, with prejudice.

### C.  Claims Based Upon the Fourteenth Amendment

The Fourteenth Amendment provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV. Plaintiff asserts that he was wrongfully denied a permit pursuant to H.R.S. § 134-2 without being afforded minimal due process protection as guaranteed by the Fourteenth Amendment, including a meaningful opportunity to be heard and an opportunity to have the decision reviewed.  Compl. ¶ 54.  Plaintiff alleges that Defendants maintain and enforce "a set of customs, practices, and policies prohibiting Mr. Fisher from keeping and bearing firearms despite properly applying for a permit to acquire, which was unconstitutionally and arbitrarily denied."  Compl. ¶ 57.

The Fourteenth Amendment guards against the deprivation of property or liberty without procedural due process.  See, e.g., Carey v. Piphus, 435 U.S. 247 (1978); Brady v. Gebbie, 859 F.2d 1543, 1547 (9th Cir. 1988).  In order to determine whether a procedural due process violation has occurred under the Fourteenth Amendment, courts employ a two-step process and ask: (i) whether a liberty or property interest exists entitling plaintiff to due process protections; and (ii) if such a constitutionally protected interest is established – using a three-part balancing test – exactly what process is due.  Hewitt

v. Grabicki, 794 F.2d 1373, 1380 (9th Cir. 1986).[29/]   A threshold requirement for asserting a due process claim is the existence of a property or liberty interest.   Peruta v. County of San Diego, 758 F. Supp. 2d 1106, 1120 (S.D. Cal. 2010)(citing Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972)).

   In his Complaint, Plaintiff alleges that he made an inquiry after his permit application was denied, and was told that the denial was "not reviewable"; this, Plaintiff contends, deprived Plaintiff of the minimal protection of due process of law under the Fifth and Fourteenth Amendments.   Compl. ¶ 4. Plaintiff alleges that there are no means by which an applicant can seek review of the police chief's denial of a permit, nor any means by which the applicant may participate in the decision-making process or demonstrate his fitness and/or qualifications. Id. ¶ 43-44.   Plaintiff states that he was wrongfully denied a

---

   [29/] The United States Supreme Court, in the case of Mathews v. Eldridge, set forth a three part balancing test for analysis of an individual's constitutional entitlement to a particular judicial or administrative procedure: First, the private interest that will be affected by the official action. Second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Third, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.   Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).   Further, "the fundamental requisite of due process of law is the opportunity to be heard [which] must be at a meaningful time and in a meaningful manner...." Goldberg v. Kelly, 397 U.S. 254, 267-68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (citations and internal quotation marks omitted).

permit under H.R.S. 134-2 without being afforded minimal due process protection such as a meaningful opportunity to be heard and to have the decision reviewed; consequently, he contends that he was deprived of liberty and property that is protected under the United States Constitution.  Id. ¶¶ 54-55.

Kealoha responds that because Plaintiff does not have an actionable Second Amendment claim, his Fourteenth Amendment claim fails.  (Kealoha's MTD Mem. at 10.)  Additionally, Kealoha contends that Plaintiff's "conclusory" statement that he was denied a meaningful opportunity to be heard regarding the denial of his firearm permit is "incorrect."  Id. at 11.  Kealoha argues that Plaintiff's procedural due process claim against Kealoha should be dismissed because "Kealoha was not involved in creating the procedural requirements under H.R.S. 134-7 or the Lautenberg Amendment . . ." and Plaintiff fails to allege that "Kealoha disregarded procedural requirements promulgated by [these] statutes."  Id.  Rather, Kealoha contends, the "crux" of Plaintiff's claim is that Kealoha "issued an erroneous decision (based upon such statutes)."  Id.[30/]

The Court concludes that, taking all allegations of material fact as true and construed in the light most favorable

---

[30/] Defendants add, in their joint Reply, that Kealoha "was in no way involved in creating the procedural requirements of H.R.S. 134-7 and cannot be liable to Plaintiff based upon a mere enforcement of said statute."  (Defs' Joint Reply Mem. at 5.)

to Plaintiff, Plaintiff has stated a claim upon which relief may be granted for violations of minimal due process protections under the Fourteenth Amendment.  In order to state a claim for violation of the right to procedural due process, a plaintiff must allege facts showing: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003)

Plaintiff alleges that he has been deprived of his fundamental constitutional right to bear operational firearms and ammunition, as guaranteed by the Second Amendment.  Compl. ¶¶ 3, 48.  Plaintiff also alleges that he has been deprived of liberty and property based upon Defendants' unlawful actions, and that such deprivation deprived Plaintiff of minimal due process protections such as the opportunity to participate in the decision-making process, and a means to seek review of the denial of his application.  Id. ¶¶ 43-44, 49.  Contrary to Kealoha's assertion, Plaintiff has asserted a deprivation of a constitutionally protected liberty or property interest, and has adequately alleged a denial of adequate procedural protections.  Kildare, 325 F.3d at 1085.  For these reasons, the Court will DENY Kealoha's Motion to Dismiss Count II of the Complaint against Defendant Kealoha insofar as Plaintiff's Section 1983 claim is based upon denial of procedural due process under the

Fourteenth Amendment.

###    3.  Qualified Immunity for Individual Capacity Claims

          Kealoha also asserts that he is shielded from

individual liability based upon qualified immunity.  (Kealoha's

MTD Mem. at 11.)[31]  As a general rule, courts will apply a two-

part qualified immunity analysis to determine "whether, taken in

the light most favorable to [Plaintiffs], Defendants' conduct

amounted to a constitutional violation, and ... whether or not

the right was clearly established at the time of the violation."

Bull v. City and County of San Francisco,  595 F.3d 964, 971 (9th

Cir. 2010) (internal citations omitted).  The Court is not

required to address these two inquiries in a particular order,

but may instead "exercise [its] sound discretion in deciding

which of the two prongs of the qualified immunity analysis should

be addressed first in light of the circumstances in the

particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 226

---

          [31]  Plaintiff responds that municipal employees sued in their
official capacity may not claim qualified immunity in a Section
1983 action.  (P's Kealoha Opp. Mem. at 21 (citing Eng v. Cooley,
552 F.3d 1062, 1064 n.1 (9th Cir. 2009))).  Plaintiff is correct.
An employee of a municipality sued in his official capacity may
not assert a qualified immunity defense to liability under
Section 1983.  See also Hallstrom v. City of Garden City, 991
F.2d 1473, 1482 (9th Cir. 1993); Kentucky v. Graham, 473 U.S.
159, 165-68 (1985).  However, in his Motion for "Partial"
Dismissal, Kealoha is seeking qualified immunity against claims
brought in his individual capacity.

(2009); see also Bull, 595 F.3d at 971.

Government officials are immune from damages claims "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Anderson v. Creighton, 483 U.S. 635, 638 (1987). Moreover, the Supreme Court has held that a right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. Qualified immunity protects government officials "from suit rather than [serving as] a mere defense to liability," (Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (emphasis in original), and provides far-reaching protection to government officers.[32]

The Court, in its discretion, addresses the second prong first and determines whether the right at issue was "clearly established at the time of the violation." See McCherry v. City of Long Beach, 584 F.3d 1129 (9th Cir. 2009).

---

[32] See Hunter v. Bryant, 502 U.S. 224, 229 (1991) (citation omitted) (the standard for qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law"); see also Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1997)("An officer who acts in reliance on a duly-enacted statute or ordinance is ordinarily entitled to qualified immunity," whereas "[w]here a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity."); Wright v. United States, Civ. No. S-00-077WBSDADPS, 2001 WL 1137255, at *6-7 (E.D. Cal. Aug. 21, 2001).

The Court concludes that - even if Plaintiff were able to establish a constitutional violation - a reasonable official in Kealoha's circumstances would not have understood that his conduct violated a right that was clearly established at the time of the denial of Plaintiff's permit. Anderson, 483 U.S. at 640.

Defendants correctly assert that there is "no case law or legislative action invalidating H.R.S. § 134-7." (Kealoha's MTD Mem. at 13.) Additionally, there is no Hawaii case law or legislative action establishing that Plaintiff is entitled to own a firearm under state law despite his conviction for harassment under H.R.S. § 711-1106(1)(a). The Court also agrees that a reasonable official in Kealoha's position would understand his actions to be lawful under the Lautenberg Amendment considering that a "crime of violence" is defined as "the use or attempted use of force," and the case law does not explicitly rule out crimes such as harassment from inclusion in the prohibition. (Kealoha's MTD Mem. at 14 (citing 18 U.S.C. § 921(a)(33)(A) (i))).

Also, importantly, the Court observes that Putzulu's June 10, 2009 denial of Plaintiff's permit occurred before the right to bear arms was even recognized as extending to the states in McDonald v. City of Chicago, which was decided in June of 2010. 130 S.Ct. 3020 (2010). Kealoha's reaffirmation of the denial occurred only months after McDonald, before most courts

had occasion to consider what, if any, constitutional rights might be implicated when an application for a gun permit is denied.  See 130 S.Ct. at 3020.

The Court reiterates the significant policy concerns surrounding the passage of the Lautenberg Amendment, particularly Senator Frank Lautenberg's statement that "[t]here is no question that the presence of a gun dramatically increases the likelihood that domestic violence will escalate into murder.  According to one study, for example, in households with a history of battering, the presence of a gun increases the likelihood that a woman will be killed threefold."  See 142 Cong. Rec. S11227 (Daily ed. Sept. 25, 1996).

The Court concludes that Kealoha is entitled to qualified immunity because a reasonable official in his position would not have understood that his conduct violated the Second Amendment.  Anderson, 483 U.S. at 640.  This holding, however, is limited.  As Plaintiff correctly asserts, qualified immunity only extends to a suit for money damages, and does not provide immunity from suits seeking declaratory or injunctive relief. See, e.g., Hydrick v. Hunter, 669 F.3d 937, 939-40 (9th Cir. 2012); L.A. Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993).  Moreover, during the April 9, 2012 hearing, Kealoha's counsel conceded that the issue of injunctive relief has not been fully briefed and will be addressed in future

-49-

memoranda and at the June 4, 2012 hearing on Plaintiff's Motion for a Preliminary Injunction.  (See Doc. No. 18.)  Accordingly, the Court declines to consider the issue of injunctive relief in this Order.

### V.  CONCLUSION

For the foregoing reasons, the Court:  (1) GRANTS Defendant City's Amended Motion for "Partial" Dismissal of the Complaint; and (2) GRANTS in part and DENIES in part Defendant Kealoha's Motion for "Partial" Dismissal of the Complaint.

The claims against the City and the Doe Defendants are dismissed without prejudice.  The claims against HPD are dismissed with prejudice.  The Court denies the motion to dismiss the claims against Kealoha in his official capacity to the extent that Plaintiff seeks injunctive relief for alleged violations of his Second and Fourteenth Amendment rights under Section 1983.  However, the claims against Defendant Kealoha in his individual capacity are dismissed without prejudice based on a finding of qualified immunity.  The Court also dismisses Count II as to all Defendants, with prejudice, insofar as it alleges violations of Plaintiff's Fifth Amendment rights.  The Court does not make any ruling at this time with respect to Defendant Putzulu, who has not been served with the Complaint and is not represented in this action.

IT IS SO ORDERED.

DATED:   Honolulu, Hawaiʻi, April 19, 2012.



_____
Alan C. Kay
Sr. United States District Judge

Fisher v. Kealoha, et al.; Civ. No. 11-00589 ACK-BMK:  Order Granting
Defendant City and County of Honolulu's Motion for "Partial" Dismissal of the
Complaint, and Granting in Part and Denying in Part Defendant Louis Kealoha's
Motion for "Partial" Dismissal of the Complaint.