IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

---

)
KIRK C. FISHER,                     )
                                    )
                 Plaintiff,         )
                                    )
         vs.                        )
                                    )  Civ. No. 11-00589 ACK-BMK
LOUIS KEALOHA, as an individual     )
and in his official capacity as     )
Honolulu Chief of Police; PAUL      )
PUTZULU, as an individual and in    )
his official capacity as former     )
Honolulu Acting Chief of Police;    )
and CITY AND COUNTY OF HONOLULU,    )
                                    )
                 Defendants.        )

---

ORDER GRANTING PLAINTIFF KIRK C. FISHER'S
MOTION FOR A PRELIMINARY INJUNCTION

For the following reasons, the Court GRANTS Plaintiff
Kirk C. Fisher's Motion for a Preliminary Injunction.

I.  PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on September 28, 2011,
against defendants Louis Kealoha, Paul Putzulu, the City and
County of Honolulu, the Honolulu Police Department, and Doe

Defendants 1-50 (collectively, the "Defendants").  In the Complaint, Plaintiff asserted two claims against Defendants for violation of his Second, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.  Compl. ¶¶ 47-57.  Plaintiff sought the following relief: an order compelling Defendants to issue a permit authorizing Plaintiff to keep and bear arms; general and special damages; punitive and/or exemplary damages; attorneys' fees, costs, prejudgment and post-judgment interest; and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  Id. at 16.

On December 9, 2011, Defendant City and County of Honolulu (hereinafter, "City") filed a Motion for "Partial" Dismissal of the Complaint, as well as a memorandum in support of the motion.  (Doc. No. 6.)  On January 4, 2012, City filed an amended motion - the City Motion to Dismiss - as well as a memorandum in support of the motion (Doc. No. 10-1, hereinafter, the "City MTD Mem.").  Defendant Kealoha filed a separate motion - Kealoha's Motion to Dismiss - on January 24, 2012, as well as a memorandum in support of his motion (Doc. No. 16-1, hereinafter, "Kealoha's MTD Mem.").  On March 19, 2012, Plaintiff filed a Memorandum in Opposition to City's Amended Motion for "Partial" Dismissal of the Complaint (Doc. No. 19, hereinafter "P's City Opp. Mem."), as well as a separate Memorandum in Opposition to Defendant Louis Kealoha's Motion for "Partial" Dismissal of the

Complaint (Doc. No. 20, hereinafter "P's Kealoha Opp. Mem."). On March 26, 2012, Defendants City and Kealoha submitted a joint Reply Memorandum to Plaintiff's Oppositions to the Motions for "Partial" Dismissal of the Complaint. (Doc. No. 23, hereinafter "Defs' Joint Reply Mem.".)

Plaintiff filed a Motion for a Preliminary Injunction (Doc. No. 18, "Mot. for Prelim. Inj.") and a supporting memorandum (Doc. No. 18-2, "Mem. in Supp. of Mot. for Prelim. Inj.") on March 19, 2012. Defendants City and County of Honolulu and Louis Kealoha filed an opposition to the motion on May 23, 2012. (Doc. No. 27, the "Opp. Mem. to Mot. for Prelim. Inj."). Plaintiff filed a reply on June 4, 2012. (Doc. No 29, the "Reply in Supp. of Mot. for Prelim. Inj.")

After the Court held a hearing on Defendants' Motions to Dismiss on April 9, 2012, the Court granted Defendant City and County of Honolulu's motion, and granted in part and denied in part Defendant Kealoha's motion. (See Doc. 25.) In its Order, the Court dismissed all claims against Defendant City and County of Honolulu without prejudice. Id. at 50. The Court also dismissed all claims against the Honolulu Police Department, and all claims based upon alleged violations of Plaintiff's Fifth Amendment rights, with prejudice. Id. However, the Court denied Defendant Kealoha's Motion to Dismiss to the extent that Plaintiff sought injunctive relief against Kealoha in his

-3-

official capacity for alleged violations of Plaintiff's Second and Fourteenth Amendment rights under 42 U.S.C. § 1983. Id. The Court made no ruling with respect to Defendant Putzulu, who had not been served with the Complaint and was not represented in the action. Id.

The Court held a hearing on Plaintiff's Motion for Preliminary Injunction on Thursday, June 14, 2012.[1] On the same

---

[1] During the June 14, 2012 hearing, the Court raised the issue of res judicata and directed the parties to file supplemental memoranda addressing whether the issues raised in this litigation were foreclosed by the State Court's June 22, 2010 order denying Plaintiff's request to enforce the Order Permitting Return of Firearms, Ammunitions and Permits of Licenses, with Conditions filed June 10, 2010 (which was denied without findings of fact or conclusions of law). (See Compl. ¶ 33.) On June 21, 2012, Plaintiff timely filed a memorandum attaching the transcript of the proceedings in the June 22, 2010 court hearing, which demonstrated that the State Court judge did not reach the merits and was concerned as to whether the court had jurisdiction; although the judge did state that he believed the 1997 Order was enforceable. (See Doc. No. 33, Supplemental Memorandum In Support Of Motion For Preliminary Injunction, Ex. 1 at 2.) Nevertheless, the judge denied Plaintiff's motion. Id. Plaintiff argued that this action is not barred by res judicata because: (1) the State Court judge did not consider the issue of Plaintiff's alleged constitutional violations or statutory disqualification under state and/or federal law (nor was he asked to); (2) there was no final adjudication on the merits; and (3) the instant action involves different parties. Id. at 6-7.
Defendants timely filed a supplemental opposition memorandum on the issue of res judicata on June 27, 2012. (Doc. No. 34.) Although Defendants stated that they planned to raise res judicata in their forthcoming Answer, the Court notes that Defendants had an opportunity to address this issue in their supplemental memorandum. Defendants asserted that the state court transcript "does not make Plaintiff more likely to succeed on the merits," but failed to advance any persuasive counter-arguments regarding the issue that the Court directed them to address; namely, whether res judicata would preclude Plaintiff
(continued...)

day, Plaintiff filed an Amended Complaint, naming as defendants Louis Kealoha (in his individual and official capacities), Paul Putzulu (in his individual and official capacities), and the City and County of Honolulu.  (See Doc. No. 31, Amended Complaint, hereinafter "FAC," at 1.)  The parties agreed to proceed with the June 14, 2012 hearing although neither Defendants nor the Court had an opportunity to review the FAC that was dilatorily filed that morning.[2]

## II.  FACTUAL BACKGROUND[3]

In his Motion for a Preliminary Injunction, Plaintiff contends that Defendants have deliberately denied Plaintiff of his constitutional right to keep and bear arms, notwithstanding Hawaii Revised Statutes ("H.R.S") Chapter 134 and 18 U.S.C. §§ 921 and 922.  (Mem. in Supp. of Mot. for Prelim. Inj. at 1.)

---

[1] (...continued)
from obtaining relief in the current lawsuit.  The Court concludes that Plaintiff's claims are not barred by the doctrine of res judicata because the State Court proceedings did not result in a final adjudication on the merits with respect to the issues raised in the instant action.

[2] The Court notes that all citations to a complaint in this Order refer to the original Complaint filed on September 28, 2011, rather than the FAC that was filed on June 14, 2012.  As noted above, the parties agreed to proceed with the hearing on Plaintiff's Motion for Preliminary Injunction on June 14, 2012, although the Defendants had not had an opportunity to review the FAC.

[3] The facts as recited in this order are for the purpose of disposing of these motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

-5-

Prior to October of 2009, Plaintiff owned and possessed firearms. Id. However, Plaintiff contends that when he applied for a permit to acquire additional firearms in the fall of 2009, pursuant to H.R.S. § 134-2, Defendants denied the application without providing Plaintiff with a meaningful opportunity for further review. Id. at 2.

More than ten years earlier, on November 5, 1997, Plaintiff had been arrested on two counts of harassment in violation of Hawaii Revised Statutes ("H.R.S.") § 711-1106(1)(a). Compl. ¶ 15.[4/]  This statute provides, in relevant part:

>    §711-1106  Harassment.  (1)  A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
>
>    (a)    Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact . . . .

H.R.S. § 711-1106(1)(a).[5/]  The underlying State Court complaint

---

[4/] The Court takes judicial notice of the December 3, 1997 judgment in State of Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233, pursuant to Fed. R. Evid. 201.  See Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). This judgment confirms that Plaintiff was convicted under Subsection (1)(a) of Section 711-1106 of the Hawaii Revised Statutes, for the crime of Harassment.  Plaintiff alleges that the transcripts and/or audio recordings of the December 3, 1997 hearing have been destroyed pursuant to judiciary retention statutes.  Compl. ¶ 19.

[5/] The Commentary regarding H.R.S. § 711-1106 states that "Subsection (1)(a) is a restatement of the common-law crime of battery, which was committed by any slight touching of another person in a manner which is known to be offensive to that person." (Emphasis added.)

against Plaintiff alleges that on or about November 5, 1997, "with intent to harass, annoy, or alarm Collette Fisher, [Plaintiff] did strike, shove, kick, or otherwise touch Collette Fisher in an offensive manner, or subject her to offensive physical contact, thereby committing the petty misdemeanor offense of harassment in violation of Section 711-1106(1)(a) of the Hawaii Revised Statutes." (State of Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233, Compl. p. 1.)  In Count II, the complaint sets forth the same allegations with respect to victim Nicole Fisher.  Id.  Plaintiff owned firearms on or around this time, and transferred those firearms to Defendant Honolulu Police Department (hereinafter, "HPD") pursuant to the Family Court Order implementing H.R.S. §§806-11 and 134-7.  Compl. ¶ 17.

On December 3, 1997, Plaintiff pled guilty to two counts of Harassment in the Family Court of the First Circuit, State of Hawaii, in the case of State of Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233.  Id. ¶ 18.[6]  Plaintiff acknowledges

_____

[6] Notably, although Plaintiff was convicted of harassment under §711-1106(1)(a), the statute provides for other means by which an individual commits the offense of harassment, some of which – unlike subsection (a) – do not explicitly require physical contact.  For example, pursuant to subsection (b), a person "commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person" . . . "(b) [i]nsults, taunts, or challenges another person in a manner likely to provoke an immediate violent response or that would cause the other person to reasonably believe that the actor intends to cause bodily injury to the recipient or another or damage to the property of the recipient or another . . . ."
(continued...)

that he had a domestic relationship with the victims.  <u>See</u> Compl.
¶¶ 16, 26.  Plaintiff was placed on probation for a period of six
months, and was ordered to surrender all firearms, ammunition,
permits and licenses to HPD pursuant to the order in that case.
<u>Id.</u> ¶¶ 18, 20.

On November 4, 1998, the Family Court of the First
Circuit, State of Hawaii, issued an Order Permitting Return of
Firearms, Ammunition, Permits and Licenses, With Conditions.  <u>Id.</u>
¶ 20.  The order provided:

> IT IS HEREBY ORDERED that Honolulu Police Department shall
> return to [Plaintiff] all firearms and ammunition which were
> surrendered pursuant to the above-mentioned court order,
> <u>provided that the provisions of H.R.S. Chapter 134 are</u>
> <u>satisfied and that there are no outstanding state or federal</u>
> <u>restraining orders, prohibitions under H.R.S. Section 134-7</u>
> <u>or the Violence Against Women Act of 1994 (18 U.S.C. Section</u>
> <u>2265 et. seq. and section 922(g)(9), or other outstanding</u>
> <u>federal or state (H.R.S. Section [sic] 804-7.1) court orders</u>
> <u>against [Plaintiff] which would prohibit [Plaintiff's]</u>
> <u>possession or control of firearms and ammunition.</u>  In the
> event that any permits or licenses were revoked, said
> permits or licenses shall be reissued by the Honolulu Police
> Department, but only to the extent of the original
> expiration date of such permits or licenses.

<u>Id.</u> (emphasis added). Following the issuance of this order, HPD
promptly returned Plaintiff's firearms.  <u>Id.</u> ¶ 21.

More than ten years later, in fall 2009, Plaintiff
applied for and was denied a permit to acquire firearms and
ordered to surrender his firearms.  <u>Id.</u> ¶ 22.  In a letter dated

---

[6]/ (...continued)
H.R.S. §711-1106(1)(b).

October 1, 2009, Defendant Paul Putzulu – then Acting Chief of Police - informed Plaintiff that he was disqualified from firearms ownership or possession under the provisions of H.R.S. § 134-7, and directed Plaintiff to voluntarily surrender to the Chief of Police or otherwise lawfully dispose of all firearms and ammunition in his possession within 30 days of receipt of the letter.  Id. ¶¶ 23-24.  Plaintiff promptly contacted HPD and was informed that the denial was based upon his prior conviction for harassment in State of Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233.  Id. ¶ 25.  Additionally, Plaintiff alleges, HPD informed Plaintiff that it was HPD's "custom, practice and policy to review the police reports to determine whether or not a defendant's alleged crime was a crime of violence."  Id. Plaintiff subsequently transferred ownership and possession of all of his firearms to his wife, Collette Fisher, after she obtained permits.  Id. ¶ 26.  H.R.S. Section 134-7 provides in relevant part:

> (b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

H.R.S. § 134-7(b) (emphasis added).  The text of Section 134-7(b) has remained unchanged since the time of Plaintiff's guilty plea, sentencing, and the order returning his firearms in 1997-98.  See

-9-

H.R.S. § 134-7(b).[7/]   The term "crime of violence" is defined as

"any offense, as defined in title 37, that involves injury or

threat of injury to the person of another."   H.R.S. § 134-1.[8/]

This definition also remains unchanged since the 1997-98 period

wherein Plaintiff pled guilty and was sentenced for harassment.

See H.R.S. § 134-1.

On June 10, 2010, Plaintiff submitted a Motion to

Enforce Order Permitting Return of Firearms, Ammunition, Permits

and Licenses, with Conditions, to the Family Court of the First

Circuit, State of Hawaii FC-CR No. 97-3233.  Compl. ¶ 32. This

motion was denied by the state court on June 22, 2010, and no

findings of fact or conclusions of law were entered.   See id. ¶

33.[9/]

On August 31, 2010, Plaintiff wrote to Defendant

---

[7/] The legislative history for H.R.S. § 134-7 reveals that
although the language of subsection (b) has not been amended
between 1997 and today, the legislature did amend subsection (a)
in 2006.  This subsection provides: "No person who is a fugitive
from justice or is a person prohibited from possessing firearms
or ammunition under federal law shall own, possess, or control
any firearm or ammunition therefor." H.R.S. § 134-7(a).   The
phrase "or is a person prohibited from possessing firearms or
ammunition under federal law" was added in a 2006 amendment
effective April 25, 2006.  See H.R.S. § 134-7, Ed. note.

[8/] Based upon the plain language of the statute, "injury"
and "threat of injury" are not elements of harassment as it is
defined in H.R.S. § 711-1106.

[9/] The parties did not submit a copy of this Order.  At the
April 9, 2012 hearing, Plaintiff's counsel stated that Plaintiff
did not appeal the State Court order's denial of June 22, 2010.

Kealoha requesting that the HPD grant his application for a permit to acquire firearms and rescind the prior order to surrender or dispose of his firearms.  Id. ¶ 34.  And on September 29, 2010, Defendant Kealoha replied to Plaintiff by re-affirming Defendant Putzulu's prior denial of the application. Id. ¶ 35.

Plaintiff contends that he is "fit and qualified to keep and bear arms," but would be subject to arrest and prosecution should he seek to exercise that right without obtaining a permit; Plaintiff would face a class C felony for unlawful ownership or possession of a firearm under H.R.S. § 134-7.  Id. ¶¶ 36-38.  Plaintiff further alleges that the Chief of Police is not vested with any discretion to deny a permit if an applicant meets the objective criteria contained in H.R.S. §§ 134-2 and 134-7.  Id. ¶ 42.[10]

In his Motion for a Preliminary Injunction, Plaintiff

---

[10] H.R.S. § 134-2 provides, in relevant part:

**Permits to acquire.**  (a)  No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section.

asserts that "the core of the Second Amendment is self-protection," and the denial of Plaintiff's application for a permit to acquire, and to surrender his firearms, violated and continues to violate his Second Amendment rights.  (Mem. in Supp. of Mot. for Prelim. Inj. at 2.)  Plaintiff contends that he is deprived of any means to protect himself, and also deprived of the use and enjoyment of his firearms.  <u>Id.</u> at 2-3.  Furthermore, Plaintiff states that Defendants have not established an appellate process or provided Plaintiff with a meaningful opportunity to be heard, thereby denying Plaintiff of the minimal protection of due process guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution.  <u>Id.</u> at 3.

### III.   STANDARD OF REVIEW

**Motion For A Preliminary Injunction**

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  <u>Am. Trucking Ass'ns v. City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7 (2008) (explaining that, "[t]o the extent that [the Ninth Circuit's] cases have suggested a lesser standard, they are no longer

-12-

controlling, or even viable" (footnote omitted)); <u>see also</u>
<u>Stormans, Inc. v. Selecky</u>, 571 F.3d 960, 978 (9th Cir. 2009)
(concluding that this is the "proper legal standard for
preliminary injunctive relief").

  Pursuant to the standard set forth in <u>Winter</u>, even
where a likelihood of success on the merits is established, a
mere possibility of irreparable injury is insufficient to warrant
preliminary injunctive relief, because "[i]ssuing a preliminary
injunction based only on a possibility of irreparable harm is
inconsistent with [the Supreme Court's] characterization of
injunctive relief as an extraordinary remedy that may only be
awarded upon a clear showing that the plaintiff is entitled to
such relief").  555 U.S. at 22.

  The Ninth Circuit also articulated an alternate
formulation of the <u>Winter</u> test, pursuant to which "serious
questions going to the merits and a balance of hardships that
tips sharply towards the plaintiff can support issuance of a
preliminary injunction, so long as the plaintiff also shows that
there is a likelihood of irreparable injury and that the
injunction is in the public interest." <u>Farris v. Seabrook</u>, 667
F.3d 1051, 1057 (9th Cir. 2012)(applying the <u>Cottrell</u> factors as
espoused in <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d
1127, 1135 (9th Cir. 2011), to hold that the district court erred
- although error was harmless - when it applied the first

-13-

_Cottrell_ factor and last three _Winter_ factors, but failed to find
that the balance of the hardships tipped sharply in the
plaintiffs' favor, as _Cotrell_ requires, or a likelihood of
success on the merits, as _Winter_ requires); _see also_ _M.R. v._
_Dreyfus_, 663 F.3d 1100, 1108 (9th Cir. 2011) (recognizing _Winter_
test as well as alternate _Cottrell_ test for the grant of a
preliminary injunction).

        A district court has "great discretion" in determining
whether to grant or to deny a preliminary injunction.  _See, e.g._,
_Siales v. Hawaii State Judiciary, Dep't of Human Res._, Civ. No.
11-00299 DAE-RLP, 2012 WL 220327, at *2 (D. Haw. Jan. 24, 2012)
(quoting _Wildwest Inst. v. Bull_, 472 F.3d 587, 589-90 (9th Cir.
2006)).

### IV.  DISCUSSION

        Plaintiff seeks a Preliminary Injunction pursuant to
the Second, Fifth, and Fourteenth Amendments to the United States
Constitution, as well as Rules 7(b) and 65 of the Federal Rules
of Civil Procedure, and requests that the Court issue an Order
"compelling Defendants, their officers, agents, servants,
employees, and all persons in active concert or participation
with them who receive notice of the order to rescind the prior
denial of [Plaintiff's] permit to acquire firearms and issue a
permit authorizing [Plaintiff] to acquire firearms."  (Mot. for

Prelim. Inj. at 2.)[11/]

Generally, Defendants assert that Plaintiff's motion should be denied because it is based upon arguments that are "erroneous in numerous respects in that they misstate facts and Hawaii law and ignore widely-recognized limits on the individual right to bear arms." (Opp. to Mot. for Prelim. Inj. at 4.) For the reasons set forth below, the Court concludes that the preliminary injunction should issue.

The Court previously dismissed all of Plaintiff's claims against Defendants HPD, the Doe Defendants, and the City and County of Honolulu. The Court denied Defendant Kealoha's Motion to Dismiss with respect to official capacity claims for injunctive relief for alleged violations of Plaintiff's Second and Fourteenth Amendment rights under Section 1983. (Doc. No. 25, at 50.) However, Plaintiff filed the FAC on June 14, 2012, naming the City and County of Honolulu once again as a Defendant in this action. (See FAC at 1.) Nevertheless, in light of the parties' agreement to proceed with the hearing on the Motion for Preliminary Injunction on June 14, 2012, the Court considers this Motion in light of the arguments made in the briefings and at the hearing based upon the original Complaint.

---

[11/] The Court declines to consolidate the hearing of this Motion with a trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). See Mem. in Supp. of Mot. for Prelim. Inj. at 3.

**A. Likelihood of Success on the Merits**

The crux of Plaintiff's case concerns his contention that his Second Amendment right to bear arms was infringed when Defendants denied him a permit and ordered the revocation of his currently owned firearms pursuant to HRS §§ 134-2 and 134-7. (Mem. in Supp. of Mot. for Prelim. Inj. at 2-3.)  For the reasons discussed herein, the Court concludes that Plaintiff is likely to succeed on the merits.

1. <u>Statutory Qualification for Firearm Ownership</u>

Plaintiff asserts that he is not statutorily disqualified from gun ownership. (Mem. in Supp. of Mot. for Prelim. Inj. at 5.)  Consequently, Plaintiff submits that Defendants' denial of a permit to acquire a firearm and order that Plaintiff relinquish his current firearms infringed upon Plaintiff's rights under the Second and Fourteenth Amendments, in violation of Section 1983. Id.  Plaintiff states that HPD informed him that the reason for the denial of his application for a permit to acquire a firearm was based upon his prior conviction for Harassment in <u>State of Hawaii v. Kirk C. Fisher</u>, FC-CR No. 97-3233. <u>Id.</u>  This misdemeanor, Plaintiff asserts, is not a basis for disqualification under state or federal law. <u>Id.</u>

In their Opposition, Defendants assert that Plaintiff's likelihood of success on the merits is low. (Mem. in Opp. to Mot. for Prelim. Inj. at 8.)  However, Defendants fail to address

-16-

whether Plaintiff is statutorily disqualified from gun ownership
under state or federal law.  Instead, Defendants merely allude to
the fact that the Court previously denied the motions to dismiss
except with respect to certain official capacity claims against
Defendant Kealoha, and contend that Kealoha is entitled to raise
the defense of qualified immunity.  Id.[12/]  The Court finds these
arguments unavailing, and observes that Defendants have failed to
address the most critical issue in this case; whether Plaintiff
had a statutory right to firearm ownership that was infringed
upon by Defendants' actions.[13/]

Under state law, individuals who have been convicted of
a "crime of violence" are statutorily disqualified from owning
ammunition or firearms pursuant to H.R.S. § 134-7(b).  The Hawaii
Revised Statutes define "crime of violence" as "...any offense,
as defined in title 37, that involves injury or threat of injury
to the person of another."  The Harassment statute under which

---

[12/] In his Reply, Plaintiff attacks Defendants' reliance upon
the Court's grant of Defendants' Motions to Dismiss, noting that
the Court's decision to grant Plaintiff leave to amend the
Complaint evinces the Court's belief that an amendment could save
Plaintiff's claims.  (Reply at 3.)  Plaintiff also states his
intent to file an Amended Complaint before the date of the
hearing on the Motion for a Preliminary Injunction.  Id. at 3-4.

[13/] Furthermore, the Court observes that municipal employees
sued in their official capacity may not claim qualified immunity
in a Section 1983 action.  See Eng v. Cooley, 552 F.3d 1062, 1064
n.1 (9th Cir. 2009).  Accordingly, qualified immunity is not
available to Kealoha with respect to the remaining official
capacity claims.

Plaintiff was convicted, H.R.S. 711-1106(1)(a), states, "A person commits the offense of harassment if, with intent to harass, annoy or alarm the other person: (a) strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact." Moreover, the Commentary states that this offense is "a restatement of the common-law crime of battery, which was committed by any slight touching of another person in a manner which is known to be offensive to that person."  See Commentary, H.R.S. § 711-1106.

As the Court stated in its April 19, 2012 Order, although Defendants have asserted that Harassment clearly "falls within the definition of 'crime of violence' in that it 'involves injury or threat of injury to the person of another," they have not provided any case law support – and the Court is not aware of any – interpreting "harassment," as defined in the Hawaii Revised Statutes, as a "crime of violence."[14]

Additionally, the State of Hawaii Intermediate Court of Appeals has held, albeit in a case that is distinguishable, that harassment and contempt of court convictions did not authorize a

---

[14] The Court also recognizes that the Chief of Police may rely upon bases other than a prior conviction for a "crime of violence" in rejecting an application for a permit pursuant to H.R.S. § 134-7, such as a diagnosis of significant behavior, emotional or mental disorders or treatment for addiction to drugs.  See H.R.S. § 134-7.

district court to order a defendant to relinquish his firearms. See State v. Char, 909 P.2d 590, 597 (Haw. Ct. App. 1995).[15/] Finally, the Court notes that the Family Court of the First Circuit, State of Hawaii, ordered the return of Plaintiff's firearms and ammunition in 1998 - so long as there were no prohibitions under Section 134-7 or applicable federal law - and the HPD promptly returned them.[16/]   Thereafter, Plaintiff lawfully possessed firearms for some ten years following his conviction for harassment.   The Court concludes that Plaintiff is likely to establish statutory entitlement to firearm possession under Hawaii State law.

Turning to federal restrictions on the possession of firearms, the Lautenberg Amendment "prohibits firearm ownership by any person that 'has been convicted in any court of a

---

[15/] This is the only available case analyzing whether harassment qualifies as an offense that prohibits individuals from firearm ownership pursuant to Section 134-7. In that case, the court concluded that the defendant was prohibited from possessing firearms pursuant to another subsection of H.R.S. § 134-7, namely subsection (f), which prohibits those under a restraining/protective order.   The Court observes, however, that the court in Char considered the crime of harassment pursuant to H.R.S. § 711-1106(b), rather than (a).   See Char, 909 P.2d at 597.   Subsection (b) does not require physical contact, whereas subsection (a) - the provision pursuant to which Plaintiff pled guilty - requires physical contact.

[16/] Although, as counsel conceded at the April 9, 2012 hearing, it is possible that HPD did so erroneously, given that the court's order provided that reinstatement of Plaintiff's firearms and ammunition also hinged on Plaintiff qualifying under Section 134-7 and applicable federal law provisions.

misdemeanor crime of domestic violence.'"  18 U.S.C. §
922(g)(9))).  The Lautenberg Amendment is a provision of the Gun
Control Act of 1968 (18 U.S.C.A. § 921 et seq.), added in 1996,
which prohibits any person who "has been convicted in any court
of a misdemeanor crime of domestic violence" from owning a
firearm.  18 U.S.C. § 922(g)(9).  Under this federal statute,
"misdemeanor crime of violence" is defined as a crime that is "a
misdemeanor under Federal, State, or Tribal law; and "has, as an
element, the use or attempted use of physical force, or the
threatened use of a deadly weapon, committed by a current or
former spouse, parent, or guardian of the victim, by a person
with whom the victim shares a child in common, by a person who is
cohabiting with or has cohabited with the victim as a spouse,
parent, or guardian, or by a person similarly situated to a
spouse, parent, or guardian of the victim."  18 U.S.C. §
921(a)(33)(A)(i) (emphasis added).[17/]    Plaintiff argues that

_____

[17/] The United States Supreme Court has held that the
predicate offense need not have the "domestic relationship" as an
element under the Lautenberg Amendment.  United States v. Hayes,
555 U.S. 415 (2009) (affirming conviction under 922(g)(9) where
predicate offense was misdemeanor assault that did not include
domestic relationship as an element, but did involve such
relationship factually).  In Hayes, the Supreme Court concluded
that the "definition of 'misdemeanor crime of domestic violence,'
contained in § 921(a)(33)(A), imposes two requirements.  First,
the crime must have, 'as an element the use or attempted use of
physical force, or the threatened use of a deadly weapon.' §
921(a)(33)(A)(ii).  Second, it must be 'committed by' a person
who has a specified domestic relationship with the victim.'"  555
U.S. at 415.  Here, the Complaint establishes that Plaintiff's
                                        (continued...)

"use of physical force" and "attempted use of physical force" are not elements of Harassment under H.R.S. 711-1106, asserting that "[t]o constitute an element of a crime, the particular factor in question needs to be a constituent part of the offense that must be proved in <u>every case</u> to sustain a conviction under a given statute." (Mot. for Prelim. Inj. at 9 (quoting <u>United States v. Beltran-Munqia</u>, 489 F.3d 1042, 1045 (9th Cir. 2007) (citations and internal quotation marks omitted) (emphasis in original)).

The Court of Appeals for the Ninth Circuit has held that the phrase "physical force" pursuant to 18 U.S.C. § 921(a)(33)(A)(i) means "the violent use of force against the body of another individual." <u>See</u> <u>United States v. Belless</u>, 338 F.3d 1063, 1068 (9th Cir. 2003).[18/]  The court reasoned that the physical force requirement could not possibly include "any touching" in the "sense of Newtonian mechanics" and held that the

_____

[17/] (...continued)
crime was committed against family members. <u>See</u> Compl. ¶ 16.

[18/] The Courts of Appeal for the Fourth, Seventh and Tenth Circuits have also concluded that the "touching" element of common law battery is not "physical force" as contemplated in 18 U.S.C. § 921(a)(33)(A) or similar statutes. <u>See</u> <u>United States v. White</u>, 606 F.3d 144 (4th Cir. 2010); United <u>States v. Hays</u>, 526 F.3d 674 (10th Cir. 2008); <u>Flores v. Ashcroft</u>, 350 F.3d 666 (7th Cir. 2003).  In contrast, the Courts of Appeal for the First, Eighth and Eleventh Circuits have concluded that the "touching" element of common law battery - no matter how slight - falls within the plain meaning of the statutory term "physical force" as intended by Congress. <u>See</u> <u>United States v. Griffith</u>, 455 F.3d 1339 (11th Cir. 2006); <u>United States v. Nason</u>, 269 F.3d 10 (1st Cir. 2001); <u>United States v. Smith</u>, 171 F.3d 617 (8th Cir. 1999).

-21-

physical force requirement cannot be satisfied by "de minimis" touching.  Id. at 1067-68.  This stands in stark contrast to the commentary on Harassment, which provides that it is a restatement of the common-law offense of battery involving any slight touching of another person.

In his Motion for a Preliminary Injunction, Plaintiff contends that the Hawaii Harassment statute encompasses less violent behavior than the "use or attempted use of physical force" as set forth in 18 U.S.C. 921(a)(33), thus having too broad a scope to qualify as a misdemeanor crime of domestic violence under applicable federal law.  (Mem in Supp. of Mot. for Prelim. Inj. at 12.)[19/]  The Court agrees that it is possible for

_____

[19/] When a federal statute refers to generic crimes, courts in the Ninth Circuit apply the categorical and modified categorical approaches, set forth in Taylor v. United States, 495 U.S. 575 (1990), in order to determine whether the state conviction falls within the generic federal definition.  See, e.g., Fregozo v. Holder, 576 F.3d 1030, 1038 (9th Cir. 2009). Under the categorical approach, the court will "'compare the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by the [state] statute is broader than the generic federal definition,' looking only at the fact of conviction and the statutory definition." Id. (quoting Quintero-Salazar v. Keisler, 506 F.3d 688, 692 (9th Cir. 2007)).  However, "[i]f the statute of conviction criminalizes conduct that would not satisfy the federal definition of the crime at issue, then the conviction does not qualify as a predicate offense under the categorical approach." Id.
If there is no categorical match, courts in the Ninth Circuit in some circumstances apply a modified categorical approach, pursuant to which the inquiry is limited to "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by
(continued...)

a defendant to be convicted for Harassment under H.R.S. § 711-
1106 subsection (1)(a) for behavior that does not include injury,
threat of injury, use of physical force, and/or threatened use of
physical force.  Accordingly, the Court concludes Plaintiff is
likely to succeed in establishing that Harassment is not a
misdemeanor crime of violence, thus demonstrating that he is not
statutorily disqualified from firearm ownership pursuant to his
Harassment conviction under state or federal law.

2.  Violation of Plaintiff's Second Amendment Rights

Although Defendants focus upon the limited scope of the
Second Amendment right to bear arms in their opposition
memorandum, the central issue is whether Defendant is statutorily
prohibited from firearm ownership under state and federal law.
Plaintiff's right to bear arms for self-defense within the home

---

[19/] (...continued)
the trial judge to which the defendant assented." Shepard v.
United States, 544 U.S. 13, 16 (2005).  Further, under the
modified categorical approach, courts may also consider
"comparable" judicial documents of sufficient reliability.  See
United States v. Snellenberger, 548 F.3d 699, 701-02 (9th Cir.
2008) (en banc) (minute orders are judicial documents of "equal
reliability as those listed in Shepard and may be consulted under
the modified categorical approach).
    As Plaintiff asserts, numerous courts which have considered
the issue have held that harassment is not a categorical crime of
violence.  See supra, n. 25.  In applying the categorical
approach, harassment will not be a categorical "match" with the
federal statute if its statutory definition includes both conduct
that is of a non-violent nature and conduct that is of a violent
nature.  It appears that generally, under a modified categorical
approach, the outcome depends upon whether the underlying conduct
- as it can be determined by reliable documents - is of a violent
nature.

is well-established, and the Court cannot conclude that <u>District of Columbia v. Heller</u> and its progeny leave room for doubt regarding this fundamental right.

The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II.  In <u>Heller</u>, the Supreme Court recognized that the Second Amendment protects the individual right to keep and bear arms for self-defense.  554 U.S. 570 (2008).  The Supreme Court suggested that the core purposes of the right conferred by the Second Amendment was to permit "law-abiding, responsible citizens to use arms <u>in defense of hearth and home</u>."  <u>Id.</u> at 635.  Consequently, Supreme Court jurisprudence establishes that there is an individual constitutional right to bear arms,[20] and that this right is particularly acute with respect to the right to self-defense in the home.  In the instant action, Defendants' denial of Plaintiff's application for a permit to acquire a firearm, as well as their order that Plaintiff relinquish all firearms and

_____

[20] Two years later, in <u>McDonald v. City of Chicago</u>, the Supreme Court held that the Second Amendment right to keep and bear arms is fully applicable to the States by virtue of the Fourteenth Amendment.  130 S.Ct. 3020 (2010).  In <u>McDonald v. City of Chicago</u>, the Supreme Court stated that its "central holding" in <u>Heller</u> was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, <u>most notably</u> for <u>self-defense within the home</u>."  130 S.Ct. 3020, 3044 (2010) (emphasis added).

-24-

ammunition in his possession, impact Plaintiff's Constitutionally protected right to bear arms for self-defense in the home.[21]

### 3. Violation of Plaintiff's Procedural Due Process Rights

Furthermore, because Plaintiff has a clear Second Amendment right to bear arms for self-defense within the home, Defendants' denial of this right without a meaningful opportunity to be heard or to have the decision reviewed likely impacts Plaintiff's right to procedural Due Process pursuant to the Fourteenth Amendment.  See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976).

Plaintiff asserts that his liberty and property interests are being unduly restricted, and the risk of continued deprivation is great.  (Mem. in Supp. of Mot. for Prelim. Inj. at 15.)  He claims that in the event an application is denied, an applicant has no means by which to seek review of the police chief's decisions, thereby depriving the applicant of minimal protections of due process of law.  Id.  Additionally, Plaintiff

---

[21] Nevertheless, the Supreme Court also stated that its opinion in Heller should not call into question "longstanding prohibitions on the possession of firearms" by certain classes of persons, such as the mentally ill and convicted felons, and in certain places constituting security concerns.  Id. at 626–27 & n. 26.  However, as discussed, the Court finds that Plaintiff's conviction for Harassment is not clearly a misdemeanor crime of violence pursuant to which Plaintiff would be statutorily disqualified from firearm ownership.

-25-

contends that remedying this lack of due process would not unduly burden the government, asserting that permitting citizens to exercise their Second Amendment rights "has been shown to reduce crime." Id.

The text of the due process clause provides "nor shall any State deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV.  In Mathews, the Supreme Court set forth a three part balancing test for analysis of an individual's constitutional entitlement to a particular judicial or administrative procedure: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id. at 335.

The court observes that "[a] threshold requirement for asserting a due process claim is the existence of a property or liberty interest." Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  In Peruta v. County of San Diego, the court relied upon the Ninth Circuit's opinion Erdelyi v. O'Brien in holding that the plaintiff had no property or liberty interest in obtaining a concealed weapons license.  In Ederlyi, the Ninth Circuit Court

of Appeals had determined that plaintiff did not have a property
interest in a concealed weapons license because "[w]here state
law gives the issuing authority broad discretion to grant or deny
license applications in a closely regulated field, initial
applicants do not have a property right in such licenses
protected by the Fourteenth Amendment."  680 F.2d 61, 63 (9th
Cir. 1982).  The Ederlyi court explained that "[p]roperty
interests protected by the Due Process Clause of the Fourteenth
Amendment do not arise whenever a person has only 'an abstract
need or desire for,' or 'unilateral expectation of,' a benefit."
Id. at 63.  "Whether the statute creates a property interest in
concealed weapons licenses depends 'largely upon the extent to
which the statute contains mandatory language that restricts the
discretion of the (issuing authority) to deny licenses to
applicants who claim to meet the minimum eligibility
requirements.'"  Id. (citations omitted).

        In the instant case, Plaintiff contends that H.R.S.
Section 134-2 vests no discretion in the chief of police to
determine whether an applicant is "qualified" so long as the
applicant meets the objective criteria pursuant to H.R.S. §§ 134-
2 and 134-7.  Section 134-2 provides, in relevant part, "The
chief of police of the respective counties may issue permits to
acquire firearms to citizens of the United States of the age of
twenty-one years or more . . . ."  Section 134 presents a list of

bases upon which an applicant is disqualified, none of which, Plaintiff argues, applies to him.  The Court observes that Defendants' actions not only impacted Plaintiff's property interests with respect to future firearm ownership, but also denied him of the enjoyment of property that he already owned. Moreover, the Court notes that at least one Court of Appeals to consider this issue has determined that an individual does have a liberty interest tied to the right to bear arms.  <u>Kuck v. Danaher</u>, 600 F.3d 159, 164 (2d Cir. 2010) (a case decided one month prior to <u>McDonald</u> that found a liberty interest in the right to bear arms based upon the Connecticut state Constitution).

For these reasons, the Court concludes that Plaintiff is likely to establish that he is not statutorily disqualified from firearm ownership based upon his conviction for Harassment under H.R.S. 711-1106(1)(a), and that Defendants' actions likely deprived Plaintiff of his Fourteenth Amendment right to procedural due process.  Accordingly, the Court rules that Plaintiff is likely to succeed on the merits with respect to his official capacity claims against Defendant Kealoha based upon infringement of his Second and Fourteenth Amendment rights in violation of Section 1983.

**B.   Irreparable Harm**

Plaintiff contends that in the absence of a preliminary
injunction, he will suffer irreparable harm with respect to both
a liberty interest and a property interest.  (Mem. in Supp. of
Prelim. Inj. at 16.)  First, Plaintiff states that when liberties
are infringed, irreparable injury is presumed.  Id. (citing 11A
Charles Alan Wright et al., Federal Practice and Procedure 2948.1
(2d ed. 1995) ("When an alleged deprivation of a constitutional
right is involved, most courts hold that no further showing of
irreparable injury is necessary.").  Plaintiff relies upon the
Seventh Circuit's statement that "because '[t]he Second Amendment
protects similarly intangible and unquantifiable interests' as
those secured by the First Amendment . . . "[i]nfringements of
this right cannot be compensated by money damages." Id. (quoting
Ezell v. Chicago, 651 F.3d 684 (7th Cir. 2011)).

Furthermore, Plaintiff asserts that although the
deprivation of a liberty interest alone merits issuance of the
preliminary injunction, Plaintiff has also suffered and continues
to suffer an irreparable loss of a property interest, noting that
"[p]roperty is always unique under general principles of the law
of equity and its possible loss or destruction usually
constitutes irreparable harm."  Id. (quoting Bennet v. Dunn, 504
F. Supp. 981, 986 (D. Nev. 1980).

Defendants respond that Plaintiff's arguments are not

-29-

persuasive because he has failed to show that irreparable injury is _likely_, not merely possible, in the absence of an injunction. (Opp. to Mot. for Prelim. Inj. at 9 (citing Winter, 555 U.S. at 8).)  Moreover, Defendants distinguish Ezell, wherein the Seventh Circuit considered an ordinance that infringed the right to possess firearms in defense of the home, the constitutional right recognized in Heller.  Id. (citing Ezell, 651 F.3d at 691).[22/]

In his Reply, Plaintiff emphasizes that violation of a constitutional right "is itself irreparable harm."  Appel v. Spiridon, 463 F. Supp. 2d 255 (D. Conn. 2006).  When a constitutional deprivation is involved, Plaintiff contends, most Courts require no further showing to establish irreparable injury.  (Reply at 5.)  In fact, Plaintiff argues, if a court finds that a constitutional right is being threatened or impaired in the context of considering a motion for a preliminary injunction, then a finding of irreparable injury is "mandated." Id. at 6 (citing Mich. Rehab. Clinic, Inc., P.C. v. City of Detroit, 310 F. Supp. 23 867 (E.D. Mich. 2004).

The Court concludes that Plaintiff has established a likelihood of irreparable harm.  Contrary to Defendants'

---

[22/] Defendants also contend that because Ezell concerned a facial challenge to the statute, and individual harm was therefore irrelevant, in the instant action because Plaintiff has sought injunctive relief at least in part based upon an "as applied" challenge, individual harm is "quite relevant here." D's Opp. Mem. at 10.

assertions, the Court finds that Plaintiff is being deprived of a liberty and property interest, and deprivation of that constitutional right requires a finding of irreparable injury. At issue in this litigation is the alleged infringement of Plaintiff's right to bear arms for self-defense within the home, the very right that the Ezell court considered.  This case does not concern the denial of a license to publicly carry a firearm, which other courts have found does not implicate a property or liberty interest.  See, e.g., Peruta v. County of San Diego, 758 F. Supp. 2d 1106, 11 (finding no liberty or property interest in right to license to carry firearm in public.)  Moreover, Defendants' actions have deprived Plaintiff of his property, namely the firearms he kept in his home for more than ten years. The Court concludes that Plaintiff has established a likelihood of irreparable harm if the preliminary injunction does not issue.

        The Court observes, however, that Plaintiff's claim of irreparable injury is somewhat diluted by the fact that Plaintiff's wife has taken ownership of his firearms and they are still in his home.  (See Compl. ¶ 26.)

## C.  The Public Interest

        Plaintiff contends that it is "clearly" in the public interest to grant the Motion because HPD's "customs, practices and policies" "impact every person living in the State of Hawaii."  (Mem in Supp. of Mot. for Prelim. Inj. at 19.)

Granting the preliminary injunction vindicating the "fundamental"
Second Amendment rights of Plaintiff and others who are similarly
situated would "advance the shared interest of all citizens in
enforcing the Constitution's guarantees . . . ." Id.  Moreover,
Plaintiff asserts that although firearm ownership has "set
unprecedented records for four consecutive years," violent crime
has not increased. Id. at 20.  Additionally, Plaintiff submits
that people who are "unsuitable" applicants are already
prohibited and/or prevented from carrying firearms under Hawaii
law. Id.

        Defendants respond that a grant of Plaintiff's
requested preliminary injunction could impair the HPD's (in other
words, the City's) ability to carefully screen firearm
applicants, and "could possibly permit the carrying of any
firearm by any person without regard to their training or intent
to use the weapon for crimes of violence, without regard to
whether the person was intoxicated, and without limitation as to
the nature of the public place." Id. at 11.  In essence,
Defendants submit that the public interest will not be served by
subjecting the public to increased safety risks. Id. at 12.

        Plaintiff replies that Defendants inexplicably discuss
the dangers associated with the right to carry a firearm in
public, whereas the statute at issue here, H.R.S. § 134-2,
concerns permits to acquire firearms.  (Reply at 6.)

Consequently, for the same reasons, Plaintiff asserts that
Defendants' reliance on U.S. v. Masciandaro, wherein the court
noted that danger to the public would rise exponentially if the
right to carry a weapon moved from the home to the public square,
is misplaced. Id. at 7 (citing 638 F.3d 458, 475 (4th Cir.
2011)). Masciandaro involved prosecution of a criminal defendant
for possession of a firearm in a public place (a national park).
Id. In the instant action, Plaintiff asserts, Plaintiff is
seeking a permit to acquire a firearm pursuant to H.R.S. 134-2,
not a license to publicly carry that firearm. Id. Moreover,
Plaintiff asserts that Defendants' arguments of the
"possibilities" of harm to the public is mere speculation,
failing to establish how the injunction would impair the police
department's ability to perform its careful screening function,
among other things. Id. at 7.

Plaintiff also notes that other Hawaii citizens not
statutorily disqualified are being wrongly denied permits to
acquire, stating that 54 applications for permits to acquire were
rejected in 2011 – eight of which were based on a prior
conviction of harassment. Id. (citing Criminal Justice Data
Brief, 2011, "Firearm Registration in Hawaii, 2011."

The Court concludes that it is in the public interest
to grant the preliminary injunction. Unlike the issues at stake
in numerous recent cases involving the public carrying of

-33-

firearms (such as <u>Masciandaro</u>), the issue at bar in this litigation concerns Plaintiff's right to own a firearm and keep it in his home, not a license to carry a firearm in public.

The Court notes that Plaintiff's right to acquire a firearm does not raise the same safety concerns associated with a license to carry a firearm in public.  The effect of granting the request for a preliminary injunction would not permit Plaintiff to freely carry his firearm, open or concealed, in public,[23] and an order directing HPD to grant Plaintiff's permit to acquire would not extend to any applicants other than Plaintiff.  The Court concludes that it is in the public interest to uphold Plaintiff's Constitutional right to bear arms in self-defense within the home, and accordingly finds that this factor weighs in favor of granting the preliminary injunction.

---

[23] The Court observes that Chapter 134 of the Hawaii Revised Statutes contains "Place to Keep" statutes requiring firearms to "be confined to the possessor's place of business, residence, or sojourn," but permitting the transport of firearms between those places and repair shops, target ranges, licensed dealerships, organized firearms shows, firearm training places, and police stations.  <u>See</u> Haw. Rev. Stat. § 134-23 (loaded firearms); § 134-24 (unloaded firearms); § 134-25 (pistols and revolvers); § 134-27 (ammunition).  Chapter 134 also contains an exception for the carry and use of lawfully acquired rifles or shotguns with suitable ammunition while actually engaged in hunting or target shooting, or while going to and from the place of hunting or target shooting.  Haw. Rev. Stat. § 134-5.  Accordingly, although an individual with a permit to acquire a firearm may be able to transport that firearm to and from designated places, the individual is not permitted to generally carry a loaded firearm, open or concealed, in public unless he secures a separate license to do so.

**D.   Balancing of the Equities**

Plaintiff argues that the balance of the equities tips in his favor because the customs, practices and policies of HPD "can affect anyone that wishes to exercise their fundamental right to keep and bear arms." (Mem. in Supp. of Mot. for Prelim. Inj. at 17.)  Plaintiff draws an analogy between the instant action and the Ninth Circuit's decision in <u>Klein v. City of San Clemente</u>, wherein the court found that the balance of equities (and the public interest) tipped sharply in favor of enjoining an ordinance that prohibited plaintiff's fundamental right to free speech.  584 F.3d 1196 (9th Cir. 2009).

Plaintiff argues that if the court denies the motion for a preliminary injunction, Plaintiff will spend a great deal of time deprived of the right to lawful self-defense, as well as the personal use and enjoyment of his firearms.  (Mem. in Supp. of Mot. for Prelim. Inj. at 18.)  On the other hand, Plaintiff asserts that the government "suffers no harm by issuing a permit," contending that dangerous felons and those citizens who have been specifically adjudicated as unfit to keep and bear arms are already prohibited pursuant to Hawaii state law and 18 U.S.C. § 922.  The Court observes that Defendants do not address the balancing of the equities in their opposition memorandum.  (<u>See</u> Opp. Mem.)

The Court concludes that the balance of the equities tips in Plaintiff's favor.  Defendants have not offered any arguments to the contrary, and the Court observes that granting the preliminary injunction would not allow Plaintiff to carry a loaded firearm in public without obtaining a separate license to do so, thereby avoiding the safety risks that play a central role in cases involving the right to obtain a license for open or concealed carry of a firearm outside the home.

In the instant litigation, the Court concludes that Defendants will not face a hardship in granting Plaintiff's permit.  On the other hand, in the absence of a preliminary injunction, Plaintiff will be denied the use and enjoyment of firearms and will be unable to exercise his Second Amendment right to bear arms for self-defense within the home when he has demonstrated a likelihood of success in establishing his statutory qualification under state and federal law.  For these reasons, the Court concludes that the balance of the equities tip in Plaintiff's favor.

## V.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for a Preliminary Injunction, and ORDERS Defendant Kealoha to rescind the prior denial of Plaintiff's permit to acquire firearms and to issue a permit authorizing Plaintiff to acquire firearms.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, June 29, 2012.



_____
Alan C. Kay
Sr. United States District Judge

Kirk C. Fisher v. Louis Kealoha et al., Civ. No. 11-00589 ACK-BMK: Order
Granting Plaintiff Kirk C. Fisher's Motion For A Preliminary Injunction.