IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KIRK C. FISHER, | ) CIVIL NO. CV11 00589 ACK-BMK |
| | ) |
| Plaintiff, | ) |
| | ) MEMORANDUM IN SUPPORT OF |
| vs. | ) MOTION |
| | ) |
| LOUIS KEALOHA, as an individual | ) |
| and in his official capacity as Honolulu | ) |
| Chief of Police; PAUL PUTZULU, as | ) |
| an individual and in his official capacity | ) |
| as former Honolulu Acting Chief of | ) |
| Police; CITY AND COUNTY OF | ) |
| HONOLULU; HONOLULU POLICE | ) |
| DEPARTMENT and DOE | ) |
| DEFENDANTS 1-50, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

MEMORANDUM IN SUPPORT OF MOTION

**I.      Introduction**

The City Defendants file this memorandum in support of their Motion for

Reconsideration of the Court's June 29, 2012 Order Granting Plaintiff Kirk C.

Fisher's Motion for a Preliminary Injunction (Doc. No. 35).

**II.      Relief Requested**

The City Defendants move for reconsideration of the Court's June 29, 2012

Order as they believe the Court committed error in two distinct rulings: (1) by not

permitting the City Defendants an opportunity to present evidence that Plaintiff's conviction in <u>State of Hawai'i v. Kirk C. Fisher</u>, FC-CR No. 97-3233 was in fact a crime of domestic violence, and (2) not employing or considering the "modified categorical approach to determine whether Plaintiff's offense constitutes, or may constitute a crime of violence disqualifying Plaintiff from possession of firearms.

In addition, the City Defendants request that this Court certify to the Hawai'i Supreme Court the question of whether the Honolulu Police Department (HPD) may use a harassment conviction, when the court record includes documents suggesting that the crime underlying the conviction do constitute a "crime of violence," may deny an applicant for a firearms permit based upon that conviction.

## III.   **Background**

The factual and procedural history of this case was extensively summarized in the Court's June 29, 2012 Order and will not be restated here.  In that Order, at pages 39 through 42, the Court granted Plaintiff's Motion for a Preliminary Injunction, and ordered Defendant Kealoha to rescind the prior denial of Plaintiff's permit to acquire firearms and to issue a permit authorizing Plaintiff to acquire firearms.  <u>See</u>, Doc. No. 35, page 36.

## IV.   Legal Standard

### A.   Reconsideration

Under Rule 59(e), it is appropriate to alter or amend a judgment if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." United Ins. Co. v. Spectrum Worldwide, Inc., 555 F.3d 772, (9th Cir. 2009) (quoting Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001). A motion for reconsideration under Rule 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). "[T]he district court enjoys considerable discretion in granting or denying the motion [for reconsideration] and "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." McDowell v. Calderon, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999) (citing 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

Rule 60(b) provides that the court may grant relief from a final judgment if the moving party shows:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable

> diligence, could not have been discovered in time to
> move for a new trial under Rule 59(b); (3) fraud . . .,
> misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void; (5) the judgment has been
> satisfied, released, or discharged; it is based on an earlier
> judgment that has been reversed or vacated; or applying
> it prospectively is no longer equitable; or (6) any other
> reason that justifies relief.

*See*, Fed. R. Civ. P. 60(b).  Also, Rule 60.1 of the Local Rules of Practice for the

United States District Court for the District of Hawaiʻi ("LR") provides:

> Motions for reconsideration of interlocutory orders may
> be brought only upon the following grounds:
>
> (a)   Discovery of new material facts not previously
>       available;
>
> (b)   Intervening change in law;
>
> (c)   Manifest error of law or fact.

*See*, LR 60.1.

"A denial of a motion for reconsideration under Rule 59(e) is construed as

one denying relief under Rule 60(b) and neither will be reversed absent an abuse of

discretion." United Ins. Co., 555 F.3d at 780; Pasatiempo v. Aizawa, 103 F.3d

796, 801 (9th Cir. 1996) (denial of a motion to alter or amend judgment under

Rule 59(e) may be reversed only for abuse of discretion).

## B.   Certification

"The decision to certify a question to a state supreme court rests in the

'sound discretion' of the district court."  *See* Eckard Brandes, Inc. v. Riley, 338

F.3d 1082, 1087 (9th Cir.2003) (quoting <u>Louie v. United States,</u> 776 F.2d 819, 824

(9th Cir.1985)); <u>Micomonaco v. Washington,</u> 45 F.3d 316, 322 (9th Cir.1995).

The district court's decision whether to certify a question to a state supreme court is

reviewed for abuse of discretion.  <u>Eckard</u>, 338 F.3d at 1087.  Even where state law

is unclear, resort to the certification process is not obligatory. *See* <u>Lehman Bros. v.</u>

<u>Schein</u>, 416 U.S. 386, 390, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974).

The Hawai'i Rules of Appellate Procedure provide for the certification of

questions of Hawai'i law by federal courts.  Rule 13(a) of the Hawai'i Rules of

Appellate Procedure provides that:

> **(a)  When Certified**.  When a federal district or appellate court
> certifies to the Hawai'i Supreme Court that there is involved in any
> proceeding before it a question concerning the law of Hawai'i that is
> determinative of the cause and that there is no clear controlling
> precedent in the Hawai'i judicial decisions, the Hawai'i Supreme
> Court may answer the certified question by written opinion.

## V.   <u>Argument</u>

### A.   **The Court Should Have Provided the City Defendants a Full Opportunity to Be Heard Before Ordering the Injunction**

At the time of the hearing on Plaintiff's motion for preliminary injunction,

the City Defendants had not filed an answer to Plaintiff's operative pleading.  In

fact, Plaintiff filed his First Amended Complaint (Doc. No. 31) on June 14, 2012,

the date of the hearing on his motion for preliminary injunction.  At the present

time, Plaintiff has not filed initial disclosures, and at the time of the hearing the

City Defendants had not had an opportunity to gather evidence needed to defend themselves.  Nor had the Defendants had the opportunity to conduct significant discovery upon Plaintiff nor take his deposition.

The City Defendants seek the opportunity to present evidence supporting their position that Plaintiff is/was in fact statutorily disqualified from possessing firearms, and that the City Defendants' decision to deny his application for a firearm permit was appropriate and justified.  The Defendants have attached portions of the criminal record from Plaintiff's conviction in FC-CR 97-3233.  Although there is no transcript of an allocution and the file is sparse as to exactly what findings were made, there are sufficient facts in the criminal record to indicate that Plaintiff was convicted for acts clearly constituting a "crime of violence" under H.R.S. § 134-7

### B. Evidence from the Criminal Case Supports the City Defendants' Position[1] that Plaintiff's Conviction Was for a Crime of Violence

In its June 30, 2012 Order, this Court found that the offense of harassment as defined by HRS §711-1106(1)(a) is not *necessarily* a "crime of violence" as defined in HRS §134-7 and therefore does not statutorily disqualify Plaintiff from the ownership, possession or control of a firearm.  The City Defendants

---

[1] Although the evidence submitted is not technically "new," Defendants submit they had not been given sufficient opportunity to present their defenses, and evidence supporting their defenses, in order to oppose Plaintiff's Motion for Preliminary Injunction.

respectfully disagree and maintain that in this case, Plaintiff's conviction of harassment was one of violence and should serve to ban firearm ownership under H.R.S. § 134-7.

"[A] 'misdemeanor crime of domestic violence' means an offense that is a misdemeanor, has, as an element, the use of force and was committed by a person with the requisite relationship." United States v. Belless, 338 F.3d 1063, 1066 (9th Cir. 2003)." "[I]n the context of 18 U.S.C. § 16(a), which defines a 'crime of violence' as 'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" United States v. Nobriga, 474 F.3d 561, 564 (9th Cir. 2006); see also United States v. Griffith, 455 F.3d 1339, 1342 (11th Cir.2006) (the plain meaning of "physical force," for the purposes of § 921(33)(A)(ii), is "[p]ower, violence or pressure directed against another person's body"); United States v. Nason, 269 F.3d 10, 16 (1st Cir.2001) (characterizing "physical force," for the purposes of § 921(33)(A)(ii), as "power, violence, or pressure directed against another person's body").

Plaintiff was convicted of Harassment under HRS § 711-1106(1)(a), which states in pertinent part:

> A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:

> (a)  **Strikes, shoves, kicks**, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact…

*See*, HRS § 711-1106 (emphasis added).  Unlike the other subsections of Harassment, subsection (1)(a) involves actual offensive physical contact in the form of a strike, shove, kick or touch, or other offensive physical contact.  H.R.S. § 711-1106(1)(a).  Although the broad language in the statute does include actual harmful physical contact in the form of a "strike, shove, [or] kick," it also includes contact that is would be considered *de minimis*.  While courts have held that *de minimis* physical contact or force is not sufficient to provide a precursor to a firearms ban under the Lautenberg Amendment[2], the Court is not limited to merely the statutory language in determining if the underlying conviction constitutes a "crime of violence."

In United States v. Hayes, 526 F.3d 674 (10th Cir. 2008), the court employed a "categorical approach" to assess the nature of a prior conviction, which typically limits the reviewing court to "examining the statutory elements of the [prior] crime…."  Hayes, 526 F.3d at 676.  But the court went on to note that in certain circumstances it was permitted to look beyond that statute of conviction:

> "[E]ven the categorical approach, however, permits courts to look beyond the statute of conviction under certain circumstances.  When

---

[2] In United States v. Belless the court noted, "[a]s a matter of law, we hold that the physical force to which the federal statute refers is not *de minimis*."  Belless, 338 F.3d 1063, 1068.

the underlying statute reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records, such as the charging document, plea agreement, or plea colloquy. Such review does not involve a subjective inquiry into the facts of the case, but rather its purpose is to determine 'which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face."

See, Hayes, 526 F.3d at 676.

Also, as this Court noted in its June 29, 2012 Order, "[w]hen a federal statute refers to generic crimes, courts in the Ninth Circuit apply the categorical and modified categorical approaches, set forth in Taylor v. United States, 495 U.S. 575 (1990), in order to determine whether the state conviction falls within the generic federal definition." See, Doc. No. 35, page 22, fn. 19.  "If there is no categorical match, courts in the Ninth Circuit in some circumstances apply a modified categorical approach, pursuant to which inquiry is limited to 'the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id., pages 22-23, fn. 19 (citations omitted).  This Court then concluded, "[i]t appears that generally, under a modified categorical approach, the outcome depends upon whether the underlying conduct – as it can be determined by reliable documents – is of a violent nature." Id., page 23, fn. 19 (emphasis added).

This Court has also found that when a statute criminalizes conduct that can be considered the "violent use of force" and conduct that does not require any

physical contact at all, it is important to look to the record including the charging

papers and judgment of conviction to determine which conduct is attributed to the

conviction.  In United States v. Nobriga, *supra*, the defendant had been charged

with and convicted of Abuse of a Family or Household Member pursuant to HRS

§709-906.  But that statute also criminalized conduct which could be non-violent in

nature:

> "Section 709-906(1) of the Hawai'i Revised Statues does not
> necessarily require a 'violent use of force.'  In addition to making it
> unlawful 'to physically abuse a family or household member,' the
> statute also proscribes 'refus[ing] compliance with the lawful order of
> a police officer,' an offense that specifies no use of force, violent or
> otherwise.  [H]owever, the record establishes that Nobriga necessarily
> pleaded guilty to a 'violent use of force.'  As the district court
> concluded, the charging papers and the judgment of conviction make
> clear that Nobriga pleaded guilty to 'physically abus[ing] a family or
> household member,' not to 'refus[ing] compliance with a lawful order
> of a police officer.'"

Nobriga, 474 F.3d at 564.  The records in the present case also make clear that

Plaintiff was convicted not of mere offensive physical contact or the *de minimis*

use of physical force, but of the "violent use of force" described in Nobriga.

Because the offense of harassment pursuant to HRS §711-1106(1)(a)

criminalizes conduct which may not be violent in nature, the City Defendants

submit not only the charging document, but also the accompanying records such as

the judicial determination of probable cause, the compliance reports, and the.  *See*,

Exhibits "A" through "F". Several of these documents incorporate the factual allegations contained in the police report cited therein

In the present case, Plaintiff was convicted of the offense of Harassment for actions including punching or striking his wife and daughter. Such conduct cannot be said to be *de minimis* or merely offensive contact. While courts have been clear that they will only look to the record of the prior conviction to determine whether or not a crime that qualifies as a prerequisite to a violation of the Lautenberg Amendment has occurred, and that a fact-specific analysis is improper, the record in this case does include the police report which includes facts that make it clear the Plaintiff was convicted of conduct that qualifies as the "use of physical force" such that a "crime of violence" had occurred.[3]

While in this case there is no record that Plaintiff made any specific factual admissions during his change of plea, because the audio recordings and transcripts for those proceedings were purged by the Judiciary in 2007, the court may look to other records of the case to determine what conduct the Plaintiff was convicted of.

The case of <u>United States v. Serrao</u>, 301 F.Supp.2d 1142 (Haw.2004) presented a similar problem for the court. In <u>Serrao</u>, the defendant has previously pled no contest in a case where the criminal complaint alleged he had "kicked and

---

[3] By pleading guilty to the charge of Harassment, as opposed to pleading no contest, Plaintiff did not dispute the facts included in the police report, and the police report was included by reference in the plea documents.

hit" his wife.  However, the transcript of the plea hearing revealed very little as to what allegations Serrao actually admitted.  Subsequent to his conviction, Serrao was indicted under the Lautenberg Amendment for possessing a firearm or ammunition and having been convicted of Assault in the Third Degree(H.R.S. § 707-712), a misdemeanor crime of domestic violence which also criminalized conduct which was *de minimus*.  The court then followed the modified categorical approach and attempted to determine which crime Serrao had actually pled to.  However, given the limited record available,[4] the court was unable to make this determination and granted the defendant's motion to dismiss.

However, in determining whether the prior conviction could serve as a predicate offense for a conviction under Lautenberg, the Serrao court considered a declaration from the prosecutor indicating that the prosecutor had amended the charge from Abuse of a Family and Household Member pursuant to H.R.S. § 709-906(1), to Assault 3rd.  As the court stated, "[t]his court can, and in fact must, consider Freitas's declarations to determine whether the record submitted 'clearly

---

[4] "The charge was amended orally and there is no evidence before this court of the facts underlying the amended charge.  The transcript of Serrao's plea proceeding does not include any admission by Serrao of acts constituting any specific form of assault."  United States v. Serrao, 301 F.Supp.2d 1142, 1145

establish[es]'[5] that the prior offense involved the use of physical force," citing

United States v. Sweeten, 933 F.2d 765, 769-70 (9th Cir.1991).

In United States v. Sweeten, 933 F.2d 765, 769-70 (9th Cir.1991), the Ninth

Circuit held that it would be error for a district court to restrict its consideration to

the original judgment of conviction and corresponding criminal statute if also

presented with "documentation or judicially noticeable facts that clearly establish

that the conviction is a predicate conviction for enhancement purposes." The facts

of Sweeten are analogous to the present case. In Sweeten, the prosecutor submitted

an *ex parte*, *nunc pro tunc* order eleven years after the original conviction.  The

court held that, because other documentation provided by the government,

alongside the *nunc pro tunc* order, demonstrated the earlier conviction did involve

the use of force, the conviction could serve as a predicate offense.

In the present case, the declaration of prosecutor Charlene Ikeda and

documents in the criminal record indicate that the underlying conduct, for which

Plaintiff was convicted of Harassment under H.R.S. § 711-1106(1)(a), was in fact

of a violent nature.  The facts in the police report indicate conduct constituting a

crime of violence, for which Plaintiff was ultimately convicted of Harassment.

Because there are sufficient facts from the criminal record to indicate that Plaintiff

was in fact convicted of a crime of violence, the Defendants respectfully request

[5] Because Serrao was being charged with a criminal violation of the Lautenberg Amendment, the government needed to *clearly establish* that the prior offense involved the use of physical force.

that this Court reconsider its June 29, 2012 Order and deny Plaintiff's motion for a preliminary injunction.

C.    **Policy Considerations Indicate that the Court Should Not Make a Blanket Determination that Harassment Convictions Cannot Serve to Disqualify a Person from Acquiring Firearms**

By excluding ALL harassment convictions under subsection (a) as a "crime of violence," this Court is essentially excluding all instances where there is conduct that would be considered a "crime of violence" except for the fact that no visible injuries resulted, leading to the charge being made as Harassment, rather than Abuse of a Household Member.  This would appear contrary to the definition of "crime of violence" in H.R.S. § 134-1 being "any offense…that involves **injury or threat of injury to the person or another.**"  A single punch to the face, whether it actually results in an injury is at the very least the threat of injury and not *de minimis* physical contact.  The precluding of harassment based on a punch to the face would also defeat the purpose of the firearms ban by those who commit violent crimes.

"The purpose of the statute is to keep firearms out of the hands of people whose past violence in domestic relationships makes them untrustworthy custodians of deadly force."   United States v. Belless, 338 F.3d 1063, 1067. Further, in United States v. Hays, 526 F.3d 674, the court cited some of the debate on the Lautenberg Amendment:

- 14 -

Indeed, during the debate of the bill that later became 18 U.S.C. §922(g)(9), one of the sponsoring senators referred repeatedly to 'wife beaters' and 'child abusers,' and also to 'people who engage in *serious* spousal or child abuse,' 'those who commit family *violence*,' and 'people who show they cannot control themselves *and are prone to fits of violent rage,*' suggesting that the concern was with violent individuals rather than those who have merely touched their spouse or child in a rude manner.

Additionally, the legislative history as a whole reveals *why* Congress added §922(g)(9) to the overall statute. In a speech on the Senate Floor, Senator Lautenberg explained: Under current Federal law, it is illegal for persons convicted of felonies to possess firearms. Yet many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies. At the end of the day, due to outdated thinking, or perhaps after a plea bargain, they are—at most— convicted of a misdemeanor. In fact…most of those who commit family violence are never even prosecuted…The fact is, in many places today, domestic violence is not taken as seriously as other forms of criminal behavior. Often, acts of serious spouse abuse are not even considered felonies."

Hays, 526 F.3d at 679-80 (internal citation omitted)(emphasis in original). The

Hays court stated, "[t]hese comments make clear that Congress broadened the

scope of §922(g) to encompass misdemeanor crimes of domestic violence not out

of hope to keep guns out of the hands of individuals who may have inflicted

*de minimis* touches on their spouses or children, but to keep guns out of the hands

of domestic abusers who previously fell outside the bounds of the statute because

they were convicted of misdemeanors rather than felonies due to 'outdated

thinking' or plea bargains." Hays, 526 F.3d at 680.

- 15 -

While this Court is concerned with HRS §134-7 more so than the Lautenberg Amendment, much of the same reasoning voiced by Congress can be attributed to the firearms ban in Hawai'i's statute.  Permitting all persons convicted of misdemeanor domestic violence crimes such as harassment to acquire firearms would be contrary to the federal statute's stated purpose of keeping guns out of the hands of those who "commit family violence."

As this Court noted in its previous ruling, a person may also be denied a gun permit because the person "[i]s or has been under treatment or counseling for addiction to, abuse of, or dependence upon any dangerous, harmful, or detrimental drug, intoxicating compound as defined in section 712-1240, or intoxicating liquor." *See* Doc. No. 35, page 18, fn. 14.[6]  Here, not only does Plaintiff have a prior conviction for driving under the influence of an intoxicant in 1986,[7] but as part of his conviction for Harassment he was ordered to participate in a drug assessment and treatment as a term and condition of probation.  *See*, Exhibits "A" through "F".  Because drug assessment and treatment is not a mandatory term and condition of a harassment conviction, it is reasonable to conclude that there was some indication of a

---

[6] "The Chief of Police may rely upon bases other than a prior conviction for a 'crime of violence' in rejecting an application for a permit pursuant to H.R.S. § 134-7, such as diagnosis of significant behavior, emotional or mental disorders or treatment for addiction to drugs."

[7] On August 1, 1986 Plaintiff was found guilty of driving under the influence of intoxicating liquor (H.R.S. § 291-0004) in the Honolulu District Court, Case No. B108.

substance abuse problem or the use of an illicit substance by Plaintiff in connection to the incident that led to his arrest and conviction.

### D.    The City Defendants Request that this Court Certify this Question to the Hawai'i Supreme Court, as this Issue is of Significant Precedential and Public Policy Importance

HRAP Rule 13 provides a method by which this Court can certify legal questions to the Hawai'i Supreme Court when there is no clear controlling precedent in the Hawai'i judicial decisions.  As this Court noted in its June 29, 2012 Order, it is not aware of any case interpreting "harassment," as defined in the Hawai'i Revised Statutes, as a "crime of violence."  See, Doc. No. 35, page 18.

Defendants request that this Court certify a question to the Hawai'i Supreme Court for a determination of whether a conviction of "harassment" under H.R.S. § 711-1106(1)(a), in the Family Court, constitutes a "crime of violence" making one so convicted statutorily disqualified from possessing firearms under H.R.S. § 134-7.

As the Court noted in its June 29, 2012 Order, State v. Char, 909 P.2d 590, 597 (Haw. Ct. App. 1995) is the only available Hawai'i case analyzing whether harassment qualifies as an offense that prohibits individuals from firearm ownership pursuant to H.R.S. Section 134-7.  See, June 29, 2012 Order, page 19, fn. 15.  However, as this Court noted, the court in Char was analyzing another subsection of H.R.S. § 134-7, namely 134-7(b).  The Defendants believe it is

- 17 -

appropriate to certify a question to the Hawaiʻi Supreme Court to determine if a Harassment conviction under H.R.S. § 711-1106(1)(a) qualifies as an offense that prohibits individuals from firearm ownership pursuant to H.R.S. §134-7(a), and respectfully request that this Court certify such question.

## VI.   Conclusion

For all of the foregoing reasons, the City Defendants respectfully request that the Court grant this motion for reconsideration, and also to certify to the Hawaiʻi Supreme Court the question of a Harassment conviction under H.R.S. § 711-1106(1)(a) qualifies as an offense that prohibits individuals from firearm ownership pursuant to H.R.S. §134-7(a).

DATED:  Honolulu, Hawaiʻi, Friday, July 27, 2012.

ROBERT CARSON GODBEY
Corporation Counsel

By: /s/ D. Scott Dodd
        D. SCOTT DODD
        Deputy Corporation Counsel

Attorney for City Defendants

11-07807/235794