1                   IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF HAWAII

3    KIRK C. FISHER,                )
                                    )        Civil No. 11-00589 ACK-BMK
4             Plaintiff,            )
                                    )        Honolulu, Hawaii
5        vs.                        )        June 14, 2012
                                    )        10:42 a.m.
6    LOUIS KEALOHA, as an           )
     individual and in his         )
7    official capacity as          )
     Honolulu Chief of Police;     )
8    PAUL PUTZULU, as an           )
     individual and in his         )
9    official capacity as former )
     Honolulu Acting Chief of      )
10   Police; CITY AND COUNTY OF     )
     HONOLULU; HONOLULU POLICE      )
11   DEPARTMENT and DOE             )
     DEFENDANTS 1-50,               )
12                                  )        Motion for Preliminary
              Defendants.           )        Injunction
13   _____)

14                        TRANSCRIPT OF PROCEEDINGS
                     BEFORE THE HONORABLE ALAN C. KAY
15             UNITED STATES DISTRICT COURT SENIOR JUDGE

16   APPEARANCES:

17   For the Plaintiff:         DONALD L. WILKERSON, ESQ.
                                TE-HINA ICKES, ESQ.
18                              841 Bishop Street, Suite 2201
                                Honolulu, Hawaii 96813

19

20   For the Defendants:        D. SCOTT DODD
                                Deputy Corporation Counsel
21                              City and County of Honolulu
                                530 S. King Street, Rm. 110
22                              Honolulu, Hawaii 96813

23   Court Reporter:            Katherine Eismann, CSR, CRR, RDR
                                United States District Court
24                              300 Ala Moana Boulevard, C-338
                                Honolulu, Hawaii 96850
25                              (808)541-2062 ke@hid.uscourts.gov

1    Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription.

2

1          (Thursday, June 14, 2012, 10:42 a.m.)

2                          --oOo--

3          COURTROOM MANAGER:  Calling the case of Civil

4   11-00589 ACK-BMK, Kirk C. Fisher versus Louis Kealoha, et al.

5   This hearing has been called for plaintiff's motion for a

6   preliminary injunction.

7               Counsel, your appearances for the record, please.

8               MS. ICKES:  Good morning, Your Honor.  Te-Hina Ickes

9   and Don Wilkerson here for Plaintiff Kirk Fisher.

10              THE COURT:  Good morning.

11              MR. DODD:  Good morning, Your Honor.  Scott Dodd on

12   behalf of the City defendants.

13              THE COURT:  Good morning.  Please be seated.  Does

14   either side wish to put on any evidence or testimony?

15              MS. ICKES:  I am sorry, Judge.  I am sorry.  I didn't

16   catch that.

17              THE COURT:  I said does either side wish to put on

18   any evidence or testimony?

19              MS. ICKES:  No, Judge, no witnesses for plaintiff.

20              MR. DODD:  No witnesses for the defendants either,

21   Your Honor.

22              THE COURT:  All right.  Miss Ickes, would you

23   proceed, please.

24              MS. ICKES:  Yes.

25              THE COURT:  This is your motion for preliminary

1   injunction.

2           MS. ICKES:  Thank you, Judge.  You know, just as a

3   preliminary matter, plaintiff had pointed out -- we had pointed

4   out in our reply that we had intended to amend our complaint

5   prior t the hearing on this matter.

6           THE COURT:  Yes.

7           MS. ICKES:  And all parties are by now aware that I

8   did file an amended complaint, although it was filed this

9   morning.  So, I'm -- I don't know whether or not Mr. -- well, I

10  don't believe Mr. Dodd has had an opportunity to review and --

11  or is prepared to argue the likelihood of success on the merits

12  or if the Court has even had an opportunity to review the

13  amended complaint.

14          If Your Honor would like me to continue anyway, I

15  just wanted to make that clear before I started.  Also as a

16  preliminary matter --

17          THE COURT:  I haven't seen or heard of it.

18          MS. ICKES:  Okay.

19          THE COURT:  I forgot to ask my clerk to check on it.

20          MS. ICKES:  However, I can proceed.  With regard to

21  the amended complaint, the reason I bring this up, Judge, is

22  because it was addressed in the City's memorandum in opposition

23  and addressed in my reply.  With regards to --

24          THE COURT:  Is that a problem for you, Mr. Dodd, with

25  our proceeding now?

1          MR. DODD:  May I speak from here, Your Honor?

2          THE COURT:  Yes, if you can speak into the mike.

3          MR. DODD:  Thank you.  Basically, Your Honor, counsel

4    is correct.  I have not had an opportunity to review the

5    amended complaint.  I got the email this morning that it was

6    e-filed at 9:09.  So I can't truly comment on the likelihood of

7    success on the merits as to the amended complaint.  Thank you.

8          THE COURT:  Thank you.  Are ready to go ahead with

9    this hearing at point?

10          MR. DODD:  Yes, we can submit arguments on the

11    hearing, Your Honor.

12          THE COURT:  All right.

13          MS. ICKES:  Thank you, Judge.  With regards to -- I

14    am going to refer to Page 2 of City's memorandum in opposition

15    to this motion.  The second paragraph under introduction,

16    according to the complaint, plaintiff was arrested on two

17    counts of abuse.

18          In my response, in my reply, I dispute that.

19    However, it's come to my knowledge since writing that reply,

20    based on some initial disclosures by the City, that Mr. Fisher

21    was in fact arrested on two counts of abuse.  So I made that

22    change in the amended complaint.

23          That could be relevant in our arguments or the Court

24    may have some questions on that.

25          THE COURT:  Why are there two counts?

 1          MS. ICKES:  Two counts of an abuse of a household

 2  member rather than two counts of harassment.

 3          THE COURT:  You mean the mother and the daughter?

 4          MS. ICKES:  Correct.

 5          THE COURT:  The mother and once with the daughter?

 6          MS. ICKES:  Correct, Your Honor.  He was not --

 7          THE COURT:  I thought we were aware of that.

 8          MS. ICKES:  He was not convicted of abuse.  Your

 9  Honor, the reason I bring that up is because I took issue with

10  that in my reply to the City's memo in op.  Since filing that

11  reply, it's come to my knowledge that he was in fact arrested

12  for abuse and not harassment.  So that is an error on my part

13  for taking issue with that fact.

14          And I have made that -- I have remedied that in the

15  amended complaint.  I just wanted to point that out.

16          THE COURT:  Is that a different statute then?

17          MS. ICKES:  It is a different statute.  HR --

18          THE COURT:  Pardon me?

19          MS. ICKES:  It is a different statute.  HRS 709-906.

20          THE COURT:  Why have you waited to this time?

21          MS. ICKES:  Well, I can speak to that, Your Honor.

22          THE COURT:  It's a different analysis.

23          MS. ICKES:  I would disagree.  If the Court would

24  like to hear my analysis, it's the same analysis that I have

25  set forth in my memorandum in opposition to the City and

1    Defendant Kealoha's motions to dismiss.  It's the same analysis

2    set forth in the motion for preliminary injunction for these

3    reasons.

4           The statute with regards to issuing a gun permit, HRS

5    134-2, 134-7, that are at issue here, have to do with what a

6    defendant was convicted of.  Mr. Fisher was convicted of

7    harassment.

8           THE COURT:  Are you saying he -- I thought you just

9    said he was convicted of abuse.

10          MS. ICKES:  I am sorry if I misspoke, Your Honor.

11   What I intended to say --

12          THE COURT:  Okay.  Let's stop.

13          MS. ICKES:  -- that he was arrested for.

14          THE COURT:  Stop and let's start over again.

15          MS. ICKES:  Yes, Judge.

16          THE COURT:  Was he charged with harassment or was he

17   charged with abuse?

18          MS. ICKES:  He was charged with harassment.  He pled

19   guilty to harassment.

20          THE COURT:  Why did you bring up abuse a few minutes

21   ago?

22          MS. ICKES:  Because I had erroneously stated in my

23   reply that Mr. Fisher was arrested for harassment.  The police

24   reports indicate that he was arrested for abuse.  The

25   prosecutors charged him with harassment and he was -- he pled

1   guilty to harassment.

2              THE COURT:  Well, I hope I have that straight at this

3   point.

4              MS. ICKES:  But, Judge, I would submit that the

5   analysis is the same, because it really doesn't matter what the

6   facts are underlying the conviction.  The statutes don't

7   contemplate what one was arrested for or even charged with but

8   what an applicant was convicted of.

9              And in this case, he was charged with and convicted

10  of harassment under HRS 7-11-1106.

11             THE COURT:  Okay.  So we are back on the initial

12  track now.

13             MS. ICKES:  Yes, Judge.

14             THE COURT:  We will erase your mistake, and we will

15  go back to the original track.

16             MS. ICKES:  Thank you, Judge.

17             THE COURT:  Okay.

18             MS. ICKES:  Really what this case is about is the

19  continuing violation of Mr. Fisher's constitutional right to

20  bear arms.  That violation we submit started back in

21  October 2009 with the initial denial of his application for a

22  permit to acquire.

23             THE COURT:  Okay.  Now did he file a subsequent

24  application?

25             MS. ICKES:  He did not file a subsequent application,

1    Judge.  He wrote a letter to the police chief requesting that

2    that application be reevaluated and that --

3             THE COURT:  That was the new police Chief Kealoha.

4             MS. ICKES:  Correct.  So the initial application was

5    denied in October 2009 by acting -- then Acting Police Chief

6    Paul Putzulu.

7             Through counsel, defendant asked the new police

8    chief, Defendant Kealoha, to reevaluate that application, and

9    Defendant Kealoha reaffirmed Paul Putzulu's prior denial of

10   Mr. Fisher's application for permit to acquire.

11            THE COURT:  Have you served Putzulu?

12            MS. ICKES:  Judge, we have made numerous attempts to

13   try and serve Mr. Putzulu and have not had any success.  We

14   initially tried to serve him through the City.  They declined

15   to accept service of process because he's no longer an

16   employee, which we understand.

17            We tracked down -- we tried to track down his new

18   employer, which we were unable to, and tried numerous times at

19   his residence.  Our process servers have indicated to me that

20   he has a very large gate around his property and have not been

21   able to locate him.

22            THE COURT:  He has what?

23            MS. ICKES:  A large gate around his property or the

24   last known address that we have for Mr. Putzulu.  So to this

25   date, he has not been served.

1          THE COURT:  Are you going dismiss him?

2          MS. ICKES:  Judge, I haven't had an opportunity to

3  consider that, but --

4          THE COURT:  Well, what do you mean you haven't had an

5  opportunity?

6          MS. ICKES:  Well, I haven't considered it.

7          THE COURT:  We have been here for several months now.

8          MS. ICKES:  That's correct, and we have continued

9  trying to serve him.  It may come to a point where we have to

10  publish.  I haven't gotten there yet, but we have tried

11  numerous times.

12          And if the Court requires, I can submit an affidavit

13  from our process server indicating the times they have tried to

14  serve him.

15          THE COURT:  Well, you know, if you are going to

16  pursue him, you better pursue him, and you better seek

17  publication service then.

18          MS. ICKES:  Yes, Judge.

19          So with regard to the continuing violation of

20  Mr. Fisher's constitutional right to bear arms, plaintiff

21  submits that it started back in October 2009 with the initial

22  denial, continues today, and will continue if this injunction

23  is not issued.

24          THE COURT:  Now, on June 10th of 2010, you filed a

25  motion to enforce the order permitting return of firearms.

1              MS. ICKES:  Yes, Judge.

2              THE COURT:  Before the family court.  And that order

3     or that motion was denied.  Apparently you have not been able

4     to find the order or any findings.

5              MS. ICKES:  The order from that family court was just

6     an order denying the motion.  There were no findings of fact or

7     conclusions of law filed with regards to that family court

8     judge's decision.  It was just a denial of the motion.

9              THE COURT:  So, does that -- so is there a res

10    judicata problem?

11             MS. ICKES:  With regards to us filing the instant

12    lawsuit?

13             THE COURT:  Pardon me?

14             MS. ICKES:  With regards to us filing the instant

15    lawsuit?

16             THE COURT:  To the issue of whether or not Mr. Fisher

17    is entitled to get his guns back.

18             MS. ICKES:  Well, Judge, that motion to -- was to

19    enforce an even prior order that was issued back in 1998 by

20    another family court judge, and that order actually ordered HPD

21    to return Mr. Fisher's firearms which they did.  So, when --

22             THE COURT:  But when did they return his firearms?

23             MS. ICKES:  Shortly thereafter, Judge.  It was --

24             THE COURT:  Shortly thereafter what?

25             MS. ICKES:  1990 -- the year was 1998.  And if I

 1   could just get the date for you.  November 4th, 1998, a family

 2   court judge ordered an order permitting -- issued an order

 3   permitting the return of firearms.

 4          And with that order being filed, it was ordered that

 5   Mr. Fisher's firearms be returned to him.  And I don't have the

 6   exact date, Judge, but following this November 4th, 1998,

 7   order, HPD promptly returned Mr. Fisher's firearms.

 8          THE COURT:  So sometime in '98 or '99.

 9          MS. ICKES:  Yes, Judge, late '98 or early '99.

10          THE COURT:  So what was this -- then he filed an

11   application to purchase a new firearm; is that right?

12          MS. ICKES:  That's correct, Your Honor, more than 10

13   years later.

14          THE COURT:  And that was in 2009?

15          MS. ICKES:  Yes, the fall of 2009.  The denial came

16   in October of 2009.  October 1st, 2009, shortly after -- during

17   the fall of 2009 is when he applied to get a new firearm.

18          THE COURT:  And then in October 1 of 2009, Defendant

19   Putzulu, the acting chief, directed him to surrender his

20   firearms which apparently he did.

21          MS. ICKES:  Yes.

22          THE COURT:  According to paragraph 25 of your

23   complaint.  And then in June of -- June 10th of 2010, plaintiff

24   submitted this motion to -- to the family court to enforce the

25   order permitting return of firearms.

 1              MS. ICKES:  That's correct.  Because it was a prior

 2   family court order and the order was not being honored by HPD

 3   at that point, counsel thought that the family court could

 4   order that the previous order be complied with.

 5              THE COURT:  Well then my question to you is is that

 6   order from the family court denying your motion res judicata?

 7              MS. ICKES:  Judge, I don't believe so, because the

 8   order is just denying the motion to enforce the order.  We are

 9   not exactly asking this Court to enforce that prior order, but

10   to overturn HPD's decision to deny Mr. Fisher's new

11   application.

12              THE COURT:  But the order -- I mean the issue in both

13   that order and this matter is whether Mr. Fisher is entitled to

14   possession of his firearms based on his prior conviction of

15   harassment.

16              MS. ICKES:  The order -- the initial order from 1998

17   allowed Mr. Fisher to -- or ordered HPD to return the firearms

18   to Mr. Fisher.  In 2009 HPD required Mr. Fisher to return those

19   firearms that they had previously returned to him back in 1998

20   based on his new permit or application for permit to acquire.

21              At that time, apparently HPD looked through the

22   file -- the old 1997 file and saw the underlying facts of

23   Mr. Fisher's original arrest.  And based on that research, they

24   decided that he was ineligible, and, therefore, required him to

25   return whatever firearms he had in his possession.

1          Now there has never been an order by any court

2     reversing that initial order to return Mr. Fisher's firearms.

3     I'm not sure if I'm answering Your Honor's question.  But we

4     are seeking an order today requiring HPD to issue a permit,

5     because Mr. Fisher is not statutorily disqualified under the

6     Hawaii revised statutes.  So I don't -- I don't believe it's

7     the same issue.

8          THE COURT:  Well, isn't the issue whether -- because

9     of his prior conviction of harassment, whether he's entitled to

10    possess a firearm?

11         And in one case you are talking about return of

12    firearms and in another case you are talking about application

13    to purchase a new firearm.  And aren't both of those based on

14    whether or not he's precluded from possessing a firearm based

15    on his prior conviction of harassment?

16         MS. ICKES:  Yes, Judge.

17         THE COURT:  Is that res judicata?

18         MS. ICKES:  May I have a moment?

19         THE COURT:  You may.

20       (Brief pause.)

21         MS. ICKES:  Thank you, Judge.  Mr. Wilkerson

22    actually -- with respect to that motion to enforce the prior

23    order, Mr. Wilkerson was present at that hearing, the motion to

24    enforce order permitting firearms on June 10th, 2010.  And

25    although I have not attached a copy of the order, that order

1  was denied.  No findings of fact or conclusions of law were

2  entered.

3            However, I believe the basis or the basis that Judge

4  Choy indicated for denying that motion was that he -- that the

5  family court did not have jurisdiction over that matter.

6            Secondly, as I think I was trying to point out --

7            THE COURT:  How are we going to know that?

8            MS. ICKES:  Judge, I believe the judicial retention

9  statutes regarding transcripts are 10 years.  Obviously, I

10  don't have the transcripts before me, but I can -- I can try to

11  obtain them.

12            As I said, co-counsel, Mr. Wilkerson, did attend that

13  hearing and argued that motion.  And that was what the basis of

14  the denial was.  And --

15       (Brief pause.)

16            MS. ICKES:  Excuse me, Judge.  May I have a moment to

17  confer with co-counsel?  Thank you.

18       (Brief pause.)

19            MS. ICKES:  Thank you, Judge.  I just wanted to get

20  some further clarification on that motion to enforce the order.

21            Now the prior order that we were discussing, that of

22  November 4th, 1998, essentially states that HPD should return

23  Mr. Fisher's firearms so long as he's statutorily qualified.

24  The language of the order is set forth in our complaint.

25            With regards to the motion to enforce the order

```
 1    permitting, with -- excuse me -- with respect to the motion to

 2    enforce that prior order, I believe it was Judge Choy's

 3    position with the family court that although that order was

 4    enforceable, he's not in a position to determine whether or not

 5    Mr. Fisher is statutorily qualified or disqualified.

 6            And that's what we are asking you to decide, Judge.

 7    Our argument is that Mr. Fisher is not statutorily

 8    disqualified.  Another argument that --

 9            THE COURT:  So you are changing your position then.

10    You are not saying that the order -- the family court order was

11    denied because they did not have jurisdiction, but its order

12    had always been conditioned on a determination of -- by the HPD

13    of whether or not Mr. Fisher was permitted to receive the

14    weapons back.

15            MS. ICKES:  Yes, Judge, after further clarification

16    with co-counsel, and thank you for giving me that opportunity

17    to clarify that.  That was the position of the family court in

18    2010 with respect to the motion to enforce.

19            THE COURT:  And how do I know that with regard to the

20    second order?

21            MS. ICKES:  Well, Judge, I don't have -- excuse me.

22            THE COURT:  As far as the second order that didn't

23    have any findings or conclusions?

24            MS. ICKES:  I am -- I don't have any transcripts to

25    turn over to the court at this time.  I can certainly try to
```

1    obtain them.  The family court order was just a standard order

2    denying the -- denying the motion.

3            THE COURT:  So you think you can get the transcript

4    for me?

5            MS. ICKES:  I can certainly try, Judge.  Just based

6    on some prior research I have done on this case, I know

7    generally the retention statute for transcripts are 10 years.

8            I'm not sure if the family court has a different

9    system, but as you can see, the hearing was held on -- in 2010,

10   which was just about two years ago.  So, I -- when I get back

11   to my office today, I will try and order those transcripts and

12   get them to the Court if I can.

13           THE COURT:  I forgot now.  Do we have the motion?  We

14   probably have the motion, don't we?

15           MS. ICKES:  The motion to enforce the --

16           THE COURT:  Yes.

17           MS. ICKES:  I did not attach that motion to any of my

18   moving papers or opposition.

19           THE COURT:  Who prepared the order denying the

20   motion?

21           MS. ICKES:  Mr. Wilkerson is informing me that there

22   was none.  That the denial was just made on the record and a

23   paper one was not filed.  I would have to do some further

24   research on that, Your Honor.

25           I -- I'm reading what I have in my complaint and what

```
 1    I have in my motion, but that is essentially the information

 2    that I have before me and that I can argue this morning.  If

 3    the Court requires additional information, like the actual

 4    motion, I can take steps today to get that information over to

 5    the Court.

 6              THE COURT:  Well, I wish you good luck.  I'm not

 7    sure.  I am not too confident you are going to be able to find

 8    any transcript.  Their records are not very substantial.

 9              MS. ICKES:  Well, I will attempt to anyway, Your

10    Honor, but I certainly have a copy of the motion that was

11    filed.

12              THE COURT:  I have a copy.

13              MS. ICKES:  Okay.  With regards to -- I believe this

14    may address one of the Court's prior questions.

15              What we are seeking today is injunctive relief,

16    requesting that HPD or in this case Chief Kealoha grant

17    Mr. Fisher's application for permit to acquire a new firearm

18    that was initially submitted in the fall of 2009.

19              The order regarding the return of firearms from 1998

20    had to do with HPD returning those firearms that he had

21    surrendered previous to his harassment conviction.  So,

22    after -- and after his conviction for harassment, the family

23    court ordered that so long as Mr. Fisher's statutorily

24    qualified, HPD should return his guns.  And at that time, HPD

25    returned his guns.
```

1          Ten years later, when he applied to obtain a new

2   firearm, they said -- HPD informed him that he needed to --

3   that his application was denied, and that he needed the turn

4   over all the firearms or dispose of firearms in his possession,

5   and he has lawfully dispose of them.  However, they are not in

6   HPD's possession, so we are not asking HPD --

7          THE COURT:  They are destroyed?

8          MS. ICKES:  Correct.  We are not asking that HPD

9   return any firearms that are subject to that initial order.

10  What we are asking for is that HPD reevaluate or grant

11  Mr. Fisher's permit -- application for permit to acquire

12  additional firearms.

13         THE COURT:  So, let me -- I haven't really read this

14  motion closely, the motion filed with the family court.  What

15  was said, was that only for the return of his firearms that he

16  surrendered again, or was it also to grant him a new permit to

17  purchase the new weapon?

18         MS. ICKES:  I'm sorry, Judge.  I don't have that

19  motion before me.  I can't answer yes or no.

20         THE COURT:  The language is a little vague.  It

21  covers the -- on the one hand it requests that he get his

22  firearms back, but it also discusses whether or not his

23  conviction of harassment was a conviction of violence and a

24  crime of violence.  I will have to go through that more

25  thoroughly.

| 1 | MS. ICKES:  Chronologically, Your Honor, the motion |
|---|---|

1              MS. ICKES:  Chronologically, Your Honor, the motion

2     to enforce the prior order to returned firearms came subsequent

3     to Paul Putzulu's -- Acting Chief Paul Putzulu's denial of the

4     application -- of Mr. Fisher's application to get a new

5     firearm.  That was October 1st, 2009.  That motion to enforce

6     was June 10th, 2010.

7              Mr. Fisher, through counsel, wrote to the new Chief

8     Kealoha requesting that he reevaluate that application.  So,

9     the reapplication, if you will, came after the family court's

10    order denying the motion to enforce the prior order.  So I

11    don't believe that motion would have addressed what came after

12    on August 31st when Mr. Fisher essentially reapplied for a

13    permit.  And then defendant --

14             THE COURT:  What you have pointed out, a motion came

15    after J. Putzulu denied application and required the return of

16    or surrender of all his firearms.

17             MS. ICKES:  That's correct.  And then there was a

18    subsequent attempt to reapply or ask Chief Kealoha to

19    reconsider an application by Mr. Fisher to obtain new firearms

20    or to obtain a new firearm.  And that was denied by Kealoha in

21    September of 2010.

22             So chronologically, there were reapplications and

23    denials following that motion to enforce.  There was also an

24    application prior to that motion to enforce.  It's all set

25    forth in the complaint as well as in the statement of facts to

1    this instant motion.

2            THE COURT:  The same issue was involved.

3            MS. ICKES:  Well, Judge, I believe that the initial

4    order back in 1998 had to do with those firearms in

5    Mr. Fisher's possession at that time.  There was an order that

6    he surrender the firearms, which he did.  He pled guilty to and

7    was convicted of harassment.

8            Later, after serving his term of probation, the

9    family court ordered that HPD return those firearms so long as

10   he is statutorily qualified.  They returned the firearms.

11   They, meaning HPD, returned the firearms.  And then all of this

12   happens 10 years later when he applies to -- pursuant to the

13   Hawaii revised statutes to obtain a new firearm.

14           They reconsider their position and deny the new

15   application and order him to surrender or lawfully dispose of

16   firearms in his possession.  So what's at issue here is whether

17   Mr. Fisher is statutorily qualified.  And our argument,

18   obviously, is that he is statutorily qualified and that HPD or

19   Chief Kealoha and HPD should grant his application to obtain a

20   new firearm or firearms.

21           So while that motion to enforce had -- that motion to

22   enforce essentially had to do with returning firearms that he

23   was ordered to surrender.  And we are seeking here, for

24   purposes of this -- this case and this motion, an order

25   requiring HPD to issue a permit pursuant to his application,

 1   because he has -- he being Mr. Fisher is statutorily qualified

 2   under law to -- to possess a firearm.

 3          With respect to the instant motion, the motion for

 4   preliminary injunction is before the Court this morning, and I

 5   know the Court is well aware of the four part Winter test:  The

 6   likelihood of success on the merits, which we have kind of

 7   discussed up to now, irreparable harm to plaintiff, the balance

 8   of equities, and the interests of the public.

 9          Plaintiff would submit that despite this Court's

10   prior order with respect to City and Kealoha's motions to

11   dismiss, which Your Honor granted in part with respect to

12   Kealoha and denied in part, and granted in -- granted with

13   respect to the City, that plaintiff is -- can and has still

14   made a strong showing that he's likely to succeed on the

15   merits.

16          As I mentioned earlier, the -- or we have filed an

17   amended complaint.  The Court obviously is well aware that in

18   the order of -- back in April of 2012, that the Court left the

19   door open for the plaintiff to file an amended complaint if we

20   so chose to.  And we did, albeit it was filed this morning.

21          We filed the amended complaint this morning, and we

22   believe we've addressed and cured those deficiencies that the

23   Court pointed out in their April 2012 order with respect to

24   municipal liability and qualified immunity to --

25          THE COURT:  Well, we are not on a motion to dismiss

1    again.  We are just on a motion for preliminary injunction.

2                MS. ICKES:  Yes, Judge.  I guess the only reason I

3    bring that --

4                THE COURT:  And of course we have not read your

5    amended complaint which was very dilatorily filed this morning.

6                MS. ICKES:  Yes, Judge.  I apologize for that.  There

7    was --

8                THE COURT:  I don't want to discuss those points --

9                MS. ICKES:  Yes, Judge.

10               THE COURT:  -- that we dismissed.

11               MS. ICKES:  I am not going to get into it.

12               THE COURT:  This is a preliminary injunction.

13               MS. ICKES:  I am not going to get in to those

14   deficiencies that the Court pointed out.

15               THE COURT:  Let's proceed.

16               MS. ICKES:  Thank you.  I may be repeating myself

17   here, Judge, but what we are trying to do here -- what we are

18   seeking here is not -- we are not trying to invalidate any

19   statute.  We are not trying to get a particular statute

20   declared unconstitutional.

21               We are just -- rather we are arguing here that in

22   Mr. Fisher's case, Chief Kealoha and, by extension, HPD and, by

23   extension, the City and County have misapplied the statute as

24   it -- as -- in Mr. Fisher's -- with regards to Mr. Fisher's

25   application, because Mr. Fisher is not statutorily

1  disqualified.

2         And those issues are discussed at length in our

3  motion.  We discuss the applicable Hawaii law with respect to

4  the gun laws.  We discuss crimes of violence under Hawaii and

5  federal law.  We -- which was discussed at length at the -- the

6  previous hearing on City's motion to dismiss.

7         What's very relevant here, Judge, is the case law

8  states, and it's argued at length in our motion, is that with

9  regards to whether or not someone is statutorily disqualified

10  because of a prior crime -- because of a prior crime of

11  violence, the statute contemplates what applicant has been

12  convicted of, not what one was arrested for or even charged

13  with.

14         Many Ninth Court Circuit -- Ninth Circuit courts

15  discuss the fact that harassment is not a crime of violence.  I

16  am sorry, Judge.  I may have misspoke.  It might be Tenth

17  Circuit.  But in any case, the case law is set forth at length

18  in our motion.

19         Not what one was arrested for, not what one was

20  charged with, and not on the facts underlying the conviction.

21  So, plaintiff submits that in this case, it does not matter

22  what the police reports say.  It does not matter what

23  Mr. Fisher was arrested for.  It does not matter what

24  Mr. Fisher was charged with.

25         What matters is what the conviction is.  And in this

1  case, the conviction was for harassment.  And we submit that

2  harassment here does not satisfy the crime of violence, because

3  it does not have elements of injury, threats of injury, use of

4  force or attempted use of physical force as elements.  So for

5  those reasons, Mr. Fisher is not statutorily disqualified from

6  firearms ownership.

7          The Court addressed that issue in its lengthy order

8  and with just regards to the allegations that plaintiff

9  sufficiently has alleged second -- that his second amendment

10  right to bear arms was infringed when defendants denied his

11  permit to acquire.

12          With respect to irreparable harm, Judge, we submit

13  that Mr. Fisher has suffered irreparable harm.  I started off

14  with the fact that back in 2009, October 2009 when Mr. Putzulu

15  initially denied his application through today, and if this

16  injunction is not granted he will continue to suffer

17  constitutional violation.

18          Now district courts in other jurisdictions, and I

19  have discussed them in my memo -- or my memo in support and in

20  my reply, that district courts in other jurisdictions have

21  ruled that irreparable harm is established or can be presumed

22  when the claim for preliminary injunction is based on a

23  constitutional violation.

24          And in this case, that's exactly what we are

25  alleging.  That Mr. Fisher's permit or application rather was

```
 1   wrongfully denied, because he is statutorily qualified.  And as
 2   a result, he's been deprived of his second amendment right to
 3   bear arms.
 4            THE COURT:  And his wife won't let him have the arms.
 5   She keeps the arms in her own bureau?
 6            MS. ICKES:  Judge, I -- I don't know.  But with -- in
 7   any case, what's going on now is that he's being denied the
 8   opportunity to own firearms himself.  And that's a right
 9   covered by the second amendment and that statutorily qualified
10   United States citizens to meet objective criteria are entitled
11   to.
12            And plaintiff submits in this case Mr. Fisher is
13   entitled to own and possess firearms pursuant to the second
14   amendment and Hawaii Revised Statutes Chapter 134 and is not
15   disqualified by any statutory law -- Hawaii statutory law or
16   the Lautenberg Amendment or any other federal law that
17   prohibits firearm ownership for citizens who have previously
18   been convicted for crimes of violence or misdemeanor crimes of
19   domestic violence.
20            That's all inapplicable here, because Mr. Fisher --
21   as argued before, Mr. Fisher has not been convicted of a crime
22   of violence.
23            THE COURT:  Thank you.
24            MS. ICKES:  One thing, another point that --
25            THE COURT:  How much more do you have?
```

1          MS. ICKES:  Well, I was just going to go through the

2     four prongs, Judge.  I am on irreparable harm.  I have -- I can

3     speed through it if the Court has specific questions.  Not very

4     much longer.

5          THE COURT:  Okay.  We are running kind of short on

6     time.

7          MS. ICKES:  Okay.  The largest point I believe we

8     covered was the likelihood of success.  But just briefly,

9     Judge, with respect to irreparable harm not only has Mr. Fisher

10    suffered liberty interest because he's been deprived of his

11    constitutional right to bear arms, but also a property interest

12    which the City does not address in its memorandum in

13    opposition.

14          I believe I cite a Nevada case -- a District Court of

15    Nevada case that states that property is unique.  And under

16    general principles of law of equity, its possible loss or

17    destruction usually constitutes irreparable harm.  And we are

18    arguing here that not only has Mr. Fisher been deprived of the

19    liberty interest but also the property interest.  So, plaintiff

20    submits that Mr. Fisher has undoubtedly suffered irreparable

21    harm.

22          I can cover balance of equities and public interest

23    fairly quickly.  I would just like to point out that the

24    reasons set forth by the City with regard to protecting the

25    public are entirely speculative.  Harm to the public, their

 1 | argument is -- they are based on pure speculation, and many of

 2 | their arguments are completely inapplicable here because they

 3 | discuss cases that are to do with carrying a firearm in public.

 4 |              THE COURT:  Carrying a firearm in public.

 5 |              MS. ICKES:  So that's inapplicable here.  Here

 6 | Mr. Fisher -- with regards to Mr. Fisher, he just wants to be

 7 | able to have a -- to -- excuse me, Judge.  That's not what

 8 | Mr. Fisher is seeking here.  He is not trying to obtain a

 9 | permit to carry weapons in public.

10 |              So I would submit that the City's arguments regarding

11 | harm to the public are inapplicable here.  Also, issuing the

12 | injunction would further serve the public interest because --

13 |              THE COURT:  I wasn't really persuaded by the City's

14 | argument on that, so go ahead to your next item.

15 |              MS. ICKES:  Okay.  Just one last note on public

16 | interest, because, you know, there are these --

17 |              THE COURT:  If you want to get into it, I will give

18 | you some reasons that the City can assert.

19 |              MS. ICKES:  I will move on, Judge.

20 |              THE COURT:  Okay.

21 |              MS. ICKES:  And although I did not raise this in my

22 | motion, the City raises levels of scrutiny.  If Your Honor

23 | wants me to get into it, I can try and address that.  But if

24 | you don't have any questions, I don't have to.  I know we are

25 | running short on time, so --

1          THE COURT:  Please move ahead.

2          MS. ICKES:  Yes, Judge.  For all of those reasons, we

3   believe we are likely to succeed on the merits or Mr. Fisher's

4   claims are likely to succeed on the merits.  That because

5   constitutional issues and liberty -- he has been deprived of

6   liberty interest, property interest, he has suffered

7   irreparable harm.

8          The balance of equities weigh in his favor.  The City

9   has not even addressed the balance of equities.  And the public

10  interest would serve -- it would serve the public interest to

11  grant this -- or issue this injunction, because other similarly

12  situated citizens are subject to these same arbitrary

13  evaluations of permits to acquire.

14         By issuing this injunction, it would put the HPD, the

15  Chief, the City on notice that at least when it comes to

16  harassment, there are certain things you can and cannot look

17  at.  In this case, Mr. Fisher was not convicted of a crime of

18  violence as set forth in our moving papers.

19         If Your Honor has any additional questions, we are

20  just requesting that based on all of these, the reasons set

21  forth in our moving papers, our reply, the argument here today,

22  that the injunction be issued and HPD be ordered to grant

23  Mr. Fisher's application for a permit to acquire.

24         THE COURT:  Thank you.

25         MS. ICKES:  Thank you.

1              THE COURT:  Mr. Dodd.

2              MR. DODD:  Thank you, Your Honor.  Your Honor, excuse

3    me one second.  It is our position that this motion has not

4    been properly supported by evidence.  Plaintiff argues facts --

5              THE COURT:  What's your point on the res judicata

6    matter?

7              MR. DODD:  The res judicata matter.  Your Honor, I

8    didn't brief that in my papers, because I believe that is a

9    more appropriate subject for a motion for summary judgment,

10   because I was not including evidence with my opposition papers.

11   I don't disagree with the Court's position, and I do think that

12   is a legitimate argument that the City would raise.

13             THE COURT:  I haven't --

14             MR. DODD:  But I don't have the evidence.

15             THE COURT:  I haven't really pronounced any position

16   on that.  I am just raising some issues on it.

17             MR. DODD:  Your Honor, when -- which gets back to my

18   point that the plaintiff has not sufficiently shown evidence

19   that the Court needs to evaluate.  I mean plaintiff is seeking

20   an injunction here.  Plaintiff's got to show more than just a

21   possibility of success.

22             THE COURT:  Did you even raise res judicata in your

23   answer?

24             MR. DODD:  I didn't.  Your Honor, I will not make a

25   statement on the record that I don't know the answer to.  But

1   as to the motion -- as to plaintiff's motion, what the -- what

2   we would like to see, I think everyone would like to see are

3   these filings in the family court that plaintiff has been

4   arguing about.  Those are not part --

5          THE COURT:  I mean your opposition did not even

6   address this issue of whether this is a crime of violence.

7          MR. DODD:  Your Honor, we did address that in the --

8   in our motion to dismiss.  We addressed whether it was a crime

9   of violence.

10         The City defendant's position, Your Honor, is that

11  plaintiff is statutorily disqualified.  Plaintiff argues that

12  he is statutorily qualified but there is not evidence to

13  support that.  We believe that eventually we will prevail on

14  that issue.  But for a --

15         THE COURT:  You haven't presented any evidence to me

16  about that.

17         MR. DODD:  Nor has the plaintiff.  So, it is

18  plaintiff's burden on a motion for preliminary injunction to

19  establish that he is likely to succeed.  We believe he has not

20  done that.

21         Your Honor is correct that we did not establish

22  evidence.  We did not adduce evidence in opposition, but it's

23  plaintiff's burden to carry on a motion for preliminary

24  injunction, and the argument is that plaintiff has not done

25  that.

 1          THE COURT:  Well, they have analyzed the charge and

 2   the nature of the charge and conviction.

 3          MR. DODD:  Your Honor, in our --

 4          THE COURT:  And provided case law.

 5          MR. DODD:  Your Honor, in our motion to dismiss, we

 6   brought up that -- and we argued cases from the Supreme Court

 7   that it is not -- excuse me -- it is not what plaintiffs argue

 8   that the statute is; that the police department is solely

 9   limited to the elements of what plaintiff was convicted to.

10   The opinion by Ginsberg shows --

11          THE COURT:  There is no element of crime or force in

12   the statute.

13          MR. DODD:  Yes, Your Honor.

14          THE COURT:  Crimes or --

15          MR. DODD:  I do not believe that the -- I do not

16   believe that that is required as it is the Supreme Court

17   decision that it does not have to be an element in order for

18   a -- for the -- a permittee's application to be denied.

19          I understand plaintiff's position that unless he's

20   convicted of a, quote, "crime of violence", that he's

21   statutorily qualified.  I don't believe it's that simple, Your

22   Honor.  I believe that the -- the reviewing entity is entitled

23   to do more than just simply look at the elements of the crime

24   of which he was convicted of.

25          THE COURT:  I have no evidence before me that there

1   was a crime of violence at this point.

2          Can you turn your cellphone down?  (Speaking the

3   courtroom manager.)

4          Please proceed, Mr. Dodd.

5          MR. DODD:  Your Honor, I believe it was unfair to ask

6   the defendants to respond to -- plaintiffs have argued about an

7   amended complaint.  We received the -- I received the emailed

8   that an amended complaint had been filed at 9:09 this morning.

9   I do not believe it is fair to ask the defendants to have to

10  respond to that, because I have not had --

11         THE COURT:  I don't think there's anything in there

12  you have to respond to.  I assume what you are responding to is

13  what's left over from the Court's prior order regarding a

14  motion for preliminary injunction.

15         MR. DODD:  Yes, Your Honor.  And what we get to on

16  that, what my argument is is that plaintiff has not established

17  what he needs to established to prevail on a motion for

18  preliminary injunction.

19         Our arguments in the motion to dismiss directly

20  address his claim that the -- he's only allowed to look at what

21  he pled guilty to and that harassment is not a crime of -- that

22  the crime of harassment does not necessarily include violence.

23  That's the difference.  It doesn't necessarily.

24         It doesn't mean that he didn't use violence.  It

25  just -- what he pled to is not an element, but it doesn't --

1  that doesn't mean that he -- that he didn't use violence when

2  he, you know, committed the act, just what he pled to does not

3  have that as an element.

4          THE COURT:  You are asking the Court to go back and

5  look at your motion in opposition to the motion to dis -- I

6  mean, in favor of your motion to dismiss rather than your

7  motion -- your opposition to the motion for preliminary

8  injunction?

9          MR. DODD:  We did not -- I did not argue that in the

10  opposition to the motion for preliminary injunction.  Yes, Your

11  Honor.

12          THE COURT:  Why not?

13          MR. DODD:  Your Honor, I -- I did not argue it.  I

14  thought it had been sufficiently argued previously that I

15  didn't need to reassert the same arguments in the opposition.

16  If I was in error, Your Honor --

17          THE COURT:  It was more pertinent than what you

18  included in your opposition to the motion for preliminary

19  injunction.

20          MR. DODD:  Fair enough, Your Honor.  And I apologize

21  if I made that mistake.  But I do believe that plaintiff has

22  failed to establish what he needs to establish to have asked --

23  to have the Court issue the requested injunction.

24          THE COURT:  Anything else?

25          MR. DODD:  Your Honor, plaintiff argues in the motion

1    and also the reply about the level of scrutiny to be applied to

2    laws infringing the second amendment.  But here plaintiff

3    appears not to be challenging the statute at issue, only that

4    he was denied the requested permit.

5           The reason that the defendants had raised the issue

6    about the state of the law is for the qualified immunity issue.

7    That since the state of the law may not -- I am talking about

8    the Supreme Court.

9           THE COURT:  I have already granted Mr. Kealoha, in

10   his individual capacity, qualified immunity.

11          MR. DODD:  I understand, Your Honor, but that's why

12   the issue was raised there.

13          For irreparable harm, while defendants note that this

14   Court did hold that plaintiff had sufficiently alleged the

15   second amendment right was infringed, the Court did not make

16   any finding that his second amendment rights were in fact

17   infringed.

18          Plaintiff does not adduce proof of irreparable harm.

19   He only submits argument that he is -- that he has suffered or

20   is suffering the harm.

21          Now plaintiff -- as to plaintiff's argument as to due

22   process, he argues that his liberty and property interests are

23   being unduly instricted -- unduly restricted.  Excuse me.  But

24   at this stage of the litigation, again there is not sufficient

25   proof of that.  It is mere argument.

1                    Plaintiff is not entitled to an injunction based upon

2     argument.  He needs to prove sufficiently that these interests

3     are being unduly restricted.  Based upon the record before the

4     Court, it is our position that plaintiff has not established

5     sufficient injury to warrant the granting of an injunction.

6                    And again, Your Honor, the defendants believe that

7     plaintiff is statutorily disqualified from owning a firearm.

8     But we do not believe that at this juncture we have to

9     established that.  It is plaintiff who has to establish that he

10    is disqualified by clear evidence.  We submit that he has not

11    done so.

12                   Your Honor, just to conclude, we posit that under the

13    four elements of the Winter test, and that's 555 U.S. 7,

14    plaintiff does not meet the standards for issuance of a

15    preliminary injunction, and we would ask that the Court deny

16    plaintiff's motion.

17                   THE COURT:  Thank you.

18                   MR. DODD:  Thank you.

19                   THE COURT:  I don't think there's much there for you

20    to respond to, Miss Ickes.  I do want to know how long you need

21    to determine whether you can get a transcript.

22                   MS. ICKES:  We will put in the request today, Judge.

23    Two weeks if that's okay with the Court.

24                   THE COURT:  No.

25                   MS. ICKES:  Lesser, I mean a shorter amount of time.

 1  One week or --

 2              THE COURT:  One week.

 3              MS. ICKES:  Would the Court require a -- because I

 4  believe family court is audio.  Would the court require a

 5  transcript, a written transcript or is the audio or video

 6  version okay?

 7              THE COURT:  Video version?

 8              MS. ICKES:  Yeah.  We will get the transcript, Judge.

 9              THE COURT:  Okay.

10              MS. ICKES:  Sorry, Judge.  I think now it's DVD.  I

11  don't think they are video cassettes anymore.

12              COURTROOM MANAGER:  That's correct.

13              THE COURT:  Okay.  So by next Thursday, file either a

14  transcript and/or a memorandum regarding the res judicata

15  issue.

16              MS. ICKES:  Yes, Judge.

17              THE COURT:  And Mr. Dodd, you will have four days

18  after that to make any response.  And I will review the amended

19  complaint to see if it has any impact on the motion for

20  preliminary injunction that would necessitate giving Mr. Dodd

21  any further opportunity to respond to that, but I doubt that

22  there is.

23              MS. ICKES:  Yes, Judge.  Just for clarification,

24  would the Court also want me to send a copy of that same

25  transcript to the City or to Mr.Dodd's office?

1              THE COURT:  Yes, please.

2              MS. ICKES:  Yes, Judge, I will.

3              THE COURT:  So we will take the matter under

4    advisement until we have a chance to make a ruling.  Thank you.

5              MS. ICKES:  Thank you.

6              MR. DODD:  Thank you, Your Honor.

7          (Recess 11:41 a.m.)

8                          --oOo--

9                COURT REPORTER'S CERTIFICATE

10

11       I, KATHERINE EISMANN, Official Court Reporter, United

12   States District Court, District of Hawaii, Honolulu, Hawaii, do

13   hereby certify that the foregoing is a true, complete, and

14   correct transcript of the proceedings had in connection with

15   the above-entitled matter.

16

17   Date:  October 10, 2012.

18                          /s/ *Katherine Eismann*

19                          Katherine Eismann, CSR CRR RDR

20

21

22

23

24

25