ALAN BECK (HI Bar No. 9145)
Attorney at Law
4780 Governor Drive
San Diego, California 92122
Telephone: (619) 971-0414
Email: ngord2000@yahoo.com

Attorney for Plaintiff Christopher Baker

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KIRK FISHER )<br><br>       Plaintiff, )<br><br>  vs. )<br>          )<br>          )<br> LOUIS KEALOHA, as an individual and )<br>in his official capacity as Honolulu Chief )<br>of Police; PAUL PUTZULU, as an )<br>individual and in his official capacity as )<br>former Honolulu Acting Chief of Police; )<br>and CITY AND COUNTY OF<br>HONOLULU,<br><br>       Defendants.<br>_____ | Civ. No. 11-00589 ACK-BMK<br>Brief of the Amicus Curiae Hawaii<br>Defense Foundation in Support of<br>Plaintiff; Exhibit "B", |

# TABLE OF CONTENTS

Table of Authorities Cited…………………………………………………………… ii, iii, iv, v

Interest of Amicus…………………………………………………………………..1

Introduction……………………………………………………………………...2

Argument………………………………………………………………………...3

       Summary of Argument…………………………………………………….....3

       The City's Issuance Policies Violate Mr. Fisher's Right to Equal Protection………………………………………...………………....6

       Haw. Rev. Stat. § 134-2 Discriminates Among Similarly Situated Law-Abiding Citizens Who Seek Firearm Licenses…………….............................................................7

       The County Cannot Legally Justify Its Different Treatment of Mr. Fisher and Other Similarly Situated Individuals…………………………………………………8

       Hawaii Misapplies Lautenberg by Not Having in Place a Means to Restore Rights……………………………………………………..9

       The H.R.S. is a Prior Restraint and Fails Even Intermediate Scrutiny…………...........................................................11

       H.R.S. § 134-7 Cannot Survive Strict Scrutiny……………………..13

       H.R.S. § 134-2 Violates Procedural Due Process…………………………………………………16

       The City is Liable Under Monell…………………………………22

Conclusion…………………………………………………………………………25

## TABLE OF AUTHORITIES CITED

Cases:

*Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990)…………………5

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002)…………………………………..8

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009) (*en banc*)..................14, 18

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)……………………5

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)……………………………..24

*Clark v. Jeter*, 486 U.S. 456 (1988)………………………………………………...19

*Caron v. United States, 524 U.S. 308 (1998)………………………………………9*

*District of Columbia v. Heller*, 554 U.S. 570 (2008)……1, 2, 6, 7, 9, 10, 11, 16, 20

*Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir. 2011)…………...…….…..…..11

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992)……………...17, 19

*FW/PBS v. City of Dallas*, 493 U.S. 215 (1990)…………………………………14

*Guillory v. County of Orange*, 731 F.2d 1379 (9th Cir. 1984)……………………...................................................................7

*Harper v.Va. Bd. of Elections*, 383 U.S. 663 (1966)………………………………5

*Hussey v. City of Portland*, 64 F.3d 1260 (9th Cir. 1995)…………………………5

*Largent v. Texas*, 318 U.S. 418 (1943)………………………………………..14, 17

*Logan v. United States*, 552 U.S. 23 (2007)………………………………………9

*Louisiana v. United States*, 380 U.S. 145 (1965)……………………………14, 17

*McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010)……………………...2, 9, 11

*Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1932)……………………………7

*Monell v. Department of Social Services*, 436 U.S. 658 (1978)…………………..20

*Pembauer v. Cincinnati*, 475 U.S. 469 (1986)...........................................................22

*Salinas v. United States*, 522 U.S. 52 (1997)……………………………………8

*Shaw v. Hunt*, 517 U.S. 899, 908 n. 4 (1996)……………………………………7

*Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969)……………………………19

*St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38 (1936)………………...16

*Staub* v. *City of Baxley*, 355 U.S. 313 (1958)………………………………….14

*United States v. Belless*, 338 F.3d 1063 (9th Cir. 2003)……………………….2, 3

*U.S. v. Chester,* 628 F.3d 673 (4th Cir. 2010) ………………………….…...11

*United States v. Logan,* 453 F.3d 804 (7th Cir. 2006)…………………………...9

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010, en banc), cert. denied, *Skoien v. United States*, 2011 U.S. LEXIS 2138 (2011)……………………………………12

*Young v. State,* Civ. No. 12-00336 HG BMK (D. Haw. Nov. 28, 2012)…………16

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886)…………………………………….8

*Zuniga-Soto*, 527 F.3d 1110 (2008)……………………………………………..4

Statutes:

H.R.S. §711-1106(1)(a)…………………………………..2, 3, 4, 13, 14, 15, 17, 18

H.R.S. § 134-2 …………………………………………3, 4, 6, 8 13, 14, 15, 16, 22

H.R.S. §134-7…………………………………………………4, 9, 11, 15, 16, 20

H.R.S. §831-3.2………………………………………………………...13

United States Code:

18 U.S.C. §921(a)(33)……………………………………………………3, 11

18 U.S.C. § 921(a)(33)(A)(ii)……………………………………………………3

18 U.S.C. § 921(a)(33)(B)(ii)…………………………………………………..8, 9, 10

18 U.S.C. § 921(a)(20)…………………………………………………………10

18 U.S.C. § 922(g)(9)……………………………………………………………2

Gun Control Act of 1968 (18 U.S.C.A. § 921 et seq.,)…………………………...2

42 U.S.C. §1983……………………………………………………………..21

Ordinances:

Chapter 1 Article 9 of the Revised Ordinances of Honolulu……………………...22

U.S. Constitutional Provisions:

U.S. Const. amend. II…………………………………………………………7

U.S. Const. amend. XIV………………………………………………………..13

<u>INTEREST OF AMICUS</u>

The Hawaii Defense Foundation is a non-profit member organization incorporated under the laws of the State of Hawaii with its principal place of business in the City and County of Honolulu ("City").[1]  The Hawaii Defense Foundation is committed to defending the essential foundations of a free society by securing greater protection for individual liberty and restoring constitutional limits on the power of government. The Hawaii Defense Foundation seeks a rule of law under which individuals can control their destinies as free citizens and advances legal protections for liberty, free speech, and the bearing of arms. Hawaii Defense Foundation promotes legislative, legal action and advocacy, in support of people's civil liberties. Hawaii Defense Foundation litigates firearm regulation cases, and it has consistently advocated for a principled interpretation of the United States Constitution to prevent government from violating the basic civil rights of its citizens. As discussed in the Argument below, the right to armed self-defense, equal protection under the law and due process are among these basic civil rights.

---

[1] Counsel for the Hawaii Defense Foundation would like to thank Deborah Micev, who is currently a student at Thomas Jefferson School of Law, for her assistance with editing this brief.

Introduction

The Lautenberg Amendment is a provision of the Gun Control Act of 1968 (18 U.S.C.A. § 921 et seq.), added in 1996, which prohibits any person who "has been convicted in any court of a misdemeanor crime of domestic violence" from owning a firearm. 18 U.S.C. § 922(g)(9) ("Lautenberg"). Since its adoption, the United States Supreme Court issued the landmark decision *District of Columbia v. Heller*, 554 U.S. 570 (2008). In that case, the Court held that "ban[s] on handgun possession in the home violate the Second Amendment as does [a] prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." *Heller*, 554 U.S. at 635. Two years after *Heller*, in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the Court held that the right to keep and bear arms was a fundamental right, made applicable to the states through the Fourteenth Amendment. Thus, as with any other fundamental right, the government must regulate the exercise of Second Amendment rights pursuant to objective, well-defined standards.

Nevertheless, for people in Mr. Fisher's circumstances, the City continues to prohibit the bearing of operable handguns even within the home. For persons such as Mr. Fisher, it allows the Chief of Police unbridled discretion in defining what is a crime of violence, incorrectly applies Lautenberg, violates due process, and maintains prior restraint on persons in Mr. Fisher's position.

This case rises out of the City's denial of a license to Mr. Kirk Fisher required by H.R.S. §134-2 to own a firearm within one's own home. The City relies on his conviction in 1997 of H.R.S. §711-1106(1)(a) to argue that he is precluded from owning Firearms due to H.R.S. §134-7. Conviction of this is not dispositive evidence a person is prohibited from owning firearms via having been convicted of a "crime of violence" or one satisfying Lautenberg. However H.R.S. §134-2 gives the Chief of Police of Police unbridled discretion to deny firearm licenses to those convicted H.R.S. §711-1106(1)(a) in cases such as Mr. Fisher. This acts as an unconstitutional prior restraint on the exercise of a fundamental right and Hawaii's interpretation of Lautenberg is both incorrect and unconstitutional. Lastly, the City is liable under the Monell Doctrine as Chief Kealoha creates the policy or lack thereof at issue, he is the one with the discretion to issue permits to acquire and he has final review of the applications for permits.

<u>Argument</u>

A. Summary of the Argument

H.R.S. §134-7 bans the ownership of firearms by anyone convicted of "a crime violence" or prohibited by Federal law. In cases like Mr. Fisher's Chief Kealoha is given complete discretion to determine whether a person is disqualified from being issued a permit to acquire under H.R.S. §134-2 if they have been convicted of a crime that *might* satisfy H.R.S. §134-7. Lautenberg prohibits persons who have

been convicted of a misdemeanor domestic violence from owning firearms unless

their rights have been restored. To decide where state statutes fit into the

Lautenberg federal scheme, federal courts generally consider whether the statutory

text has, as an element, the use or attempted use of physical force coupled with

looking at the charging documents or plea agreements that make clear what

actually happened. It is not enough that the statute usually covers violent conduct,

or that there is now evidence that the conviction was based on violent conduct; the

court is limited to the text of the statute and the particular documents setting forth

the earlier charges or the defendant's past admissions pursuant to a plea deal. *See*

*United States v. Belless*, 338 F.3d 1063, 1068 (9th Cir. 2003). The Hawaii

harassment statute encompasses less violent behavior than the "use or attempted

use of physical force" as set forth in 18 U.S.C. §921(a) (33) and therefore is too

broad to qualify as a "misdemeanor crime of domestic violence." *Id*. "Physical

force," to which 18 U.S.C. § 921(a)(33)(A)(ii) refers, is not de minimis but means

violent use of force against the body of another individual. *Id.* at 1068. This

category does not include mere rude touching or impolite behavior. *Id.* Under the

provisions of the H.R.S. §711-1106(1)(a), a defendant could be convicted, not for

causing injury, threatening injury, using physical force or threatening physical

force, but by annoying or alarming another person by touching them in an

offensive manner. Based on a mere allegation of physical injury without proof of

injury or threat of injury and/or use of physical force or threatened use of physical force, the Hawaii harassment statute does not qualify as a crime of violence. *See Zuniga-Soto*, 527 F.3d 1110 (2008) at 1126. It is possible for a defendant to engage in behavior that violates H.R.S. §711-1106(1)(a) but without injury, threat of injury, use of physical force and/or threatened use of physical force. Here, the harassment statute can only qualify as a violent crime if the government can point to "the written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented, which might shed some light on the nature of the underlying conduct for which Plaintiff was convicted". *Belles* 338 F.3d at 1069. The Defendants have not provided documents to the Court that proves violence, and it is questionable whether they are still available. Mr. Fisher alleges that the transcripts and/or audio recordings of the December 3, 1997 hearing have been destroyed pursuant to judiciary retention statutes. *See* Compl. ¶ 19. Defendants' denial of a permit to acquire under H.R.S § 134-2 violates several of Mr. Fisher's civil rights.

## The City's Issuance Policies Violate Mr. Fisher's Right to Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny to any person within its jurisdiction the equal protection of the law, which "is essentially a direction that all persons similarly situated should be treated

alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). Strict scrutiny applies to government classifications that "impinge on personal rights protected by the Constitution." *Id.* at 440 (citations omitted). "Where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized." *Hussey v. City of Portland*, 64 F.3d 1260, 1265 (9th Cir. 1995) (quoting *Harper v.Va. Bd. of Elections*, 383 U.S. 663, 670 (1966)). To meet strict scrutiny, the *government* must present a compelling governmental interest, which is narrowly tailored, and which is the least restrictive method to achieve the government interest. *See Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 655 (1990). In order to own a firearm in the state of Hawaii a person must apply for a permit. As this permit deals with fundamental rights, a denial must have a compelling reason.

Here, even assuming a crime of misdemeanor domestic violence constitutes a compelling reason, the government cannot prove Mr. Fisher ever was convicted of a crime involving domestic violence. It is presumed that responsible, law-abiding citizens, like Mr. Fisher, who seek a permit to acquire for self-defense purposes are similarly situated in their worthiness to exercise this constitutionally protected, fundamental right. *See Heller*, 128 S. Ct. at 2797-98 (describing the right to Arms as a "pre-existing right").The burden is on the City to prove a crime

of violence occurred and without proof the Court is compelled to accept that the conviction was for the lower non-violent offenses included within the statute. Accordingly, the City cannot show a compelling difference between Plaintiff and other Hawaii citizens who are free to exercise their fundamental right to keep and bear arms within their own home.  By issuing permits to own a firearm in one's home to others and denying one to Mr. Fisher without a compelling reason, the City has violated Mr. Fisher's right to Equal Protection.  The H.R.S. is not tailored to satisfy heightened scrutiny; It does not have a federal mandate because the H.R.S does not follow Lautenberg. It violates procedural due process. Conviction of the harassment statute does not on its own satisfy Lautenberg. "Crime of violence" is undefined". The Chief of Police has unfettered discretion to apply it.

### H.R.S.. § 134-2 Discriminates Among Similarly Situated Citizens

The Second Amendment right to keep and bear Arms is a "right of the People." *U.S. Const. amend II*. Unless rebutted, it is presumed that responsible, law-abiding citizens, like Mr. Fisher who seek a license for home self-defense purposes are similarly situated in their worthiness to exercise this constitutionally protected, fundamental right. *See Heller*, 128 S. Ct. at 2797-98 (describing the right to Arms as a "pre-existing right").

Yet the County denied, and continues to deny, Mr. Fisher's license application, while at the same time it issues licenses to others. Without being

establishing Mr. Fisher was ever convicted of a crime of violent domestic violence there is no relevant difference between him and those to whom the City issues licenses. It is the County that must show a heightened need, *i.*e., a compelling reason to flatly deny Plaintiffs' their right to bear Arms for self-defense.

## The County Cannot Legally Justify Its Different Treatment of Mr. Fisher

The Second Amendment protects the individual right to carry a gun "for the purpose . . . of being armed and ready for offensive or defensive action in case of conflict with another person." *Heller*, 128 S. Ct. at 2793. Accordingly, the right to bear arms especially in ones homes is a fundamental right.  Denying the right requires the City to present compelling evidence that it is justified in depriving a person of a fundamental right.

The City continues to enforce a policy which denies licenses to own a firearm without presenting justification. The only interest furthered by denying license to capable and law-abiding citizens, like Mr. Fisher, is curtailing the right to bear arms.

"To be a compelling interest, the State must show that the alleged objective was the legislature's 'actual purpose' for the classification, and the legislature must have had a strong basis in evidence to support that justification before it implements the classification." *Shaw v. Hunt*, 517 U.S. 899, 908 n. 4 (1996) (citation omitted) (citing *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1932)).

The City can offer no rational basis to justify their disparate treatment of Mr. Fisher, let alone an *important or compelling* interest. *See Guillory v. County of Orange*, 731 F.2d 1379, 1383 (9th Cir. 1984) (A case involving a challenge alleging disparate treatment in issuing CCWs where the court explained: "A law that is administered so as to unjustly discriminate between persons similarly situated may deny equal protection," citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)).

## Hawaii Misapplies Lautenberg by Not Having a Means to Restore Rights

Hawaii applies Lautenberg (and all other applicable federal law) via H.R.S. § 134-7.  In doing so, Hawaii has failed to adopt the plain language of the law by failing to provide a means to restore rights. In statutory interpretation cases, the inquiry begins with a determination of whether the language of the statute is unambiguous and whether the statutory scheme is consistent and coherent. *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438 (2002). *See* also: *Salinas v. United States*, 522 U.S. 52 (1997). The statutory language this Court must interpret regarding Plaintiff's claims is set forth in 18 U.S.C. § 921(a)(33)(B)(ii):

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter [18 USCS §§ 921 et seq.] if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or ***has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)*** unless the pardon,

expungement, or restoration of civil rights expressly
provides that the person may not ship, transport, possess,
or receive firearms.

In *Logan v. United States*, 552 U.S. 23 (2007), a unanimous court
took up the anomalies that arise from statutes that purport to restore
rights that were never taken away. That Court placed some weight on
whether the offender's post conviction status was unaltered by any
dispensation of the jurisdiction where the conviction occurred. *Id* at
26. That same Court went on to cite with approval the language from
the Circuit Court, which held that "an offender whose civil rights have
been neither diminished nor returned is not a person who 'has had civil
rights restored.'" *United States v. Logan,* 453 F.3d 804, 805 (7th Cir.)
(2006). The plain and unambiguous language of 18 U.S.C. §
921(a)(33)(B)(ii) contemplates some state law procedure for
restoration of any civil rights forfeited under state law due to comply
with Lautenberg. While Hawaii does have an expungement statute, it
is only for persons "arrested for, or charged with but not convicted of
a crime". *See* H.R.S. §831-3.2. Similarly, post-conviction relief
involves a defect with the original conviction and does not apply to
those properly convicted. Accordingly, Hawaii has no means to
restore rights. Therefore its reliance on Lautenberg is misplaced and

the state has no federal mandate to deprive Mr. Fisher or similarly situated persons of their Second Amendment rights.

Furthermore, since *Heller* and *McDonald* judicially elevated the status of the rights secured by the Second Amendment to individual, fundamental civil rights it is clear Hawaii's actions against Mr. Fisher and other similarly situated individuals is unconstitutional.  This proposition finds support in *Caron v. United States* 524 U.S. 308 (1998) where the 'unless clause' of 18 U.S.C. § 921(a)(20) was dispositive. In that case, the defendant was subject to a harsher sentence because while Massachusetts law restored his right to possess shotguns and rifles, it did not restore his right to possess handguns. It was the qualified restoration of rights under Massachusetts law that triggered the 'unless clause' that led to the harsher result. The plain and unambiguous language of 18 U.S.C. § 921(a)(33)(B)(ii) contemplates some state law procedure for restoration of any civil rights forfeited under state law.  Hawaii does not have a means to restore rights which means its reliance on Lautenberg to take rights is meritless.

## The H.R.S. Is a Prior  Restraint That Can Not Even Pass Intermediate Scrutiny

Individuals such as Mr. Fisher have had their fundamental rights infringed upon based on an unsubstantiated *possibility* that their conviction was for a "crime of violence" or is prohibited by Federal law.  Standards governing prior restraints must be "narrow, objective and definite." *Shuttlesworth v. Birmingham*, 394

U.S. 147, 151 (1969). Standards involving "appraisal of facts, the exercise of judgment, [or] the formation of an opinion" are unacceptable. *See Forsyth County v. Nationalist Movemen*t, 505 U.S. 123, 131 (1992). Prohibiting the exercise of a fundamental right without definitive evidence of a compelling reason and leaving one person, in this case, Chief Kealoha to determine whether a citizen's conviction was violent is neither narrow, objective, nor definite. Instead, Hawaii's statutory scheme leaves the entire decision to the Chief of Police's judgment and the formation of his opinions.

In general, in order to satisfy intermediate scrutiny, a law must be "substantially related to an important government objective." See *Clark v. Jeter*, 486 U.S. 456, 461 (1988). However, Hawaii's prohibitions on bearing arms on persons convicted of harassment operate as a prior restraint on the fundamental right to bear arms for persons such as Mr. Fisher. This standard should be held to pass no level of means-end scrutiny.

Interestingly, a similar scheme was reviewed in *Heller*:

> The District of Columbia generally prohibits the possession of handguns. It is a crime to carry an unregistered firearm, and the registration of handguns is prohibited. . . . Wholly apart from that prohibition, no person may carry a handgun without a license, but the chief of police may issue licenses for 1–year periods. . . . District of Columbia law also requires residents to keep their lawfully owned firearms, such as registered long guns, "unloaded and disassembled or bound by a trigger lock or similar device" unless they

> are located in a place of business or are being used for
> lawful recreational activities.

*Heller*, 554 at 574-75.    Finding that such a scheme would satisfy no level of

means-end scrutiny, the Court held "[a]ssuming that Heller is not disqualified

from the exercise of Second Amendment rights, the District must permit him to

register his handgun and must issue him a license to carry it in the home." *Id.*

at 629-30. Here, Defendants are unable to prove Mr. Fisher is disqualified from

the exercise of his Second Amendment rights.  Not only must the City issue him a

license to carry in his home, the statute which prohibited him from doing so must

be rewritten to comply with the Constitution.

### H.R.S. § 134-7 Cannot Survive Strict Scrutiny

The Supreme Court in <u>Heller</u>, gave assurances that "[n]othing in our opinion

should be taken to cast doubt on longstanding prohibitions on the possession of

firearms by felons and the mentally ill, or laws forbidding the carrying of firearms

in sensitive places such as schools and government buildings, or laws imposing

conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. The

Court in *Heller* explained the Second Amendment was a codification of pre-

existing rights available at common law.  Accordingly, restrictions against groups

at common law were enumerated as presumptively constitutional unless it

contradicts the U.S. Constitution, such as with racial restrictions.  All other

restrictions must survive heightened scrutiny analysis as they affect a fundamental

right. At the ratification of the 14th amendment, which incorporated the Second

Amendment, there were no lifetime bans on firearm possession for conviction of a

misdemeanor. Hawaii's "crime of violence" provision is a product of the modern

legislature and Lautenberg was adopted in 1996. Therefore, neither are

longstanding doctrines of American jurisprudence nor one of the enumerated

historical prohibitions on the bearing of arms. Accordingly, they must be

interpreted to survive heightened scrutiny or the statute fails constitutional muster.

H.R.S. § 134-7, in light of *Heller* and *McDonald* must survive strict scrutiny

and requires the government to bear the burden of producing evidence that

forbidding rehabilitated misdemeanants with a long history of law-abiding conduct

since their conviction from exercising Second Amendment rights serves a

compelling government interest and that the means used (a complete lifetime ban

on exercising the right) is necessary to achieve that interest. *See U.S. v. Chester,* (4

Cir. 2010) 628 F.3d 673; *see also Ezell v. City of Chicago* (7th Cir. 2011) 651 F.3d

684.

If the government cannot produce that evidence, Mr. Fisher should prevail

on his Second Amendment claim because H.R.S. § 134-7 is unconstitutional to the

extent it fails to provide a means for restoration of his right to bear arms rights

after a misdemeanor conviction in order to satisfy Lautenberg or make the "crime

of violence" provision constitutional. This was exactly the reason given by an en

banc panel Seventh Circuit when it upheld a state's application of Lautenberg against a Second Amendment challenge. *See United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010, en banc), cert. denied, *Skoien v. United States*, 2011 U.S. LEXIS 2138 (2011).

In upholding a conviction for 18 U.S.C. § 922(g)(9), the Seventh Circuit emphasized that Mr. Skoien was a recent, multiple offender having been convicted of domestic violence against his wife in 2003 and his fiancé in 2006. Based on these facts, the Court found that he was "poorly situated to contend that the statute creates a lifetime ban for someone who does not pose any risk of further offenses." *Skoien* at 645. In contrast, Mr. Fisher has been a law-abiding citizen since 1997.

The Seventh Circuit's en banc panel also placed great weight on the fact that Lautenberg did not impose a perpetual disqualification for persons convicted of domestic violence. *Skoien* at 644. ("Restoration procedures that address the potential for recidivism and insure that reinstatement of the 'right to keep and bear arms' does not endanger victims or the public, is **essential** to upholding Lautenberg.") *Id.* at 644-645 (emphasis added). This same rationale applies to the crime of violence provision of H.R.S. § 134-7. H.R.S. § 134-7 cannot survive constitutional muster as written; It must be revised to have some mechanism to restore Second Amendment rights for persons convicted of disqualifying misdemeanors. Regardless of the underlying act which led to his conviction, Mr.

Fisher must have his Second Amendment rights restored.  He has not had a

criminal conviction since 1997. To deny him his rights forever would defy the

United States Constitution.

## H.R.S. § 134-2 Violates Procedural Due Process.

The text of the due process clause –"nor shall any State deprive any person

of life, liberty, or property without due process of law" requires procedural

safeguards to accompany substantive choices. U.S. Const. amend. XIV. H.R.S. §

134-2 is the only means by which a law-abiding citizen can own a firearm in his

own home.

> The Fourteenth Amendment protects against the deprivation of
> property or liberty without due process. *See Carey v. Piphus*, 435
> U.S. 247, 259 (1978); *Brady v. Gebbie*, 859 F.2d 1543, 1547 (9th
> Cir. 1988). Courts employ a two-step test to determine whether
> due process rights have been violated by the actions of a
> government official. First, a court must determine whether a
> liberty or property interest exists entitling a plaintiff to due
> process protections. If a constitutionally protected interest is
> established, courts employ a three-part balancing test to determine
> what process is due. *Hewitt v. Grabicki*, 794 F.2d 1373, 1380 (9th
> Cir. 1986). The three-part balancing test set forth in *Mathews v.*
> *Eldridge* examines (1) the private interest that will be affected by
> the official action; (2) the risk of an erroneous deprivation of
> such interest through the procedures used, and the probable value,
> if any, of additional or substitute procedural safeguards; and (3) the
> Government's interest, including the function involved and
> the fiscal and administrative burdens that the additional or
> substitute procedural requirement would entail. *Mathews v.*
> *Eldridge,* 424 U.S. 319, 335 (1976).

*See Young v. State*, Civ. No. 12-00336 HG BMK (D. Haw. Nov. 28, 2012) at 253.

It is settled by a long line of recent decisions of this Court that an ordinance which makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms. In cases such as Mr. Fisher's he suffers from a deprivation of both a liberty and property interest in the use and enjoyment of his firearms, The risk of erroneous deprivation is high as there are no standards for the Chief of Police to determine whether an applicant conviction of H.R.S § 711-1106(1)(a) was violent or simply confrontational. Therefore he has sole discretion to determine whether such persons are qualified to have a firearm license. Moreover, there are a no guidelines that are used to interpret and evaluate evidence, which has previously been held unconstitutional. *See Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958) (citations omitted); *see also FW/PBS* v. *City of Dallas*, 493 U.S. 215, 226 (1990) (plurality opinion); Thus, the statute is unconstitutional. *See Largent v. Texas*, 318 U.S. 418, 422 (1943) (striking ordinance allowing speech permit where mayor "deems it proper or advisable"); *Louisiana v. United States*, 380 U.S. 145, 153 (1965) ("The cherished right of people in a country like ours to vote cannot be obliterated by the use of laws . . . which leave the voting fate of a citizen to the

passing whim or impulse of an individual registrar); *Berger v. City of Seattle*, 569

F.3d 1029, 1042 n. 9 (9th Cir. 2009) (*en banc*) ("Rules that grant licensing officials

undue discretion are not constitutional.").

Furthermore, the language of the statute formulates an unconstitutional

undue burden. As noted above, H.R.S. § 134-2 requires applicants to satisfy the

Chief of Police that they are qualified to own a firearm. In cases such as Mr.

Fisher's, there are no guidelines for the Chief of Police to ascertain whether an

applicant convicted under H.R.S. § 711-1106(1) (a) has engaged in conduct that is

sufficient to bar him from obtaining a permit to own a firearm. Nor are there

standards by which the Chief of Police must judge the evidence by.

Pursuant to H.R.S. § 134-2, the Chief of Police's decision is absolute outside

of seeking review in a court of law.  Because, as discussed above, H.R.S. § 134-2

allows the exercise of a fundamental constitutional right, *i.e.*, the right to bear

arms, to be determined solely by the Chief of Police without any guidance or

restraint in the decision-making process in cases involving people convicted of

H.R.S. § 711-1106(1)(a), an undue and, therefore, unconstitutional burden is

imposed. Further, despite the clear deprivation of liberty and property resulting

from the denial of Mr. Fisher's application, Mr. Fisher has no opportunity to seek

administrative review of the Chief of Police's decision. The Chief of Police's

decision, no matter how seemingly unfair or unfounded is final unless one goes

through the costly process of bringing suit. While the government may bandy

about policy arguments, these are insufficient to prohibit exercise of a fundamental

right "The enshrinement of constitutional rights necessarily takes certain policy

choices off the table. These include the absolute prohibition of [the right to bear

arms]. Undoubtedly some think that the Second Amendment is outmoded in a

society where our standing army is the pride of our Nation, where well-trained

police forces provide personal security, and where gun violence is a serious

problem. That is perhaps debatable, but what is not debatable is that it is not the

role of this Court to pronounce the Second Amendment extinct." *Heller*, 554 U.S.

at 636.

On the other hand, amending the application  by putting in place proper

guidelines to determine whether there is sufficient evidence to preclude a person

from obtaining a firearm would cause little burden on the government which would

alleviate much of the risk of erroneous deprivation. Moreover, putting in place

some form of administrative review would actually save the state and denied

persons money by freeing up our court system and relieving the need for applicants

to hire costly lawyers.

Similarly, simply placing a requirement that there be more defined

guidelines in the process would also have a *de minimus* impact on the

administrative burden of issuing licenses to own. This Court should consider that

the statutes *sub judice* were passed before *Heller* and *McDonald*. *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38 (1936) ("the judicial scrutiny must of necessity take into account the entire legislative process, including the reasoning and findings upon which the legislative action rests"). Thus, the Legislature was under the erroneous assumption that this legislation was not affecting fundamental rights. While these statutes may have passed constitutional muster pre-*Heller*, the legal landscape has changed dramatically. These statutes have not.

Since *Heller* and *McDonald*, however, clearly these laws do affect fundamental rights and, therefore, must comport with due process and the Second Amendment to the United States Constitution. And, because Second Amendment rights are now recognized as fundamental rights that codified ancient pre-existing basic human rights, made "fully" applicable to the states, and the lack of due process safeguards now renders these statutes plainly unconstitutional. The statute is outdated and, in its current form, fails to adequately provide procedural due process. Specifically, the elimination of unconstitutional prohibitions, undue regulations and restrictions, better-defined guidelines for the Chief of Police's decision must now be incorporated into H.R.S. § 134-2.  The Chief of Police is currently vested with sole and unbridled discretion to determine whether an applicant convicted of H.R.S. § 711-1106(1)(a) will be issued a license in cases like Mr. Fisher's.  The application will not issue unless the Chief of Police

"apprais[es] [the] facts, exercise[s] judgment, [or] form[s] an opinion" that the applicants' qualifies. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992).

This impermissible exercise of judgment and formation of opinion is exactly why Mr. Fisher's application was denied. This is a completely arbitrary decision subject to the whim of the Chief of Police. It is, therefore, unconstitutional. *See Largent v. Texas*, 318 U.S. 418, 422 (1943) (striking ordinance allowing speech permit where mayor "deems it proper or advisable"); *Louisiana v. United States*, 380 U.S. 145, 153 (1965) ("The cherished right of people in a country like ours to vote cannot be obliterated by the use of laws . . . which leave the voting fate of a citizen to the passing whim or impulse of an individual registrar); *Berger v. City of Seattle*, 569 F.3d 1029, 1042 n. 9 (9th Cir. 2009) (en banc) ("Rules that grant licensing officials undue discretion are not constitutional.").

There are no established standards for the Chief of Police to determine whether a conviction of H.R.S. § 711-1106(1) (a) rises to the level of a crime of violence and/or satisfies Lautenberg. The Chief of Police has sole discretion to whether an applicant in Mr. Fisher's position is qualified to have a firearm license issued. Accordingly the statute in its current form fails procedural due process.

<u>The City is Liable Under Monell</u>

In order to ward off a suit for municipal liability in a claim brought under 42 U.S.C. §1983, a municipality may raise the Monell Doctrine as a defense. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978). This requires the Plaintiff to show of the proposition that via policy, law, or custom the City and County The doctrine was later refined to require that a municipal officer must have discretion to make decisions, and then either he or another named party must have final review. Meeting these requirements established liability under the *Monell* doctrine. "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority. Pembauer v. Cincinnati, 475 U.S. 469, 483 (1986). The State of Hawaii has given the City via its official, Chief Kealoha, actual authority to establish policy in regards to denial of H.R.S. § 134-2 permits, for person's in Mr. Fisher's position.

Article 9. Authority of Executive Agency to Adopt Rules and Regulations

Sections:

1-9.1 Adoption of rules and regulations.

1-9.2 Format of rules and regulations.

Sec. 1-9.1 Adoption of rules and regulations.

The head of any executive agency whose power or function as prescribed by law directly affects the public, may promulgate rules

and regulations having force and effect of law pursuant to **HRS Chapter 91**, setting forth procedures that are necessary for such agency in dealing with the public concerning such power or function. (Sec. 1-10.1, R.O. 1978 (1983 Ed.))

Sec. 1-9.2 Format of rules and regulations.

(a) The department of the corporation counsel shall prescribe a uniform format for the preparation and publication of rules and regulations of departments and agencies of the city. The uniform format shall provide that each rule or regulation published shall be accompanied by a reference to the authority pursuant to which the rule or regulation has been adopted, the law implemented by the rule or regulation, if any, and the effective date of the rule or regulation. The uniform format shall further provide that whenever possible, applicable law should be incorporated by reference and not be reprinted in the rule or regulation.

*See* Chapter 1 Article 9 of the Revised Ordinances of Honolulu (emphasis added)

Chief Kealoha has established a policy of not adopting specific guidelines in regard to permit's to acquire for persons in Mr. Fisher's circumstances despite being responsible for doing so.   While somewhat counterintuitive, the lack of guidelines to deal with this situation is the primary cause for the civil rights deprivations Mr. Fisher has suffered.  Accordingly, the City is liable under *Monell* due to law and policy.

Moreover, the City via the Chief of Police have adopted a custom of denying permit's to acquire for person's in Mr. Fisher's circumstances.

First, whatever analysis is used to identify municipal policymakers, egregious attempts by local governments to insulate themselves from liability for unconstitutional policies are precluded

by a separate doctrine. Relying on the language of § 1983, the Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage' with the force of law." <u>Adickes v. S. H. Kress & Co</u>., 398 U. S. 144, 398 U. S. 167-168 (1970). That principle, which has not been affected by <u>Monell</u> or subsequent cases, ensures that most deliberate municipal evasions of the Constitution will be sharply limited.

Second, as the Pembaur plurality recognized, the authority to make municipal policy is necessarily the authority to make final policy. 475 U.S. at 475 U. S. 481-484. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).

As established in Mr. Fisher's Amended Complaint, Chief Kealoha has a custom of denying permits to those persons in Mr. Fisher's position. (Doc. No. 31). Moreover, he is the person who has the discretion to issue a permit and final authority to decide whether a permit shall be issued outside of seeking judicial relief. As judicial review can be sought on nearly any issue, it would moot the doctrine altogether if final review was not deemed to be Chief Kealoha's decision. Accordingly, if the City attempts to raise <u>Monell</u> as a defense as to Mr. Fisher's amended complaint it should dismissed as Mr. Fisher's claim establishes all the factors to establish municipal liability.

<u>Conclusion</u>

The burden is on the government to show a citizen is disqualified exercising fundamental rights.  When they cannot, such as here, a citizen must be presumed to be qualified. A government official should never be vested with the power to arbitrarily decide whether a citizen may exercise those rights.  The State of Hawaii has given the City the responsibility to make policy and law. Chief Kealoha has discretion and final review to award permits to acquire. Accordingly, the City cannot raise the Monell Doctrine as an effective defense to municipal liability.

Dated: December  20, 2012 Respectfully Submitted,

By: /s/ Alan Beck
ALAN BECK Esq.
4780 Governor Drive
San Diego, California 92122
(619)971-0414

**Attorney for Amicus Curiae**

**Hawaii Defense Foundation**