Of Counsel:
DAMON KEY LEONG KUPCHAK HASTERT
Attorneys at Law, A Law Corporation
MARK M. MURAKAMI      7342-0
mmm@hawaiilawyer.com
1003 Bishop Street, Suite 1600
Honolulu, HI  96813
Telephone:  (808) 531-8031
Facsimile:   (808) 533-2242

JEFF KOSSEFF          *(pro hac vice)*
PHILLIP A. RUBIN      *(pro hac vice)*
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004

Attorneys for *Amicus Curiae*
**BRADY CENTER TO PREVENT GUN VIOLENCE**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KIRK C. FISHER, | ) CIVIL NO. 11-00589 ACK/BMK |
| Plaintiff, | ) |
| | ) **BRIEF OF *AMICUS CURIAE*** |
| | ) **BRADY CENTER TO** |
| v. | ) **PREVENT GUN VIOLENCE IN** |
| | ) **SUPPORT OF DEFENDANTS** |
| LOUIS KEALOHA, as an individual and | ) |
| in his official capacity as Honolulu Chief | ) |
| of Police; PAUL PUTZULU, as former | ) |
| Honolulu Acting Chief of Police; CITY | ) |
| AND COUNTY OF HONOLULU; | ) |
| HONOLULU POLICE DEPARTMENT | ) |
| and DOE DEFENDANTS 1-50, | ) |
| Defendants. | ) |
| _____ | ) |

**BRIEF OF *AMICUS CURIAE* BRADY CENTER TO
PREVENT GUN VIOLENCE IN SUPPORT OF DEFENDANTS**

## EXHIBIT A

# **TABLE OF CONTENTS**

INTEREST OF *AMICUS* ......................................................................... 1

INTRODUCTION AND LEGAL BACKGROUND ............................................. 1

ARGUMENT ........................................................................................... 3

I.   Individuals Who Were Convicted of Harassment Are Prohibited From Owning Firearms in Hawaii ........................................................... 4

    A.   The Court Should Examine Plaintiff's Actual Crime, Not the Wording of the Predicate Statute ......................................... 5

    B.   Harassment Under Hawaii's Statute Is Categorically a Crime of Violence .................................................................................. 9

II.  Plaintiff Lacks an Interest Protected by Procedural Due Process Because He Is Disqualified from Second Amendment Rights .................... 12

    A.   Plaintiff Is Disqualified from Exercising Second Amendment Rights ................................................................................... 13

    B.   Because Plaintiff Is Disqualified from Second Amendment Rights, He Lacks the Fundamental Interests Necessary to Invoke Procedural Due Process ......................................... 20

III. The Procedures Provided to Plaintiff Comported with Due Process ........... 24

    A.   Due Process is a Flexible, Individualized Inquiry ........................... 24

    B.   Plaintiff Received Significant Process ....................................... 25

    C.   Hawaii's Permitting Statute Is Clearly Defined ........................... 29

    D.   Plaintiff Was Provided with Due Process ................................... 31

CONCLUSION ........................................................................................ 34

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*American Manufacturers Mutual Insurance Co. v. Sullivan*
    526 U.S. 40 (1999)......................................................................21, 22

*Baker v. Kealoha*
    Civ. No. 11-0528 ACK-KSC (D. Haw. Feb. 23, 2012) ......................................1

*Betts v. Tom*
    431 F. Supp. 1369 (D. Haw. 1977)....................................................25

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*
    149 F.3d 971 (9th Cir. 1998) ..........................................................23

*Cleveland Bd. of Educ. v. Loudermill*
    470 U.S. 532 (1985)....................................................................28

*Cnty. of Maui v. Lundborg*
    121 Hawai'i 471, 220 P.3d 1052 (Ct. App. 2009) ...........................................27

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*
    482 F.3d 1157 (9th Cir. 2007) .........................................................10

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*
    No. 09-CV-8011-PCT-PGR, 2010 WL 1452863 (D. Ariz. Apr. 12, 2010).......26

*In re Disciplinary Bd. of Haw. Sup. Ct.*
    91 Hawai'i 363, 984 P.2d 688 (1999) .....................................................27

*District of Columbia v. Heller*
    554 U.S. 570 (2008)..................................................................*passim*

*Enos v. Holder*
    855 F. Supp. 2d 1088 (E.D. Cal. 2012) ..................................................16

*Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*
    452 U.S. 264 (1981)....................................................................32

*Inland Empire Council v. Millis*
    325 U.S. 697 (1945)....................................................................24

*Kuck v. Danaher*
　　600 F.3d 159 (2d Cir. 2010) ........................................................................22, 23

*Lyon v. Farrier*
　　730 F.2d 525 (8th Cir. 1984) ...............................................................24

*Mathews v. Eldridge*
　　424 U.S. 319 (1976)...............................................................*passim*

*McDonald v. City of Chicago, Ill.*
　　130 S. Ct. 3020 (2010).........................................................1, 2, 14

*Mitchell v. W. T. Grant Co.*
　　416 U.S. 600 (1974)...............................................................25

*Morrissey v. Brewer*
　　408 U.S. 471 (1972)...............................................................25

*Pinnacle Armor, Inc. v. United States*
　　648 F.3d 708 (9th Cir. 2011) ...............................................................25, 28

*Piszczatoski v. Filko*
　　840 F. Supp. 2d 813 (D.N.J. 2012)...............................................................18

*Preservation Coal., Inc. v. Pierce*
　　667 F.2d 851 (9th Cir. 1982) ...............................................................26

*Richardson v. Town of Eastover*
　　922 F.2d 1152 (4th Cir. 1991) ...............................................................31

*State v. Craig*
　　826 N.W.2d 789 (Minn. 2013) ...............................................................15

*United States v. Barnes*
　　295 F.3d 1354 (D.C. Cir. 2002).........................................................6

*United States v. Barton*
　　633 F.3d 168 (3d Cir. 2011) ...............................................................16

*United States v. Belless*
　　338 F.3d 1063 (9th Cir. 2003) .........................................................6

*United States v. Carpio-Leon*
   701 F.3d 974 (4th Cir. 2012) ...............................................................15

*United States v. Carter*
   669 F.3d 411 (4th Cir. 2012) ...............................................................31

*United States v. Chavez*
   204 F.3d 1305 (11th Cir. 2000) ..............................................................6

*United States v. Dugan*
   657 F.3d 998 (9th Cir. 2011) ...............................................................16

*United States v. Hayes*
   555 U.S. 415 (2009)....................................................................*passim*

*United States v. Heckenliable*
   446 F.3d 1048 (10th Cir. 2006) ..............................................................6

*United States v. Kavoukian*
   315 F.3d 139 (2d Cir. 2002) ..................................................................6

*United States v. Masciandaro*
   638 F.3d 458 (4th Cir. 2011) ...............................................................18

*United States v. Meade*
   175 F.3d 215 (1st Cir. 1999) .................................................................6

*United States v. Mohr*
   554 F.3d 604 (5th Cir. 2009) ..........................................................10, 12

*United States v. Salerno*
   481 U.S. 739 (1987)..........................................................................32

*United States v. Shelton*
   325 F.3d 553 (5th Cir. 2003) .................................................................6

*United States v. Small*
   494 F. App'x 789 (9th Cir. 2012) ...........................................................15

*United States v. Smith*
   171 F.3d 617 (8th Cir. 1999) .................................................................6

*United States v. Smith*
   329 F. App'x 109 (9th Cir. 2009) ......................................................14

*United States v. Vongxay*
   594 F.3d 1111 (9th Cir. 2010) .............................................14, 15, 17

*United States v. White*
   593 F.3d 1199 (11th Cir. 2010) ......................................................16

*United States v. Yancey*
   621 F.3d 681 (7th Cir. 2010) ..........................................................17

*Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*
   24 F.3d 56 (9th Cir. 1994) ..............................................................21

*White v. DOJ*
   328 F.3d 1361 (Fed. Cir. 2003) .........................................................6

*Wildearth Guardians v. Salazar*
   No. CV-09-00574-PHX-FJM, 2010 WL 3895682 (D. Ariz. Sept. 30, 2010)....26

*Young v. Hawaii*
   911 F. Supp. 2d. 972 (D. Haw. 2012)...............................................31

**Statutes**

18 U.S.C. § 921(a)(33)(A)(ii) ...................................................................6

18 U.S.C. § 922(g) .....................................................................5, 6, 14

H.R.S. § 134-1...............................................................................*passim*

H.R.S. § 134-2..................................................................................29, 30

H.R.S. § 134-7...............................................................................*passim*

H.R.S. § 602-5(a)(3) .........................................................................27

H.R.S. § 632-1...................................................................................27

H.R.S. § 711-1106(1)(a) .......................................................................3

S.C. Code Ann. § 16-3-1700(C) (2005)................................................11

**Other Authorities**

Hawaii Department of the Attorney General, Crime Prevention & Justice Division, *Firearm Registrations in Hawaii, 2012* (Mar. 2013) .........................................29

Emily F. Rothman et al., *Gun Possession Among Massachusetts Batterer Intervention Program Enrollees*, 30 Evaluation Rev. 283 (June 2006)...............9

Garen J. Wintemute, M.D., et al., U. Cal., Davis, Violent Prevention Research Program, *Effectiveness of Denial of Handgun Purchase by Violent Misdemeanants* 2 (May 29, 2002) ........................................................................8

Jacquelyn C. Campbell et al., *Risk Factors for Femicide in Abusive Relationships*: *Results from a Multisite Case Control Study*, 93 Am. J. of Pub. Health 1089, 1090 (2003)...........................................................................................................9

Law Center to Prevent Gun Violence, *Prohibited Purchasers Generally Policy Summary* (May 21, 2012).................................................................................17

Law Center to Prevent Gun Violence, *State Domestic Violence and Guns* (Jan. 3, 2012) .............................................................................................................17

Shannon Frattaroli & Jon S. Vernick, *Separating Batterers and Guns*, 30 Evaluation Rev. 296 (2006).................................................................................9

## INTEREST OF *AMICUS*

*Amicus* Brady Center to Prevent Gun Violence is the nation's largest non-partisan, non-profit organization dedicated to reducing gun violence through education, research, and legal advocacy.  Through its Legal Action Project, the Brady Center has filed numerous briefs *amicus curiae* in cases involving both state and federal gun laws, including cases involving restrictions on the ability of convicted criminals to access firearms.  *See, e.g.*, *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020 (2010); *United States v. Hayes*, 555 U.S. 415 (2009) (citing *amicus* brief of Brady Center); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *Baker v. Kealoha*, Civ. No. 11-0528 ACK-KSC (D. Haw. Feb. 23, 2012) (Kay, J.).  *Amicus* brings a deep perspective to the legal issues raised by this case and has a compelling interest in ensuring that the Second Amendment does not impede reasonable governmental actions to prevent gun violence.

## INTRODUCTION AND LEGAL BACKGROUND

In *Heller*, the Supreme Court held that the Second Amendment protected the right of "law abiding, responsible citizens to use arms in defense of hearth and home."  554 U.S. at 628–29, 635.  At the same time, the Court was careful to note the limitations of its holding, declaring that many longstanding prohibitions on gun possession remained "presumptively lawful," and that certain categories of persons, including but not limited to felons and the mentally ill, could lawfully be

1

"disqualified" from exercising Second Amendment rights. *Id.* at 626–27 & n.26, 635. The Court incorporated the Second Amendment to the states two years later in *McDonald*, 130 S. Ct. at 3046–47, and reaffirmed those limits of the Second Amendment at that time. *Id.*

Just as the Supreme Court approved in *Heller* and *McDonald*, Hawaii prohibits certain categories of persons from exercising Second Amendment rights. Among these are felons, the mentally ill, and those who have been convicted of certain crimes. Hawaii Revised Statutes ("H.R.S.") Section 134-7 provides in relevant part:

> No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

The statute defines "crime of violence" as "any offense, as defined in title 37, that involves injury or threat of injury to the person of another." H.R.S. § 134-1. Hawaii's laws, like those passed in states since the early Republic, protect citizens of the state from becoming victims of gun violence.

This case presents a challenge to the application of those regulations to Plaintiff, who engaged in crimes of violence against his domestic companions

and was convicted of harassment under H.R.S. Section 711-1106(1)(a).  That

statute states:

> A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
> (a) Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact.

For the reasons explained herein, the Court should reject Plaintiff's

challenge.

## ARGUMENT

Plaintiff asserts an as-applied challenge to Hawaii's "permit to acquire"

process for firearms, alleging that his conviction for harassment a decade ago

should not disqualify him under Hawaii's "crime of violence" exclusion.  Plaintiff

specifically alleges that the Honolulu Police Department ("HPD") had no

discretion in determining whether he was qualified for a permit to acquire, (Am.

Compl., DE 31, ¶¶ 39–40), and that Hawaii's gun regulations do not allow chiefs

of police to look beyond the elements of the crime in question to determine if the

applicant engaged in violence, (*id.* ¶¶ 25–28, 60–63).  Plaintiff also alleges that the

permitting process applied to him did not give him sufficient opportunity to

participate in the process and demonstrate his qualification for a permit.  (*Id.*

¶¶ 41–45, 64–70.)

3

The Court should reject these arguments for three reasons.  First, the plain language of Hawaii's "crime of violence" disqualification demonstrates that police departments may examine the underlying facts behind a conviction, and even if not, Plaintiff's crime of harassment is *per se* a crime of violence under the statute. Second, as anticipated by the Supreme Court in *Heller*, Plaintiff's conviction "disqualifies" him from exercising Second Amendment rights, and he cannot assert a procedural due process claim based upon a right he does not possess.  Finally, even if the Court examines the procedures provided to Plaintiff, the two reviews of Plaintiff's application comported with due process.

## I.     INDIVIDUALS WHO WERE CONVICTED OF HARASSMENT ARE PROHIBITED FROM OWNING FIREARMS IN HAWAII

The gravamen of Plaintiff's argument is that Section 134's firearms ban does not apply to him because it is theoretically possible for a court to convict an individual of harassment under Hawaii's statute even if the offense was not violent.  The Court should reject this for two reasons.  First, the language of the harassment statute is not determinative of whether the firearms ban applies to a plaintiff.  The proper inquiry is whether the plaintiff *actually* committed a crime involving violence.  Second, even if Section 134 only applied to criminal statutes that always involve crimes of violence, Plaintiff here still would be prohibited from

owning a firearm because a conviction under Hawaii's harassment statute *always* constitutes a crime of violence.

A.     *The Court Should Examine Plaintiff's Actual Crime, Not the Wording of the Predicate Statute*

The United States Supreme Court already has rejected Plaintiff's claim that a firearms ban only applies if the predicate crime statute contains the same language as does the firearms ban statute.  Instead, the government need only prove that the firearms ban covers the *actual crime* that the individual committed.

The Federal Gun Control Act of 1968 prohibits possession of a firearm by persons convicted of "a misdemeanor crime of domestic violence," 18 U.S.C § 922(g)(9), which is defined as any federal or state misdemeanor that

> has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

*Id.* § 921(a)(33)(A)(ii).

In *United States v. Hayes*, 555 U.S. 415, 421 (2009), the Court held that this restriction does not require that the predicate offense statute specifically state that the offender had a domestic relationship with the victim.  Rather, the Court stated, it is sufficient for the Government to charge and prove that a prior conviction involved a domestic relationship.  *Id.*  This interpretation is consistent

5

with that of nine federal appellate courts.[1]  The Court reached this conclusion for

two primary reasons: (1) the federal firearms ban statute did not require a domestic

relationship as an element of the statute under which the individual was previously

convicted; and (2) practical considerations weigh in favor of a broader

interpretation.

       Both of the Supreme Court's reasons in *Hayes* are equally compelling,

if not more so, in this case.

       1.    Element of the Crime

       In *Hayes*, the Court determined that Congress's decision to use the

word "element" in the singular, rather than plural, "suggests that Congress

intended to describe only one required element."  *Id.*  In other words, the only

required element of the predicate offense statute is "the use or attempted use of

physical force, or the threatened use of a deadly weapon."  18 U.S.C.

§ 921(a)(33)(A)(ii).  Because Section 922(g)(9) and the definition in Section

921(a)(33) do not explicitly require a domestic relationship as an element of the

---

[1] *See Hayes*, 555 U.S. at 420, n.3 (citing *United States v. Heckenliable*, 446 F.3d 1048, 1049 (10th Cir. 2006); *United States v. Belless*, 338 F.3d 1063, 1067 (9th Cir. 2003); *White v. DOJ*, 328 F.3d 1361, 1364–67 (Fed. Cir. 2003); *United States v. Shelton*, 325 F.3d 553, 562 (5th Cir. 2003); *United States v. Kavoukian*, 315 F.3d 139, 142–44 (2d Cir. 2002); *United States v. Barnes*, 295 F.3d 1354, 1358–61 (D.C. Cir. 2002); *United States v. Chavez*, 204 F.3d 1305, 1313–14 (11th Cir. 2000); *United States v. Meade*, 175 F.3d 215, 218–21 (1st Cir. 1999); *United States v. Smith*, 171 F.3d 617, 619–21 (8th Cir. 1999)).

offense, the Court held that the appropriate inquiry is whether the individual *actually* committed a crime involving a domestic relationship.   This inquiry requires an examination of the facts underlying the conviction.

Here, Hawaii Revised Statue Section 134 does not require the predicate offense statute to contain *any* specific elements.   Instead, the statute covers any offense that *involves* the injury or threat of injury to another.   If Hawaii's legislature had intended to limit the applicability of the firearms ban to individuals convicted of specific predicate offense *statutes*, Section 134 would have stated that the predicate offense must contain specific *elements*.   But Section 134 says nothing about the elements of the underlying criminal statute; instead, the firearms restrictions apply if the individual's *actual* crime involved injury or the threat of injury to the person of another.   Thus, the reasoning in *Hayes* applies here just as it did in the context of the federal statute.

Accordingly, *Hayes* requires the Court to examine the facts of the underlying prior conviction to determine whether it was a crime of violence, as defined in Section 134.   Because the district court record does not contain sufficient information about Plaintiff's previous conviction, summary judgment would be inappropriate.

2.      Practical Considerations

In *Hayes*, the Court also concluded that "practical considerations" weigh in favor of its interpretation of the firearms restriction.  Construing the ban to exclude a domestic abuser who was convicted under a generic use-of-force statute that does not designate a domestic relationship as an element "would frustrate Congress' manifest purpose" of preventing convicted domestic abusers from owning firearms.  555 U.S. at 426–27.

Hawaii's firearms ban is even broader than the federal ban at issue in *Hayes*.  Hawaii prohibits people from owning guns if they have been convicted of a felony or *any* crime of violence.   This expansive definition evinces a clear intent to prevent violent criminals from owning firearms.  It would make little sense to enable a violent criminal to evade this broad firearm ban because there is a theoretical possibility that someone could have been convicted of a non-violent crime under the statute.

Indeed, as the Supreme Court held in *Hayes*, a case in which we participated as *amicus*, people who are convicted of violent misdemeanors such as harassment are more likely to use guns to injure or murder others.  *Hayes*, 555 U.S. at 421.  Prohibiting violent misdemeanants from possessing firearms is associated with a decrease in the risk of arrest for new firearm crimes and violent crimes. *See* Garen J. Wintemute, M.D., et al., U. Cal., Davis, Violent Prevention Research

8

Program, *Effectiveness of Denial of Handgun Purchase by Violent Misdemeanants* 2 (May 29, 2002) (Attachment A). The same study showed that risk of arrest was directly related to the individual's number of prior convictions. *Id.* at 41.

Hawaii's harassment statute covers many individuals who committed domestic violence. These offenders are at a particularly high risk of using firearms to harm others. Allowing domestic abusers to possess firearms is correlated with intimate partner female homicide. *See* Jacquelyn C. Campbell et al., *Risk Factors for Femicide in Abusive Relationships*: *Results from a Multisite Case Control Study*, 93 Am. J. of Pub. Health 1089, 1090 (2003) (Attachment B). The presence of a gun in a violent home increases the risk that domestic violence will lead to fatalities. *See* Shannon Frattaroli & Jon S. Vernick*, Separating Batterers and Guns*, 30 Evaluation Rev. 296 (2006) (Attachment C); Emily F. Rothman et al., *Gun Possession Among Massachusetts Batterer Intervention Program Enrollees*, 30 Evaluation Rev. 283 (June 2006) (Attachment D). From 1980 to 2000, 60 percent to 70 percent of batterers who killed their female intimate partners used firearms to do so. *See* Emily F. Rothman et al., *Batterers' Use of Guns to Threaten Intimate Partners*, 60 J. Am. Med. Women's Ass'n 62 (2005) .

      B.    *Harassment Under Hawaii's Statute Is Categorically a Crime of Violence*

Even if the Court were to require the predicate offense statute to contain the elements of a violent crime, Hawaii's firearms ban would apply to

9

people convicted under the harassment statute.  Traditional tools of statutory

interpretation lead to the unambiguous conclusion that Hawaii's definition of

harassment is a crime of violence as a matter of law. The plain language of the

statute strongly supports the application of the firearms ban to individuals who

have been convicted under the Hawaii harassment statute.  *See Consejo de*

*Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1168

(9th Cir. 2007) ("[O]ur starting point is the plain language of the statute.").

Harassment falls under H.R.S. Section 134-1's broad definition of

"crime of violence," which is broadly defined as "any offense, as defined in title

37, that involves injury or threat of injury to the person of another."  H.R.S. § 134-

1.  This definition not only includes offenses that actually injure another person; it

also encompasses offenses that involve the *threat of injury* to the person of

another.  It is impossible to conceive of a scenario in which a victim is not

threatened when an assailant strikes, shoves, kicks or otherwise touches the victim

in an offensive manner.  Any such conduct would fall under the broad definition of

"crime of violence."

A recent Fifth Circuit decision explains why this is the correct

statutory interpretation.  In *United States v. Mohr*, 554 F.3d 604 (5th Cir. 2009),

the defendant was convicted of knowingly possessing ammunition after having

been convicted for a previous felony.   The defendant had previously been

convicted of stalking under a South Carolina statute.[2]  When sentencing the

defendant for his possession of ammunition, the federal district court applied a

sentencing enhancement for individuals who had previously been convicted of

"crimes of violence," which is an offense that "has as an element the use,

attempted use, or threatened use of physical force against the person of another."

U.S. Sentencing Guidelines Manual ("USSG") § 4B1.2.  The Commentary to the

Sentencing Guidelines state that "[c]rime of violence" includes "murder,

manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery,

arson, extortion, extortionate extension of credit, and burglary of a dwelling."  The

defendant contended that because stalking was not among the enumerated offenses

in the Commentary or similar enough in kind and degree, it could not be

---

[2] The South Carolina  statute defines stalking as:

> [A] pattern of words, whether verbal, written, or electronic, or a
> pattern of conduct that serves no legitimate purpose and is intended to
> cause and does cause a targeted person and would cause a reasonable
> person in the targeted person's position to fear:

> (1) death of the person or a member of his family;

> (2) assault upon the person or a member of his family;

> (3) bodily injury to the person or a member of his family;

> (4) criminal sexual contact on the person or a member of his family;

> (5) kidnapping of the person or a member of his family; or

> (6) damage to the property of the person or a member of his family.

S.C. Code Ann. § 16-3-1700(C) (2005).

considered a crime of violence under the sentencing guides.  *Mohr*, 554 F.3d at 609.  The Fifth Circuit rejected this argument and affirmed the sentencing enhancement, concluding that stalking is categorically a crime of violence.  The Fifth Circuit concluded that "words or conduct that are intended to cause and do cause reasonable fear of death, assault, injury etc., pose at least as much risk of physical injury as the 'threatened use of force.'" *Id.* at 610.

In short, the plain language of Hawaii's harassment statute leads to the unambiguous conclusion that the harassment is categorically a "crime of violence" under the state's firearms ban.

## II.    PLAINTIFF LACKS AN INTEREST PROTECTED BY PROCEDURAL DUE PROCESS BECAUSE HE IS DISQUALIFIED FROM SECOND AMENDMENT RIGHTS

Plaintiff argues that the permitting procedures applied to him violated his procedural due process rights, which arise from his right to bear arms under the Second Amendment.  (*E.g.*, Am. Compl., DE 31, ¶¶ 65–66).  The Court should reject this claim for two reasons:  First, because Plaintiff's conviction for harassment disqualifies him from exercising Second Amendment rights, he lacks a protected interest necessary to trigger due process analysis.  Second, even if the Court examines the procedures provided to Plaintiff, those procedures comported with due process.

A.     *Plaintiff Is Disqualified from Exercising Second Amendment Rights*

Procedural due process imposes constraints only on those governmental decisions that "deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Because Plaintiff's procedural due process claim is founded on his assertion of a Second Amendment right, the Court should first examine the nature and extent of that right as it applies to Plaintiff.

The Supreme Court has explained that "the right secured by the Second Amendment is not unlimited."  *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).  The more important distinction for this case, however, is *how* those limits take their form: a person can be "disqualified from the exercise of Second Amendment rights," *id.* at 635, by virtue of individual characteristics and actions, such as a person's mental condition or past criminal conduct, *id.* at 626.  Plaintiff is precisely such a person: having been convicted of a crime of violence, *see supra* Part I, he is "disqualified" from any Second Amendment right.  Lacking such a right, he cannot assert a liberty or property interest in exercising it.

13

1.    The Second Amendment Right Does Not Extend to Certain Categories of Persons

The Supreme Court in *Heller* specifically held that certain types of gun prohibitions remain "presumptively lawful" even after the Court's recognition of the Second Amendment as an individual right.  554 U.S. at 626–27 & n.26.  The Court identified two examples of groups that could lawfully be "disqualified" from the Second Amendment right—felons and the mentally ill—but the Court also stated that its list did "not purport to be exhaustive."  554 U.S. at 626–27 & n.26, 635; *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 3047 (2010) (reaffirming those statements).

The Ninth Circuit has already applied the disqualification concept from *Heller* on several occasions.  In *United States v. Smith*, 329 F. App'x 109 (9th Cir. 2009), the Ninth Circuit relied on *Heller* to reject the appellant's claim that 18 U.S.C. § 922(g)(1)'s prohibition on felon gun ownership violated the Second Amendment.  As the court explained, "[t]he Supreme Court expressly excluded felons from its holding that the Second Amendment confers a federal individual right to keep and bear arms."  *Id.* at 110.[3]  The Ninth Circuit was even clearer in

---

[3] The appellant in *Smith* failed to raise his challenge to 18 U.S.C. § 922(g)(1) until the appeal, and therefore the review was for plain error.  329 F. App'x at 110.  The Ninth Circuit reexamined the issue, coming to the same conclusion, in *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010).

14

*United States v. Vongxay*, 594 F.3d 1111, 1119 (9th Cir. 2010), where the court explained that "the right established by *Heller* does not apply to felons."  *See also United States v. Small*, 494 F. App'x 789, 791 (9th Cir. 2012) ("The Second Amendment 'guarantee[s] the individual right to possess and carry weapons in the case of confrontation,' but this right does not extend to 'felons and the mentally ill[.]'" (quoting *Heller*) (alterations in original)).

In so holding, the Ninth Circuit has joined other courts of appeals in recognizing that *Heller* distinguishes between "individuals who have a fundamental right to bear arms" and those, such as felons, who are "categorically different" and lack the right.  *Vongxay*, 594 F.3d at 1114–16 (upholding federal ban on felon gun ownership based on the "integral" language in *Heller* regarding "presumptively lawful" prohibitions); *see also United States v. Carpio-Leon*, 701 F.3d 974, 977 (4th Cir. 2012) ("[N]ot every person has the right to possess a firearm."); *State v. Craig*, 826 N.W.2d 789, 794 (Minn. 2013) (collecting cases showing that "[a]ll federal circuit courts that have considered facial challenges [to felon-in-possession statutes] have rejected them, concluding that a felon retains no Second Amendment right to possess a firearm").[4]

_____

[4] As the Supreme Court of Minnesota recognized in *Craig*, the First, Third, Fourth, and Seventh Circuits have addressed as-applied challenges by felons claiming their conviction does not disqualify them from Second Amendment rights.  826 N.W.2d (continued…)

The list of persons excluded from Second Amendment rights is not limited to felons and the mentally ill. *Heller*, 554 U.S. at 626–27 & n.26 (stating that the Court's list of "presumptively lawful" regulations "does not purport to be exhaustive"). That list naturally includes other individuals who are more likely to commit violent acts. *E.g.*, *United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011) (upholding federal prohibition on firearm ownership and transfer by habitual drug users based on likeness to the danger posed by felons and the mentally ill possessing firearms); *Enos v. Holder*, 855 F. Supp. 2d 1088, 1097–99 (E.D. Cal. 2012) (finding firearm prohibition on domestic-violence offenders "presumptively lawful"); *United States v. White*, 593 F.3d 1199, 1205–06 (11th Cir. 2010) (upholding similar prohibition).

The basis for excluding violent misdemeanants can be found in the same historical evidence relied upon by the Court in *Heller*. As the Third Circuit has explained, "[d]ebates from the Pennsylvania, Massachusetts and New Hampshire ratifying conventions, which were considered 'highly influential' by the Supreme Court in *Heller*, 554 U.S. at 604, also confirm that the common law right to keep and bear arms did not extend to those who were likely to commit violent offenses." *United States v. Barton*, 633 F.3d 168, 173–74 (3d Cir. 2011) (internal parallel

at 794–95. Those courts utilized different approaches, but in all cases found that a link between the conviction and violence was disqualifying. *See id.*

citation omitted); *Vongxay*, 594 F.3d at 1118 (noting agreement among historical scholars that the Second Amendment does not prohibit disarming "unvirtuous citizens" (internal quotation marks and citations omitted)); *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010) (quoting with approval *Vongxay*'s "unvirtuous citizens" language).

Here, Hawaii's prohibition on gun ownership by a person convicted of "any crime of violence," H.R.S. 134-7(b), fits closely with the historical analysis and reasoning from *Heller*. Such a limitation is neither new nor exceptional; many states have such prohibitions. *See generally* Law Center to Prevent Gun Violence, *State Domestic Violence and Guns* (Jan. 3, 2012), *available at* http://smartgunlaws.org/category/state-domestic-violence-and-guns (maintaining a state-by-state listing of state prohibitions on gun ownership, including prohibitions on ownership for domestic violence and other misdemeanors). As of August 2012, Vermont was the *only* state not prohibiting firearm ownership by some category of individuals. Law Center to Prevent Gun Violence, *Prohibited Purchasers Generally Policy Summary* (May 21, 2012), *available at* http://smartgunlaws.org/prohibited-purchasers-generally-policy-summary. Twenty-four states have some form of prohibition on those convicted of certain misdemeanors. *Id.*

In addressing these prohibitions, courts nationwide have recognized the unique danger in "formulating the right to bear arms too broadly." *E.g.*, *Piszczatoski v. Filko*, 840 F. Supp. 2d 813, 824 (D.N.J. 2012). Just as the "risks associated with a judicial error in discouraging regulation of firearms carried in public" counsel considerable judicial caution, preventing states from keeping guns away from violent criminals risks tragedy that cannot be remedied after the fact. *See id.* at 829. Therefore, the Court should be reluctant here to read *Heller's* conception of the Second Amendment right too broadly—or its explicit limitations too narrowly. *See United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) ("This is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights."). Hawaii's prohibition on violent offenders, like many others nationally and historically, lawfully disqualifies persons such as Plaintiff from Second Amendment rights.

For this Court's procedural due process analysis, *Heller* and cases interpreting it provide two key lessons: First, there are categories of persons who may lawfully be "disqualified" from exercising Second Amendment rights. Second, felons and the mentally ill are examples of such persons, and including other violent offenders fits naturally with *Heller*'s historical and functional analysis, as well as that of Ninth Circuit cases and others post-*Heller* decisions.

18

2.    Plaintiff's Disqualification from Second Amendment Rights Is
      Distinct from His Permit Rejection

Hawaii's gun regulations are consistent with the understanding that persons

who have committed or are more likely to commit violent offenses have long been,

and can continue to be, excluded from Second Amendment rights in the same way

as felons and the mentally ill.  Hawaii has implemented that concept in its laws by

excluding those who commit "any crime of violence" from exercising Second

Amendment rights.  H.R.S. § 134-7(b).  The application of that statute to Plaintiff

is at issue in this case, *see* Part I, and Plaintiff has confirmed through his pleadings

and statements of counsel that he is "not trying to get a particular statute declared

unconstitutional."  (Tr. of Hearing on Pl's Mem. for Prelim. Inj., DE 62, June 14,

2012, 584:16–20.)  Instead, his challenge is to the application of Hawaii's

permitting and gun regulation statutes (as well as the Lautenberg Amendment) to

him in this instance.  As explained in Part I, however, Plaintiff's harassment

conviction is properly understood as a crime of violence.  That conviction means

Plaintiff is "disqualified from the exercise of Second Amendment rights."  *Heller*,

554 U.S. at 635.

Importantly, even though the Honolulu Police Department recognized

Plaintiff's disqualification in rejecting his application for a permit to acquire,

Plaintiff's disqualification stems not from any adjudication by police but rather

from Plaintiff's harassment conviction in a court of law ten years prior.  This

distinction can be observed in the statutory language of H.R.S. § 134-7(b), which

prohibits persons convicted of "any crime of violence" to "own, possess, or control

any firearm or ammunition therefor."  Violation of that section, which is separate

from the permitting section, is a criminal offense.  H.R.S. § 134-7(g).  Notably,

§ 134-7(g) does not require for conviction any prior adjudication or determination

that a person meets the prohibitive criteria of § 134-7(b), nor does it require that a

person have sought and been denied a permit from their chief of police under

§ 134-2.  Plaintiff's disqualification for a crime of violence occurred when he was

convicted of a crime of violence, *see supra* Part I; HPD did not enact a new

disqualification when reviewing Plaintiff's permit application.[5]

> **B.**     *Because Plaintiff Is Disqualified from Second Amendment Rights, He Lacks the Fundamental Interests Necessary to Invoke Procedural Due Process*

Plaintiff's disqualification from exercising Second Amendment rights

controls the procedural due process analysis because Plaintiff's due process claim

---

[5] That HPD returned Plaintiff's firearms to him after he completed his probation for the harassment conviction complicates matters factually, but not legally.  The record does not reveal whether HPD took the Family Court's order to categorically require return of the weapons, found Plaintiff qualified to bear arms, or simply failed to examine the issue at all.  In any case, Plaintiff's disqualification stemmed from the harassment conviction, and no HPD action or inaction can change that status.

is predicated on the infringement of that right.  For that reason, if the Court agrees

that Plaintiff is disqualified from gun ownership, the Court should reject Plaintiff's

procedural due process claim as lacking the requisite liberty or property interest.

In addressing a procedural due process claim, courts will only examine

governmental actions that "deprive individuals of 'liberty' or 'property' interests

within the meaning of the Due Process Clause of the Fifth or Fourteenth

Amendment." *Mathews*, 424 U.S. at 332.  The interest analysis, therefore, acts as a

threshold inquiry; if the Court finds that Plaintiff has failed to show the deprivation

of a liberty or property interest, the analysis need go no further.  *See, e.g.*,

*Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir.

1994).

Here, Plaintiff's disqualification from exercising the Second Amendment

right undercuts any claim to a protected liberty or property interest.  Plaintiff's

asserted liberty and property interests both lay in the exercise of a right that he was

disqualified from exercising long before the HPD denied Plaintiff's permit

application.  The Supreme Court has examined a similar situation before, where a

precedent determination prevents the invocation of a fundamental interest.  In

*American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40 (1999),

the Supreme Court found no property interest in the rejections of respondents'

workers compensation medical claims.  The Court observed that the state law

granting a right to reimbursement of medical expenses was expressly limited to

"reasonable" and "necessary" medical treatment, and the private insurer withheld

payment on account of the treatments not being reasonable and necessary.  *Id.* at

60–61.  To establish a property interest in the payment of workers compensation

benefits, the Court said, the respondents would not only need to prove that the

employer was liable for the work-related injury but also that "the particular

medical treatment at issue is reasonable and necessary."  *Id.* at 61.  Only then

would a property interest in the reimbursements attach, triggering a procedural due

process analysis.

     So too here.  Plaintiff would need to prove he is not disqualified from the

right to bear arms before he can challenge the permitting process.  He cannot do so,

*see* Part I, and because Plaintiff's disqualification from Second Amendment rights

existed before and is separate from the HPD's decision to deny Plaintiff's permit to

acquire, it prevents Plaintiff from relying on a constitutional right to which he is

not entitled.  Because he lacks a Second Amendment right, Plaintiff also lacks a

protected interest.[6]

---

[6] This conclusion is not at odds with the Second Circuit's decision in *Kuck v. Danaher*, 600 F.3d 159 (2d Cir. 2010), where the government conceded that the
(continued…)

In its Order Granting Preliminary Injunction, the Court "observe[d] that Defendants' actions not only impacted Plaintiff's property interests with respect to future firearm ownership, but also denied him of the enjoyment of property that he already owned."  (Order Granting Pl.'s Mot. for Prelim. Inj., DE 35, at 28.) Plaintiff's Amended Complaint, however, details no kind of seizure or takings claim independent of his Second Amendment claim, and Plaintiff has not provided evidence on the nature, value, status, and quantity of the weapons he is said to have delivered to his wife in response to the permit denial.  Procedural due process requires a plaintiff to demonstrate deprivation of a *constitutionally protected* property interest.  *E.g.*, *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) (requiring that Plaintiff "first establish that he possessed a 'property interest' that is deserving of constitutional protection").  For that reason, it was Plaintiff's burden to specifically allege and explain what his property right is and how it is constitutionally protected distinct from his Second Amendment claim.  He has not done so.  In any event, Plaintiff's lack of a Second Amendment right defeats any property interest as well, because Plaintiff does not have a property interest in possessing property he is legally banned from possessing.  Plaintiff can claim no more entitlement in the possession of a firearm

---

appellant had a liberty interest under the Connecticut Constitution.  Defendants here have made no such concession.  *See id.* at 164.

than he can in the illegal possession of a controlled substance or other contraband. *See, e.g.*, *Lyon v. Farrier*, 730 F.2d 525, 527 (8th Cir. 1984) ("Because the property was contraband, [the prisoner] cannot seriously argue that he had a protected property interest in it.").

Plaintiff's status as a violent offender disqualifies him from Second Amendment rights, and because Plaintiff's asserted liberty and property interests rely on that right, procedural due process does not attach. For that reason, the Court's analysis need go no further.

## III.   THE PROCEDURES PROVIDED TO PLAINTIFF COMPORTED WITH DUE PROCESS

Even if the Court examines the permitting procedures provided to Plaintiff, those procedures comported with due process. Plaintiff received two separate reviews of his permit application under two different police chiefs, including a prompt review commenced after Plaintiff's counsel provided detailed legal argument to the HPD. These procedures, balanced with Hawaii's legitimate and important interest in the efficient and safety-conscious administration of its permitting laws, demonstrate that Hawaii has complied with due process.

### A.   *Due Process is a Flexible, Individualized Inquiry*

The requirements of procedural due process are "not technical, nor is any particular form of procedure necessary." *Inland Empire Council v. Millis*, 325

U.S. 697, 710 (1945); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 610 (1974).

Instead, procedural due process is a "flexible" concept that varies to meet the

"individual requirements of each situation." *Betts v. Tom*, 431 F. Supp. 1369, 1374

(D. Haw. 1977) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  The

appropriateness of the procedures is related to the nature of the case at hand.  *See*

*Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716–17 (9th Cir. 2011).

For this reason, procedural due process does not always require a full

evidentiary hearing, and courts may uphold presentation of evidence in written

form, particularly when factors such a witness credibility are not relevant to the

inquiry.  *See id.*  "All that is necessary is that the procedures be tailored, in light of

the decision to be made, to the capacities and circumstances of those who are to be

heard, to insure that they are given a meaningful opportunity to present their case."

*Mathews*, 424 U.S. at 349 (internal quotation marks and citation omitted).  Here,

Plaintiff had a meaningful opportunity to present his case.

 B. *Plaintiff Received Significant Process*

The individualized nature of due process analysis fits well with Plaintiff's

acknowledgement that he is only challenging the procedures as applied to him.

*See supra* Part II.A.2.[7]  Plaintiff is suggesting that the procedures provided to him were minimal and insufficient.  Not so.  Plaintiff received two separate reviews and had the opportunity to provide legal argument from counsel supporting his claim.

First, Plaintiff received a letter in response to his permit application notifying him that HPD had determined he was disqualified from firearm ownership under H.R.S. § 134-7.  That letter encouraged Plaintiff to contact Sgt. Vivian Hee with any questions about his denial and provided a phone number to contact Sgt. Hee.

Second, Plaintiff or his counsel then discussed the matter with Sgt. Hee and others at HPD.  (Pl's Concise Statement of Facts Supp. Mot. for Summ. J., Ex. 3, DE 78-5).  These communications provided Plaintiff with the additional details and

---

[7] The Hawaii Defense Foundation ("HDF"), *amicus* on behalf of Plaintiff, makes substantially broader claims, attacking the constitutionality of Hawaii's permitting statutes as a whole.  (*E.g.*, HDF Br., DE 73, at 21, 25.)  An *amicus*, however, is not party to a case and may not make its own independent claims.  *C.f.*, *Preservation Coal., Inc. v. Pierce*, 667 F.2d 851, 861–62 (9th Cir. 1982) (rejecting amicus curiae's attempt to raise an issue not appealed by the appellant); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. 09-CV-8011-PCT-PGR, 2010 WL 1452863, at *2 (D. Ariz. Apr. 12, 2010) (noting that while *amicus* may address positions not raised by the parties, *amicus* "is not permitted to expand the scope of the current proceedings"); *Wildearth Guardians v. Salazar*, No. CV-09-00574-PHX-FJM, 2010 WL 3895682, at *1 (D. Ariz. Sept. 30, 2010) ("[W]e consider an *amicus* brief only insofar as it is helpful to understand the parties' claims.").  If HDF wished to make a facial challenge, it should have filed its own suit or attempted to intervene.

reasoning behind HPD's decision, as well as the opportunity to ask questions about the denial and provide informal rebuttal information.

Finally, in addition to the initial application process and subsequent conversations, Plaintiff received a separate and subsequent review of his application, conducted by a different police chief.  Plaintiff's counsel sent on August 21, 2010, a detailed memorandum to the Chief of Police contesting HPD's denial of Plaintiff's application and explaining the legal basis by which Plaintiff believed he was entitled to a permit.  (*Id.*, Ex. 4, DE 78-6.)  On September 29, 2010, the new police chief, Chief Kealoha, responded personally by confirming that HPD had reviewed Plaintiff's files in response to his letter and still stood by the revocation determination.  (*Id.*, Ex. 5, DE 78-7.)  As explained in Defendants' Brief, a person denied a permit can always reapply, at no additional charge, and he or she may submit further information at that time to address problems in the previous application.  HPD will then reevaluate its prior determination, considering any additional information submitted by the applicant.  Plaintiff here received reevaluation based on the additional information provided in his August 2010 letter.[8]

_____

[8] Plaintiff also had state law remedies he neglected to pursue: the Hawaii Supreme Court has jurisdiction, under H.R.S. § 602-5(a)(3), to require administrative officers such as chiefs of police to properly perform their ministerial duties. (continued…)

These procedures afforded Plaintiff a hearing "appropriate to the nature of the case." *Pinnacle Armor*, 648 F.3d at 717 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (emphasis omitted)).  Like the company in *Pinnacle Armor*, Plaintiff here had the opportunity to submit evidence supporting his claim that HPD had erred in its disqualification determination, and even though "judges . . . tend to favor the kind of hearings that are familiar to [them]," courts have recognized that, particularly when witness credibility is not an issue, "written submissions" can be an appropriate form of process. *Id.* at 717.  Plaintiff here had ample opportunity to supplement his original application with evidence and legal argument to support his claim.  Plaintiff, therefore had "an adequate opportunity to be heard, even if no formal administrative hearings took place." *Id.*

---

Plaintiff would have needed to argue that his claim was "clear and certain," that the chief of police's duty in issuing permits is "ministerial and so plainly prescribed as to be free from doubt," and that "no other remedy is available." *In re Disciplinary Bd. of Haw. Sup. Ct.*, 91 Hawai'i 363, 371, 984 P.2d 688, 696 (1999).  As Plaintiff essentially makes those claims here, seeking a writ of mandamus from the Hawaii Supreme Court would have provided yet another review of Plaintiff's permit revocation.  Plaintiff might also have sought a declaratory judgment under H.R.S. § 632-1.  *See Cnty. of Maui v. Lundborg*, 121 Hawai'i 471, 220 P.3d 1052 (Ct. App. 2009) (addressing a declaratory judgment issued to City of Maui declaring police chief's decision to deny a permit to acquire was proper, and reversing on a technical defect that the lower court issued the declaratory judgment on a fact not in contention).

C.      *Hawaii's Permitting Statute Is Clearly Defined*

*Amicus* for Plaintiff, the Hawaii Defense Foundation ("HDF"),  accuses

Hawaii of having a permitting regime that subjects constitutional rights to the

"uncontrolled will" of the chiefs of police, (HDF Br., DE 73, at 17), who exercise

"unbridled discretion" over the process, (*id.* at 2), and lack guidelines in making

their decisions.  Yet again, a closer look reveals that Hawaii's chiefs of police

exercise little discretion over permits to acquire.  They apply clear statutory criteria

and reject only those applicants who are disqualified under the specific

requirements of Hawaii law.  That is precisely what occurred with Plaintiff's

application.

As Plaintiff himself has explained, "[s]o long as an applicant meets the

objective criteria detailed in H.R.S. §§ 134-2 and 134-7, the permit must be

issued."  (Am. Compl., DE 31, ¶ 40; *see also* Pl.'s Mot. for Prelim. Inj., DE 18-2,

at 14).  This is reflected not only in the low denial rate for permits to acquire—only

1 percent in 2012—but also in the fact that Hawaii's police departments are able to

report the specific offenses or other statutory reasons leading to each permit denial.

*See* Hawaii Department of the Attorney General, Crime Prevention & Justice

Division, *Firearm Registrations in Hawaii, 2012* 9–10 (Mar. 2013), *available at*

http://ag.hawaii.gov/cpja/files/2013/03/Firearm-Registrations-2012.pdf.  Instead of

applying "unbridled discretion" to their review of firearm applications, Hawaii's

29

chiefs of police apply their expert understanding of the facts underlying police investigations and reports to the criteria specified in Hawaii's permitting statutes. As the Crime Prevention & Justice Division data show, if an applicant is not disqualified under the statutory exclusions, he or she is issued the permit.

The statutory criteria applied by the chiefs of police are clear and applicable. A U.S. citizen qualifies for a permit if he or she 1) is at least twenty-one years of age, 2) has completed an approved firearms safety course, 3) has completed the necessary application and waiver forms and filed the fee necessary to conduct the background investigation, and 4) is not disqualified under H.R.S. § 134-7.  H.R.S. §§ 134-2, 134-7.  Section 134-7, in turn, disqualifies fugitives from justice and those prohibited from firearms under federal law, § 134-7(a), persons suffering from specified categories of mental disorders, § 134-7(c), and those indicted for or convicted of a felony, "any crime of violence," or an illegal drug sale, § 134-7(b).[9]

"Crime of violence," which itself provides guidance, is further defined in statute as "any offense, as defined in title 37, that involves injury or threat of injury to the person of another."  H.R.S. § 134-1.  Hawaii's permitting statute therefore provides the chiefs of police with significant guidance on how they must apply

---

[9] Sections 134-7(d) & (e) provides limitations on certain minors and persons under twenty-five years old convicted in Family Court, and Section 134-7(f) provides rules regarding persons under a restraining order.

their expertise to the clear requirements of the permitting laws. These criteria were applied to Plaintiff in this case.

### D.    *Plaintiff Was Provided with Due Process*

Plaintiff cited, but did not apply in any detail, the Supreme Court's three-factor test from *Mathews v. Eldridge*. Doing so demonstrates that the procedures provided to Plaintiff satisfy procedural due process. The *Mathews* test instructs courts to weigh "the private interest that will be affected by the official action," the "risk of an erroneous deprivation" and probable value of additional procedures, and the "Government's interest, including the function involved" and the burden of additional process. 424 U.S. at 334–35.

*Private Interest.* Plaintiff's interest—if he has any interest at all, *see* Part II—is minimal due to Plaintiff's reliance on the Second Amendment for it. Even if the Court determines that Plaintiff still retains some right to bear arms cognizable under procedural due process, that right is at least reduced for Plaintiff due to his criminal conviction. *E.g.*, *Young v. Hawaii*, 911 F. Supp. 2d 972, 988 (D. Haw. 2012) ("The holding in *Heller* is that the 'core' Second Amendment right is that of '*law-abiding, responsible* citizens to use arms in defense of hearth and home." (quoting *Heller*, 554 U.S. at 635–36) (emphasis added)); *United States v. Carter*, 669 F.3d 411, 416 (4th Cir. 2012) (same). Plaintiff's interest is further reduced if the Court determines that Plaintiff has only a property interest untied to any

31

exercise of constitutional rights.  *See, e.g.*, *Richardson v. Town of Eastover*, 922

F.2d 1152, 1159 (4th Cir. 1991) ("[W]hen the property interest that is subject to the

deprivation is of minor value, fairness requires a less formal hearing.").

   *Accuracy of Procedures.*  Plaintiff notably does not suggest how Hawaii's

permitting process produces errant results, other than his statutory argument, *see*

Part I, and his assertion that he should have had additional administrative review.

(*E.g.*, Pl.'s Mem. in Supp. of Mot. for Summ. J., DE 77-1, at 11–12.)  Hawaii's

decision to use police departments, whose personnel have access to and expertise

in interpreting police reports, allows the departments to properly and efficiently to

understand whether applicants have committed an offense involving "injury or

threat of injury to the person of another."  H.R.S. § 134-1.  Plaintiff has not

attempted to explain how Hawaii's police departments are applying its clear

standard erroneously, and there is no evidence that such is occurring.

   *The Government's Interest.*  Protection of public safety is a "paramount

governmental interest."  *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*,

452 U.S. 264, 300 (1981); *United States v. Salerno*, 481 U.S. 739, 750, 754 (1987)

(recognizing government's "compelling" interest in "preventing crime").  This

interest necessitates prompt review and decision, as a permit denial also requires

the applicant to return any firearms currently in his possession.  Adding additional

layers of process would delay the removal of firearms from those who have been determined to be a threat to public safety.  Such procedures would also burden Hawaii's "scarce fiscal and administrative resources," *Mathews*, 424 U.S. at 348, even though Plaintiff has not shown that the procedures applied to him were likely to produce error.

*        *        *

At its most basic level, due process simply requires that a person be provided an opportunity to be heard "at a meaningful time and in a meaningful manner."  *See Mathews*, 424 U.S. at 333 (internal quotation marks and citations omitted).  Here, Plaintiff was given notice that HPD had found him disqualified from firearm ownership, given an understanding of the basis for the disqualification, and then given the opportunity to present his objections and arguments in response, leading to a reevaluation of his application.  In light of Plaintiff's diminished (if any) constitutional interest due to his harassment conviction, the paucity of evidence demonstrating that Hawaii's procedures led to erroneous deprivation, and the important governmental interests in protecting public safety and conserving resources, the Court should conclude that Plaintiff was provided sufficient process here.

33

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motions for

summary judgment and permanent injunction.

DATED: Honolulu, Hawaii, July 22, 2013.


DAMON KEY LEONG KUPCHAK HASTERT
and COVINGTON & BURLING LLP


_____
MARK M. MURAKAMI
JEFF KOSSEFF
PHILLIP A. RUBIN
Attorneys for *Amicus Curiae*
**BRADY CENTER TO PREVENT GUN VIOLENCE**