DONNA Y. L. LEONG, 3226
Corporation Counsel

D. SCOTT DODD, 6811
Deputy Corporation Counsel
Department of the Corporation Counsel
City and County of Honolulu
Honolulu Hale, Room 110
530 South King Street
Honolulu, Hawai'i  96813
Telephone: (808) 768-5129
Facsimile: (808) 768-5105
E-mail address:  dsdodd@honolulu.gov

Attorneys for City Defendants
LOUIS KEALOHA and the
CITY AND COUNTY OF HONOLULU

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KIRK C. FISHER, | CIVIL NO. CV11 00589 ACK-BMK |
| | (Other Civil Action) |
| Plaintiff, | |
| | |
| vs. | DEFENDANTS LOUIS KEALOHA |
| | AND THE CITY AND COUNTY OF |
| LOUIS KEALOHA, as an individual | HONOLULU'S MEMORANDUM IN |
| and in his official capacity as Honolulu | OPPOSITION TO PLAINTIFF KIRK |
| Chief of Police; PAUL PUTZULU, as | C. FISHER'S MOTION FOR |
| an individual and in his official capacity | SUMMARY JUDGMENT AND |
| as former Honolulu Acting Chief of | MOTION FOR PERMANENT |
| Police; CITY AND COUNTY OF | INJUNCTION; CERTIFICATE OF |
| HONOLULU; HONOLULU POLICE | SERVICE |
| DEPARTMENT and DOE | |
| DEFENDANTS 1-50, | |
| | Hearing: |
| Defendants. | |

```
)  Date:  August 12, 2013
)  Time:  10:00 a.m.
)  Judge:  Honorable. Alan C. Kay
)
)  Trial Date:  None Set
)  Judge:  Honorable Alan C. Kay
)
_____ )
```

**DEFENDANTS LOUIS KEALOHA AND THE CITY
AND COUNTY OF HONOLULU'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF KIRK C. FISHER'S MOTION FOR SUMMARY JUDGMENT
AND MOTION FOR PERMANENT INJUNCTION**

Defendants LOUIS KEALOHA (hereinafter "Kealoha") and the CITY AND COUNTY OF HONOLULU (hereinafter collectively referred to as "Defendants" or "City Defendants"), by and through their attorneys Donna Y. L. Leong, Corporation Counsel Designate, and D. Scott Dodd, Deputy Corporation Counsel, hereby respectfully submit their Memorandum in Opposition to Plaintiff Kirk C. Fisher's ("Plaintiff") Motion for Summary Judgment, filed on February 25, 2013 ("Plaintiff's motion")(Doc. 77), as well as Plaintiff's Motion for Preliminary Injunction, filed on February 25, 2013 (Doc. 75).

I.   INTRODUCTION

On June 29, 2012, the Court entered its Order Granting Plaintiff Kirk C. Fisher's Motion for a Preliminary Injunction ("the June 29, 2012 Order")(Doc. 35). In that Order, the Court granted Plaintiff's Motion for a Preliminary Injunction, and ordered Defendant Kealoha to rescind the prior denial of Plaintiff's permit to

acquire firearms and to issue a permit authorizing Plaintiff to acquire firearms. Plaintiff now has filed motions for a preliminary injunction and for summary judgment.  Because issues of fact exist as to whether Plaintiff's criminal conviction for Harassment under Sec. 711-1106(a)(1), Hawaiʻi Revised Statutes ("H.R.S.") prohibits him from owning or possessing firearms, Defendants request that this Court deny both of Plaintiff's motions, and, pursuant to LR 56.1(i), Defendants hereby request summary judgment in their favor against Plaintiff on his claims.

In addition, Defendants also incorporate by reference arguments made in the Amicus Curiae brief of the Brady Center to Prevent Gun Violence, filed on July 22, 2013, and for the reasons therein stated request that this Court deny Plaintiff's motions as the language of Hawaii's "crime of violence" disqualification demonstrates that police departments may examine the underlying facts behind a conviction, and even if not, Plaintiff's conviction of the crime of Harassment is per se a crime of violence under the statute.  Next, Plaintiff's conviction "disqualifies" him from exercising Second Amendment rights, and he cannot assert a procedural due process claim upon a right he does not possess.  Lastly, even if the Court finds that Plaintiff is not "disqualified" from exercising Second Amendment rights, the Defendants provided Plaintiff with sufficient procedural due process.

II.     ARGUMENT

In its June 30, 2012 Order, this Court found that the offense of harassment as defined by HRS §711-1106(1)(a) is not *necessarily* a "crime of violence" as

defined in HRS §134-7 and therefore does not *statutorily* disqualify Plaintiff from the ownership, possession or control of a firearm.  The City Defendants posit that even if Plaintiff is not statutorily disqualified from firearms ownership or possession, if analyzed under a modified categorical approach, the Court can and should look at evidence other than the conviction, to determine whether the underlying conduct was of a violent nature.  In the present case, Plaintiff's conviction of harassment included violent behavior by Plaintiff involving the use of physical force against his wife and daughter, and should serve to ban him from firearm ownership under H.R.S. § 134-7.

Further, Plaintiff was provided sufficient procedural due process in the review and denial of his firearms permit application, and was provided a full reconsideration of his application upon his submission of a letter from his attorney requesting that the Defendants grant Plaintiff's permit application.

> A. Evidence from the Criminal Case against Plaintiff Supports the City Defendants' Position that Plaintiff's Conviction was for a Crime of Violence
>
>> 1. *The Court Should Examine Plaintiff's Actual Crime*

The federal Gun Control Act of 1968 prohibits possession of a firearm by persons convicted of "a misdemeanor crime of domestic violence."  "[A] 'misdemeanor crime of domestic violence' means an offense that is a misdemeanor, [and] has, as an element, the use of force and was committed by a person with the requisite relationship." United States v. Belless, 338 F.3d 1063,

1066 (9th Cir. 2003)." "[I]n the context of 18 U.S.C. § 16(a), which defines a 'crime of violence' as 'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" United States v. Nobriga, 474 F.3d 561, 564 (9th Cir. 2006); *see also* United States v. Griffith, 455 F.3d 1339, 1342 (11th Cir.2006) (the plain meaning of "physical force," for the purposes of § 921(33)(A)(ii), is "[p]ower, violence or pressure directed against another person's body"); United States v. Nason, 269 F.3d 10, 16 (1st Cir.2001) (characterizing "physical force," for the purposes of § 921(33)(A)(ii), as "power, violence, or pressure directed against another person's body").

Plaintiff was convicted of Harassment under HRS § 711-1106(1)(a), which provides in pertinent part:

> A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
> (a)  **Strikes, shoves, kicks**, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact…

*See*, HRS § 711-1106 (emphasis added).  Unlike the other subsections of Harassment, subsection (1)(a) involves *actual* offensive physical contact in the form of a strike, shove, kick or touch, or other offensive physical contact.  H.R.S. § 711-1106(1)(a).  While courts have held that *de minimis* physical contact or force is not sufficient to provide a precursor to a firearms ban under the Lautenberg

Amendment,[1] the Court (and therefore a municipal entity reviewing an application to acquire a firearms permit) is not limited to merely the statutory language in determining if the underlying conviction constitutes a "crime of violence."

In <u>United States v. Hayes</u>, 526 F.3d 674 (10th Cir. 2008), the court employed a "categorical approach" to assess the nature of a prior conviction, which typically limits the reviewing court to "examining the statutory elements of the [prior] crime…." <u>Hayes</u>, 526 F.3d at 676. But the court went on to note that in certain circumstances it was permitted to look beyond that statute of conviction:

> "[E]ven the categorical approach, however, permits courts to look beyond the statute of conviction under certain circumstances. When the underlying statute reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the resulting ambiguity by consulting reliable judicial records, such as the charging document, plea agreement, or plea colloquy. Such review does not involve a subjective inquiry into the facts of the case, but rather its purpose is to determine 'which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face."

*See*, <u>Hayes</u>, 526 F.3d at 676.

Also, as this Court noted in its June 29, 2012 Order, "[w]hen a federal statute refers to generic crimes, courts in the Ninth Circuit apply the categorical and modified categorical approaches, set forth in <u>Taylor v. United States</u>, 495 U.S. 575 (1990), in order to determine whether the state conviction falls within the generic federal definition." *See*, Doc. No. 35, page 22, fn. 19. "If there is no

---

[1] In <u>United States v. Belless</u> the court noted, "[a]s a matter of law, we hold that the physical force to which the federal statute refers is not *de minimis*." <u>Belless</u>, 338 F.3d 1063, 1068.

categorical match, courts in the Ninth Circuit in some circumstances apply a modified categorical approach, pursuant to which inquiry is limited to 'the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id., pages 22-23, fn. 19 (citations omitted). This Court then concluded, "[i]t appears that generally, under a modified categorical approach, the outcome depends upon whether the underlying conduct – *as it can be determined by reliable documents* – is of a violent nature." Id., page 23, fn. 19 (emphasis added).

This Court has also found that when a statute criminalizes conduct that can be considered the "violent use of force" and conduct that does not require any physical contact at all, it is important to look to the record including the charging papers and judgment of conviction to determine which conduct is attributed to the conviction. In United States v. Nobriga, *supra*, the defendant had been charged with and convicted of Abuse of a Family or Household Member pursuant to HRS §709-906. But that statute, similar to Harassment under HRS § 711-1106, also criminalized conduct which could be non-violent in nature:

> "Section 709-906(1) of the Hawaiʻi Revised Statues does not necessarily require a 'violent use of force.' In addition to making it unlawful 'to physically abuse a family or household member,' the statute also proscribes 'refus[ing] compliance with the lawful order of a police officer,' an offense that specifies no use of force, violent or otherwise. [H]owever, the record establishes that Nobriga necessarily pleaded guilty to a 'violent use of force.' As the district court concluded, the charging papers and the judgment of conviction make clear that Nobriga pleaded guilty to 'physically abus[ing] a family or

- 7 -

household member,' not to 'refus[ing] compliance with a lawful order of a police officer.'"

Nobriga, 474 F.3d at 564.

The Defendants posit that the *Hayes* and *Nobriga* decisions imply that this Court should examine the facts of the underlying prior conviction to determine whether it was a crime of violence, as defined in Section 134. The records in the present case make clear that Plaintiff was convicted not of mere offensive physical contact or the *de minimis* use of physical force, but rather the "violent use of force" as described in Nobriga. *See*, Declarations of Walter Calistro and Gordon Makishima, *generally*.

The City Defendants submit not only the charging document, but also the accompanying records such as the judicial determination of probable cause, the compliance reports, and the police reports should be relevant to whether Plaintiff should be able to acquire a firearms permit. *See*, Exhibits "A" through "F" (Docs 39-4 through 39-9, attached to the City Defendants' Motion for Reconsideration, filed July 27, 2012). Several of these documents incorporate the factual allegations contained in the police report cited therein.

In the present case, Plaintiff was convicted of the offense of Harassment for actions including punching or striking or shoving his wife and daughter. Such

conduct cannot be said to be *de minimis* or merely offensive contact.[2]  While in this case there is no record that Plaintiff made any specific factual admissions during his change of plea, because the audio recordings and transcripts for those proceedings were purged by the Judiciary in 2007, the court may look to other records of the case to determine what conduct the Plaintiff was convicted of.  As shown by the declarations of Walter Calistro and Gordon Makishima,[3] the officers who investigated the incident which led to Plaintiff's conviction of Harassment, Plaintiff engaged in violent behavior involving the use of force against members of his family.  Plaintiff's behavior would clearly constitute behavior which would constitute a misdemeanor crime of domestic violence involving the use of physical force.

The case of United States v. Serrao, 301 F.Supp.2d 1142 (Haw.2004) presented a similar problem for the court.  In Serrao, the defendant has previously pled no contest in a case where the criminal complaint alleged he had "kicked and hit" his wife.  However, the transcript of the plea hearing revealed very little as to what allegations Serrao actually admitted.  Subsequent to his conviction, Serrao was indicted under the Lautenberg Amendment for possessing a firearm or

---

[2] By pleading guilty to the charge of Harassment, as opposed to pleading no contest, Plaintiff did not dispute the facts included in the police report, and the police report (HPD No. 97-432-623) was included by reference in the plea documents.

[3] Attached to the City Defendants Counter Concise Statement of Facts.

ammunition and having been convicted of Assault in the Third Degree (H.R.S. § 707-712), a misdemeanor crime of domestic violence which, similar to the instant case, also criminalized conduct which was *de minimus*. The court then followed the modified categorical approach and attempted to determine which crime Serrao had actually pleaded to.

In determining whether the prior conviction could serve as a predicate offense for a conviction under Lautenberg, the Serrao court considered a declaration from the prosecutor indicating that the prosecutor had amended the charge from Abuse of a Family and Household Member pursuant to H.R.S. § 709-906(1), to Assault 3rd. As the court stated, "[t]his court can, and in fact must, consider Freitas's declarations to determine whether the record submitted 'clearly establish[es]'[4] that the prior offense involved the use of physical force," citing United States v. Sweeten, 933 F.2d 765, 769-70 (9th Cir.1991).

In United States v. Sweeten, 933 F.2d 765, 769-70 (9th Cir.1991), the Ninth Circuit held that it would be error for a district court to restrict its consideration to the original judgment of conviction and corresponding criminal statute if also presented with "documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes." The facts of Sweeten are analogous to the present case. In Sweeten, the prosecutor submitted

---

[4] Because Serrao was being charged with a criminal violation of the Lautenberg Amendment, the government needed to *clearly establish* that the prior offense involved the use of physical force.

an *ex parte*, *nunc pro tunc* order eleven years after the original conviction. The court held that, because other documentation provided by the government, alongside the *nunc pro tunc* order, demonstrated the earlier conviction did involve the use of force, the conviction could serve as a predicate offense.

In the present case, the declarations of Walter Calistro and Gordon Makishima and documents in the criminal record indicate that the underlying conduct, for which Plaintiff was convicted of Harassment under H.R.S. § 711-1106(1)(a), was in fact of a violent nature, and involved the use of physical force against Plaintiff's wife and daughter.[5] The facts of Plaintiff's conviction indicate conduct constituting a crime of violence, and for this conduct Plaintiff was ultimately convicted of Harassment. Because there are sufficient facts from the criminal record to indicate that Plaintiff was in fact convicted of a crime of domestic violence, the Defendants respectfully request that this Court deny Plaintiff's motions for permanent injunction and summary judgment.

2. *Harassment Under Hawaii's Statute is Categorically a Crime of Violence*

The City Defendants incorporate by reference the arguments made in the Brady Center's Amicus Brief, pages 9 to 12, subsection B, and argue that for those reasons, Harassment under H.R.S. Section 134-1 is categorically a crime of violence, and that

---

[5] *See* Declaration of Charlene Ikeda, Doc. 39-2, and Exhs "A" – "F", Docs. 39-3 through 39-9, attached to Dfts' Motion for Reconsideration filed July 27, 2012.

the Defendants' decision to deny Plaintiff's firearms permit application was lawful and appropriate.

> 3. *Policy Considerations Indicate that the Court Should Not Make a Blanket Determination that Harassment Convictions Cannot Serve to Disqualify a Person from Acquiring Firearms*

If this Court were to determine that ALL harassment convictions under subsection (a) may not be considered a "crime of violence" by which an offender may be disqualified from firearms ownership, this Court is essentially excluding all instances where there is conduct that would be considered a "crime of violence" except for other circumstances leading to the charge being made as Harassment, rather than Abuse of a Household Member.[6] This would appear contrary to the definition of "crime of violence" in H.R.S. § 134-1 being "any offense…that involves **injury or threat of injury to the person or another.**"

"The purpose of the statute is to keep firearms out of the hands of people whose past violence in domestic relationships makes them untrustworthy custodians of deadly force." United States v. Belless, 338 F.3d 1063, 1067. Further, in United States v. Hayes, *infra*, the court cited some of the debate on the Lautenberg Amendment:

> Additionally, the legislative history as a whole reveals *why* Congress added §922(g)(9) to the overall statute. In a speech on the Senate Floor, Senator Lautenberg explained: Under current Federal law, it is illegal for persons convicted of

---

[6] For example, such as a complaining witness' refusal to testify.

> felonies to possess firearms.  Yet many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies.  At the end of the day, due to outdated thinking, or perhaps after a plea bargain, they are—at most—convicted of a misdemeanor.  In fact…most of those who commit family violence are never even prosecuted…The fact is, in many places today, domestic violence is not taken as seriously as other forms of criminal behavior.  Often, acts of serious spouse abuse are not even considered felonies."

Hayes, 526 F.3d at 679-80 (internal citation omitted)(emphasis in original).  The *Hayes* court noted that "[t]hese comments make clear that Congress broadened the scope of §922(g) to encompass misdemeanor crimes of domestic violence not out of hope to keep guns out of the hands of individuals who may have inflicted *de minimis* touches on their spouses or children, but to keep guns out of the hands of domestic abusers who previously fell outside the bounds of the statute because they were convicted of misdemeanors rather than felonies due to 'outdated thinking' or plea bargains."  Hayes, 526 F.3d at 680.

Much of the same reasoning voiced by Congress above can be attributed to the firearms ban in Hawaii's statute.  Permitting all persons convicted of misdemeanor domestic violence crimes such as harassment to acquire firearms would be contrary to the federal statute's stated purpose of keeping guns out of the hands of those who "commit family violence."

As this Court noted in its previous ruling, a person may also be denied a gun permit because the person "[i]s or has been under treatment or counseling for addiction to, abuse of, or dependence upon any dangerous, harmful, or detrimental

- 13 -

drug, intoxicating compound as defined in section 712-1240, or intoxicating liquor." *See* Doc. No. 35, page 18, fn. 14.[7] Here, not only does Plaintiff have a prior conviction for driving under the influence of an intoxicant in 1986,[8] but as part of his conviction for Harassment he was ordered to participate in a drug assessment and treatment as a term and condition of probation. *See*, Doc. Nos. 39-4 through 39-9, Exhibits "A" through "F". Because drug assessment and treatment is not a mandatory term and condition of a harassment conviction, it is reasonable to conclude that there was some indication of a substance abuse problem or the use of an illicit substance by Plaintiff in connection to the incident that led to his arrest and conviction, leading to the criminal court making such assessment a requirement of Plaintiff's probation.

### B. Plaintiff is Disqualified from Second Amendment Rights

The City Defendants incorporate by reference the arguments made in the Brady Center's Amicus Brief, pages 12 to 24, subsection II, and argue that for those reasons, Plaintiff is disqualified by virtue of his Harassment conviction from exercising Second Amendment rights. For those reasons, Plaintiff's claim for violation of his Second Amendment rights fails and his motions for summary judgment and for permanent injunction should be denied.

---

[7] "The Chief of Police may rely upon bases other than a prior conviction for a 'crime of violence' in rejecting an application for a permit pursuant to H.R.S. § 134-7, such as diagnosis of significant behavior, emotional or mental disorders or treatment for addiction to drugs."

[8] On August 1, 1986 Plaintiff was found guilty of driving under the influence of intoxicating liquor (H.R.S. § 291-0004) in the Honolulu District Court, Case No. B108.

      C.    <u>Plaintiff Was Afforded Due Process for the Denial of His Application, and was Afforded a Reconsideration of that Denial</u>

Plaintiff claims that "if an application is denied, there are no means by which the applicant can seek review of the police chief's decision." *See*, Ptf's Mtn. Summ. Judg., page 12.  However, that assertion is exceedingly inaccurate.  Indeed, on August 31, 2010, Plaintiff's present counsel sent a letter to HPD's Chief of Police, Defendant Kealoha, acknowledging receipt of HPD's October 1, 2009 denial of Plaintiff's permit to acquire firearms, and demanding that HPD grant his application for a permit to acquire firearms.  *See*, Doc. No. 78-6.  HPD thereupon again completely reviewed Plaintiff's application to acquire a firearms permit, and would have considered any additional information submitted by Plaintiff or his counsel.  After HPD re-reviewed Plaintiff's firearms permit application, HPD determined that it had made the appropriate decision to deny his application and on September 29, 2010 informed Plaintiff via correspondence that it had again determined that Plaintiff's firearms permit application should be denied.  *See*, Doc. 78-7; *see also* Declaration of Thomas T. Nitta, ¶¶ 13, 14.  Although Plaintiff may not agree with the sufficiency afforded the process he was given regarding his firearms permit application, he cannot claim that there is no process afforded those whom believe that their firearms permit applications were wrongfully denied.

IV. <u>CONCLUSION</u>

For the reasons state above, the City Defendants respectfully requests that this Honorable Court deny Plaintiff's motion for permanent injunction, and deny Plaintiff's motion for summary judgment.

DATED: Honolulu, Hawai'i, July 22, 2013.

                                DONNA Y. L. LEONG
                                Corporation Counsel


                          By: /s/ D. Scott Dodd
                                D. SCOTT DODD
                                Deputy Corporation Counsel

                                Attorney for City Defendants
                                LOUIS KEALOHA, and the
                                CITY AND COUNTY OF
                                HONOLULU

**11-05983/291388**