IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KIRK C. FISHER,<br><br>    Plaintiff,<br><br>vs.<br><br>LOUIS KEALOHA, as an individual and in his official capacity as Honolulu Chief of Police; PAUL PUTZULU, as an individual and in his official capacity as former Honolulu Acting Chief of Police; CITY AND COUNTY OF HONOLULU; HONOLULU POLICE DEPARTMENT and DOE DEFENDANTS 1-50,<br><br>    Defendants. | CIVIL NO. CV11 00589 ACK-BMK<br><br>DECLARATION OF GORDON MAKISHIMA; EXHIBIT "A" - "D" |

## DECLARATION OF GORDON MAKISHIMA

I, GORDON MAKISHIMA, DECLARE AS FOLLOWS:

1. I am a Detective for the Honolulu Police Department ("HPD"), City and County of Honolulu, and have been employed with HPD for twenty-six (26) years.

2. I am presently assigned as Criminal Investigative Division as a Detective. From approximately 1992 to 1999 [including 1997], I was assigned as a Metropolitan Police Officer in District 4.

3. I have personal knowledge of and am competent to make this Declaration concerning the matters set forth below.

4. On November 5, 1997, at approximately 7:21 p.m., I was sent via dispatch to 45-342 Lilipuna Road., #309, on a report of a man beating his wife. I arrived at the location at approximately 7:24 p.m.

5. When I arrived I observed a group of people in the parking lot of the apartment complex looking up at a unit on an upper floor. I also observed several females standing outside of apartment #309. I was informed that a male identified as Kirk Fisher ("K. Fisher") was inside the apartment packing a suitcase.

6. I spoke with a female identified as Colette Fisher ("C. Fisher"). C. Fisher related that she and her husband K. Fisher were arguing, and that K. Fisher grabbed her, shoved her, pushed her into a wall, and also pushed their daughter Nicole Fisher ("N. Fisher"). I asked C. Fisher if she would prepare a written statement of the events that occurred that evening, and she agreed to do so. A copy of C. Fisher's written statement is attached hereto as Exhibit "A".

7. I asked C. Fisher to describe any injuries which she sustained as a result of her husband's actions. She related that she felt pain to her right chest, neck and right shoulder blade as a result of being grabbed and pushed by K. Fisher, but she declined when asked whether she needed an ambulance.

8. I observed N. Fisher who appeared to be upset and had been crying. She related that on that evening her parents (K. Fisher and C. Fisher) were arguing, and that K. Fisher pushed C. Fisher up against a wall several times.

When N. Fisher attempted to intervene between her parents, K. Fisher pushed her into her mother C. Fisher, and N. Fisher stumbled into the kitchen wall. N. Fisher related that she then ran to her neighbor's home and asked that the police be called. I asked N. Fisher if she would prepare a written statement of the events that occurred that evening, and she agreed to do so. A copy of N. Fisher written statement is attached hereto as Exhibit "B".

9. I observed redness to N. Fisher's upper right back area. N. Fisher related that she felt pain to her upper right shoulder area as a result of being pushed by K. Fisher. N. Fisher declined when asked if she needed an ambulance to be called for her.

10. The same evening of the incident, I spoke with Valerie Clough ("Clough"), who related that she was a neighbor of the Fishers and that she heard the Fishers arguing earlier in the evening. Clough further related that N. Fisher ran over to Clough's apartment and asked her to call 911, and that K. Fisher was "pushing her mom again." Clough related that she and N. Fisher then went to the Fisher residence, and K. Fisher and C. Fisher were still arguing. Clough related that as she attempted to intervene, K. Fisher pushed Clough; but Clough stated that she was not injured and did not wish to prosecute any case against K. Fisher. Clough also related that about a month previous to the 11/5/97 incident, she had also called the police because she heard the Fishers fighting. I asked Clough if she would prepare a written statement of the events

that occurred that evening, and she agreed to do so. A copy of Clough's written statement is attached hereto as Exhibit "C".

11. I also spoke with Lisa Demarest ("Demarest"), who related that she was the roommate of Clough and a neighbor of the Fishers. Demarest related that on 11/5/97, she heard the Fishers yelling, and that N. Fisher came to her apartment asking that she and Clough call the police. Demarest went to the Fisher's apartment with Clough and N. Fisher, and observed K. Fisher push Clough. I asked Demarest if she would prepare a written statement of the events that occurred that evening, and she agreed to do so. A copy of Demarest's written statement is attached hereto as Exhibit "D".

12. At the Fisher's apartment, I observed a fan knocked over, a car model rack tilted over, and a telephone separated from its base. C. Fisher related that this was caused by the argument between her and K. Fisher.

I, GORDON MAKISHIMA, DECLARE UNDER PENALTY OF LAW THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: Honolulu, Hawai'i, _____July 22,_____, 2013.

_____
GORDON MAKISHIMA

11-07807/279537