# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 10, 2012      Decided January 11, 2013

No. 11-5352

JEFFERSON WAYNE SCHRADER AND SECOND AMENDMENT
FOUNDATION, INC.,
APPELLANTS

v.

ERIC H. HOLDER, JR., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01736)

———

*Alan Gura* argued the cause for appellants. With him on the briefs was *Thomas M. Huff*.

*Anisha S. Dasgupta*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Ronald C. Machen, Jr.*, U.S. Attorney, *Michael S. Raab*, Attorney, and *Jane M. Lyons* and *R. Craig Lawrence*, Assistant U.S. Attorneys.

Before: TATEL, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*:  Due to a conviction some forty years ago for common-law misdemeanor assault and battery for which he served no jail time, plaintiff Jefferson Wayne Schrader, now a sixty-four-year-old veteran, is, by virtue of 18 U.S.C. § 922(g)(1), barred for life from ever possessing a firearm. Together with the Second Amendment Foundation, Schrader contends that section 922(g)(1) is inapplicable to common-law misdemeanants as a class and, alternatively, that application of the statute to this class of individuals violates the Second Amendment. Because we find plaintiffs' statutory argument unpersuasive and see no constitutional infirmity in applying section 922(g)(1) to common-law misdemeanants, we affirm the district court's dismissal of the complaint.

## I.

Enacted in its current form in 1968, section 922(g)(1) of Title 18 of the United States Code prohibits firearm possession by persons convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Section 921(a)(20)(B), however, exempts "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20)(B). This case concerns the application of these provisions to convictions for common-law misdemeanors that carry no statutory maximum term of imprisonment.

Section 922(g)(1)'s prohibition on firearm possession applies, with some exceptions not relevant here, for life. The statute, however, contains a "safety valve" that permits individuals to apply to the Attorney General for restoration of their firearms rights. *Logan v. United States*, 552 U.S. 23, 28 n.1 (2007). Specifically, section 925(c) provides that the

3

Attorney General may grant such individuals relief "if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. § 925(c). But since 1992, "Congress has repeatedly barred the Attorney General from using appropriated funds to investigate or act upon relief applications," leaving the provision "inoperative." *Logan*, 552 U.S. at 28 n.1 (internal quotation marks and alterations omitted); *see also United States v. Bean*, 537 U.S. 71, 74–75 (2002).

In 1968, while walking down the street in Annapolis, Maryland, plaintiff Jefferson Wayne Schrader, then twenty years old and serving in the United States Navy, encountered a member of a street gang who, according to the complaint, had assaulted him a week or two earlier. Second Am. Compl. ¶¶ 9–10; *see also Wagener v. SBC Pension Benefit Plan-Non Bargained Program*, 407 F.3d 395, 397 (D.C. Cir. 2005) (explaining that, in reviewing district court's grant of motion to dismiss, the court must assume that facts alleged in the complaint are true). "A dispute broke out between the two, in the course of which Schrader punched his assailant." Second Am. Compl. ¶ 10. As a result, Schrader was convicted of common-law misdemeanor assault and battery in a Maryland court and fined $100. *Id.* ¶ 11. The court imposed no jail time. *Id.* Schrader went on to complete a tour in Vietnam and received an honorable discharge from the Navy. *Id.* ¶ 12. Except for a single traffic violation, he has had no other encounter with the law. *Id.*

According to the complaint, "[o]n or about November 11, 2008, Schrader's companion attempted to purchase him a shotgun as a gift," and some two months later, "Schrader

4

ordered a handgun from his local firearms dealer, which he would keep for self-defense." *Id.* ¶ 14. Both transactions "resulted in . . . denial decision[s] by the FBI when the National Instant Criminal Background Check ('NICS') computer system indicated that Mr. Schrader is prohibited under federal law from purchasing firearms." *Id.* ¶ 15. The FBI later "advised Schrader that the shotgun transaction was rejected pursuant to 18 U.S.C. § 922(g)(1) on the basis of his 1968 Maryland misdemeanor assault conviction." *Id.* ¶ 16. In a letter to Schrader, the FBI explained that he had "been matched with the following federally prohibitive criteria under Title 18, United States Code, Sections 921(a)(20) and 922(g)(1): A person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year or any state offense classified by the state as a misdemeanor and . . . punishable by a term of imprisonment of more than two years."

At the time of Schrader's conviction, "[t]he common law crimes of assault and battery [in Maryland] had no statutory penalty." *Robinson v. State*, 728 A.2d 698, 702 n.6 (Md. 1999). Although Maryland later codified these offenses, *see* Md. Code Ann., Crim. Law §§ 3-201, 3-202, 3-203, when Schrader was convicted "[t]he maximum term of imprisonment [for these offenses] was ordinarily limited only by the prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution and Articles 16 and 25 of the Maryland Declaration of Rights," *Robinson*, 728 A.2d at 702 n.6. As the FBI explained in a declaration filed in the district court, because "[a]t the time of Schrader's 1968 assault conviction, Maryland law did not set a maximum sentence for misdemeanor assault," the FBI "determined that the conviction triggered 18 U.S.C. § 921(a)(20) and 18 U.S.C. § 922(g)(1), which prohibit firearm possession by an

5

individual convicted of a state offense classified by the state as a misdemeanor that is punishable by a term of imprisonment of more than two years."

Schrader and the Second Amendment Foundation—an organization that conducts "education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control," Second Am. Compl. ¶ 2—sued the Attorney General and the FBI in the United States District Court for the District of Columbia, raising two claims. The first is statutory. Plaintiffs argued that Schrader's "conviction for misdemeanor assault cannot be the basis for a firearms disability under 18 U.S.C. § 922(g)(1), because Schrader was not actually sentenced to a term of imprisonment exceeding two years." *Id.* ¶ 19. Plaintiffs further alleged that "Maryland's failure to codify a statutory penalty for a simple common law misdemeanor does not create a firearms disability under federal law for conviction of such common law misdemeanor offense." *Id.* Second, presenting an as-applied constitutional claim, plaintiffs asserted that "barring possession of firearms by individuals on account of simple common-law misdemeanor offenses carrying no statutory penalties . . . violates the Second Amendment right to keep and bear arms." *Id.* ¶ 22. Plaintiffs sought "[i]njunctive relief commanding Defendants to withdraw their record pertaining to Plaintiff Schrader from NICS" and an order enjoining defendants "from enforcing 18 U.S.C. § 922(g)(1) on the basis of simple common-law misdemeanor offenses carrying no statutory penalties." *Id.* Prayer for Relief ¶¶ 1-2.

The government moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and plaintiffs cross-moved for summary judgment. The district court, concluding that plaintiffs had failed to state either a

6

statutory or constitutional claim for relief, granted the motion to dismiss and denied the cross-motion for summary judgment. With respect to the statutory claim, the district court rejected plaintiffs' argument that Schrader's actual sentence of less than two years' imprisonment was dispositive, noting that "only the possibility of punishment of more than two years for a misdemeanor matters for purposes of § 922(g)(1)." *Schrader v. Holder*, 831 F. Supp. 2d 304, 310 n.4 (D.D.C. 2011). Thus, the district court found Schrader's offense ineligible for the misdemeanor exception for offenses "punishable by a term of imprisonment of two years or less," 18 U.S.C. § 921(a)(20)(B), because the absence of a statutory maximum punishment meant that the Maryland court could have sentenced Schrader to more than two years' imprisonment, *Schrader*, 831 F. Supp. 2d at 310. Finally, the district court rejected plaintiffs' argument that "uncodified common-law offenses are not 'punishable' by any particular statutory criteria and, therefore, do not fall within the purview of § 922(g) at all." *Id.* at 309.

In rejecting plaintiffs' constitutional claim, the district court relied on the Supreme Court's observation in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that " 'the right secured by the Second Amendment is not unlimited,' " as well as the Court's inclusion of " 'longstanding prohibitions on the possession of firearms by felons' " within a list of " 'presumptively lawful regulatory measures.' " *Schrader*, 831 F. Supp. 2d at 311–12 (quoting *Heller*, 554 U.S. at 626–27 & n.26) (emphasis omitted). The district court found "no constitutional impediment" to including common-law misdemeanants like Schrader within the federal firearms ban. *Id.* at 312.

Plaintiffs appeal, reiterating the statutory and constitutional claims raised in the district court. We consider

each in turn, reviewing de novo the district court's dismissal of the complaint. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam).

## II.

Recall the statutory language at issue. Section 922(g)(1) prohibits firearm possession by persons convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Section 921(a)(20)(B) exempts "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." *Id.* § 921(a)(20)(B).

As an initial matter, plaintiffs no longer appear to be arguing, as they did in their complaint, that section 921(a)(20)(B) exempts Schrader's offense from the federal firearms ban "because Schrader was not actually sentenced to a term of imprisonment exceeding two years." Second Am. Compl. ¶ 19. Indeed, other courts of appeals have uniformly rejected the argument that the actual sentence imposed is controlling for purposes of triggering the federal firearms ban. *See, e.g.*, *United States v. Coleman*, 158 F.3d 199, 203–04 (4th Cir. 1998) (en banc); *United States v. Horodner*, 993 F.2d 191, 194 (9th Cir. 1993).

Instead, plaintiffs argue more broadly that section 922(g)(1) is inapplicable to common-law offenses because such offenses "are not 'punishable by' any particular statutory criteria." Appellants' Br. 17. Given the nature of common-law offenses, this argument fails. Although the category of "common-law offenses" is rather broad, varying widely from state to state, when Congress enacted section 922(g)(1) in 1968, many common-law crimes involved quite violent behavior. In Maryland, for example, attempted rape and attempted murder were common-law misdemeanors that

8

carried no statutory maximum sentence. *See Hardy v. State*, 482 A.2d 474, 476–77 (Md. 1984); *Glass v. State*, 329 A.2d 109, 112 (Md. Ct. Spec. App. 1974). The offense for which Schrader was convicted—common-law assault and battery—provides another example. Before Maryland codified the crime of common-law assault in 1996, the offense included all forms of assault with the exception of certain narrow categories of statutory aggravated assaults that were defined as felonies. *See Walker v. State*, 452 A.2d 1234, 1247 & n.11 (Md. Ct. Spec. App. 1982). As a result, the offense "embrace[d] an almost infinite variety of fact patterns." *Simms v. State*, 421 A.2d 957, 965 (Md. 1980). Many of these fact patterns involved serious, violent conduct, and many offenders received sentences of ten or twenty years' imprisonment. *See Thomas v. State*, 634 A.2d 1, 8 & nn. 3, 4 (Md. 1993) (collecting cases). In one case, for example, a defendant was sentenced to fifteen years for common-law assault where he forced a man "into a car, stabbed him twice in the neck and three times in the chest, dragged him out of the car and left him bleeding in a street gutter." *Sutton v. Maryland*, 886 F.2d 708, 709 (4th Cir. 1989) (en banc). As one Maryland court explained:

> [S]tatutory assaults have not preempted the field of all serious and aggravated assaults. Our Legislature has cut out of the herd for special treatment four assaults where the aggravating factor is a special *mens rea* or specific intent. This by no means exhausts the category of more grievous and blameworthy assaults. The aggravating factor in a particular case might well be the modality of an assault, and not its *mens rea*—assault with a deadly weapon, assault by poison . . ., assault by bomb. . . . Even where . . . there simply has been no specific intent, a brutal beating that leaves its victim blinded,

9

> crippled, disfigured, in a wheelchair for life, in a psychiatric ward for life, is severely aggravated. . . . Maryland has not dealt with this form of aggravation legislatively but has left it to the discretion of common law sentencing.

*Walker*, 452 A.2d at 1247–48; *see also Simms,* 421 A.2d at 965 ("Some 'simple assaults' may involve more brutal or heinous conduct than may be present in other cases falling within one of the statutory aggravated assaults.").

Significantly, moreover, the earliest version of the federal firearms ban, which applied to certain "crime[s] of violence," specifically included among such crimes "assault with a dangerous weapon," Federal Firearms Act, ch. 850, §§ 1(6), 2(f), 52 Stat. 1250, 1250-51 (1938)—a crime that Maryland, at the time of section 922(g)(1)'s enactment, punished as a common-law misdemeanor, *see Walker*, 452 A.2d at 1248 (noting that Maryland punished assault with a deadly weapon as a common-law misdemeanor rather than as a statutory offense). We doubt very much that when Congress expanded the firearms prohibition to cover, as the statute now does, all individuals convicted of a "crime punishable by imprisonment for a term exceeding one year," *see* An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, § 2, 75. Stat. 757, 757 (1961), it intended to exclude all common-law offenses, even those that previously fell within the ambit of the federal firearms ban.

Plaintiffs' argument also runs counter to the common-sense meaning of the term "punishable," which refers to any punishment capable of being imposed, not necessarily a punishment specified by statute. *See* Webster's Third New International Dictionary 1843 (1993) (defining "punishable" as "deserving of, or liable to, punishment: capable of being

10

punished by law or right"). Because common-law offenses carry no statutory maximum term of imprisonment, they are capable of being punished by a term of imprisonment exceeding one year and thus fall within section 922(g)(1)'s purview. And because such offenses are also capable of being punished by more than two years' imprisonment, they are ineligible for section 921(a)(20)(B)'s misdemeanor exception.

The sparse case law interpreting the term "punishable" in the context of uncodified common-law offenses reinforces our conclusion that the term refers to the maximum potential punishment a court can impose, whether or not set by statute. In *United States v. Coleman*, 158 F.3d 199 (4th Cir. 1998) (en banc), the defendant argued that his Maryland conviction for common-law misdemeanor assault should not trigger the Armed Career Criminal Act sentence enhancement which, like section 922(g)(1), turns on whether a predicate conviction qualifies as a "crime punishable by imprisonment for a term exceeding one year." *See* 18 U.S.C. § 924(e)(1), (e)(2)(B). The defendant asserted that "because he actually received a sentence of 18 months imprisonment, . . . his conviction should fit within the [section 921(a)(20)(B)] misdemeanor exclusion." *Coleman*, 158 F.3d at 203. In rejecting this argument, the Fourth Circuit, sitting en banc, overruled an earlier panel opinion which had held that, for convictions of common-law simple assault in Maryland, "the actual sentence imposed should control whether or not a conviction for such a crime should be" deemed an offense "punishable by imprisonment for a term exceeding one year." *United States v. Schultheis*, 486 F.2d 1331, 1332, 1335 (4th Cir. 1973). The court instead defined "punishable" in relation to the maximum potential punishment a defendant could receive. "While a Maryland conviction for common-law assault is classified as a misdemeanor," the court explained, "the offense carries no maximum punishment; the only limits on punishment are the

11

Cruel and Unusual Punishment Clauses of the Maryland and United States Constitutions. As such, a Maryland common-law assault clearly is punishable by more than two years imprisonment . . . ." *Coleman*, 158 F.3d at 203 (internal quotation marks and citation omitted). Rejecting the argument that the absence of statutory sentencing criteria compelled a different reading of the statute, the court explained that "[t]he plain wording of the statute applies equally when the potential term of imprisonment is established by the common law and limited only by the prohibition on cruel and unusual punishments as when the range of possible terms of imprisonment is determined by a statute." *Id.* at 204.

Plaintiffs insist that their interpretation of the statute is "compelled by the federal scheme's structural reliance on the judgment of the convicting jurisdiction's legislature" regarding the seriousness of an offense. Appellants' Br. 19. According to plaintiffs, because "[t]he State chooses how harshly to punish its own crimes, and Congress defers to the wisdom of that localized judgment," to permit the federal firearms ban "to encompass state common law crimes for which no legislative judgment has been expressed would grant the federal government a power that has been statutorily entrusted to the States." Appellants' Br. 20. As the district court pointed out, however, "the choice of a State legislature to rely on judicial discretion at sentencing on certain common law misdemeanors represents a legislative choice just as the adoption of a statute would." *Schrader*, 831 F. Supp. 2d at 310. With respect to common-law assaults, for example, Maryland courts have observed that the State, through its legislature, decided to "trust[] the wide discretion of the common law sentencing provisions to deal appropriately with" the broad range of "severely aggravated assaults" that were at the time uncodified in Maryland. *Walker*, 452 A.2d at 1248. We see no basis for thinking that Maryland, having left

12

such sentencing to the discretion of common-law judges, had somehow signaled its view that these offenses were insufficiently serious to trigger the federal firearms ban. "Rather than trying to list by statute every circumstance that might make an assault more 'grievous and blameworthy,' " the Fourth Circuit has explained, "Maryland wisely left common law assault in place and trusted its trial judges to fashion an appropriate punishment within constitutional limits." *Sutton*, 886 F.2d at 711. Indeed, when codifying the offense in 1996, Maryland demonstrated the seriousness with which it views common-law assaults by authorizing imprisonment of up to twenty-five years for felony First Degree Assault and up to ten years for misdemeanor Second Degree Assault. Md. Code Ann., Crim. Law §§ 3-202, 3-203.

Next, plaintiffs claim that "[s]ection 922's overarching design reveals no intent to impose a blanket firearms ban on common law misdemeanants." Appellants' Br. 22. In support, plaintiffs point out that Congress subjected a specific category of misdemeanor convictions to the federal firearms ban when it enacted the 1996 Lautenberg Amendment to the Gun Control Act of 1968, which prohibits firearm possession by any person convicted of "a misdemeanor crime of domestic violence." Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, § 658, 110 Stat. 3009, 3009-371 to -372 (1996). According to plaintiffs, "Congress's explicit reference to this special category of misdemeanor convictions shows that when it wants to reach beyond traditional felonies, it does so clearly." Appellants' Br. 23. But Congress *did* reach beyond felonies when it enacted section 921(a)(20)(B), which expressly provides that certain State misdemeanors—those punishable by more than two years' imprisonment—fall within the scope of section 922(g)(1). Plaintiffs' argument, then, boils down to the proposition that common-law misdemeanors should be viewed differently from other State

13

misdemeanors punishable by more than two years' imprisonment. This contention, however, flows not from any insight gleaned from the statute, but rather from plaintiffs' flawed belief that all common-law offenses are trivial.

Finally, plaintiffs argue that the canon of constitutional avoidance requires us to adopt an alternative construction of the term "punishable by" that would exclude common-law misdemeanants from section 922(g)(1)'s purview. *See Northwest Austin Municipal Utility District No. One v. Holder*, 557 U.S. 193, 204, 207 (2009) (reading statute to avoid deciding "serious constitutional questions"). As explained below, however, section 922(g)(1)'s application to common-law misdemeanants as a class creates no constitutional problem that we need to avoid.

## III.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. *Const.* amend. II. In *Heller*, the Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," and struck down District of Columbia laws banning handgun possession in the home and requiring that citizens keep their firearms in an inoperable condition. 554 U.S. at 592, 635. In doing so, the Court made clear that the right guaranteed by the Second Amendment "is not unlimited." *Id.* at 626. "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* Instead, at the core of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. Although declining

14

to "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," the Court made clear that

> nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 626–27. The Court emphasized that it identified "these presumptively lawful regulatory measures only as examples" and that its list did "not purport to be exhaustive." *Id.* at 627 n.26; *see also McDonald v. City of Chicago*, 130 S. Ct. 3020, 3047 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill' . . . . We repeat those assurances here." (quoting *Heller*, 554 U.S. at 626)).

After *Heller*, the District of Columbia adopted new gun laws that were challenged in *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ("*Heller II*"). There we adopted, as have other circuits, a "two-step approach" to analyzing Second Amendment challenges. *Id.* at 1252 (collecting cases). Given that "[u]nder *Heller*, . . . there are certain types of firearms regulations that do not govern conduct within the scope of the Amendment," we first ask whether the activity or offender subject to the challenged regulation falls outside the Second Amendment's protections. *Id.* If the answer is yes, that appears to end the matter. *Id.* If the answer is no, "then we go on to determine whether the provision passes muster under the appropriate level of constitutional scrutiny." *Id.*

15

Courts of appeals have unanimously rejected Second Amendment challenges to section 922(g)(1), typically relying on the Supreme Court's warning in *Heller* that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626; *see United States v. Moore*, 666 F.3d 313, 316–17 (4th Cir. 2012) (collecting cases). Seeking to distinguish these cases, plaintiffs here argue that common-law misdemeanants differ from felons and fall within the scope of Second Amendment protection at the first step of the analysis. Moreover, they assert, banning firearm possession by common-law misdemeanants fails under the appropriate level of constitutional scrutiny. The government disagrees on both points. We need not resolve the first question, however, because even if common-law misdemeanants fall within the scope of the Second Amendment, the firearms ban imposed on this class of individuals passes muster under the appropriate level of constitutional scrutiny. *See Heller II*, 670 F.3d at 1261 (declining to resolve the scope inquiry "because even assuming [the challenged regulations] do impinge upon the right protected by the Second Amendment, we think intermediate scrutiny is the appropriate standard of review and the prohibitions survive that standard").

"As with the First Amendment, the level of scrutiny applicable under the Second Amendment surely 'depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right.' " *Id.* at 1257 (quoting *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010)). "That is, a regulation that imposes a substantial burden upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify." *Id.* Plaintiffs urge us to apply strict scrutiny, arguing that section 922(g)(1), by

16

completely disarming a class of individuals, places a substantial burden on Second Amendment rights. In our view, strict scrutiny is inappropriate. Although section 922(g)(1)'s burden is certainly severe, it falls on individuals who cannot be said to be exercising the core of the Second Amendment right identified in *Heller*, i.e., "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. Because common-law misdemeanants as a class cannot be considered law-abiding and responsible, *supra* at 7–9, we follow those "courts of appeals [that] have generally applied intermediate scrutiny" in considering challenges to "Congress' effort under § 922(g) to ban firearm possession by certain classes of non-law-abiding, non-responsible persons who fall outside the Second Amendment's core protections." *United States v. Mahin*, 668 F.3d 119, 123 (4th Cir. 2012) (collecting cases).

Intermediate scrutiny requires the government to show that disarming common-law misdemeanants is " 'substantially related to an important governmental objective.' " *Heller II*, 670 F.3d at 1258 (quoting *Clark v. Jeter*, 486 U.S. 456, 461 (1988)). Section 922(g)(1) easily satisfies this standard.

First, the statute's overarching objective is obviously "important." As the Supreme Court has explained, "[t]he principal purpose of the federal gun control legislation . . . was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (internal quotation marks omitted); *see also United States v. Yancey*, 621 F.3d 681, 683–84 (7th Cir. 2010) ("Congress enacted the exclusions in § 922(g) to keep guns out of the hands of presumptively risky people. The broad objective of § 922(g)—suppressing armed violence—is without doubt an important one . . . ." (citations

17

omitted)). The Supreme Court has also made clear that this "general interest in preventing crime is compelling." *United States v. Salerno*, 481 U.S. 739, 750 (1987).

Second, the government has carried its burden of demonstrating a substantial relationship between this important objective—crime prevention—and section 922(g)(1)'s firearms ban. Under intermediate scrutiny, "the fit between the challenged regulation and the asserted objective [need only] be reasonable, not perfect." *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) (collecting cases). In assessing this "fit," we afford "substantial deference to the predictive judgments of Congress." *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 665 (1994). "In the context of firearm regulation, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Kachalsky v. County of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (quoting *Turner Broadcasting*, 512 U.S. at 665). In enacting section 922(g)(1), Congress determined—reasonably in our view—that in order to accomplish the goal of preventing gun violence "firearms must be kept away from persons, such as those convicted of serious crimes, who might be expected to misuse them." *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 119 (1983), *superseded by statute on other grounds*, Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986). Indeed, several courts of appeals have held that section 922(g)'s exclusions satisfy intermediate scrutiny, explaining that individuals with prior criminal convictions for felonies or domestic violence misdemeanors can reasonably be disarmed because such individuals pose a heightened risk of future armed violence. *See, e.g.*, *United States v. Booker*, 644 F.3d 12, 25–26 (1st Cir. 2011) (affirming section 922(g)(9)'s ban on firearm

18

possession by persons convicted of misdemeanor crime of domestic violence); *United States v. Williams*, 616 F.3d 685, 692–93 (7th Cir. 2010) (affirming section 922(g)(1)'s ban on firearm possession by convicted felon); *see also Mahin*, 668 F.3d at 123 (collecting cases).

Plaintiffs acknowledge that disarming felons and other serious criminals bears a substantial relationship to the prevention of gun violence. They emphasize, however, that they challenge the constitutionality of section 922(g)(1) as applied to *common-law misdemeanants* and insist that no substantial fit exists between disarming such individuals and preventing gun violence. But as explained above, at the time of section 922(g)(1)'s enactment, common-law misdemeanors included a wide variety of violent conduct, much of it quite egregious. *See supra* at 7–9. And although the category of common-law misdemeanors has since been narrowed through codification, plaintiffs have offered no evidence that individuals convicted of such offenses pose an insignificant risk of future armed violence. To be sure, *some* common-law misdemeanants, perhaps even Schrader, may well present no such risk, but "Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court." *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc).

Accordingly, because disarmament of common-law misdemeanants as a class is substantially related to the important governmental objective of crime prevention, we reject plaintiffs' constitutional challenge.

## IV.

At several points in their briefs, plaintiffs appear to go beyond their argument that section 922(g)(1) is

19

unconstitutional as applied to common-law misdemeanants as a class and claim that the statute is invalid as applied to Schrader specifically. Were this argument properly before us, *Heller* might well dictate a different outcome. According to the complaint's allegations, Schrader's offense occurred over forty years ago and involved only a fistfight. Second Am. Compl. ¶ 10. Schrader received no jail time, served honorably in Vietnam, and, except for a single traffic violation, has had no encounter with the law since then. *Id.* ¶¶ 11–12. To the extent that these allegations are true, we would hesitate to find Schrader outside the class of "law-abiding, responsible citizens" whose possession of firearms is, under *Heller*, protected by the Second Amendment. *Heller*, 554 U.S. at 635.

But we need not wade into these waters because plaintiffs never argued in the district court that section 922(g)(1) was unconstitutional as applied to Schrader. *See Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1117 (D.C. Cir. 2010) (explaining that arguments not raised before the district court are ordinarily waived). In their complaint, plaintiffs frame their constitutional claim with reference to common-law misdemeanants as a class, arguing that "barring possession of firearms by individuals on account of simple common-law misdemeanor offenses carrying no statutory penalties" violates the Second Amendment. Second Am. Compl. ¶ 22. Indeed, plaintiffs' counsel conceded at oral argument that an as-applied challenge with respect to Schrader was not "specifically elucidated in the complaint." Oral Arg. Rec. 15:29–15:34. To be sure, the complaint seeks some relief on behalf of Schrader specifically, i.e., withdrawal of his record of conviction from the NICS. Second Am. Compl. Prayer for Relief ¶ 1. But given that the injunctive relief plaintiffs seek with respect to section 922(g)(1) is far broader—an injunction barring the statute's enforcement "on the basis of simple common-law misdemeanor offenses

20

carrying no statutory penalties," *id.* Prayer for Relief ¶ 2—and given that plaintiffs raised no as-applied challenge with respect to Schrader in their district court briefs, we view this more specific claim as simply derivative of the broader claim that the statute is unconstitutional as applied to common-law misdemeanants as a class. And although plaintiffs referred to the specific circumstances of Schrader's offense, they did so in the context of arguing that common-law misdemeanants *as a class* can be expected to share Schrader's sympathetic characteristics.

Given this, we believe the wisest course of action is to leave the resolution of these difficult constitutional questions to a case where the issues are properly raised and fully briefed. "[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.). This fundamental principle of judicial restraint is especially important where, as here, constitutional issues are at stake. *See Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.").

Leaving these questions for their proper day has an added benefit: it gives Congress time to consider lifting the prohibition on the use of appropriated funds for the implementation of section 925(c), which, as explained above, permits individuals to obtain relief from section 922(g)(1) by demonstrating that they no longer pose a risk to public safety. Without the relief authorized by section 925(c), the federal firearms ban will remain vulnerable to a properly raised as-

21

applied constitutional challenge brought by an individual who, despite a prior conviction, has become a "law-abiding, responsible citizen[]" entitled to "use arms in defense of hearth and home." *Heller*, 554 U.S at 635.

For the foregoing reasons, we affirm the district court's dismissal of this action.

*So ordered.*