IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
                              )
KIRK C. FISHER,               )
                              )
               Plaintiff,     )
                              )
        vs.                   )   Civ. No. 11-00589 ACK-BMK
                              )
LOUIS KEALOHA, as an individual )
and in his official capacity as )
Honolulu Chief of Police, PAUL  )
PUTZULU, as an individual and in)
his official capacity as former )
acting Honolulu Chief of Police,)
and CITY AND COUNTY OF HONOLULU,)
                              )
               Defendants.    )
                              )
```

**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**

On September 28, 2011, Plaintiff Kirk C. Fisher ("Plaintiff") filed his Complaint against Defendants Louis Kealoha, Paul Putzulu, the City and County of Honolulu ("City"), the Honolulu Police Department ("HPD"), and Doe Defendants 1-50. Plaintiff asserted two claims against Defendants for alleged violations of his Second, Fifth, and Fourteenth Amendment rights regarding his firearms and attempts to obtain a firearms permit. Compl. ¶¶ 47-57, ECF No. 1.

The City and Kealoha filed motions for "partial" dismissal of Plaintiff's Complaint. ECF Nos. 6 & 16-1. After

-1-

receiving the briefs and conducting a hearing, this Court issued

an order that (1) dismissed the claims against the City without

prejudice, (2) dismissed part of Plaintiff's claims against

Kealoha without prejudice, (3) dismissed all claims against the

HPD with prejudice, and (4) dismissed Plaintiff's Fifth Amendment

claims with prejudice ("Order re Defendants' Motions to

Dismiss").  ECF No. 25.

        Plaintiff subsequently filed an Amended Complaint

against Louis Kealoha as an individual and in his official

capacity, Paul Putzulu as an individual and in his official

capacity, and the City (collectively, "Defendants").[1/]  ECF No.

31.  The Amended Complaint contains the following two counts:

"Count I – The Second and Fourteenth Amendments to the United

States Constitution and 42 U.S.C. § 1983 Against All Defendants,"

and "Count II – The Fourteenth Amendments [sic] to the United

States Constitution and 42 U.S.C. § 1983 Against All

Defendants."[2/]  Id.

--------

        [1/] The record indicates that Defendant Putzulu has not been
served with the Amended Complaint or appeared in this action.
See ECF No. 31-2 and ECF Nos. 31-108.  At the hearing on
September 17, 2013, Plaintiff's counsel voluntarily dismissed
Defendant Putzulu from this lawsuit.

        [2/] The Complaint also references the Fifth Amendment in its
Jurisdiction statement.  Am. Compl. at 5 ¶ 11, ECF No. 31.  The
Court previously dismissed Plaintiff's Fifth Amendment claims
with prejudice in its Order re Defendants' Motions to Dismiss.
ECF No. 25 at 40 (dismissing Fifth Amendment claims on the basis
that the Due Process Clause of the Fifth Amendment only applies
                                                    (continued...)

-2-

On March 19, 2012, Plaintiff filed a Motion for Preliminary Injunction.  ECF No. 18.  After receiving the briefs and holding a hearing, the Court issued its "Order Granting Plaintiff Kirk C. Fisher's Motion for a Preliminary Injunction" on June 29, 2012 ("2012 Preliminary Injunction Order").  ECF No. 35.  The Court issued an injunction to Defendant Kealoha to "rescind the prior denial of Plaintiff's permit to acquire firearms and to issue a permit authorizing Plaintiff to acquire firearms."  Id. at 36.  Kealoha and the City (collectively, "City Defendants") filed a Motion for Reconsideration of the 2012 Preliminary Injunction Order (ECF No. 39), which the Court subsequently denied in its "Order Denying Defendants' Motion for Reconsideration" ("Reconsideration Order re Plaintiff's Preliminary Injunction").  ECF No. 50.

On February 25, 2013, Plaintiff filed a Motion for Summary Judgment ("MSJ") and a Motion for Permanent Injunction ("MPI").  ECF Nos. 75 & 77.  Plaintiff also filed a Concise Statement of Facts in support of his MSJ.  ECF No. 78.  The City Defendants filed their Memorandum in Opposition and Concise Statement of Facts on July 22, 2013.  ECF Nos. 89 & 90.  Included

---

[2/] (...continued)
to the actions of the federal government, not state or local governments).  At the hearing held on August 12, 2013, Plaintiff's counsel clarified that Plaintiff is not alleging a Fifth Amendment claim in the Amended Complaint; the reference to the Fifth Amendment in the Jurisdiction statement was a typographical error.

on page three of the City Defendants' Opposition is a brief request that the Court grant summary judgment in favor of the City Defendants under Local Rule 56.1(i).  ECF No. 89.  Plaintiff filed his Reply on July 29, 2013.  ECF No. 97.  The Court set a hearing date for August 12, 2013.  ECF No. 80.[3/]

There are also two amici who requested to file briefs and to appear at the August 12, 2013 hearing regarding Plaintiff's MSJ and MPI.  On December 20, 2012, the Hawaii Defense Foundation ("HDF") filed a Motion for Leave to File Amicus Curiae Brief, which was subsequently granted by the Court.  ECF Nos. 67, 69, 70, 72.[4/]  On July 12, 2013, the Brady Center to Prevent Gun Violence ("Brady Center") filed a Motion for Leave to File Amicus Curiae Brief, which was also granted by the Court.  ECF Nos. 87 & 91.

HDF filed its brief on February 1, 2013.  ECF No. 73.  The Brady Center filed a brief on July 23, 2013.  ECF No. 93.  HDF also filed a Notice of Supplemental Authority on July 23, 2013.  ECF No. 92.

---

[3/]  A status conference was held with the magistrate judge on January 25, 2013; the parties apparently agreed that the hearing date for Plaintiff's MSJ and MPI would be held over five months later on July 8, 2013.  ECF No. 72.  However, the undersigned was unavailable on the day chosen by the magistrate judge and the parties, requiring a move of the hearing date to August 12, 2013.  ECF No. 80.

[4/]  Hawaii Defense Foundation filed amended motions which were consolidated and granted in the same order.  ECF No. 72.

-4-

On August 8, 2013, two business days before the hearing, the City Defendants filed a Motion for Leave to File Document Consisting of an Additional Exhibit.  ECF No. 99.  The Exhibit submitted by the City Defendants was Plaintiff's deposition transcript from his April 17, 2013 deposition.  Id. Plaintiff filed an Opposition to the City Defendants' Motion for Leave on August 9, 2013.  ECF No. 100.

On August 12, 2013, the Court held a hearing regarding Plaintiff's Motion for Summary Judgment, Motion for Permanent Injunction, and the City Defendants' Motion for Leave to File Document Consisting of an Additional Exhibit.  ECF No. 101. Because all parties failed in their briefs to address Descamps v. United States, 133 S. Ct. 2276 (2013), a Supreme Court case the Court found to be controlling regarding Plaintiff's motions, the Court ordered the parties to submit supplemental briefing.  ECF No. 102.  As a result, the Court moved the hearing regarding Plaintiff's motions to September 17, 2013.  Id.  The Court also granted the City Defendants' Motion for Leave to File and allowed them to submit Plaintiff's deposition after finding that (1) the document addressed several important matters before the Court and (2) Plaintiff would have a chance to respond and suffered no prejudice.  Id.  The Court denied the City Defendants' request that the Court grant summary judgment in their favor under Local Rule 56.1(i) because the request had been made only three weeks

before the hearing and had not been sufficiently briefed, and

Plaintiff did not have sufficient notice to oppose the motion.

Id.

       In compliance with this Court's August 12, 2013 minute

order, Plaintiff, City Defendants, the Brady Center, and HDF

filed supplemental briefs.  ECF Nos. 105, 106, 104, and 103.  The

Court held another hearing regarding Plaintiff's Motion for

Summary Judgment and Motion for Permanent Injunction on September

17, 2013.  ECF No. 109.

## FACTUAL BACKGROUND

       On November 5, 1997, Plaintiff was arrested for two

counts of harassment in violation of Hawai'i Revised Statutes

("H.R.S.") § 711-1106(1)(a).  Defs.' Mtn. for Recon. Ex. B, ECF

No. 39-5.[5/]  The statute states, in relevant part:

**§ 711-1106 Harassment.**

(1) A person commits the offense of harassment if, with

intent to harass, annoy, or alarm any other person, that

person:

       (a) Strikes, shoves, kicks, or otherwise touches

       another person in an offensive manner or subjects the

       other person to offensive physical contact . . . .

---

[5/]  Both parties reference exhibits filed with previous
motions that are part of the record in this case.  The Court
likewise refers to these prior exhibits submitted by the parties.

H.R.S. § 711-1106(1)(a).[6/]

The state court complaint against Plaintiff alleges that, on or about November 5, 1997, "[Plaintiff], with intent to harass, annoy, or alarm Colette Fisher, did strike, shove, kick, or otherwise touch Colette Fisher in an offensive manner, or subject her to offensive physical contact, thereby committing the petty misdemeanor offense of harassment in violation of Section 711-1106(1)(a) of the Hawaii Revised Statutes." State of Hawaiʻi v. Kirk C. Fisher, FC-CR No. 97-3233, Compl. p. 1.  At the time of the 1997 incident to the present, Colette Fisher has been Plaintiff's wife.  Am. Compl. at 8, ¶ 24, ECF No. 31; Deposition of Kirk C. Fisher at 9-10, ECF No. 99-2.  A second count in the complaint contains the same allegations with respect to Nicole Fisher, Plaintiff's daughter.  Id.

On December 3, 1997, Plaintiff pled guilty to two counts of harassment in the Family Court of the First Circuit, State of Hawaiʻi and was sentenced to six months of probation. Decl. of Kirk C. Fisher, ¶ 3, ECF No. 78-1.[7/]  As part of the

---

[6/]  The Commentary regarding H.R.S. § 711-1106(a) states that "Subsection (1)(a) is a restatement of the common-law crime of battery, which was committed by any slight touching of another person in a manner which is known to be offensive to that person."

[7/]  As noted in the 2012 Preliminary Injunction Order, the Court takes judicial notice of the December 3, 1997 judgment in State of Hawaiʻi v. Kirk C. Fisher, FC-CR No. 97-3233, which confirms that Plaintiff was convicted under H.R.S. § 711-
(continued...)

terms of his probation, the judge ordered Plaintiff "to attend substance abuse assessment and . . . participate in counseling and/or treatment until clinically discharged or as directed by the probation officer." Defs.' Mtn. for Recon. Ex. C, ECF No. 39-6.  Plaintiff evidently received a certificate of completion stating that he completed a "Twelve Hour Drug and Alcohol Education Course."[8/]  Id. at Ex. E, ECF No. 39-8.

In connection with his conviction, Plaintiff was also ordered to surrender all firearms, ammunition, permits, and licenses to HPD.  Defs.' Mtn. for Recon. Ex. D, ECF No. 39-7.  On November 4, 1998, state judge Dan Kochi issued an "Order Permitting Return of Firearms, Ammunition, Permits and Licenses, With Condition."  Plntf.'s CSF Ex. 2, ECF No. 78-4.  The order

_____

[7/] (...continued)
1106(1)(a).  ECF No. 35 at 6, n. 4.

[8/]    The record does not explicitly state the reason Plaintiff was required to undergo a substance abuse assessment that involved counseling or treatment.  Plaintiff in his deposition admits that he had been drinking alcohol (specifically a six-pack of beer) on the day of the alleged domestic violence incident with his wife.  Deposition of Kirk C. Fisher at 26, lines 14-21, ECF No. 99-2.  Hawaiʻi statutes and case law appear to indicate that "substance abuse" may refer to, inter alia, the abuse of alcohol or drugs.  See H.R.S. § 291E-61(a)-(b) (mandating that a person convicted of driving a vehicle while under the influence of alcohol or drugs must attend a "substance abuse rehabilitation program"), § 321-191 ("Substance" means alcohol, any drug on schedules I through IV of chapter 329, or any substance which includes in its composition volatile organic solvents."), § 329B-2 (stating that "substance abuse test" refers to testing procedures regarding, inter alia, drugs and alcohol), and State v. Marshall, 114 Haw. 396, 402-03, 163 P.3d 199, 205-06 (Haw. App. 2007).

stated, in relevant part, that the HPD should return Plaintiff's firearms and ammunition "provided that the provisions of H.R.S. Chapter 134 are satisfied and that there are no . . . prohibitions under H.R.S. Section 134-7 . . . or a conviction of a misdemeanor crime of violence under 18 U.S.C. section 922(g)(9)." Id.  The HPD promptly returned Plaintiff's firearms as a result of this order.  Defs.' Answer at ¶ 1, ECF No. 40, Am. Compl. at 7, ¶ 19, ECF No. 31.

Prior to October of 2009, Plaintiff owned and possessed firearms.  Decl. of Kirk C. Fisher, ¶ 8, ECF No. 78-1.  In the fall of 2009, Plaintiff submitted an application to HPD in order to obtain a permit for additional firearms.  Id.  On October 1, 2009, Acting Chief of Police Paul Putzulu, through subordinate Major Kurt B. Kendro, denied Plaintiff's application via letter on the grounds that Plaintiff was disqualified under H.R.S. § 134-7.[9/]  Decl. of Kirk C. Fisher, ¶ 9, ECF No. 78-1; Plntf.'s CSF Ex. 3.  HPD then ordered Plaintiff to surrender to the police or otherwise lawfully dispose of his firearms and ammunition within 30 days of October 1, 2009.  Plntf.'s CSF Ex. 3, ECF No. 78-5.  According to the October 1, 2009 letter, HPD indicated

---

[9/]  The City Defendants' letter dated October 1, 2009 does not state which section of H.R.S. § 134-7 formed the basis for the denial of Plaintiff's firearms permit.  Plntf.'s CSF Ex. 3. In Mr. Wilkerson's letter to Defendant Kealoha, he indicates that officers from the HPD stated that the application was denied because Plaintiff had been convicted of a crime of violence, which would fall under H.R.S. § 134-7(b).

that the chief of police would take action to seize Plaintiff's firearms if he did not lawfully dispose of his firearms and ammunition. Id.  However, Plaintiff states that HPD told him that he would be arrested if he did not dispose of his firearms. Decl. of Kirk C. Fisher, ¶ 10, ECF No. 78-1.  The parties do not dispute that Plaintiff lawfully disposed of his firearms and ammunition.  Id. at ¶ 11, Defs.' CSF at 3, ¶ 8, ECF No. 90.

Plaintiff alleges that HPD told him he was disqualified from owning firearms because of his harassment convictions and that "it was their custom, practice and policy to review police reports to determine whether or not a defendant's alleged crime was a crime of violence." Decl. of Kirk C. Fisher, ¶ 12, ECF No. 78-1.  Plaintiff also alleges that HPD told him that Putzulu's decision was final and that appellate remedies did not exist. Id.

The City Defendants dispute these alleged facts and argue that HPD told Plaintiff that he was disqualified based upon H.R.S. § 134-7, not solely based upon the harassment convictions. Defs.' CSF at 3, ¶ 10, Plntf.'s CSF Ex. 3, ECF No. 78-5.  The City Defendants also dispute whether a HPD officer told Plaintiff about a "custom, practice and policy" of reviewing police reports because Plaintiff did not mention a specific person who told him the alleged information.  Defs.' CSF at 3, ¶ 11.  Furthermore, the City Defendants argue that permit applicants are able to seek

reconsideration of a denial of their permit application.  Decl. of Nitta at 4, ¶¶ 13-14, ECF No. 90-1.

According to the City Defendants, HPD runs a background check on individuals who apply for a firearms permit.  Decl. of Nitta at 3, ¶ 9, ECF No. 90-1. If the applicant was convicted of a crime of violence, then HPD denies the application.  Id. However, if the applicant was convicted for harassment, HPD attempts to determine if the particular conviction involved violent behavior, specifically, the use of physical force, and whether the violence occurred within a domestic relationship. Id.  If HPD determines that an applicant's conviction for harassment includes physical force against the victim or violent behavior in a domestic relationship, HPD denies the application. Id. at 10.

Regarding the specific procedure used for Plaintiff, HPD ran a background check and reviewed police reports related to the conviction.[10/]  Id. at ¶ 11.  Based upon the police reports, HPD concluded that Plaintiff "engaged in conduct which included violent behavior involving the use of physical force against his wife and daughter."  Id.  As a result, HPD denied Plaintiff's application.  Id. at ¶ 12.

---

[10/]   By the time Plaintiff applied for a permit in 2009, the transcripts/audio recordings of Plaintiff's guilty plea had been destroyed.  Plntf.'s CSF Ex. 4 at 2, ECF No. 78-6.

On August 31, 2010, Plaintiff through his counsel sent
a letter to HPD and requested that (1) HPD grant his application
for a permit to acquire firearms and (2) HPD rescind the prior
order instructing Plaintiff to surrender or dispose of his
firearms.  Plntf.'s CSF Ex. 4, ECF No. 78-6.  Defendant Kealoha
responded to Plaintiff's request on September 29, 2010 and
affirmed HPD's prior denial of Plaintiff's permit application.
Plntf.'s CSF Ex. 5, ECF No. 78-7.  Plaintiff subsequently
transferred ownership and possession of all of his firearms to
his wife, Colette Fisher, after she obtained the proper permits.
Am. Compl. at 8, ¶ 24, ECF No. 31.

### STANDARD

### I. Motion for Summary Judgment Under FRCP 56

A party may move for summary judgment on any claim or
defense - or part of a claim or defense - under Federal Rule of
Civil Procedure ("Rule") 56.  Summary judgment "should be granted
'if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law.'"  Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th
Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  Under Rule 56, a
"party asserting that a fact cannot be or is genuinely disputed
must support the assertion," either by "citing to particular
parts of materials in the record" or by "showing that the
materials cited do not establish the absence or presence of a

-12-

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

The substantive law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment."  Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).  Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Scott, 550 U.S. at 380.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  Avalos v.

Baca, 596 F.3d 583, 587 (9th Cir. 2010).[11/]  If the moving party satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Sluimer v. Verity, Inc., 606 F.3d 584, 587 (9th Cir. 2010).  The nonmoving party must present evidence of a "genuine issue for trial," Fed. R. Civ. P. 56(e), that is "significantly probative or more than merely colorable." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted).  Summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden of proof at trial." Parth v. Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir. 2010) (citation omitted).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007).  The court may not, however, weigh conflicting evidence or assess

---

[11/]  When the party moving for summary judgment would bear the burden of proof at trial, the movant must present evidence which would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. Miller v. Glenn Miller Prods., 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted). In contrast, when the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may meet its burden by pointing out the absence of evidence from the nonmoving party. Id. (citation omitted).

credibility.  In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).[12/]

Accordingly, if "reasonable minds could differ as to the import

of the evidence," summary judgment will be denied.  Anderson, 477

U.S. at 250-51.

## II. Permanent Injunction

In order to obtain a permanent injunction, a plaintiff

must satisfy a four-factor test by demonstrating the following:

(1) the plaintiff "has suffered an irreparable injury;" (2)

"remedies available at law, such as monetary damages, are

inadequate to compensate for that injury;" (3) "considering the

balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted;" and (4) that the public interest

would not be disserved by a permanent injunction."  Monsanto Co.

v. Geertson Seed Farms, 130 S. Ct. 2743, 2756, 177 L. Ed. 2d 461

(2010).[13/]

_____

[12/]   Nonetheless, a "conclusory, self-serving affidavit" that
lacks detailed facts and supporting evidence may not create a
genuine issue of material fact. F.T.C. v. Neovi, Inc., 604 F.3d
1150, 1159 (9th Cir. 2010).  Moreover, "[w]hen opposing parties
tell two different stories, one of which is blatantly
contradicted by the record, so that no reasonable jury could
believe it, a court should not adopt that version of the facts
for purposes of ruling on a motion for summary judgment."  Scott,
550 U.S. at 380. "The general rule in the Ninth Circuit is that a
party cannot create an issue of fact by an affidavit
contradicting his prior deposition testimony."  Yeager v. Bowlin,
693 F.3d 1076, 1080 (9th Cir. 2012).

[13/]   Although Plaintiff obtained a preliminary injunction via
this Court's order dated June 29, 2012 ("2012 Preliminary
Injunction Order"); the Supreme Court has indicated that a
(continued...)

A plaintiff seeking a permanent injunction must prove "by a preponderance of the evidence . . . the conditions and circumstances upon which the plaintiff bases the right to and necessity for injunctive relief." Walters v. Reno, 145 F.3d 1032, 1048 (9th Cir. 1998).  A court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Northern Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007) (citing Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)).

A district court has "broad latitude in fashioning equitable relief when necessary to remedy an established wrong." Northern Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007).  Accordingly, a court has discretion to issue a partial injunction depending on the equities in a case.  Id.

**DISCUSSION**

The Court determines that Plaintiff's MSJ should be considered before his MPI because Plaintiff must first actually

---

[13]/ (...continued)
permanent injunction should not be issued merely because a plaintiff obtained a preliminary injunction. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 32, 129 S. Ct. 365, 381, 172 L. Ed. 2d 249 (2008).  For a permanent injunction, Plaintiff must demonstrate actual success on the merits of his claim, and even if he does, the Court must examine the "balance of equities and consideration of the public interest." Id.

succeed on the merits before obtaining an injunction.  See Winter, 555 U.S. at 32, 129 S. Ct. at 381.

**I. Plaintiff's Motion for Summary Judgment**

   **A. The Second Amendment**

        The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II.   In Heller, the Supreme Court recognized that the Second Amendment protects the rights of individuals to keep and bear arms for self-defense.  554 U.S. 570 (2008).  The Supreme Court also suggested that the core purpose of the right conferred by the Second Amendment was to permit "law-abiding, responsible citizens to use arms in defense of hearth and home."  Id. at 635.  As a result of these conclusions, the Supreme Court struck down a law in the District of Columbia that banned the possession of handguns in the home.  Id. at 629-30.  However, the Supreme Court also observed that its holding should not be construed to "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."  Id. at 626.

        Two years later, the Supreme Court in McDonald v. City of Chicago held that the Second Amendment right to keep and bear arms applies to the states by way of the Fourteenth Amendment. 130 S. Ct. 3020 (2010).  In McDonald, the Supreme Court affirmed

the central holdings in <u>Heller</u>, including Heller's discussion of

the limitations on Second Amendment rights.   <u>Id.</u> at 3047.

Plaintiff's main contention in this case is that the

City Defendants violated his Second Amendment right to bear arms

for self-defense in the home when they denied him a firearms

permit.   However, the Court observes that Plaintiff does not

present a facial challenge to the Hawaiʻi restrictions at issue

in this lawsuit, namely Haw. Rev. Stat. § 134-7 or Haw. Rev.

Stat. § 134-2.[14/]   <u>See</u> Reply at 8 (acknowledging that the Court's

grant of an injunction "would not extend to any applicants other

than Plaintiff").   Instead, Plaintiff's main argument is that he

qualifies under the statute to receive a firearms permit, and the

City Defendants' failure to follow the statutes constitutes a

---

[14/]   At the hearing, Plaintiff's counsel argued that
Plaintiff is statutorily qualified under both federal and state
law to obtain a permit for a firearm; Plaintiff did not argue
that the statutes themselves violated the Constitution.   Amicus
Hawaii Defense Foundation raises a Fourteenth Amendment equal
protection challenge and various facial challenges to Hawaiʻi's
firearms permit statutes.   HDF Brief at 5-9, ECF No. 73.
However, the Court observes that Plaintiff has not alleged an
equal protection or facial challenge in his Complaint or
otherwise argued these theories in the briefs or at the hearing.
<u>See</u> <u>generally</u>, Am. Compl., ECF No. 31.   The Court declines to
consider HDF's arguments because they were raised by an amicus,
not an actual party to the case.   <u>See</u> <u>U.S. v. Gementera</u>, 379 F.3d
596, 607-08 (9th Cir. 2004) (9th Circuit declined to consider
issues raised only by amicus and not an actual party) <u>and
Intermountain Fair Housing Council v. Boise Rescue Mission
Ministries</u>, 657 F.3d 988, 996 n. 6 (9th Cir. 2011) (declining to
consider amici's establishment clause challenge to a program
because the plaintiffs did not raise, adopt, or endorse the
argument).

denial of Plaintiff's Second Amendment rights.  Am. Compl. at 10-17, ECF No. 31.  The City Defendants' main argument in response is that Plaintiff is in fact disqualified from firearms ownership because of his previous convictions for harassment and the existence of evidence of Plaintiff's counseling for substance abuse.  Defs.' Opp. at 3, 13-14, ECF No. 89.

Accordingly, the Court will not address the constitutionality of the permitting statutes under the Second Amendment because both parties appear to agree that the constitutional legitimacy of the statutes themselves do not form the basis for Plaintiff's claim.  See Heller, 554 U.S. at 631 (declining to address the constitutionality of the licensing requirement because the respondent conceded that the licensing law was permissible as long as it was not "enforced in an arbitrary and capricious manner").  Instead, the Court limits its examination to the claims presented by Plaintiff - namely whether he qualifies under Hawaiʻi law and Heller to exercise Second Amendment rights.  The Court also examines if Plaintiff's Fourteenth Amendment due process claims were violated in connection with his alleged Second Amendment rights.

Because Plaintiff's Fourteenth Amendment claims are related to his Second Amendment claims, this Court will first examine Plaintiff's Second Amendment rights before addressing his Fourteenth Amendment procedural due process claim.

-19-

### 1. Whether Federal Law Precludes Plaintiff From Obtaining a Firearms Permit

The City Defendants argue that Plaintiff is prohibited from possessing firearms under federal law because of the Lautenberg Amendment.  Def.'s Opp. at 4-6, ECF No. 89.[15/]

The Lautenberg Amendment prohibits firearm ownership by any person who "has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9) (2012).  A "misdemeanor crime of violence" is defined as a crime that (1)

---

[15/]  Haw. Rev. Stat. § 134-7(a) allows the chief of police to deny a firearms permit to persons who are "prohibited from possessing firearms or ammunition under federal law."  The Court notes that Haw. Rev. Stat. § 134-7(a)'s prohibition based on federal law was added to the statutory scheme in 2006.  2006 Haw. Sess. Laws 29.  Neither party discusses whether the police chief was entitled to retroactively apply this section to Plaintiff's convictions in 1997 for two counts of harassment; both parties' arguments assume that the chief could apply the federal law prohibition.  Defs.' Opp. at 4-5, ECF No. 89; Plntf.'s Reply at 4, ECF No. 97.  The Court notes that the application of H.R.S. § 134-7(a) does not appear to have an impermissible retroactive effect because the state law does not take away or impair rights Plaintiff had before the law was enacted.  See Landgraf v. USI Film Products, 511 U.S. 244, 269-270 (1994) (holding that a court examining if a law should be applied retroactively should consider whether the "new provision attaches new legal consequences to events completed before its enactment").  The federal Lautenberg Amendment was enacted in 1996 and therefore defined gun rights at the time Plaintiff was convicted in 1997. Gun Ban for Individuals Convicted of a Misdemeanor Crime of Domestic Violence, P.L. 104-208, 110 Stat. 3009 (1996) (codified at 18 U.S.C. § 921(a)(33) and § 922(g)(9)).  In any event, because the Court concludes that federal law does not bar Plaintiff from obtaining a firearms permit (see Section I.A.1, infra at 32-33), the Court need not determine whether it is improper for the police chief to apply § 134-7(a) to Plaintiff's convictions.

-20-

constitutes "a misdemeanor under Federal, State, or Tribal law,"
and (2) "has, as an element, <u>the use or attempted use of physical
force</u>, or the threatened use of a deadly weapon, committed by a
current or former spouse, parent, or guardian of the victim, by a
person with whom the victim shares a child in common, by a person
who is cohabiting with or has cohabited with the victim as a
spouse, parent, or guardian, or by a person similarly situated to
a spouse, parent, or guardian of the victim."  18 U.S.C. §
921(a)(33)(A)(i) (emphasis added).

        The Supreme Court has held that state crimes do not
need to include the element of a "domestic relationship" in order
to fall within Lautenberg's firearms prohibition.  <u>United States
v. Hayes</u>, 555 U.S. 415 (2009) (affirming a conviction under §
922(g)(9) where the predicate offense was a misdemeanor assault
that did not include a domestic relationship as an element, but
did involve such a relationship factually).  The Supreme Court
reasoned that the "domestic relationship" was not actually an
element required by the statute.  <u>Id.</u> at 426.  Thus, the Supreme
Court concluded that the definition of "misdemeanor crime of
domestic violence" has two requirements - (1) "the crime must
have, 'as an element the use or attempted use of physical force,
or the threatened use of a deadly weapon' and (2) the crime "must
be 'committed by' a person who has a specified domestic
relationship with the victim."  555 U.S. at 415.  Regarding the

second requirement of the existence of a domestic relationship, Plaintiff admits in the Complaint and his deposition that Colette Fisher is currently his wife and that they were married at the time of the 1997 incident.  Am. Compl. at 8, ¶ 24, ECF No. 31; Deposition of Kirk C. Fisher at 9-10, ECF No. 99-2.

However, with respect to the first requirement, Plaintiff's convictions for harassment do not qualify as a misdemeanor crime of domestic violence under federal law.  In order to determine whether a conviction for a state crime falls within the federal definition of a particular act or crime, the courts use the "categorical approach."  Descamps v. U.S., 133 S. Ct. 2276, 2281 (2013).  In this case, if the state crime of harassment proscribes the same conduct as the misdemeanor crime of domestic violence defined in the Lautenberg Amendment, then federal law would bar Plaintiff from obtaining firearms.  See id. at 2283.  The result would also be the same if the state statute defines the crime "more narrowly, because anyone convicted under that law is "necessarily . . . guilty of all the [federal crime's] elements."  Id.  However, if the state statute prohibits more conduct than the federal statute, then the conviction under state law does not qualify under federal law, even if the state offender actually committed the federal offense.  Id.  The Supreme Court emphasizes that "[t]he key . . . is elements, not facts."  Id.

-22-

The Ninth Circuit has held that the "physical force" element in the Lautenberg Amendment means "the violent use of force against the body of another individual." U.S. v. Belless, 338 F.3d 1063, 1068 (9th Cir. 2003).  The Ninth Circuit also indicated that the term "physical force" did not include "any touching" in the "sense of Newtonian mechanics" and also held that "de minimus" touching does not qualify under the statute. Id. at 1067-68.[16/]

Plaintiff was convicted under H.R.S. § 711-1106(1)(a), which states that a person "commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person . . . [s]trikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact."  The Commentary on § 711-1106 states that Section (1)(a) "is a restatement of the common-law crime of battery, which was committed by any slight touching

---

[16/]  The Courts of Appeals for the Fourth, Sixth, Seventh, and Tenth Circuits have concluded that the "touching" element of common law battery does not constitute "physical force" as contemplated in 18 U.S.C. § 921(a)(33)(A).  See United States v. White, 606 F.3d 144 (4th Cir. 2010), U.S. v. Castleman, 695 F.3d 582 (6th Cir. 2012), Flores v. Ashcroft, 350 F.3d 666 (7th Cir. 2003), United States v. Hays, 526 F.3d 674 (10th Cir. 2008).  In contrast, the Courts of Appeals for the First, Eighth, and Eleventh Circuits have concluded that the "touching" element of common law battery falls within the meaning of the term "physical force" in the Lautenberg Amendment.  See United States v. Nason, 269 F.3d 10 (1st Cir. 2001), United States v. Smith, 171 F.3d 617 (8th Cir. 1999), and United States v. Griffith, 455 F.3d 1339 (11th Cir. 2006).

of another person in a manner which is known to be offensive to that person."  Commentary on § 711-1106, H.R.S. § 711-1106(1)(a). Accordingly, the Hawaiʻi definition of harassment in H.R.S. § 711-1106(1)(a) prohibits "de minimus" or "slight" touching, while the federal misdemeanor crime of domestic violence does not prohibit such conduct.

The Ninth Circuit in <u>Belless</u> provides an illustration of how the federal definition of "misdemeanor crime of domestic violence" covers less conduct than the Hawaiʻi harassment statute.  In <u>Belless</u>, the Ninth Circuit gave the example of Vice President Nixon angrily confronting the Soviet Premier and poking the Premier in the chest with his finger while "expostulat[ing] with his face inches away."  <u>Belless</u>, 338 F.3d at 1068.  The Court of Appeals noted that Nixon's conduct could certainly be characterized as "rude" (or "offensive", as stated in the Hawaiʻi statute), but the conduct would not fall within the Lautenberg Amendment's requirement of "the violent use of force against the body of another individual."  <u>Id.</u>  However, based upon the wording in the Hawaiʻi statute, President Nixon's "rude" poking could meet the touching requirement for harassment under H.R.S. § 711-1106(1)(a).  Thus, the Hawaiʻi crime of harassment is defined more broadly than the federal crime and does not categorically qualify as a "misdemeanor crime of domestic violence."

-24-

The City Defendants argue that the Court should apply the modified categorical approach to "examine the facts of the underlying prior conviction to determine whether it was a crime of violence." Defs.' Opp. at 8, ECF No. 89. To support their argument, the City Defendants refer to state court documents in the record and also attach as exhibits the judicial determination of probable cause, officer affidavits, and witness statement forms that are part of police reports.[17] Id.; Defs.' CSF Ex. A, B, C, D, ECF No. 90. The City Defendants also submit a deposition of Plaintiff taken on April 17, 2013, in which Plaintiff admits that he pushed his wife and she "fell backwards on the ground." Deposition of Kirk C. Fisher at 33, lines 19-25, and 34, lines 1-9, ECF No. 99-2.

The Supreme Court recently clarified the use of the modified categorical approach, stating that it "helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the offender's conviction."[18]

---

[17] The witness statement forms contain signed statements from Colette Fisher (Plaintiff's wife), Nicole Fisher (Plaintiff's daughter), and Valerie Clough and Lisa Demarest, who appear to have been neighbors of the Fishers at the time of the 1997 incident. Defs.' CSF Ex. A, B, C, D, ECF No. 90.

[18] The quintessential example used by the Supreme Court to illustrate the application of the categorical and modified categorical approaches is the crime of burglary. Descamps, 133 S. Ct. at 2283. One of the basic elements of generic burglary
(continued...)

Descamps, 133 S. Ct. at 2283.  According to the Supreme Court, "the key . . . is elements, not facts." Id.  Thus, to determine the elements underlying the conviction, the Supreme Court held that courts could examine *reliable* documents such as an indictment or information, jury instructions, a transcript of the plea colloquy or written plea agreement, or a record of findings of fact adopted by the offender upon entering the plea.  See Taylor v. United States, 495 U.S. 575, 602, 110 S. Ct. 2143, 2160, 109 L. Ed. 2d 607 (1990) and Shepard v. United States, 544 U.S. 13, 16, 125 S. Ct. 1254, 1257, 161 L. Ed. 2d 205 (2005). However, the courts are not allowed to examine facts to determine whether the offender *actually committed* the generic crime, but whether an offender was *convicted* of the generic crime. Descamps, 133 S. Ct. at 2285-86.

---

[18]/ (...continued)
(for federal statutes) involves the unlawful entry into a building or structure.  Id.  However, a state statute may define burglary as, inter alia, the unlawful entry into a building *or* an automobile.  Id. at 2284.  Thus, the state statute introduces an alternative version of the crime that includes an element not present in the federal crime - unlawful entry into an automobile. Id.  A person who is charged for unlawful entry into a building *or* an automobile may be convicted for unlawful entry into a building, or unlawful entry into an automobile.  Id. at 2284.  If he is convicted for unlawful entry into a building, then he has also committed a generic burglary as defined by federal law. However, if he is convicted for unlawful entry into an automobile, such a crime would not constitute generic burglary. Accordingly, the courts use the modified categorical approach to determine which version of the crime provided the basis for the conviction.  Id.

The elements of H.R.S. § 711-1106(1)(a) are listed in the disjunctive:  A person may be convicted if he or she "[s]trikes, shoves, kicks, <u>or</u> otherwise touches another person in an offensive manner <u>or</u> subjects the other person to offensive physical contact." Accordingly, the Court may apply the modified categorical approach to determine which element "played a part in [Plaintiff's] conviction." <u>See Descamps</u>, 133 S. Ct. at 2283. However, even if the Court applies the modified categorical approach, Plaintiff's conviction does not fall within the Lautenberg Amendment.

With respect to the state court documents, Plaintiff's charging document includes the full definition found in H.R.S. § 711-1106(1)(a):  "Kirk C. Fisher, with intent to harass, annoy, or alarm Colette Fisher, did <u>strike, shove, kick, or otherwise touch</u> Colette Fisher <u>in an offensive manner</u>, <u>or subject her to offensive physical contact</u>, thereby committing the petty misdemeanor offense of harassment in violation of Section 711-1106(1)(a) of the Hawaii Revised Statutes." <u>State of Hawaiʻi v. Kirk C. Fisher</u>, FC-CR No. 97-3233, Compl. p. 1 (emphasis added). The elements of harassment are stated in the disjunctive - Plaintiff could have been convicted of harassment if he did any one of the acts listed above. <u>Id.</u> The judgment of the state court also fails to indicate which element of H.R.S. § 711-1106(1)(a) formed the basis for Plaintiff's guilty plea. Defs.'

Mtn. for Recon. Ex. C, ECF No. 39-6.  Instead, the judgment

merely states that "Defendant entered a plea of guilty as

charged."  Id.  Because the charging document and the judgment

include the elements of harassment that allow for conviction on

the basis of de minimus touching, the modified categorical

approach requires a conclusion that Plaintiff's conviction is not

covered by the Lautenberg Amendment.  See Descamps, 133 S. Ct. at

2283.

        Regarding the police reports submitted by the City

Defendants, the Court is limited to examining reliable documents

that demonstrate the *elements* composing Plaintiff's conviction.

The Supreme Court has specifically held that the courts are not

allowed to consider police reports when determining the elements

of the crime unless the offender in some way admits the truth of

the information contained in the report as part of his plea.

Shepard v. U.S., 544 U.S. 13, 17-19, 125 S. Ct. 1254, 1258-59

(2005).  In this case, the record does not indicate that

Plaintiff's guilty pleas integrated the alleged facts from the

police reports.  As mentioned in this Court's Reconsideration

Order re Plaintiff's Preliminary Injunction, the City Defendants

have not presented the Court with a transcript of the plea

colloquy to demonstrate the specific facts that Plaintiff

stipulated to in connection with his pleas.  Reconsideration

Order re Plaintiff's Preliminary Injunction at 13, ECF No. 50.

The same analysis is applicable to the officer declarations and the probable cause statement - neither of these sources isolate the elements or facts that Plaintiff admitted in his plea.[19/]  Accordingly, the documents discussed above fail to indicate that Plaintiff's conviction was based on the elements of harassment that might constitute "the violent use of force against the body of another individual." Belless, 338 F.3d at 1068.  As a result, the Court cannot use these documents to conclude that the elements forming the basis for Plaintiff's conviction are limited to the harassment elements involving a violent use of force.

The City Defendants also submit witness statements from Colette Fisher, Nicole Fisher, Valerie Clough, and Lisa Demarest regarding the incident in 1997.  These witness statements appear to be part of the police reports, which may not be considered for the reasons discussed above.  Defs.' CSF Ex. A, Ex. B, Ex. C, and

_____

[19/]    The City Defendants' citation to United States v. Serrao, 301 F. Supp. 2d 1142 (D. Haw. 2004) and United States v. Sweeten, 933 F.2d 765 (9th Cir. 1991) do not convince the Court that it would be appropriate to consider the police reports, police officer declarations, or the probable cause statement. The courts in those cases stated that the documents were used to determine the elements of the conviction; both courts acknowledged that it would be improper to inquire into the facts underlying the convictions of the offenders.  See Sweeten, 933 F.2d at 769 ("we agree that it would have been error for the district court to inquire into the facts underlying Sweeten's Texas conviction") and Serrao, 301 F. Supp. 2d at 1146 ("This court's inquiry is limited to what Serrao pled guilty to, not what acts he committed.").

-29-

Ex. D, ECF No. 90. Moreover, these victim or witness statements also do not fall within the category of reliable documents to determine the facts forming the basis of Plaintiff's guilty plea. See Shepard v. U.S., 544 U.S. 13, 20-21, 125 S. Ct. 1254, 1259-60 (2005); see also Cheuk Fung S-Yong v. Holder, 600 F.3d 1028, 1036 (9th Cir. 2010) (noting that consideration of a victim's testimony involves the type of fact-finding that the modified categorical approach attempts to avoid) and United States v. Ventura-Perez, 666 F.3d 670, 677 (10th Cir. 2012) (noting that a victim's statement cannot be used under the modified categorical approach).

The City Defendants also submit a deposition of Plaintiff taken on April 17, 2013, in which Plaintiff describes the November 1997 incident and admits that he pushed his wife and she "fell backwards on the ground." Deposition of Kirk C. Fisher at 33, lines 19-25, and 34, lines 1-9, ECF No. 99-2. However, the Ninth Circuit has held that statements or admissions by an offender may not be used under the modified categorical approach if they merely provide "bare facts" instead of indicating that an offender's guilty plea was based on that conduct. Huerta-Guevara v. Ashcroft, 321 F.3d 883, 888 (9th Cir. 2003) (holding that offender's statements in her brief and judicial admissions could not be used because the statements did not indicate if she had actually pled guilty to the elements supported by those facts),

see also Perez-Mejia v. Holder, 663 F.3d 403, 410 (9th Cir. 2011)
(holding that admissions and statements made during immigration
removability proceedings may not be used in the modified
categorical approach to determine if alien's state crime
conviction qualified under federal statute), U.S. v. Rodriquez-
Guzman, 506 F.3d 738, 747 n. 9 (9th Cir. 2007) (noting that
admissions of facts underlying a crime made by an offender's
counsel before a court that is not the convicting court may not
be used for the modified categorical approach because the
admissions are not "a record of the convicting court").

        Based on Ninth Circuit law, Plaintiff's admissions in
his deposition do not qualify as a document that may be
considered under the modified categorical approach.  Plaintiff's
admissions are a recollection from his point of view as to the
factual events that happened during the incident resulting in his
arrest.  Deposition of Kirk C. Fisher at 33, lines 19-25, and 34,
lines 1-9, ECF No. 99-2.  His statements do not mention the
criminal proceedings or indicate that his guilty pleas were based
upon the elements of harassment that constitute a "crime of
violence."  Even if Plaintiff factually pushed Colette Fisher and
admits to doing so now, such an admission more than ten years
after the state court proceedings does not indicate that he pled
guilty to "striking, shoving, or kicking" Colette Fisher as
opposed to the touching element of the crime of harassment.  As

-31-

indicated by the Supreme Court in Descamps, offenders may plead guilty to a less serious version of a crime even if the admitted facts would support conviction for a more serious crime because of negotiated plea deals.  133 S. Ct. at 2289.  The Court specifically noted that it would be unfair for a subsequent court to rewrite an offender's plea bargain.  Id.  Accordingly, the Court may not consider the admissions in the modified categorical approach.

The City Defendants argue that various courts of appeal cases support their contention that this Court should "examine the facts of the underlying prior conviction."  Defs.' Opp. at 8-9, ECF No. 89 (citing United States v. Hays, 526 F.3d 674 (10th Cir. 2008) and United States v. Nobriga, 474 F.3d 561, 564 (9th Cir. 2006)).  However, these cases do not support the City Defendants' proposition because the courts conducted an elements-based analysis; the courts did not conduct a factual inquiry.  Moreover, the Supreme Court's decision in Descamps specifically bars this Court from conducting the factual inquiry requested by the City Defendants.  Descamps, 133 S. Ct. at 2283 (holding that the focus of the modified categorical approach is on the elements, not the facts of a crime).  As a result of the above analysis, the Court concludes that, under both the categorical and modified categorical approaches, Plaintiff's convictions for

-32-

harassment do not disqualify him under 18 U.S.C. § 922(g)(9) from possessing firearms.

### 2. Whether Hawaiʻi Law Precludes Plaintiff from Obtaining a Firearms Permit

#### a. H.R.S. § 134-7(b)

The City Defendants also argue that Plaintiff is barred from receiving a firearms permit under H.R.S. § 134-7(b), which states as follows:

> (b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

The statutory scheme defines a "crime of violence" as "any offense, as defined in title 37,[20] that involves injury or threat of injury to the person of another." H.R.S. § 134-1. The question, therefore, is whether Plaintiff's convictions for harassment qualify as a "crime of violence."

The Hawaiʻi Supreme Court has stated that, when conducting a statutory interpretation analysis, the court's "foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily

---

[20] Title 37 consists of Hawaiʻi's Penal Code.

-33-

from the language contained in the statute itself." State v.
Cullen, 86 Haw. 1, 8-9, 946 P.2d 955, 962-63 (1997).
Additionally, the courts may look at extrinsic sources such as
legislative history in order to ascertain the legislature's true
meaning. Id. The Court may also consider "the reason and spirit
of the law, and the cause which induced the legislature to enact
it." Id.

         In the supplemental briefing submitted to this Court,
the Brady Center argues that the "plain language" of H.R.S. §§
134-7 and 134-1 requires "an examination of the underlying facts
to determine whether the offense actually involved injury or
threat of injury to the person of another." Brady Center Supp.
Brief at 1, ECF No. 104. The Brady Center argues that the
interpretation of a Hawai'i statute should be conducted under
state-law principles, and that the Hawai'i state courts have
never applied the categorical or modified categorical approaches
in Hawai'i law. Brady Center Supp. Brief at 1-2, ECF No. 104.

         While the Court acknowledges that Hawai'i has not used
the categorical or modified categorical approaches to interpret
the "crime of violence" provision in H.R.S. § 134-7; the Court is
not convinced that the Hawai'i legislature intended a fact-based,
circumstantial inquiry instead of an inquiry based on the
elements underlying a conviction or guilty plea.

First, the plain language of the statute states as follows:  "'Crime of violence' means any offense, <u>as defined in title 37</u>, that involves injury or threat of injury to the person of another."  H.R.S. § 137-1 (emphasis added).  Title 37 lists the specific elements constituting individual criminal offenses. Thus, the plain language of H.R.S. § 134-1 indicates that the "offense" is defined by the elements in the penal code.[21] Because the term "offense" is referred to in terms of its elements under the Hawaiʻi penal code, it appears that the legislature intended an elements-based analysis as opposed to a factual inquiry.

Second, the Court observes that, from its inception in 1927 until 1968, H.R.S. § 134-1 defined "crime of violence" in terms of specific crimes under the penal code, for example, murder, manslaughter, rape, robbery, burglary, etc.  In the 1968 version of the statute, the legislature referenced specific

---

[21]  At the hearing, Brady Center argued that the words "as defined in Title 37" are the legislature's attempt to limit the crimes covered to a class of offenses involving crimes against the person or property as opposed to traffic offenses like "running a red light and causing an injury."  Besides the fact that the legislative history does not indicate such intent, the Court notes that Title 37 covers a broad range of crimes beyond crimes against the person or property, including injury caused by a person's negligent operation of a motor vehicle (see H.R.S. § 707-706), computer crimes, offenses against the public administration, etc.  In light of Title 37's broad coverage, the Court does not adopt Brady's interpretation of H.R.S. § 134-1's reference to Title 37.

sections of the penal code in defining "crime of violence."  Haw. Rev. Stat. § 134-1 (1968).

In 1975, the Hawaiʻi legislature eliminated the reference to "crime of violence" in Sections 134-1 and 134-7 and substituted the word "felony."  H.R. 8-723, Reg. Sess., at 1309 (Haw. 1975).  In the House report, the legislature indicated that the bill would expand the prohibition in 134-7 "to a broader category of persons – that is, from persons convicted of the foregoing "crimes of violence" to felons generally."  Id.

In 1981, the legislature added "crime of violence" to H.R.S. § 134-7 while keeping the felony prohibition; additionally, the definition of "crime of violence" was changed to the form seen in the current version of the statute.  1981 Haw. Sess. 462.  Id.  The legislature did not indicate that the new form of the definition was intended to be a substantive change from the elements-based definition used in prior years. See H.R. 11-49, Reg. Sess., at 922 (Haw. 1981); S. 11-49, Reg. Sess., at 929 (Haw. 1981).  By using the phrase "as defined by Title 37" in the modern definition, it appears that the legislature intended the term "crime of violence" to be defined according to the elements of the penal code instead of creating a broad factual inquiry.

Additionally, the 1981 Senate and House reports regarding H.R.S. § 134-7 states that a person "indicted or

-36-

convicted" of a crime of violence is prohibited from owning or possessing a firearm.  H.R. 11-49, Reg. Sess., at 922 (Haw. 1981); S. 11-49, Reg. Sess., at 929 (Haw. 1981).  As Plaintiff argues in his supplemental brief, the statute covers indictment or conviction, not the circumstances surrounding an arrest. Plntf.'s Supp. Brief at 7.  In the absence of any intent to the contrary, the Court concludes that it is appropriate to focus on the conviction itself instead of the underlying conduct resulting in arrest.

Because H.R.S. §§ 134-1 and 134-7 focus on whether the elements of the crime involve injury or threat of injury, the Court's use of federal law as persuasive authority in employing the modified categorical approach appears to be appropriate.  In State v. Auwae, the Intermediate Court of Appeals examined federal law interpreting 18 U.S.C. § 922(g) when resolving an ambiguity with H.R.S. § 134-7(b).  89 Hawaiʻi 59, 66, 968 P.2d 1070, 1077 (Haw. App. 1998) (overruled on other grounds by State v. Jenkins, 93 Haw. 87, 997 P.2d 13 (2000)).  The court of appeals noted that the "objective and language [of 18 U.S.C. § 922(g)] are similar to that of H.R.S. § 134-7(b)."  Id.  While Auwe dealt with an entirely different issue than the issues before the Court, the Hawaiʻi Court of Appeals' decision to use federal gun control law as persuasive authority lends support to

this Court's decision to use the categorical approach in this
case.[22]

The Court also observes that other state courts have
adopted the federal categorical approach in situations requiring
a determination of whether a past conviction qualifies as a
certain type of crime under an ambiguous state statute.  See
Redeker v. Eighth Judicial District Court of the State of Nevada,
122 Nev. 164, 127 P.3d 520 (2006) (using the categorical approach
to determine whether a defendant's previous crime qualified as an
aggravating circumstance under a sentencing statute); State v.
Lloyd, 132 Ohio St. 3d 135, 970 N.E.2d 870 (2012) (using a
version of the federal categorical approach to determine whether
a Texas conviction was equivalent to a conviction under Ohio
law).  Thus, while the Court acknowledges the Brady Center's
argument that state law determines the interpretation of state
statutes, states may use federal law as persuasive authority in
determining how to interpret a state statute.  Based on the
analysis of Hawai'i law as explained above, the Court finds it

_____

[22]   The Court also notes that United States v. Nobriga, 474
F.3d 561 (9th Cir. 2006) and United States v. Spencer, 724 F.3d
1133 (9th Cir. 2013) involved federal courts using the
categorical approach to determine whether a state crime qualified
under a federal statute for sentencing enhancements.  While these
cases involved federal sentencing cases, the Court observes that
Hawai'i criminal statutes have been examined using the
categorical approach.

appropriate to use the categorical approach to determine whether Plaintiff's conviction qualifies as a crime of violence.

In support of its argument, the Brady Center argues that the Hawaiʻi Court of Appeals has interpreted the word "involving" to require a "circumstance-specific," fact-based approach to determine whether an infraction triggers certain consequences under a statute.  See Brady Center Supp. Brief at 2. The case cited by the Brady Center, State v. Herbert, revolved around the interpretation of H.R.S. § 706-625(7) (Supp. 2003), which allows a court to continue a nonviolent substance abuser's probation instead of sending the substance abuser to jail for violating a probation term.  112 Haw. 208, 145 P.3d 751 (Haw. App. 2006).  H.R.S. § 706-625(7) states that a nonviolent substance abuser may continue on probation even after "a first violation of the terms and conditions of probation involving possession or use . . . of any dangerous drug."  The parties in Herbert disagreed over what terms constituted drug-related probation terms as opposed to non-drug-related probation terms. 112 Haw. at 212.

The plaintiff in Herbert had entered no contest pleas to drug-related offenses in 2003.  Id. at 210.  The state later claimed that Herbert had violated certain conditions of his probation, namely "failing to report to his probation officer as directed, failing to notify his probation officer of any change

-39-

in address, failing to submit to a drug/alcohol assessment as directed, and failing to pay the crime victim compensation and probation service fees." Id. at 215.  The court of appeals determined that the "question before us is whether Herbert's violation of his terms and conditions of probation involved possession or use of drugs as meant under HRS § 706-625(7)." Id. The court then proceeded to examine California law as persuasive authority on whether each probation term was drug-related or non-drug-related.  Id. at 217-218.  After examining California law, the court determined that certain probation terms were drug-related while others were not.  Id. at 218.

While the Brady Center asserts that this case used a "circumstance-specific" approach, the Hawai'i Court of Appeals did not actually interpret the word "involving" to require a circumstance-specific inquiry.  Instead, the Hawai'i court used California precedent on drug-related probation terms in order to reach its conclusion.[23/]  Herbert, 112 Haw. at 217-218.  As a

---

[23/]  The California cases relied upon by the Hawai'i Court of Appeals in Herbert interpreted a California statute stating that the courts should conduct hearings to determine whether an offender's probation should be revoked and required proof of the alleged probation violation.  See Cal. Penal Code § 1210.1 (West).  The requirement of proof of the alleged probation violation supports a circumstantial inquiry, but the California statute is not similar to Hawai'i's statutory drug-related probation language.  Compare id. to Haw. Rev. Stat. § 706-625. Thus, it appears that Herbert's use of a fact-based inquiry stems from the California courts' application of their statute, not from an interpretation of the word "involving."

result, Herbert does not appear to support the Brady Center's analysis that "involving" requires a fact-based inquiry.[24/]

The Brady Center also makes the argument that, if the legislature intended to limit the firearms ban to "individuals convicted of specific predicate offense *statutes*, Section 134 would have stated that the predicate offense must contain specific *elements*." Brady Center Brief at 7, ECF No. 93.  The Brady Center argues that the lack of the word "elements" indicates that the legislature must have meant that the facts of the actual crime should be evaluated.  Id.  However, the Court observes that the categorical approach has been applied to statutes that do not contain the word "element."  See James v. United States, 550 U.S. 192, 201-02, 127 S. Ct. 1586, 1593, 167 L. Ed. 2d 532 (2007).  In James, the Supreme Court used the categorical approach for a statute that defined "violent felony" as, inter alia, a crime that "is burglary, arson, or extortion, involves use of explosives, or otherwise *involves conduct* that presents a serious potential risk of physical injury to another." James, 550 U.S. at 201-02 (citing U.S.C. § 924(e)(2)(B)(ii)).

---

[24/]   The Supreme Court has interpreted the phrase "involve conduct that presents a serious potential risk of physical injury to another" to require a categorical analysis of whether the state crime contains elements of risk of physical injury to another.  James v. U.S., 550 U.S. 192, 202 (2007).  However, the language analyzed by the Supreme Court in James is from the federal Armed Career Criminal Act.

Accordingly, the absence of the word "element" does not bar the use of the categorical approach.

The Brady Center argues that Hayes provides a framework of examining the factual circumstances of whether a crime meets the definition of a "crime of violence."  Brady Center Brief at 5-6, ECF No. 93 (citing United States v. Hayes, 555 U.S. 415 (2009)).  The Court notes that the Supreme Court in Hayes did not abandon the categorical or modified categorical approaches, but instead concluded that the term "domestic relationship" was not an "element" for purposes of determining whether a state crime qualified.  The Supreme Court examined the exact wording in the statute and concluded, inter alia, that the term "element" was listed in the singular and therefore only applied to the "use of force" requirement, not the domestic relationship clause.  Hayes, 555 U.S. at 421-22.  The court observed that the use of force requirement and the domestic relationship requirement were two distinct concepts, so it was unlikely that Congress intended the singular word "element" to refer to both concepts.  Id. at 425-26.  The Hayes case is distinguishable because the wording of the federal statute, which is different from H.R.S. § 134-1, supported an interpretation for a fact-based approach for the domestic relationship requirement.  For the reasons discussed above, the Court concludes that the wording of H.R.S. § 134-1 supports a conclusion that the "injury or threat of injury"

requirement was intended to be examined in terms of the elements of a conviction as opposed to a factual-based approach.  See *supra* at 35-37.

The Brady Center also argues that Nijhawan v. Holder, 557 U.S. 29 (2009) uses a "circumstance-specific" approach to determine whether a fraud offense qualified a non-citizen for deportation.  Brady Center Supp. Brief at 1 n. 2.  The Nijhawan case examined a statute regarding "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000."  Nijhawan v. Holder, 557 U.S. 29, 38, 129 S. Ct. 2294, 2301, 174 L. Ed. 2d 22 (2009).  The Supreme Court noted that the statutory language "in which the loss to the victim or victims exceeds $10,000" referred to "specific circumstances," not generic crimes.  557 U.S. at 37.  The court found that the words "in which" could refer to "the conduct involved "in" the commission of the offense of conviction, rather than to the elements of the offense."  Id. at 39.  In this case, there is no "in which" language in H.R.S. § 134-1 that refers to "specific circumstances."  Instead, the language in H.R.S. § 134-1 refers to generic crimes by defining "offense" according to the general provisions of the Hawaiʻi penal code.  See *supra* at 35. Accordingly, Nijhawan does not support using a circumstantial approach for H.R.S. § 134-1.

-43-

The Brady Center presents another argument that the modified categorical approach should not be used because the rationales behind the approach do not apply to Haw. Rev. Stat. § 137 and § 134-1.  The Brady Center argues that the Supreme Court stated in Descamps that the use of the modified categorical approach was appropriate because (1) the ACCA's text and history supported using the approach, (2) the approach would avoid the Sixth Amendment concerns that could arise from "courts making findings of fact that properly belong to juries," and (3) that the approach would avert "the practical difficulties and potential unfairness of a factual approach."  Brady Center Supp. Brief at 2 (citing Descamps v. U.S., 133 S. Ct. 2276, 2287 (2013)).  The Brady Center argues that these rationales behind the modified categorical approach do not apply to the present case because this case is a civil case involving a Hawaiʻi statute instead of the ACCA.  Id.

The Court first observes that the modified categorical approach has not been restricted only to cases involving the ACCA or the Sixth Amendment.  The federal courts have applied the modified categorical approach to civil proceedings, namely deportation proceedings that do not involve the ACCA.  See Moncrieffe v. Holder, 133 S. Ct. 1678 (2013) (using the modified categorical approach to determine whether a state crime qualified

for deportation of a noncitizen).[25/]   The Courts have also applied

the modified categorical approach in immigration cases that do

not involve potential violations of the Sixth Amendment.   See

Moncrieffe v. Holder, 133 S. Ct. 1678 (2013); Espinoza-Gonzalez

v. Holder, 2013 WL 3815149 at *2 (9th Cir. July 24, 2013)

(unpublished decision) (noting that federal courts can apply

modified categorical approach cases involving the ACCA to

immigration cases).   While the modified categorical approach may

be in alignment with the purposes and text of the ACCA and help

avoid potential Sixth Amendment violations; it does not logically

follow that the approach can only be used in cases analyzing the

ACCA and potential Sixth Amendment issues.

        In Moncrieffe, the Supreme Court stated that the

categorical approach "serves practical purposes:  It promotes

judicial and administrative efficiency by precluding the

relitigation of past convictions in minitrials conducted long

after the fact."  133 S. Ct. at 1690.  This rationale given by

the Supreme Court is certainly applicable to the present case -

Plaintiff pled guilty to the crime of harassment over fifteen

years ago in 1997.[26/]  Under the Brady Center and the City

_____

        [25/]  The Supreme Court noted in Nijhawan v. Holder that a
deportation proceeding is a civil proceeding.  557 U.S. at 42.

        [26/]  The Court observes that Plaintiff in his deposition
states that he pushed Colette Fisher away because she kicked him
and struck him with her fist.  Deposition of Kirk C. Fisher at
                                                    (continued...)

Defendants' interpretation of H.R.S. § 134-7 and 134-1, this
Court would be required to evaluate evidence regarding
Plaintiff's conduct on November 5, 1997, including hearing
testimony from any witnesses called by the parties to testify to
the events of that night.

Additionally, under the Brady Center and the City
Defendants' approach, two persons, each convicted of the same
offense, might receive different treatment based upon whether or
not they can produce evidence years after their conviction.  As
mentioned in Moncrieffe, the modified categorical approach
prevents this type of "potential unfairness."  133 S. Ct. at
1690.

The Supreme Court in Descamps, when rejecting the Ninth
Circuit's application of the categorical approach to an
indivisible statute, illustrated other difficulties that may
arise from a fact-based approach regarding past convictions.

> In case after case, sentencing courts following
> Aquila-Montes would have to expend resources examining
> (often aged) documents for evidence that a defendant

---

26/ (...continued)
33, lines 6-24, ECF No. 99-2.  Therefore, it seems highly likely
that a "minitrial" would be needed to determine whether the shove
was actually the underlying fact he pled guilty to for
harassment, or whether the "shove" was in self-defense and
Plaintiff pled guilty to some other act.  Plaintiff in his
deposition also states that any touching of Nicole Fisher
involved gesturing for her to move away from him and Colette as
opposed to contact constituting a threat of injury, necessitating
a minitrial of the events involving Nicole Fisher.  Deposition of
Kirk C. Fisher at 33, lines 6-24, ECF No. 99-2.

-46-

admitted in a plea colloquy, or a prosecutor showed at trial, facts that, although unnecessary to the crime of conviction, satisfy an element of the relevant generic offense. The meaning of those documents will often be uncertain. And the statements of fact in them may be downright wrong. A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense—and may have good reason not to. At trial, extraneous facts and arguments may confuse the jury. (Indeed, the court may prohibit them for that reason.) And during plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations. . . . Still worse, the <u>Aquila-Montes</u> approach will deprive some defendants of the benefits of their negotiated plea deals. Assume (as happens every day) that a defendant surrenders his right to trial in exchange for the government's agreement that he plead guilty to a less serious crime, whose elements do not match an ACCA offense. Under the Ninth Circuit's view, a later sentencing court could still treat the defendant as though he had pleaded to an ACCA predicate, based on legally extraneous statements found in the old record. Taylor recognized the problem: "[I]f a guilty plea to a lesser, nonburglary offense was the result of a plea bargain," the Court stated, "it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty" to generic burglary. 495 U.S., at 601-602, 110 S.Ct. 2143. That way of proceeding, on top of everything else, would allow a later sentencing court to rewrite the parties' bargain.

While <u>Descamps</u> is not directly applicable to the present case, its reasoning regarding the problem of searching old documents and potentially depriving a defendant of the benefit of his plea illustrates problems with adopting a fact-based approach for H.R.S. § 134-1.

The City Defendants and the Brady Center also argue that, in the event the Court uses the categorical and modified categorical approaches, Plaintiff would be barred from obtaining

a firearm because harassment is categorically a crime of
violence.  According to the City Defendants, harassment
encompasses offenses that involve "threat of injury to the person
of another."  Brady Center Brief at 10-12.  However, the Court
disagrees that the element of "threat of injury" is necessarily
part of the crime of harassment.  Based upon the plain language
of the statute, the terms "injury" and "threat of injury" are not
elements of harassment as it is defined in H.R.S. § 711-
1106(1)(a).  Compare H.R.S. § 134-1 with H.R.S. § 711-1106(1)(a).

     The Court reiterates that the Commentary on § 711-1106
states that Section (1)(a) essentially codifies the common-law
crime of battery, which includes any slight touching of another
person.[27/]  Commentary on § 711-1106, H.R.S. § 711-1106(1)(a).  As
illustrated in Belless, offensive touching does not necessarily
mean that the "threat of injury" exists.  338 F.3d at 1068.
Thus, the touching or contact need not create a "threat of
injury" to fall within the definition of battery and harassment.

     While the Hawaiʻi courts have not confronted the exact
issue before this court, a Hawaiʻi court of appeals case provides
some guidance as to whether harassment categorically includes
"threat of injury to the person of another" as an element.  In

---

[27/]  The Hawaiʻi Supreme Court acknowledges that, while the
Commentary is not indicative of legislative intent, it is an "aid
in understanding the section."  State v. Hopkins, 60 Haw. 540,
543 n. 2 (1979).

-48-

State v. Pesentheiner, the Hawaiʻi Court of Appeals held that

"offensive physical contact" may occur if the offender contacts

"an item physically appurtenant to the body." 95 Hawaiʻi 290,

296 (Haw. App. 2001). The court ruled that knocking a hat off of

someone's head could constitute harassment, and included other

examples of offensive contact that would qualify including

"tugging at a person's shirt-tails, knocking off his eyeglasses,

grabbing her necktie or pulling on his necklace." (correctly

stated) Id. Under the Hawaiʻi Court of Appeal's interpretation,

"threat of injury to the person of another" is not required for a

conviction for harassment because an offender may intend to

offend or annoy by contacting items physically appurtenant to the

person.[28] Id.

The legislative history of H.R.S. § 134-1 as explained

above provides little guidance as to whether or not the

legislature intended the crime of harassment to categorically

fall within the definition of "crime of violence." See supra at

35-37. The Court observes that, in 1975, the legislature

---

[28] The U.S. v. Mohr case cited by amicus Brady Center does not persuade the Court to interpret harassment as a categorical crime of violence. 554 F.3d 604 (5th Cir. 2009). The Fifth Circuit in Mohr found that the state statute prohibited "words or conduct" that created a fear of serious crimes (death, assault, bodily injury, etc.) that were analogous to the violent crimes in the federal statute (burglary, arson, extortion, etc.). 554 F.3d at 609-10. In this case, Hawaiʻi cases such as Pesentheiner support a conclusion that harassment prohibits non-violent conduct because a "threat of injury" need not result for the contact to be offensive. 95 Hawaiʻi at 296.

eliminated the "crime of violence" prohibition entirely and substituted the term "felony."  H.R. 8-723, Reg. Sess., at 1309 (Haw. 1975).  At the time the legislature made the change, the crime of harassment was considered a petty misdemeanor and therefore did not fall within H.R.S. § 134-7's firearms prohibition.  H.R.S. § 711-1106(a) (1975).  When the legislature added the "crime of violence" prohibition with the modern form of the definition in 1981, the legislature did not indicate whether or not harassment categorically qualified as a "crime of violence."  See 1981 Haw. Sess. 462, H.R. 11-49, Reg. Sess., at 922 (Haw. 1981); S. 11-49, Reg. Sess., at 929 (Haw. 1981).

The Court does note, however, that when the legislature first enacted the penal code in 1972 and added the crime of harassment, the legislature specifically stated in the committee reports that it is the "intent of the Committee that the definitions of crimes are to be strictly construed."  H.R. 6-1 Reg. Sess., at 1035 (Haw. 1972).  The Court would be violating the wishes of the legislature by construing harassment to include an element that is not necessary for the commission of the crime as stated in the statute.  As a result of the above observations, the Court finds that the legislative history does not indicate an intent to categorically include harassment as a crime of violence.

Moreover, Hawaiʻi courts also observe the rule of lenity when construing statutes. State v. Auwae, 89 Haw. 59, 69-70, 968 P.2d 1070, 1080-81 (1998), overruled on other grounds by State v. Jenkins, 93 Haw. 87, 997 P.2d 13 (2000) (applying rule of lenity when deciding whether H.R.S. § 134-7(b) applied to defendant's felony conviction). The rule of lenity in Hawaiʻi has been described as follows:

> In the absence of any guidance regarding the legislature's intent, we are required to construe a [penal statute] in favor of the defendant. See Busic v. United States, 446 U.S. 398, 406 [100 S.Ct. 1747, 64 L.Ed.2d 381] (1980). 'Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' Id. (citations omitted). 'This policy of lenity means that the [c]ourt will not interpret a [state] criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what the [legislature] intended.'
>
> Id.

In addition to the above finding that the legislative history does not indicate that harassment categorically constitutes a crime of violence under H.R.S. § 137(b), the Court also construes H.R.S. § 134-1 in favor of Plaintiff pursuant to the doctrine of lenity.[29/]

---

[29/] The Hawaiʻi Court of Appeals has held that harassment under H.R.S. § 711-1106(1)(b) does not constitute a conviction that disqualifies a person from obtaining a firearms permit. State v. Char, 80 Hawaiʻi 262, 269, 909 P.2d 590, 597 (Haw. App. 1995). Section 711-1106(1)(b) imposes liability if the offender "insults, taunts, or challenges another person" to the point where the victim may violently respond, the victim believes that
(continued...)

Lastly, the Court concludes that holding that harassment is categorically a crime of violence would not align with the reason and spirit of the law.  See State v. Cullen, 86 Haw. 1, 8-9, 946 P.2d 955, 962-63 (1997).  As the Hawaiʻi Court of Appeals explained in Pesentheiner, the harassment statute's overall purpose is to preserve the peace by "proscribing conduct that offends one's psyche and mental well-being."  95 Hawaiʻi at 296.  This Court declines to interpret § 711-1106(1)(a) in a manner that shifts the focus to whether the conduct causes a "threat of injury" as opposed to deterring conduct that offends a person's "psyche and mental well-being" even if there is no "threat of injury."  Accordingly, for the reasons stated above, the Court concludes that the H.R.S. § 711-1106(1)(a) is not categorically a crime of violence.[30]

---

[29] (...continued)
the offender "intends to cause bodily injury" to the victim or another, or the offender intends to cause damage to the victim's or another's property.  The Court acknowledges that the Char case is distinguishable because it involves conduct under § 711-1106(1)(b), whereas Plaintiff pled guilty under § 711-1106(1)(a).

[30]    As noted in a prior order, numerous courts have held that harassment is not a categorical crime of violence.  See, e.g., Singh v. Ashcroft, 386 F.3d 1228, 1234 (9th Cir. 2004) ("harassment" under Oregon statute was not categorical crime of violence because it may be violated simply by "'causing spittle to land on the person' of another") (citations omitted); United States v. Maldonado-Lopez, 517 F.3d 1207 (10th Cir. 2008) (Colorado harassment statute was not a crime of violence, because the language of the statute was broad enough to cover non-violent crimes such as spitting on a person); United States v. Insaulgarat, 378 F.3d 456, 471 (5th Cir. 2004) (because there are
(continued...)

-52-

However, the Court's conclusion does not end the inquiry, because the City Defendants correctly point out that certain elements under the H.R.S. § 711-1106(1)(a) may constitute a crime of violence even if others do not.  Defs.' Opp. at 5, ECF No. 89.

As noted previously regarding the modified categorical approach, the Court may examine reliable documents such as an indictment or information, jury instructions, a transcript of the plea colloquy or written plea agreement, or a record of findings of fact adopted by the offender upon entering the plea.  See Taylor v. United States, 495 U.S. 575, 602, 110 S. Ct. 2143, 2160, 109 L. Ed. 2d 607 (1990) and Shepard v. United States, 544 U.S. 13, 16, 125 S. Ct. 1254, 1257, 161 L. Ed. 2d 205 (2005).  However, as discussed in Section I.A.1 (supra at 27-33), Plaintiff's charging document lists the elements of harassment in

---

[30/] (...continued)
forms of harassment that do not by their nature involve conduct that presents serious risk of physical harm, violation of aggravated stalking statute cannot categorically be a crime of violence); Archuleta v. Wagner, 523 F.3d 1278 (10th Cir. 2008) (violation of municipal ordinance that prohibits when a person "strikes, shoves, kicks, or otherwise touches a person or subjects him to physical contact" "with intent to harass, annoy, or alarm another person" was not a crime of violence); Szucz-Toldy v. Gonzales, 400 F.3d 978 (7th Cir. 2005) (district court erred in concluding that harassment by telephone was a crime of violence).  The Court does recognize, as it did previously, that most of the above cases involved the propriety of sentencing enhancements.  Additionally, the Court acknowledges that these cases do not directly address the Hawaiʻi definition of "crime of violence" or Hawaiʻi's harassment statute.

the disjunctive and does not indicate whether he pled guilty to elements involving "injury or threat of injury to the person of another."  See Defs.' Mtn. for Recon. Ex. A, ECF No. 39-4, and H.R.S. § 134-1.  Nor does the judgment containing Plaintiff's guilty plea provide any further guidance because it states that Plaintiff pled guilty as charged.  See Defs.' Mtn. for Recon. Ex. A, ECF No. 39-6.  The Court must conclude as it did for the federal claims that these documents do not reveal that Plaintiff's conviction was based on an element involving "injury or threat of injury."

With respect to the witness statements, police reports, police officer declarations, probable cause statement, and Plaintiff's deposition, the Court has likewise addressed why these documents may not be used for the modified categorical approach.  See Section I.A.1., supra at 27-33.  As a result, the Court concludes that H.R.S. § 134-7(b) does not disqualify Plaintiff from exercising his Second Amendment rights because the Court cannot conclude that his convictions for harassment constitute a crime of violence.

### b. H.R.S. § 134-7(c)

Independent of H.R.S. § 134-7(b)'s prohibition based upon the commission of a "crime of violence," the City Defendants also argue that Plaintiff does not qualify for a permit because of H.R.S. § 134-7(c), which states, inter alia, as follows:

(c) No person who:

(1) Is or has been under treatment or counseling for addiction to, abuse of, or dependence upon any dangerous, harmful, or detrimental drug, intoxicating compound as defined in section 712-1240,[31/] or intoxicating liquor . . . shall own, possess, or control any firearm or ammunition therefor, unless the person has been medically documented to be no longer adversely affected by the addiction, abuse, dependence, mental disease, disorder, or defect.

The City Defendants set forth documents in the record that raise a genuine issue of material fact as to whether Plaintiff has been under treatment or counseling for substance abuse in the past.  In the terms of Plaintiff's probation that were signed by Judge Murakami, Plaintiff was required to "attend SUBSTANCE ABUSE ASSESSMENT and shall participate in counseling and/or treatment until clinically discharged or as directed by the probation officer."[32/]  Defs.' Mtn. for Recon. Ex. C, ECF No. 39-6.  The City Defendants also submit Plaintiff's "Acknowledgment of Receipt of Conditions of Probation/DAGP/DANCP

---

[31/] Intoxicating Compound is defined as follows: "any compound, liquid or chemical containing toluol, hexane, trichloroethylene, acetone, toluene, ethyl acetate, methyl ethyl ketone, trichloroethane, isopropanol, methyl isobutyl ketone, methyl cellosolve acetate, cyclohexanone, or any other substance for the purpose of inducing a condition of intoxication, stupefaction, depression, giddiness, paralysis or irrational behavior, or in any manner changing, distorting or disturbing the auditory, visual or mental processes."  Haw. Rev. Stat. § 712-1240.

[32/] As mentioned previously, Hawai'i statutes and case law indicate that the term "substance abuse" may refer to, inter alia, alcohol or drugs.  *Supra* at 8 n. 8.

-55-

Supervision," which states that he was required to "undergo a substance abuse assessment and immediately undergo and complete any recommended treatment."  Defs.' Mtn. for Recon. Ex. C, ECF No. 39-7.

While the record does not indicate the substance underlying Plaintiff's probation requirement to attend the Drug and Alcohol Education Course; the Court notes that Plaintiff admits in his deposition that he had been drinking alcohol (specifically a six-pack of beer) on the day of the alleged domestic violence incident.  Deposition of Kirk C. Fisher at 26, lines 14-21, ECF No. 99-2.[33]  The record also reflects that Plaintiff attended and completed a Twelve Hour Drug and Alcohol Education Course around February of 1998.  Defs.' Mtn. for Recon. Ex. C, ECF No. 39-7.[34]  However, the record does not contain any

---

[33]  The Court may not consider Plaintiff's deposition for the modified categorical approach in analyzing his past conviction, but the deposition may be considered regarding H.R.S. § 134-7(c)(1).  The substance abuse prohibition does not require the examination of a past crime.  See H.R.S. § 134-7(c)(1). Instead, the statutory language indicates that the Court may examine facts as to whether an applicant has been under treatment or counseling for substance abuse, addiction, or dependence.

[34]  The City Defendants also allege that Plaintiff was found guilty of driving under the influence of intoxicating liquor (H.R.S. § 291-0004) in Honolulu District Court on August 1, 1986. Defs.' Opp. at 14, n. 8, ECF No. 89.  However, the City Defendants fail to attach any documentation regarding the alleged incident.

"medical" documentation that Plaintiff is no longer "adversely affected" by drugs or alcohol.[35]

Plaintiff does not respond to this argument in his Reply. See generally, Plntf.'s Reply, ECF No. 97. Plaintiff's only evidence that addresses this matter is his declaration, in which he states "I do not abuse and am not addicted to or dependent on alcohol or drugs. I have never been diagnosed as suffering from any addiction to, dependency upon, or abuse of alcohol or drugs. I have never been treated for addiction, dependency or abuse of alcohol or drugs." Decl. of Kirk C. Fisher, ¶ 6, ECF No. 78-1. Based upon the record before the Court, the City Defendants raise a genuine issue of material fact as to whether Plaintiff participated in "treatment or counseling"[36] for substance abuse, and whether Plaintiff has

---

[35] At the hearing, both Plaintiff's counsel and the City Defendants' counsel stated that there is no "medical documentation" indicating that Plaintiff is "no longer adversely affected" by drugs or alcohol.

[36] H.R.S. § 134-7 does not define "counseling." In the Definitions Section regarding regulations for mental health counselors, the legislature has defined the term "Practice of mental health counseling" as "the rendering of professional counseling services based on specialized education, training, and experience to individuals, families, or groups for compensation, monetary or otherwise." Haw. Rev. Stat. § 453D-1. The definition also states that the practice of mental health counseling includes, inter alia, "The assessment, diagnoses, and treatment of, and counseling for, substance abuse." While the Hawaiʻi definition in §453D-1 is not directly on point, it provides some guidance as to what may constitute "counseling" in the context of H.R.S. § 134-7(c).

"medical" documentation that he is no longer "adversely affected" by substances.

As a result, the Court also concludes that Plaintiff has not established that he qualifies as an individual who may keep and bear arms under the Second Amendment.  In U.S. v. Dugan, the Ninth Circuit held that habitual drug users may be prohibited from possessing firearms without violating the Second Amendment. 657 F.3d 998, 999 (9th Cir. 2011); see also United States v. Yancey, 621 F.3d 681, 687 (7th Cir. 2010) (holding that Second Amendment does not protect the right to have firearms while a person abuses drugs), United States v. Seay, 620 F.3d 919, 925 (8th Cir. 2010) (cert. denied, – U.S. –, 131 S. Ct. 1027, 178 L. Ed. 2d 849 (2011) (same), cf. U.S. v. Carter, 669 F.3d 411, 418 (4th Cir. 2012).  The Ninth Circuit reasoned that habitual drug users, "like career criminals and the mentally ill, more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances."  Id.  The Ninth Circuit also observed that the restriction at issue in Dugan was "less onerous" than the lifetime ban for the mentally ill or convicted felons in Heller because drug users may regain the right to possess a firearm by ending their substance abuse. Id., see also Carter, 669 F.3d at 419 (holding that a temporal restriction that may be lifted is "less intrusive than other

statutes that impose a permanent prohibition on the possession of firearms").

Under Duqan, the City Defendants may prohibit Plaintiff from possessing a firearm under H.R.S. § 134-7(c)(1) if he received treatment or counseling for substance abuse. Moreover, the restrictions under § 134-7(c)(1) are "less onerous" than the restrictions discussed in Heller because Plaintiff, in the event that he lost his firearms rights, may regain them by providing medical documentation that he is no longer adversely affected by any addiction or abuse.

While the Court acknowledges that the statutory prohibition in Duqan did not refer to liquor, the reasoning in Duqan applies to people who are dependent upon, addicted to, or abuse intoxicating liquor. Such persons are more likely to "have difficulty exercising self-control," particularly when they are under the influence of intoxicating liquor. See People v. Deroche, 299 Mich. App. 301, 307-08, 829 N.W.2d 891, 895 (2013) ("Like the restrictions preventing felons, the mentally ill, or illegal drug users from possessing firearms because they are viewed as at-risk people in society who should not bear arms, individuals under the influence of alcoholic liquor may also pose a serious danger to society if permitted to possess or carry firearms because those individuals will have "difficulty exercising self-control, making it dangerous for them to possess

-59-

deadly firearms."); State v. Freysinger, 311 N.J. Super. 536, 540, 710 A.2d 596, 598 (1997) ("Certainly people unable to control themselves because of excess drinking have the potential to be dangerous."); State v. Richard, 298 S.W.3d 529, 532 (Mo. 2009) ("Possession of a loaded firearm by an intoxicated individual poses a demonstrated threat to public safety."); S. 17-498 Reg. Sess. at 987-988 (Haw. 1993) (noting that the medical documentation provision was adjusted to allow firearm possession once a recovering addict "no longer presents an unreasonable danger to the individual or society").

Additionally, as noted above, the restriction regarding liquor is a temporal restriction that is less intrusive than a permanent ban. See Dugan, 657 F.3d at 999 and Carter, 669 F.3d at 419. Thus, the Court concludes that H.R.S. § 134-7(c)'s prohibition of firearm possession by persons who depend upon, abuse, or have an addiction to intoxicating liquor does not violate the Second Amendment.[37]

---

[37] The Court acknowledges that the Ninth Circuit in Dugan did not articulate the standard of scrutiny to evaluate firearm restrictions like H.R.S. § 134-7(c). However, it appears that some of the cases relied upon by the Ninth Circuit employed some form of intermediate scrutiny. See United States v. Yancey, 621 F.3d 681, 687 (7th Cir. 2010). The Court concludes that H.R.S. § 134-7(c) would survive this level of scrutiny because the government has an important government interest in "protecting the community from crime by keeping guns out of the hands of dangerous persons." See U.S. v. Carter, 669 F.3d 411, 418 (4th Cir. 2012), see H.R. 11-727, Reg. Sess. 1241-1242 (Haw. 1981). Additionally, the government interest is "substantially served"
(continued...)

Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment because there is a genuine issue of material fact regarding (1) whether Plaintiff has been under counseling for addiction to, abuse of, or dependence upon a drug or intoxicating liquor, and (2) whether Plaintiff has been "medically documented to be no longer adversely affected" by drugs or intoxicating liquor. As a result, Plaintiff has not established a Second Amendment right to possess firearms.

**B. Fourteenth Amendment Procedural Due Process**

The Ninth Circuit has provided a two-step analysis to analyze procedural due process claims. First, the court must determine "whether a liberty or property interest exists entitling an individual to due process protections." Hewitt v. Grabicki, 794 F.2d 1373, 1380 (9th Cir. 1986). Second, "if a constitutionally protected interest is established, a balancing test is to be employed to determine what process is due." Id. (citing Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S. Ct. 893, 902-03, 47 L.Ed.2d 18 (1976)).

In this case, Plaintiff has not established that he has a liberty or property interest under the Second Amendment because

---

[37]/ (...continued)
by enforcing H.R.S. § 134-7(c) because firearms are kept out of the hands of people who may use them in an unsafe manner as discussed above. The limitation on the prohibition, i.e., that a person may possess firearms after submitting medical documentation, demonstrates that the restriction is somewhat tailored to cover the government interest.

there is a genuine issue of material fact regarding his alleged treatment or counseling for substance abuse.  Accordingly, the Court DENIES his motion for summary judgment for his Fourteenth Amendment procedural due process claim because Plaintiff has not established that he has a liberty or property interest that would trigger due process protection.  See Hewitt, 794 F.2d at 1380 (affirming grant of summary judgment denying a due process claim because critical comments in a personnel file did not infringe a liberty interest).

## II. Plaintiff's Motion for a Permanent Injunction

As mentioned previously, a plaintiff must actually succeed on the merits in order to obtain a permanent injunction. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 32, 129 S. Ct. 365, 381, 172 L. Ed. 2d 249 (2008).  Because Plaintiff has not established that he is qualified to bear firearms under the Second Amendment, the Court concludes that he has not succeeded on the merits to obtain a permanent injunction mandating that the City Defendants issue him a firearms permit.  Accordingly, the Court DENIES Plaintiff's Motion for a Permanent Injunction.

**CONCLUSION**

For the foregoing reasons, the Court (1) GRANTS in part Plaintiff's Motion for Summary Judgment regarding whether Plaintiff's prior harassment convictions prohibit him from acquiring a firearms permit pursuant to 18 U.S.C. § 922(g)(9),

Haw. Rev. Stat. § 134-7(a), and Haw. Rev. Stat. § 134-7(b), (2) DENIES in part Plaintiff's Motion for Summary Judgment regarding whether Plaintiff is prohibited from acquiring a firearms permit pursuant to Haw. Rev. Stat. § 134-7(c) and (3) DENIES Plaintiff's Motion for Permanent Injunction.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, September 30, 2013.



Alan C. Kay
Sr. United States District Judge

Fisher v. Kealoha et al., Civ. No. 11-00589 ACK-BMK: ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION.