DONNA Y. L. LEONG, 3226
Corporation Counsel

MARGUERITE S. NOZAKI, 8599
Deputy Corporation Counsel
Department of the Corporation Counsel
City and County of Honolulu
Honolulu Hale, Room 110
530 South King Street
Honolulu, Hawaiʻi  96813
Telephone: (808) 768-5239
Facsimile: (808) 768-5105
E-mail address:  mnozaki@honolulu.gov

Attorney for Defendants
LOUIS KEALOHA and the
CITY AND COUNTY OF HONOLULU

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KIRK C. FISHER, | ) CIVIL NO. CV11-00589 ACK-BMK |
| | ) |
| Plaintiff, | ) MEMORANDUM IN SUPPORT OF |
| | ) MOTION |
| vs. | ) |
| | ) |
| LOUIS KEALOHA, as an individual | ) |
| and in his official capacity as Honolulu | ) |
| Chief of Police, PAUL PUTZULU, as | ) |
| an individual and in his official capacity | ) |
| as former acting Honolulu Chief of | ) |
| Police, and CITY AND COUNTY OF | ) |
| HONOLULU, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………ii-v

I.    INTRODUCTION ……………………………………………... 1

II.   BACKGROUND ………………………………………….. 2

      A.   FACTUAL BACKGROUND …………………………………2

      B.   PROCEDURAL BACKGROUND …………………………...4

III.  STANDARD OF REVIEW …………………………………5

IV.   ARGUMENT …………………………………………………8

      A.   THIS COURT SHOULD RECONSIDER ITS SEPT. 30
           ORDER BECAUSE, UNDER INTERVENING LAW,
           PLAINTIFF IS PRECLUDED FROM OBTAINING A
           FIREARM …………………………………………………8

      B.   THE CLAIMS AGAINST DEFENDANT LOUIS KEALOHA
           SHOULD BE DISMISSED BECAUSE HE IS ENTITLED TO
           QUALIFIED IMMUNITY……………………………………..13

           1.   HPD Did Not Violate Plaintiff's Constitutional Right
                Because Plaintiff Has Not Established a Second
                Amendment Right to Possess Firearms……………………15

           2.   When HPD Denied Plaintiff's Permit Application to Own
                and Possess Firearms, the Law Governing the
                Determination of What Constitutes a Crime of Violence
                Was Not Clearly Established………………………………20

**C.      THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT AS TO ALL DEFENDANTS BECAUSE PLAINTIFF HAS NO STANDING TO ASSERT CLAIMS UNDER AND DERIVING FROM THE SECOND AMENDMENT………………………………………………….27**

**V.   CONCLUSION ………………………………………………….......30**

# TABLE OF AUTHORITIES

## CASES

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ................................................. 6

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...................................................13, 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................... 6

*Bras v. California Pub. Util. Comm'n*, 59 F.3d 869 (9th Cir. 1995), ................... 28

*Bynum v. Magno*, 125 F.Supp.2d 1249 (D. Hawaii 2000) ................................7, 25

*Casey v. Lewis*, 4 F.3d 1516 (9th Cir. 1993) ....................................................... 27

*Descamps v. United States*, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (U.S. 2013) ...................................................................................22, 25, 26, 27

*District of Columbia v. Heller*, 554 U.S. 570 (2008)........................................... 15

*Doe By & Through Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447 (9th Cir. 1995) ....................................................................................... 20

*Dunn v. Castro*, 621 F.3d 1196 (9th Cir. 2010) ................................................... 21

*Elder v. Holloway*, 510 U.S. 510 (1994) .............................................................. 21

*Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008) ............................ 22

*Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121(9th Cir. 2006)................................ 22

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)....... 20

*Inouye v. Kemna*, 504 F.3d  705 (9th Cir. 2007)................................................... 14

*Johnson v. United States*, 559 U.S. 133 (2010) .........................................10, 11, 24

*Kentucky v. Graham*, 473 U.S. 159, (1985)......................................................... 13

*Krainsky v. Nev. Ex. Rel. Bd. of Regents*, 616 F.3d 963 (9th Cir. 2010) ............... 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................................. 28

*Maraziti v. First Interstate Bank*, 953 F.2d 520 (9th Cir. 1992) ........................... 21

*Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009)............................... 22

*Matsushita Elec. Indus. Co., Ltd, v. Zenith Radio Corp.*, 475 U.S. 574 (1986)....... 7

*McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010) ......................................... 15

*Navarro-Lopez*, 503 F.3d 1063 (9th Cir. 2007) ................................................... 22

*Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012)......................................... 20

*Nijhawan*, 557 U.S. 29 (2009).........................................................................24, 25

*Otani v. City and County of Hawaii*, 126 F.Supp.2d 1299 (D. Hawaii 1998) ......... 7

*Pearson*, 555 U.S. at 236 .................................................................................... 14

*Procunier v. Navarette*, 434 U.S. 555 (1978)..................................................... 20

*Saucier v. Katz*, 533 U.S. 194 (2001), ...........................................................14, 20

*Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003)............................................. 15

*Shepard v. United States*, 544 U.S. 13 (2005) ................................................23, 24

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987)...................................................................................................................6, 7

*Taylor v. United States*, 495 U.S. 575 (1990)..................................................22, 23

*United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) ............22, 25

*United States v. Belless*, 338 F.3d 1063 (9th Cir. 2003) ........................................ 9

*United States v. Castleman*, 695 F.3d 582 (6th Cir. 2012)...............................10, 11

iii

*United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2002) ....................... 23

*United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007)........................................... 22

*United States v. Snellenberger*, 548 F.3d 699 (9th Cir. 2008) ............................. 22

*United States v. Strickland*, 601 F.3d 963 (9th Cir. 2010) ................................... 22

*United States v. Vidal*, 504 F.3d 1072 (9th Cir. 2007).......................................... 22

*Wong v. City & Cnty. of Honolulu*, 333 F.Supp.2d 942 (D.Haw. 2004) ............... 13

## **STATUTES**

18 U.S.C. § 921(a)(33)(A) ....................................................................................... 9

18 U.S.C. § 922(g)(9) .......................................................................... 8, 10, 11, 12

18 U.S.C. § 924(e) ................................................................................................. 23

18 U.S.C. § 924(e)(2)(B)(i)................................................................................... 10

42 U.S.C. § 1983.................................................................................................4, 13

HRS § 134-7 .................................................................................................... passim

HRS § 134-7(a)(1) ................................................................................................. 12

HRS § 134-7(b) ..................................................................................................... 13

HRS § 134-7(c).................................................................................................16, 29

HRS § 431M-1 ...................................................................................................... 17

HRS § 453D-1 ....................................................................................................... 17

HRS § 711-1106 ................................................................................................ 9

HRS § 711-1106(1)(a) ..........................................................................2, 9, 11, 12

## **RULES**

Federal Rule of Civil Procedure 56(c) .................................................................5, 6

Federal Rules of Civil Procedure 56(e) ................................................................. 7

## **OTHER AUTHORITIES**

U.S. CONST. Amend. II ....................................................................................... 15

U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2L1.2 ................................... 23

## MEMORANDUM IN SUPPORT OF MOTION

## I.   INTRODUCTION

Defendants CITY AND COUNTY OF HONOLULU ("City") and LOUIS KEALOHA ("Chief Kealoha") (collectively, the City and Chief Kealoha shall be referred to as "Defendants") by and through their counsel, Donna Y. L. Leong, Corporation Counsel, and Marguerite S. Nozaki, Deputy Corporation Counsel, move for any order granting reconsideration of the Order entered on September 30, 2013 [Doc. No. 111] due to an intervening change in law, or in the alternative, for an order granting summary judgment in Defendants' favor because there is no genuine issue of material fact to preclude judgment as a matter of law as to the following:

1. The claims against Defendant Kealoha should be dismissed because he is entitled to qualified immunity where:

   a. Plaintiff has not established a right to own or possess firearms under the Second Amendment of the United States Constitution without first satisfying Hawaii Revised Statute ("HRS") § 134-7, and as such, the Honolulu Police Department ("HPD") could not have violated his constitutional right;

   b. The law governing the appropriate approach to apply when analyzing whether an underlying conviction constitutes a "crime of violence" and what HPD may rely upon in reaching that determination, was not clearly established at the time of the alleged constitutional violation; or

   c. Even if the law was clearly established at the time of the alleged constitutional violation, HPD's actions were reasonable where it considered the facts contained in the police reports

pertaining to Plaintiff's underlying conviction to deny Plaintiff's application for a license to own or possess firearms.

2.   Plaintiff is prohibited from obtaining firearms under federal law because his convictions for harassment qualify as a "misdemeanor crime of domestic violence" under the Lautenberg Amendment.

Even if this Court declines to reconsider the Order entered on September 30, 2013, or grant summary judgment in favor of Defendants, this action should be dismissed because Plaintiff lacks standing to file claims against Defendants for the denial of his application for a license to own or possess firearms under HRS § 134-7 and the Second Amendment because there is no injury-in-fact, which is a core requirement before this Court may exercise jurisdiction over Plaintiff's claims.

For these reasons, as will be further discussed below, Defendants respectfully move this Court for an order dismissing this action in its entirety.

## II.   **BACKGROUND**

### A.   **FACTUAL BACKGROUND**

On November 5, 1997, Plaintiff was arrested for two counts of harassment in violation of HRS § 711-1106(1)(a).  *See* Separate and Concise Statement of Facts ("CSOF"), ¶ 1.  On December 3, 1997, Plaintiff pled guilty to two counts of Harassment in the Family Court of the First Circuit, State of Hawaii, and was sentenced to six months of probation.  *Id.* at ¶ 2.  As part of the terms of his probation, the judge ordered Plaintiff "to attend substance abuse assessment and…participate in counseling and/or treatment until clinically discharged or as

directed by the probation officer." *Id.* at ¶ 3.  In connection with his probation, Plaintiff was also ordered to surrender all firearms, ammunition, permits, and licenses to HPD.  *Id.* at ¶ 4.

On November 4, 1998, Judge Dan Kochi issued an "Order Permitting Return of Firearms, Ammunition, Permits and Licenses, With Conditions," which stated, in relevant part, that HPD should return Plaintiff's firearms and ammunition "provided that the provisions of H.R.S. Chapter 134 are satisfied and that there are no…prohibitions under H.R.S. Section 134-7…"  *Id.* at ¶ 5.  HPD promptly returned Plaintiff's firearms as a result of this order.  *Id.* at ¶ 6.

As part of the Judgment, Plaintiff was required to "attend SUBSTANCE ABUSE ASSESSMENT and shall participate in counseling and/or treatment until clinically discharged or as directed by the probation officer."  *Id.* at ¶ 7.  Plaintiff acknowledged that as part of the terms of his probation, he would be required to "undergo a substance abuse assessment and immediately undergo and complete any recommended treatment, whether residential or outpatient[.]"  *Id.* at ¶ 8.  While the record does not indicate the substance underlying Plaintiff's probation requirement to attend the Drug and Alcohol Education Course, this Court noted that, based on Plaintiff's deposition transcripts, the substance appeared to be alcohol or intoxicating liquor.  *Id.* at ¶ 9.  Plaintiff attended and completed a Twelve Hour Drug and Alcohol Education Course around February of 1998

3

presented by Hawaii Alcohol and Drug Safety Action Program ("12 Hour

Course"). *Id.* at ¶ 10.

In 2009, Plaintiff submitted a permit application to HPD to own and possess

a firearm. *Id.* at ¶ 11. On October 1, 2009, HPD informed Plaintiff that his

application was denied and he was disqualified from owning and possessing a

firearm under HRS § 134-7. *Id.*, ¶ 12. Plaintiff was also ordered to surrender the

firearms he possessed to HPD, or to otherwise dispose of his firearms and

ammunition within 30 days. *Id.*, ¶ 13. As a result, Plaintiff filed this lawsuit.

### B.    PROCEDURAL BACKGROUND

On June 14, 2012, Plaintiff filed his Amended Complaint and asserted two

claims:

| Count I: | The Second and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 Against All Defendants ("Right to Bear Arms" claim) |
| --- | --- |
| Count II: | The Fourteenth Amendments to the United States Constitution and 42 U.S.C. § Against All Defendants ("Due Process" claim) |

Amended Complaint [Doc. No. 31].

In his Amended Complaint, Plaintiff requested the following forms of relief:

(1) an order compelling Defendants to issue a permit to Plaintiff so that he could

acquire, own, and bear arms, (2) special damages, (3) general damages, (4)

punitive damages, (5) attorneys' fees and costs, and (6) statutory damages or

awards.

4

Plaintiff subsequently filed a Motion for Summary Judgment and a Motion for Permanent Injunction on February 25, 2013, and sought an order granting summary judgment on both counts in his Amended Complaint.  [Doc. Nos. 75, 77]. On September 30, 2013, this Court entered an Order: (1) Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and (2) Denying Plaintiff's Motion for Permanent Injunction ("Sept. 30 Order").  While the Court concluded that under either the categorical and modified categorical approaches, Plaintiff's convictions for Harassment did not disqualify him from exercising his Second Amendment rights, it denied Plaintiff's Motion for Summary Judgment because:

> [T]here is a genuine issue of material fact regarding (1) whether Plaintiff has been under counseling for addiction to, abuse of, or dependence upon a drug or intoxicating liquor, and (2) whether Plaintiff has been "medically documented to be no longer adversely affected" by drugs to be no longer adversely affected" by drugs or intoxicating liquor.

Sept. 30 Order at p. 61.

## III.  <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment should be entered:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the initial burden of establishing the absence of any genuine issues of material fact.  *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987).  In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  *Id.* at 631.

In *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-159 (1970), the court indicated that there is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  In *Anderson,* the court further expanded on the standard for summary judgment by ruling that "in essence, though, the inquiry under [summary judgment and directed verdict] is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251 (*internal quotation and citation omitted*).

6

A fact is material if proof of that fact may affect the decision, so that the

finding of that fact is relevant and necessary to the proceedings. *See Otani v. City*

*and County of Hawaii,* 126 F.Supp.2d 1299, 1303 (D. Hawaii 1998). The moving

party has the initial burden of "identifying for the court those portions of the

materials on file that it believes demonstrates the absence of any genuine issue of

material fact." *T.W. Elec. Serv., Inc*., 809 F.2d at 630. However, the moving party

need not produce evidence negating the existence of an element of which the

opposing party will bear the burden of proof at trial. *See Bynum v. Magno,* 125

F.Supp.2d 1249, 1253 (D. Hawaii 2000).

Once the summary judgment movant satisfies his initial burden of showing

the absence of any genuine issue of material fact, the burden shifts to the

nonmoving party to come forward with specific facts showing that there remains a

genuine issue for trial. *See* Fed. R. Civ. P. 56(e). The opposing party may not

defeat a motion for summary judgment in the absence of any significant probative

evidence tending to support its legal theory, nor can the opposing party simply

stand on its pleadings, or assert that it will be able to discredit the movant's

evidence at trial. *T.W. Elec. Serv., Inc.,* 809 F.2d at 630; Fed. R. Civ.P. 56(e). As

the court stated in *Matsushita Elec. Indus. Co., Ltd, v. Zenith Radio Corp*., 475

U.S. 574, 586 (1986): "Where the record taken as a whole could not lead a rational

7

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial' [citation omitted]."

## IV.   ARGUMENT

### A.   THIS COURT SHOULD RECONSIDER ITS SEPT. 30 ORDER BECAUSE, UNDER INTERVENING LAW, PLAINTIFF IS PRECLUDED FROM OBTAINING A FIREARM.

This Court should issue an order granting reconsideration of its Sept. 30 Order in favor of Defendants because Plaintiff is precluded from obtaining firearms under federal law where his convictions for harassment qualify as "misdemeanor crime of domestic violence" under the Lautenberg Amendment, 18 U.S.C. § 922(g)(9).  On March 26, 2014, the Supreme Court of the United States in *United States v. Castleman*, No. 12-1371 (U.S. Mar. 26, 2014), resolved a key circuit split regarding the application of the Lautenberg Amendment, which prohibits those convicted of a "misdemeanor crime of domestic violence" from possessing firearms.  The decision in *Castleman* is controlling in this case because the Supreme Court's holding that common-law simple battery constitutes "physical force" under the definition of "misdemeanor crime of domestic violence" reveals Plaintiff's Harassment conviction to be categorically a "misdemeanor crime of domestic violence."  Applying *Castleman*, HPD's denial of Plaintiff's permit application was proper, and the Court should grant summary judgment in favor of Defendants.

In this Court's Sept. 30 Order, the Court relied on the Ninth Circuit's interpretation of the Lautenberg Amendment in *United States v. Belless*, 338 F.3d 1063, 1068 (9th Cir. 2003), to reject Defendants' argument that Plaintiff's conviction for Harassment under HRS. § 711-1106(1)(a) constitutes a "misdemeanor crime of domestic violence" under federal law.  As explained by the Court in its Sept. 30 Order, the Harassment statute under which Plaintiff was convicted was modeled after the common-law crime of battery, "which was committed by any slight touching of another person in a manner which is known to be offensive to that person."  Sept. 30 Order at pp. 23–24 (quoting Commentary on § 711-1106).  Under *Belless*, the Court explained, a mere offensive touching did not constitute "physical force" under the federal definition of "misdemeanor crime of domestic violence" in 18 U.S.C. § 921(a)(33)(A) (defining "misdemeanor crime of domestic violence" to be a misdemeanor offense having "as an element, the use or attempted use of physical force" and involving a domestic relationship).  Applying *Belless* and the categorical approach, the Court held that a person could be convicted under HRS § 711-1106(1)(a) for conduct that did not rise to the level of "physical force" under 18 U.S.C. § 921(a)(33)(A); therefore the Hawaii statute was not categorically a "misdemeanor crime of domestic violence" under federal law.  Sept. 30 Order at pp. 22–24.  In so holding, the Court recognized a split between those Courts of Appeals holding that "physical force" in § 921(a)(33)(A)

9

includes common-law battery, and those—such as the Ninth Circuit in *Belless*—holding that it does not.  *Id*. at p. 23 n.16.

Among the cases cited by the Court as agreeing with the Ninth Circuit's definition of "physical force" to exclude simple battery was the Sixth Circuit's ruling in *United States v. Castleman*, 695 F.3d 582 (6th Cir. 2012).  That ruling was reversed by the Supreme Court on March 26, 2014, when the Supreme Court clarified that "physical force" under the Lautenberg Amendment <u>includes</u> common-law simple battery.  *Castleman*, No. 12-1371 (U.S. Mar. 26, 2014), slip op. at 10 ("We therefore hold that the requirement of 'physical force' is satisfied, for purposes of § 922(g)(9), by the degree of force that supports a common-law battery conviction.").[1]

In so holding, the Supreme Court looked to *Johnson v. United States*, 559 U.S. 133 (2010), where the Court held that the term "physical force" under the definition of "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(i), required more than simple battery.  The Court so held because applying the common-law meaning of "force" to include a slight offensive touching was a "comical misfit" with the term "violent felony" in ACCA.

---

[1] The Supreme Court explicitly cited *Belless* as an example of the cases within the circuit split holding "physical force" to require "violent use of force."  *Castleman*, No. 12-1371 (U.S. Mar. 26, 2014), slip op. at 4.

*Castleman*, No 12-1371 (U.S. Mar. 26, 2014), slip op. at 5 (quoting *Johnson*, 559 U.S. at 145).

In *Castleman*, however, the Court found the Lautenberg Amendment's use of the term "physical force" to be far different, due to: 1) the routine use of generally applicable assault or battery laws to prosecute domestic violence, 2) the broad use of "domestic violence" as a term of art to include acts that "one might not characterize as 'violent' in a nondomestic context," and 3) the classification of "armed career criminals" under ACCA as a more severe designation than "misdemeanor crime of domestic violence," which is grouped with other disqualifications such as drug addiction and nonimmigrant-visa holders. *Id.* at 7–9. The Court in *Castleman* also reasoned that a contrary reading would have rendered § 922(g)(9) inoperative in many States at the time of its enactment. *Id.* at 9. At bottom, and central to the resolution of the case now before this Court, is the Supreme Court's conclusion that a crime of simple battery—*including a mere offensive touching*—satisfies the "physical force" requirement in the Lautenberg Amendment. *Id.* at 9–10.

Applying *Castleman* to the Court's analysis in its Sept. 30 Order, Plaintiff's Harassment conviction is undoubtedly a "misdemeanor crime of domestic violence." Plaintiff was convicted under HRS. § 711-1106(1)(a), which reads,

> (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:  (a) Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.]

*See* CSOF at ¶ 2.

As the Court explained in its Sept. 30 Order, the Commentary on that section shows that it is intended to restate the common-law crime of battery.  Sept. 30 Order at pp. 24–25.  The text shows that as well: HRS § 711-1106(1)(a) requires at least an offensive touching and further requires intent to harass, annoy, or alarm. No possible element of the offense fails to meet the Supreme Court's definition of "physical force" under the Lautenberg Amendment, and therefore Plaintiff's conviction is categorically a "misdemeanor crime of domestic violence."  He is and has been disqualified under 18 U.S.C. § 922(g)(9).  Hawaii recognizes this prohibition under H.R.S. § 134-7(a)(1)[2], which prohibits any person from possessing, owning, or controlling firearms if prohibited from doing so under federal law.  Therefore, HPD properly denied Plaintiff's permit to acquire firearms.

Due to this intervening change in controlling law, the Court should reconsider the Sept. 30 Order in its entirety.  *See* Local Rule 60.1 (allowing motions for reconsideration of interlocutory orders where there is an "[i]ntervening change in law").  Because *Castleman* controls this case, supplanting *Belless*, the

---

[2] The Court has already held that Plaintiff's offense involved a domestic relationship, which is also required by the Lautenberg Amendment.  Sept. 30 Order at pp. 21–22.

12

Court no longer needs to reach difficult state-law questions of first impression, such as the applicability of H.R.S. § 134-7(b), and should resolve this case simply by holding that, under *Castleman*, Plaintiff was disqualified under federal law from possessing firearms and HPD properly denied his application for a permit to obtain firearms.

### B.   THE CLAIMS AGAINST DEFENDANT LOUIS KEALOHA[3] SHOULD BE DISMISSED BECAUSE HE IS ENTITLED TO QUALIFIED IMMUNITY.

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted); *see also Krainsky v. Nev. Ex. Rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010).  The United States Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims.  *See*

---

[3] As noted by the Court in the footnote on page 2 of its Sept. 30 Order, Plaintiff voluntarily dismissed Defendant Paul Putzulu from this lawsuit at the hearing held on September 17, 2013.  As such, the remaining Defendants in this case are Louis Kealoha and the City.  Doc. No. 111 at p. 2, n. 1.

To the extent that Plaintiff asserts claims against Chief Kealoha in both his individual and official capacities, this Court should dismiss the claims against Defendant Kealoha in his official capacity because a Section 1983 claim against a county official in his or her official capacity is the same as bringing a direct action against the government.  *See Wong v. City & Cnty. of Honolulu,* 333 F.Supp.2d 942, 947 (D.Haw. 2004) (citing *Kentucky v. Graham,* 473 U.S. 159, 166–67 n. 14, (1985)).

*Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury…show [that] the [defendant's] conduct violated a constitutional right[.]"  *Id*. at 201.  Second, the court must determine whether the right was clearly established at the time of the alleged violation.  *Id*.

Even if the violated right was clearly established at the time of the violation, it may be "difficult for [the defendant] to determine how the relevant legal doctrine…will apply to the factual situation the [defendant] confronts…[Therefore, i]f the [defendant's] mistake as to what the law requires is reasonable…the [defendant] is entitled to the immunity defense."  *Id*. at 205; *Inouye v. Kemna*, 504 F.3d  705, 712 n. 6 (9th Cir. 2007) (explaining that the inquiry into reasonableness of the defendant's mistake is not the "third" step in the *Saucier* analysis, but rather, is part of the second step of *Saucier's* two-step analysis).

The two steps in the *Saucier* analysis need not be resolved in sequence.  *See Pearson*, 555 U.S. at 236.  Rather, the courts should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  *Id*.  Whether Defendant violated a constitutional right and whether the right was clearly established at the time of the violation are pure legal questions

14

for this Court.  *See Serrano v. Francis*, 345 F.3d 1071, 1080 (9th Cir. 2003).  As

such, this Court should dismiss the claims against Defendant Kealoha if it finds, as

a matter of law, that HPD did not violate a constitutional right or that such right

was not clearly established at the time of the incident.

> **1.    HPD Did Not Violate Plaintiff's Constitutional Right Because Plaintiff Has Not Established a Second Amendment Right to Possess Firearms.**

While the Second Amendment to the United States Constitution provides

individuals with the right to keep and bear arms for self-defense, such right is not

unlimited and is conferred on only "law abiding, responsible citizens to use arms in

defense of hearth and home."  *See District of Columbia v. Heller*, 554 U.S. 570,

635 (2008); U.S. CONST. Amend. II.  This right to keep and bear arms applies to

the states by way of the Fourteenth Amendment.  *See McDonald v. City of

Chicago*, 130 S.Ct. 3020 (2010).  The State of Hawaii has imposed restrictions on

the right to bear arms in Section 134-7 of the Hawaii Revised Statutes which

provides in relevant part:

> (c) No person who:
>
> > (1) Is or has been *under treatment or counseling* for addiction to, abuse of, or dependence upon any dangerous, harmful, or detrimental drug, intoxicating compound as defined in section 712-1240, or intoxicating liquor;
> >
> > […]

> shall own, possess, or control any firearm or ammunition
> therefor, unless the person has been *medically documented* to be
> no longer adversely affected by the addiction, abuse, dependence,
> mental disease, disorder, or defect.

HRS § 134-7(c) (emphasis added).

In other words, if an individual has undergone "treatment or counseling" for addiction to or abuse of an intoxicating liquor, he is not permitted to own, possess, or control a firearm under HRS § 134-7(c), unless he has been "medically documented" to be no longer adversely affected by the same.  *Id*.  Here, Plaintiff has not established that he has a Second Amendment right to own, possess, or control a firearm because: (1) the 12 Hour Course constitutes counseling for addiction to or abuse of an intoxicating liquor, and (2) Plaintiff has not provided medical documentation to show that he is no longer adversely affected by the same.

While HRS Chapter 134 does not define "treatment" or "counseling," the legislature has provided definitions for related terms in other sections, which may shed some light or clarify those terms within the meaning of HRS § 134-7, and whether the 12 Hour Course is treatment or counseling.  Within the Definition Section in Chapter 431M, Mental Health and Alcohol and Drug Abuse Treatment Insurance Benefits, defines "Treatment episode" to mean:

> [O]ne admission to an accredited hospital or *nonhospital facility*, or
> office of a… licensed mental health counselor, or advanced practice
> registered nurse for treatment of alcohol or drug dependence, or both,

16

as stipulated in a prescribed treatment plan and that would generally produce remission in those who complete the treatment.  The prescribed treatment plan may include the provision of substance abuse services in more than one location and may include in-hospital, nonhospital residential, day treatment, *or alcohol or drug dependence outpatient services*, or any combination thereof.  An admission for only detoxification services shall not constitute a treatment episode.

HRS § 431M-1.  While this definition does not specifically provide that the

12 Hour Course constitutes treatment or counseling, it does suggest that

services, which includes alcohol dependence outpatient services (other than

solely detoxification services), conducted in a nonhospital facility by a

licensed mental health counselor, is considered a treatment episode.

In addition, while HRS § 134-7 does not define "counseling," the legislature

has defined the "Practice of mental health counseling" within the Definitions

Section of Mental Health Counselors to mean:

[T]he rendering of professional counseling services based on specialized education, training, and experience to individuals, families, or groups for compensation, monetary or otherwise.  These professional counseling services include applying the respective principles, methods, and theories of counseling, human development, learning theory, group and family dynamics, rehabilitation, and the etiology of mental illness and dysfunctional behavior, and defining goals and developing a treatment plan of action aimed toward the prevention, treatment, and resolution of mental and emotional dysfunction and intra or interpersonal disorders to all persons irrespective of diagnosis.

HRS § 453D-1.  Within that definition, the "Practice of mental health" includes:

17

> assessment, diagnosis, and treatment of, and counseling for, substance abuse and conduct disorders defined in the approved diagnostic and statistical manual for mental disorders[; and]
>
> The provision of consultative services to individuals, couples, families, groups, organizations, and communities.

*Id.* Thus, if following this definition and applying it in the context of this case, the 12 Hour Course could be considered substance abuse counseling if such course was provided by a substance abuse counselor.

As noted by this Court in its Sept. 30 Order, as part of the Judgment, Plaintiff was required to "attend SUBSTANCE ABUSE ASSESSMENT and shall participate in counseling and/or treatment until clinically discharged or as directed by the probation officer." CSOF, ¶ 7. Plaintiff attended and completed a Twelve Hour Drug and Alcohol Education Course on February 28, 1998, presented by Greg MacDonald and Dennis J. Guy, both National Certified Addiction Counselors with the Hawaii Alcohol and Drug Safety Action Program. *Id.* at ¶ 10. At his deposition taken on April 17, 2013, Plaintiff testified that he received substance abuse counseling in the form of classes conducted by substance abuse counselors, as he was required to do by the Judgment and terms of probation. *Id.* at ¶ 14. In particular, Plaintiff testified:

> Q. Okay. So you – did you – were you required to take substance abuse counseling?
>
> A. Yeah, I believe that was part of the criteria here. All of this was counseling.

Q.    Okay.  And you remember taking some classes for the substance abuse counseling?

A.    Yes.

Q.    Do you remember how many?

A.    But it – like I said, it was, you know, several weeks.

Q.    Were they all about the same amount of hours, each of the three?

A.    I believe so, yes.

Q.    Okay.  Were you given certificates for – when you completed these courses or classes?

A.    I think so.  I'd have to go through my records and look.  I'd have to show them something of completion.

Q.    Okay.  And is it your understanding that you successfully completed all of the classes?

A.    Yes.

*Id.*

Furthermore, there is no dispute that Plaintiff has not provided "medical documentation" indicating that Plaintiff is "no longer adversely affected" by drugs or alcohol. CSOF, ¶ 15.  Without such medical documentation, Plaintiff has failed to satisfy the terms of his probation, and has not established a constitutional right under HRS § 134-7 and the Second Amendment to own and possess firearms.

19

**2. When HPD Denied Plaintiff's Permit Application to Own and Possess Firearms, the Law Governing the Determination of What Constitutes a Crime of Violence Was Not Clearly Established.**

A government official "cannot be expected to predict the future course of constitutional law, but [the official] will not be shielded from liability" for acts that violate clearly established constitutional rights. *See Procunier v. Navarette*, 434 U.S. 555, 562 (1978) (citations omitted). The standard for determining qualified immunity is objective. "If the law at [the time of the official's actions] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Doe By & Through Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

This inquiry must be "undertaken in light of the specific context of the case." *See Saucier*, 533 U.S. at 201; *see also Nelson v. City of Davis*, 685 F.3d 867, 883 (9th Cir. 2012) ("The determination whether a right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition.") (internal quotation marks and citation omitted)). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *See Anderson*, 483 U.S. at 640. Ninth Circuit Courts have stressed that

"the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010).  Absent binding precedent, this Court should consider all relevant precedents, including decisions from the Supreme Court, all federal circuits, federal district courts, and state courts; in addition, this Court should consider the likelihood that the Supreme Court or the Ninth Circuit would decide the issue in favor of the person asserting the right. *See Elder v. Holloway*, 510 U.S. 510, 512 (1994).

It is Plaintiff's burden to show that the law was clearly established at the time of HPD's denial of Plaintiff's permit application (*i.e.*, 2009).  If Plaintiff meets this burden, then Defendants bear the burden of establishing that HPD's actions were reasonable, even though they might have violated Plaintiff's federally protected rights. *See Maraziti v. First Interstate Bank,* 953 F.2d 520, 523 (9th Cir. 1992).

The law regarding what approach to apply in determining whether an underlying crime is a crime of violence in approving or denying a gun permit application was not clearly established when HPD denied Plaintiff's permit application in 2009.  As this Court acknowledged in its Sept. 30 Order, Hawaii courts have not used the categorical or modified categorical approaches to interpret the "crime of violence" provision in HRS § 134-7.  *See* Sept. 30 Order at p. 34.

21

The categorical and modified categorical frameworks, under which this Court performs its analysis in deciding whether and how Defendants may look to information underlying a conviction in order to determine whether the applicant was convicted of a crime of violence, were first outlined by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990).

In the 20 years since *Taylor*, the Ninth Circuit has "struggled to understand the contours of the Supreme Court's framework." *See United States v. Aguila-Montes de Oca*, 655 F.3d 915, 920 (9th Cir. 2011) *abrogated by Young v. Holder*, 697 F.3d 976 (9th Cir. 2012) and *abrogated by Descamps v. United States*, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (U.S. 2013). Indeed, the Ninth Circuit Court has admitted that no other area of law has demanded more of the court's resources as this one over the past decade. *Id.*; s*ee, e.g., United States v. Strickland,* 601 F.3d 963, 967–71 (9th Cir. 2010) (en banc); *Marmolejo–Campos v. Holder,* 558 F.3d 903, 912–13 (9th Cir. 2009) (en banc); *United States v. Snellenberger,* 548 F.3d 699, 700–02 (9th Cir. 2008) (en banc) (per curiam); *Estrada–Espinoza v. Mukasey,* 546 F.3d 1147, 1159–60 (9th Cir. 2008) (en banc); *United States v. Vidal,* 504 F.3d 1072, 1086–90 (9th Cir. 2007) (en banc); *Navarro–Lopez,* 503 F.3d 1063, 1073 (9th Cir. 2007) (en banc); *United States v. Grisel,* 488 F.3d 844, 847–48, 851–52 (9th Cir. 2007) (en banc); *Fernandez–Ruiz v. Gonzales,* 466 F.3d 1121, 1132–35(9th Cir. 2006) (en banc); *United States v. Corona–Sanchez,* 291 F.3d 1201,

1211–13 (9th Cir. 2002) (en banc), *superseded by* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2L1.2 cmt. n. 4 (2002).

In *Taylor*, the court established the "categorical approach," in which a court looks "not to the particular facts underlying [the defendant's prior] conviction[,]" but "only to the fact of conviction and the statutory definition of the prior offense," in order to determine whether the state statute could potentially criminalize conduct that would not qualify as a "violent felony." *Taylor*, 495 U.S. at 600.  The *Taylor* court then went on to hold that "[t]his categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was *actually required* to find all the elements of generic burglary." *Taylor,* 495 U.S. at 602 (emphasis added). Under this analysis, which the United States Supreme Court later called a "modified categorical approach," if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant," then a sentence enhancement under § 924(e) would be appropriate, *Taylor,* 495 U.S. at 602, 110 S.Ct. 2143.

In *Shepard v. United States,* 544 U.S. 13, 16 (2005), the court elaborated on what documents a court may consider under the modified categorical approach.  In that case, the court rejected the government's contention that the court may look at police reports and complaint applications to determine what a guilty plea

23

"necessarily admitted," and held that, under the modified categorical approach, a
court may look only to: (1) charging documents; (2) the terms of a written plea
agreement; (3) transcripts of a plea colloquy between a judge and the defendant in
which the factual basis for the plea was confirmed by the defendant; (4) jury
instructions; (5) any explicit factual finding by the trial judge to which the
defendant assented; and (6) some comparable judicial record of this information.
*Id.*

The Ninth Circuit more recently developed the *Taylor/Shepard* framework
in *Nijhawan,* 557 U.S. 29 (2009), and *Johnson v. United States,* 559 U.S. 133, 130
(2010).  The court in *Nijhawan,* which called for a "circumstance-specific," not a
"categorical interpretation, rejected the application of the modified categorical
approach and held that it did not need to observe the evidentiary limitations
articulated in *Shepard*.  *Nijhawan*, 557 U.S. at 31.  In effect, *Nijhawan* suggested
that statute at issue could be applied in one of three ways, depending on how the
statute was interpreted: using the categorical approach or modified categorical
approach to the extent the statute refers to generic crimes, and using a fact-specific
approach when the statute refers to "the specific circumstances in which a crime
was committed."  *Id*. at 38.

In *Johnson*, the Court reminded the government that it could rely on the
modified categorical approach in cases where "the law under which the defendant

24

has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not." *Id.* at 1273. But in such cases, a court may consult the trial record "to determine which statutory phrase was the basis for the conviction." *Id.*

Beyond *Nijhawan* and *Johnson,* the circuits are a bit of a jumble. *See Aquila-Montes de Oca*, 655 F.3d at 931(overruling the two-paragraph analysis in *Navarro-Lopez* with respect to the modified categorical approach, including its "missing element" rule). Some circuits have adopted a divisible-statutes-only rule, although few have given full attention to the rule. *Id.* Others have adopted ambiguous or even conflicting rules, with several reflecting the stop-and-start analysis that we have experienced. *Id.*

In applying the categorical approach to the facts in this case, this Court relied on *Descamps v. U.S.*, 133 S.Ct. 2276, 2281 (2013), which clarified the use of the modified categorical approach, stating that it "helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the offender's conviction." *Id.* at 2283. According to that case, "the key…is elements, not facts." *Id.* Thus, *Descamps* clarified that to determine the elements underlying the conviction and whether the offender was convicted of the generic crime, courts could examine reliable documents, but are not allowed to examine facts to

25

determine whether the offender actually committed the generic crime.  *Id*. at 2285-86.

As evidenced by the revisions and clarifications of the law over the past two decades, culminating in *Descamps* in 2013, upon which this Court heavily relies[4], Plaintiff cannot carry his burden to show that the law regarding the application of the categorical and modified categorical approaches was clearly established in the Ninth Circuit, let alone in Hawaii.  Even if this Court determines that the controlling body of law was clearly established, HPD's actions in denying Plaintiff's gun permit application after reviewing the facts underlying Plaintiff's harassment convictions were reasonable.

When HPD received Plaintiff's application for a firearms permit, it ran a background check on Plaintiff, and reviewed the police reports of the incident which occurred on November 5, 1997.  The police reports indicated that Plaintiff had engaged in conduct which included violent behavior involving the use of physical force against his wife and daughter.  CSOF, ¶ 16.  As it was apparent that Plaintiff's conviction of Harassment included violent behavior involving the use of physical force against his wife and daughter, HPD determined that Plaintiff's

---

[4] *See* Doc. 111 at p. 5. ("Because all parties failed in their briefs to address [Descamps], a Supreme Court case the Court found to be controlling regarding Plaintiff's motions, the Court ordered the parties to submit supplemental briefing.").  It should also be noted that while the plethora of cases following *Taylor*, including *Descamps*, which this Court found to be controlling in this case, are not directly applicable to this case, this Court has adopted their reasoning.

26

firearms permit application should be denied, and on October 1, 2009, correspondence was sent to Plaintiff informing him of the denial of his permit application. *Id.*, ¶ 17. Prior to the clarification afforded by the *Descamps* decision, and prior to this Court's Sept. 30 Order, the appropriate approach to be applied in a case involving these facts and circumstances were not clearly established. Regardless, HPD's actions in reviewing the underlying police reports in order to determine whether Plaintiff's Harassment conviction involved a crime of violence were reasonable. As such, this Court should conclude that Defendant Kealoha is entitled to qualified immunity, and dismiss the claims by Plaintiff against him.

> **C.    THIS COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT AS TO ALL DEFENDANTS BECAUSE PLAINTIFF HAS NO STANDING TO ASSERT CLAIMS UNDER AND DERIVING FROM THE SECOND AMENDMENT.**

Without first establishing that he is entitled to own, possess, or control firearms under HRS § 134-7, Plaintiff's claims under and deriving from the Second Amendment are premature and this Court should dismiss Plaintiff's Amended Complaint as to all Defendants. Article III limits the jurisdiction of federal courts to "cases" and "controversies." *See Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993). "Federal courts are presumed to lack jurisdiction, unless the contrary appears affirmatively from the record." *Id.* (citation and internal quotation marks omitted). Standing is an essential, core component of the case or controversy

requirement.  *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

Among the cluster of doctrines that ensure our adherence to the case-or-

controversy requirement, the "doctrine that requires a litigant to have 'standing' to

invoke the power of a federal court is perhaps the most important."  *Id.*

 As the party invoking federal jurisdiction, Plaintiff bears the burden of

establishing his standing to sue.  *Id.* at 561.  To do so, Plaintiff must demonstrate

three elements which constitute the "irreducible constitutional minimum" of

Article III standing:

1. Plaintiff must have suffered an "injury-in-fact" to a legally protected interest that is both "concrete and particularized" and "actual or imminent," as opposed to "'conjectural' or 'hypothetical'";

2. There must be a causal connection between their injury and the conduct complained of; and

3. It must be "likely"—not merely "speculative"—that his injury will be "redressed by a favorable decision."

*Id.* at 560-61.  *Id.* at 560–61, 112 S.Ct. at 2136 (citations omitted).  Also, because

Plaintiff seeks declaratory and injunctive relief, there is a further requirement that

Plaintiff show a very significant possibility of future harm; it is insufficient for

Plaintiff to demonstrate only a past injury.  *Bras v. California Pub. Util. Comm'n,*

59 F.3d 869, 873 (9th Cir. 1995), *cert. denied,* 516 U.S. 1084 (1996).

 This case turns on the first constitutional standing element: whether Plaintiff

has shown injury to an interest protected by the Second Amendment.  As discussed

above, Plaintiff has not.  Plaintiff has not shown that Defendants violated his Second Amendment right to own and possess firearms because Plaintiff has not yet established a right to own and possess firearms in the State of Hawaii.  Plaintiff's claims primarily concern the licensing scheme for pistols and revolvers in HRS Chapter 134, and in particular, the disqualifying section, HRS § 134–7.  As discussed above, before Plaintiff can allege a violation of his constitutional rights under the Second Amendment, he must first establish that he is qualified to own and possess firearms under HRS § 134–7, which he has not yet done.  Plaintiff has conceded to have undergone counseling as required by the terms of his probation, but has not provided medical documentation to show that he is no longer adversely affected by the effects of alcohol or an intoxicating liquor, as required by HRS § 134–7(c).  As such, Plaintiff has not suffered an injury-in-fact and has no standing to bring his constitutional claims against Defendants.

Furthermore, Plaintiff cannot show a very significant possibility of future harm, only a past injury, because even assuming he were to obtain medical documentation to show that he is no longer adversely affected by the effects of intoxicating liquor, he cannot show that there is a very significant possibility that HPD would deny his application.

29

## V.    <u>CONCLUSION</u>

Based on the foregoing, Defendants ask this Court to grant summary

judgment in Defendants' favor and dismiss Plaintiff's Complaint in its entirety.

DATED:  Honolulu, Hawai'i, April 2, 2014.

DONNA Y. L. LEONG
Corporation Counsel


By   /s/Marguerite S. Nozaki
    MARGUERITE S. NOZAKI
    Deputy Corporation Counsel

    Attorney for Defendants
    CITY AND COUNTY OF HONOLULU
    AND LOUIS KEALOHA