UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10469-RGS

MICHAEL WESSON, THOMAS WOODS, and
COMMONWEALTH SECOND AMENDMENT, INC.

v.

TOWN OF SALISBURY and THOMAS FOWLER,
in his official capacity as Chief of the Salisbury Police Department
and TOWN OF NATICK and JAMES G. HICKS,
in his official capacity as Chief of the Natick Police Department

and

COMMONWEALTH OF MASSACHUSETTS,
as Intervenor-Defendant

MEMORANDUM AND ORDER
ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

April 18, 2014

STEARNS, D.J.

This case raises a Second Amendment challenge to the licensing scheme of the Massachusetts Gun Control Act of 1998. The essential facts are not in dispute. Plaintiff Michael Wesson is a sixty-five-year-old resident of Salisbury, Massachusetts. In 1973, Wesson was convicted in Maine of misdemeanor possession of a small amount of marihuana (a "joint") and paid a $300 fine. He has no other record of criminal convictions. Wesson possesses a valid Firearm Identification Card (FID) issued in 1993 pursuant to Mass. Gen. Laws

ch. 140, § 129B, by the Salisbury Chief of Police. Plaintiff Thomas Woods is a fifty-two-year-old resident of Natick, Massachusetts. In 1982, while on active service in the U.S. Navy, Woods was convicted in Norfolk, Virginia of simple possession of marihuana ("a small bag") and paid a $10 fine. He has no other record of criminal convictions. Woods possesses a valid FID issued in 2011 by the Natick Chief of Police.

In January of 2013, Wesson applied for a permit to purchase (PTP) a firearm, which was denied by Chief Fowler because of the statutory disqualification stemming from his marihuana conviction. In June of 2011, Woods applied for a license to carry a firearm, which was denied by Chief Hicks because of the statutory disqualification. In February of 2013, Woods applied for a PTP, which was denied on the same ground. Both Wesson and Woods have led exemplary adult lives and both desire to purchase and possess a handgun for self-defense in their homes and for recreational shooting and target practice.[1] The Amended Complaint seeks declaratory and injunctive

---

[1] Woods is a highly decorated veteran of the United States Navy and Army, who was granted "top secret" security clearance while doing work for the National Security Agency. Woods Aff. ¶¶ 5-6. After his military service, Woods was employed by various technology firms, and is currently a Senior Consultant for Tilson, a high-tech consulting firm based in Portland, Maine. *Id.* ¶ 7. Wesson worked for General Electric for forty-four years, most recently as its Plant Investment Coordinator in Lynn, Massachusetts. Wesson Aff. ¶¶ 9-14. Wesson and his wife have two children and three grandchildren. *Id.* ¶¶

relief under the Second and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 (the Federal Civil Rights Act).

**Statutory Background**

The 1998 Gun Control Act substantially rewrote the Massachusetts firearms laws. The statute established a new category of firearm, the "large capacity weapon," comprised of all semiautomatic weapons equipped with (or readily adapted to) a "large capacity feeding device" (or magazine), all weapons with rotating cylinders capable of accepting more than ten rounds of ammunition in the case of a rifle or firearm or in the case of a shotgun more than five shells. This category includes all weapons classified as "assault weapons" (many of which are listed in the statute by name).[2] Mass. Gen. Laws ch. 140, § 121. A "suitable person" with a "proper purpose" may be issued a

---

16-17.

[2] "Firearm" is a term of art in the Gun Control Act and is defined as "a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured; provided, however, that the term firearm shall not include any weapon that is: (i) constructed in a shape that does not resemble a handgun, short-barreled rifle or short-barreled shotgun including, but not limited to, covert weapons that resemble key-chains, pens, cigarette-lighters or cigarette-packages; or (ii) not detectable as a weapon or potential weapon by x-ray machines commonly used at airports or walk-through metal detectors." Mass. Gen. Laws ch. 140, § 121.

license to possess (and carry) a firearm in public by the chief of police or other designated authority in the city or town in which the licensee lives or has a place of business. *Id*. § 131(d). A licensing authority has "considerable latitude" in performing its duty of insuring that irresponsible persons do not have access to deadly weapons. *Ruggiero v. Police Comm'r of Boston*, 18 Mass. App. Ct. 256, 258-259 (1984).

Licenses to carry firearms are divided into two classes, A and B. The Class A license permits its holder to possess and carry all types of firearms, including large capacity weapons, "for all lawful purposes." The Class B license permits its holder to possess and carry non-large capacity firearms and large capacity rifles and shotguns. A Class B licensee is not, however, permitted to carry or possess a loaded firearm "in a concealed manner in any public way or place." The licensing authority may issue Class A and Class B licenses subject to any restrictions the issuing authority "deems proper." *See* Mass. Gen. Laws ch. 140, § 131(a) (Class A licenses) & (b) (Class B licenses). An FID authorizes the holder to possess non-large capacity rifles and shotguns, and associated ammunition. The FID, unlike the Class A and Class B permits, does not authorize the carrying of a firearm. *Id*. § 129B(6). In issuing an FID, unlike the case with a Class A or Class B license, the licensing authority may not impose any special restriction on the grantee. *Id*. at § 129B(3).

A Class A or Class B license may not be issued to any person who: (1) has been convicted (as an adult or juvenile) of a felony, a misdemeanor punishable by imprisonment for more than two years, a "violent crime" as defined in Mass. Gen. Laws ch. 140, § 121, a crime involving the use or sale of firearms, or a violation of any criminal provision of the firearms law or the Controlled Substances Act; (2) has been committed for treatment for mental illness (unless a registered physician attests that the applicant is currently not mentally disabled); (3) has been treated for drug or alcohol addiction (unless a physician attests that five years have elapsed since such treatment and that the applicant is recovered); (4) is under age twenty-one; (5) is an alien; (6) is the subject of a temporary or permanent domestic abuse protection order; or (7) is the subject of an outstanding arrest warrant. *Id.* at § 131(d).[3]

An applicant aggrieved by a denial of an application for a license to carry or an FID or by its suspension or revocation may within ninety days seek review in the District Court having jurisdiction over the Town where the

---

[3] An FID on proper application must be granted by the licensing authority (typically the chief of police) having jurisdiction over the place of issue. Mass. Gen. Laws ch. 140, § 129B(1). The application may be denied only if the applicant is subject to one or more of the disqualifications governing the granting of a Class A or Class B license, although an exception is made for an otherwise qualified minor who is over eighteen years of age (or a qualified minor between ages fifteen and eighteen who has the written permission of his or her parent or guardian). Mass. Gen. Laws ch. 140, § 129B(1)(vi).

5

applicant resides. A Justice, after a hearing, may order the license to carry or FID issued or reinstated if he or she finds that the petitioner is not prohibited by law from possessing an FID, or in the case of a license to carry, that there were no reasonable grounds to justify the licensing authority's action. Mass. Gen. Laws ch. 140, § 129B(5); § 131(f). The District Court proceedings "are narrow in scope" and confined to the issue of, whether on all of the facts, the decision of the permitting authority to deny the issuance or revoke or suspend the permit was reasonable. *Godfrey v. Chief of Police of Wellesley*, 35 Mass. App. Ct. 42, 45 (1993). The court is not required to observe the formalities of a trial; the touchstone for the admission of evidence is simply its relevance. *Chief of Police of Shelburne v. Moyer*, 16 Mass. App. Ct. 543, 547 (1983). The appellant has the burden of producing "substantial evidence" demonstrating that the revocation decision "was arbitrary, capricious, or an abuse of discretion." *Id.* at 546. An appeal of a District Court judge's decision may be taken to the Superior Court by way of an action in the nature of certiorari pursuant to Mass. Gen. Laws ch. 249, § 4. *Godfrey,* 35 Mass. App. Ct. at 45-46.[4]

---

[4] Although neither Wesson nor Woods sought relief in the state court, under the circumstances of this case, neither is required to exhaust his administrative remedies before seeking relief under 42 U.S.C. § 1983. *See Patsy v. Bd. of Regents of Florida*, 457 U.S. 496, 501 (1982); *Monroe v. Pape,*

**Constitutional Background**

Article 17 of the Massachusetts Declaration of Rights does not guarantee an individual's right to possess and bear arms except when called to service in a duly constituted militia. *See Commonwealth v. Davis*, 369 Mass. 886, 887-888 (1976). The Second Amendment, on the other hand, "codifies a 'right of the people'" as individuals "to possess and carry weapons in case of confrontation" in the defense of "hearth and home." *Dist. of Columbia v. Heller*, 554 U.S. 570, 579, 592, 599 (2008) (overturning a local ban on possession of an operable firearm in one's own home for purposes of self-defense).[5] The view taken by most federal courts post-*Heller*, that "[i]t is

---

365 U.S. 167, 183 (1961), overruled on other grounds by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In fact, had plaintiffs sought relief in the state courts, it is unlikely that this court would have the jurisdiction to intervene. "As courts of *original* jurisdiction, federal district courts sitting in diversity jurisdiction do not have appellate power, nor the right to exercise supplementary equitable control over original proceedings in the state's administrative tribunals." *Armistead v. C & M Transport, Inc.*, 49 F.3d 43, 47 (1st Cir. 1995). *See also Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) (collectively, the *Rooker-Feldman* doctrine).

[5] Writing for the majority in *Heller*, Justice Scalia cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sales of arms." 554 U.S. at 626-627. Echoing Justice Scalia, in *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020 (2010), Justice Alito iterated

7

settled law . . . that the Second Amendment applies only to limitations the federal government seeks to impose on [the right to bear arms]," *see, e.g.*, *Maloney v. Cuomo*, 554 F.3d 56, 58 (2d Cir. 2009) (*per curiam*), was repudiated by the Supreme Court in *McDonald* v. *City of Chicago, Ill.*, 130 S. Ct. 3020, 3029, 3050 (2010). *McDonald* struck down a Chicago ordinance that effectively banned the possession of handguns by City residents. While rejecting the petitioners' principal argument that the right to bear arms is guaranteed by the Fourteenth Amendment's Privileges or Immunities Clause, the Court held that the Due Process Clause of the Fourteenth Amendment, by

---

"assurances" that the Court's ruling was not intended to cast doubt on laws regulating the commercial sale of firearms or their possession by felons and the mentally ill, or the carrying of firearms in "sensitive" places. "Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms." *Id.* at 3047; *see also Commonwealth v. Powell*, 459 Mass. 572, 589-591 (2011) (suggesting no constitutional infirmity in the fact that the Massachusetts licensing scheme bans the issuance of licenses to carry firearms to persons under age twenty-one); *Chardin v. Police Comm'r of Boston*, 465 Mass. 314, 327-328 (2013) (rejecting a Second Amendment challenge based on *McDonald* and *Heller* to the state firearms licensing scheme and its disqualifications); *Commonwealth v. Perez*, 80 Mass. App. Ct. 271, 282 (2011) (noting that both *Heller* and *McDonald* expressly affirmed the right of States to regulate the possession of firearms outside the home with "appropriate licensing requirements"). *See also United States v. Rene E.*, 583 F.3d 8, 12 (1st Cir. 2009) (upholding the firearms restrictions imposed by the federal Juvenile Delinquency Act based on "a longstanding tradition of prohibiting juveniles from both receiving and possessing handguns"); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 349 (5th Cir. 2013) (same, restricting right of juveniles to carry handguns in public).

incorporation, makes the Second Amendment right binding on the States. In deciding that the right to bear arms is "fundamental to *our* scheme of ordered liberty" and is "deeply rooted in this Nation's history and tradition," Justice Alito found this to be especially true of handguns "because they are the 'the most preferred firearm in the nation . . . for protection of one's home and family.'" *Id.* at 3036 (internal citations omitted).

**Legal Standards**

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although all reasonable inferences are drawn in the nonmovant's favor, the court cannot "'draw *unreasonable* inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.'" *Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014) (emphasis in original), quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007).

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (mirrored by Fed. R. Civ. P. 57), "does not itself confer subject matter jurisdiction, but, rather, makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis. . . . Consequently, federal

9

courts retain substantial discretion in deciding whether to grant declaratory relief." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995). For a claim to be ripe in the declaratory judgment context, two prongs must be met – fitness for review and hardship. *Id.* at 535. Fitness involves the question of whether "the claim involves uncertain and contingent events that may not occur as anticipated or indeed may not occur at all." *Mass. Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't*, 973 F.2d 18, 20 (1st Cir. 1992) (*per curiam*). "[T]he hallmark of cognizable hardship is usually direct and immediate harm, [although] other kinds of injuries occasionally may suffice." *Ernst & Young*, 45 F.3d at 536.

## DISCUSSION

Both Wesson and Woods were denied PTPs or a license to carry a firearm because of the controlled substances disqualification imposed by Mass. Gen. Laws ch. 140, § 131(d)(i)(e), based on 30 and 40-year-old misdemeanor convictions for possession of marihuana. In 2008, Massachusetts voters approved an initiative (The Sensible State Marihuana Policy Act) decriminalizing the possession of one ounce of marihuana or less, codified as Mass. Gen. Laws ch. 94C, § 32L. Under the terms of the Act, state law may not "impose any form of penalty, sanction or disqualification" for simple possession of marihuana other than the civil sanctions provided by section

32L.⁶ Moreover, state law has since 1971 allowed the sealing of the record of a person convicted of first-time marihuana misdemeanor possession who successfully completes probation. A record, once sealed, "shall not be deemed a conviction for purposes of disqualification or for any other purpose." Mass. Gen. Laws ch. 94C, § 34. As the Commonwealth forthrightly concedes, "had Wesson and Wells' misdemeanor convictions for marijuana possession been in entered in Massachusetts (rather than Maine and Virginia), they might well be eligible today for the license and permit they seek." Commonwealth Br. at 2.

It must first be stated what plaintiffs are *not* seeking in the Amended Complaint. They are not raising a federal constitutional challenge to the validity of the Massachusetts Gun Control Act. Nor do they assert that *Heller* and *McDonald* confer an unrestricted Second Amendment right on citizens to carry concealed or visible firearms for self-defense outside of the home. *But see Moore v. Madigan*, 702 F.3d 933, 936-937 (7th Cir. 2012) (finding such a

---

⁶ Youthful offenders who are cited civilly for possession of noncriminal amounts of marihuana are required to complete a drug awareness program within one year of the offense. Mass. Gen. Laws ch. 94C, § 32M. The Act does not alter the criminal penalties for distributing or cultivating marihuana, no matter how small the amount. *See Commonwealth v. Keefner*, 461 Mass. 507, 511-512 (2012); *see also Commonwealth v. Palmer*, 464 Mass. 773, 776-777 (2013).

right). Plaintiffs are not challenging the right of the Chiefs of Police to exercise their discretion as licensing authorities. Nor finally do they challenge the constitutionality of the statutory disqualification of persons convicted of violations of the controlled substances laws from possessing firearms. What they are seeking is a vindication of their personal Second Amendment rights to purchase and possess firearms for home self-defense. They also seek, as an extension of the core right of home self-defense, the right, subject to reasonable restrictions, to transport firearms to a shooting range or other lawful location to maintain proficiency in their use. *See Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective."). Subject to the understanding that plaintiffs are not seeking any unrestricted right to carry firearms outside their homes, the Commonwealth proposes, and the court agrees, that plaintiffs are entitled to a declaration that, as applied to them, sections 131(d)(i)(e) and 131A infringe their Second Amendment right to possess firearms in the home for self-defense. Commonwealth Br. at 19.

ORDER

For the reasons stated, it is <u>ADJUDGED</u> and <u>DECLARED</u> that Mass. Gen. Laws ch. 140, § 131(d)(i)(e) and § 131A as applied to the plaintiffs Wesson and Woods infringe their Second Amendment right to possess firearms in their home for purposes of self-defense and the right to maintain proficiency in their use. Taking note of the agreement among the parties at oral argument that plaintiffs are suitable persons seeking permission to purchase and possess firearms for a proper purpose, the court orders as follows: The Chiefs of Police of Salisbury and Natick are <u>ORDERED</u> to give prompt consideration to any application of plaintiffs for the necessary permits and/or licenses to maintain firearms for self-defense in their homes and, subject to such reasonable restrictions as the licensing authorities may decide to impose, to transport them to lawful locations for purposes of practice shooting.[7]

SO ORDERED.

---

[7] The court agrees with the Commonwealth that co-plaintiff Commonwealth Second Amendment, Inc., has not demonstrated standing to pursue declaratory relief on behalf of its members or shareholders (nor does the court understand that such relief is being sought). *See* Commonwealth Br. at 15 n.8. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) ("An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."). I also note that plaintiffs are agreeable to the voluntary dismissal of the claims brought against the defendant Towns of Natick and Salisbury in light of the relief being awarded.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE