DONNA Y. L. LEONG, 3226
Corporation Counsel

MARGUERITE S. NOZAKI, 8599
Deputy Corporation Counsel
Department of the Corporation Counsel
City and County of Honolulu
Honolulu Hale, Room 110
530 South King Street
Honolulu, Hawai'i  96813
Telephone: (808) 768-5239
Facsimile: (808) 768-5105
E-mail address:  mnozaki@honolulu.gov

Attorney for Defendants
LOUIS KEALOHA and the
CITY AND COUNTY OF HONOLULU

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KIRK C. FISHER, | ) CIVIL NO. CV11-00589 ACK-BMK |
| | ) |
| Plaintiff, | ) DEFENDANTS LOUIS KEALOHA'S |
| | ) AND CITY AND COUNTY OF |
| vs. | ) HONOLULU'S FURTHER BRIEFING |
| | ) IN RESPONSE TO THE |
| LOUIS KEALOHA, as an individual | ) SUPPLEMENTAL AMICUS BRIEF |
| and in his official capacity as Honolulu | ) FILED BY HAWAII DEFENSE |
| Chief of Police, PAUL PUTZULU, as | ) FOUNDATION ON APRIL 10, 2014; |
| an individual and in his official capacity | ) CERTIFICATE OF SERVICE |
| as former acting Honolulu Chief of | ) |
| Police, and CITY AND COUNTY OF | ) |
| HONOLULU, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

### DEFENDANTS LOUIS KEALOHA'S AND CITY AND COUNTY OF HONOLULU'S FURTHER BRIEFING IN RESPONSE TO THE SUPPLEMENTAL AMICUS BRIEF FILED BY HAWAII DEFENSE FOUNDATION ON APRIL 10, 2014

### I. INTRODUCTION

Defendants CITY AND COUNTY OF HONOLULU ("City") and LOUIS KEALOHA ("Chief Kealoha") (collectively, the City and Chief Kealoha shall be referred to as "Defendants") by and through their counsel, Donna Y. L. Leong, Corporation Counsel, and Marguerite S. Nozaki, Deputy Corporation Counsel, respectfully submit their Further Briefing in response to the Supplemental Amicus Brief filed by Hawaii Defense Foundation on April 10, 2014 ("HDF Supp. Brief") [Doc. No. 122] in support of Plaintiff Kirk C. Fisher's opposition to Defendants' Motion for Summary Judgment, Or In the Alternative, Motion for Reconsideration, filed on May 23, 2014 ("Motion") [Doc. No. 115].

As a result of Plaintiff's Motion to Incorporate and Reference in its Entirety Brief of the Amicus Curiae Hawaii Defense Foundation in Support of Plaintiff ("Motion to Incorporate") [Doc. No. 132] filed within hours of the hearing on Defendants' Motion, and over Defendants' objections to the newly raised issues by HDF, this Court ordered Defendants to submit further briefing in response to HDF's Supp. Brief to address HDF's challenge that Hawaii Revised Statute ("HRS") § 134-7 "is unconstitutional as applied to Plaintiff because allegedly there

2

is no process by which Plaintiff's Second Amendment rights could be sufficiently restored[.]"[1]  *See* Minute Order filed on June 20, 2014 [Doc. No. 134].

HDF's constitutional challenge to HRS § 134-7 fails for the following reasons:

1. Under federal law, Plaintiff is prohibited from owning or possessing firearms because he has been convicted of a "misdemeanor crime of domestic violence" under the Lautenberg Amendment; and

2. Regardless, HRS § 134-7 is constitutional because:

    a. Contrary to HDF's arguments, *Chovan* does not require an expungement or pardon exception to a firearms ban; and

    b. Even if Chovan did require an expungement or pardon exception to a firearms ban, there exists such an exception by way of a pardon.

Accordingly, this Court should reconsider its Order filed on September 30, 2013 [Doc. No. 111] ("Sept. 30 Order") and grant summary judgment in favor of Defendants.

//

//

---

[1] To the extent that HDF also asserts a facial challenge to HRS § 134-7, the analysis to be applied is the same.  *See Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 228 (2d Cir. 2006) ("Facial and as-applied challenges differ in *the extent to which* the invalidity of a statute need be demonstrated… Invariant, however is the *substantive rule of law* to be used.  In other words, *how* one must demonstrate the statute's invalidity remains the same for both types of challenges, namely, by showing that a specific rule of law, usually a constitutional rule of law, invalidates a statute, whether in a personal application or to all") (Emphasis in original).

## II. DISCUSSION

### A. PLAINTIFF IS PROHIBITED FROM OWNING OR POSSESING FIREARMS UNDER FEDERAL LAW REGARDLESS OF HIS CHALLENGE TO HRS § 134-7.

Case law makes clear that state law governs the restoration of civil rights enjoyed under state law by persons convicted of crimes, while federal law governs possession of weapons. *U.S. v. Brailey*, 408 F.3d 609 (2005) (Analyzing Brailey's gun ban under 18 U.S.C. § 922(g)(9) rather than state law, and holding that "in states where civil rights are not divested for misdemeanor convictions, a person convicted of a misdemeanor crime of violence cannot benefit from the federal restoration exception); *See Caron v. United States,* 524 U.S. 308, 313-14 (1998) ("Restoration of the right to vote, the right to hold office, and the right to sit on a jury turns on so many complexities and nuances that state law is the most convenient source for definition. As to the possession of weapons, however, the Federal Government has an interest in a single, national, protective policy, broader than required by state law.").

In both *Caron* and *Brailey*, the courts determined that the defendants were prohibited from gun ownership under federal law if convicted of a misdemeanor crime of domestic violence unless they came within the exceptions under 18 U.S.C. § 922(a)(33)(B)(ii). Both courts analyzed the issue of whether the defendants were prohibited regardless of the applicable state law on prohibitions.

4

In *Brailey*, the court acknowledged that Brailey was clearly not prohibited from owning a gun under Utah law where misdemeanants are permitted to possess a firearm, but the issue for the court was whether the defendant's ownership of firearms violated federal law. *Id.*, 408 F.3d at 610-11. The *Brailey* court ultimately determined that Brailey's conviction had not been expunged or set aside, and that he had neither been pardoned, nor had his civil rights been restored (or taken away, for that matter), and as such, did not qualify for the exceptions in § 922(a)(33)(B)(ii), and was thus prohibited from possessing firearms under § 922(g)(9). *Id.* at 611-12. In *Caron*, the court did not discuss whether Massachusetts provided means to expunge, set aside, or pardon a defendant but focused on the federal government's interest in a "single, national, protective policy, broader than required by state law." *Id.* at 316. As these two cases illustrate, Congress anticipated that there would be discrepancies in the various states' procedures regarding means to expunge, set aside or pardon convictions, and restoration of civil rights, but that the focus is on a single policy regarding the prohibition of firearm ownership for individuals who commit a misdemeanor crime of domestic violence. *See Chovan*, 735 F.3d at 1132-33.

As already discussed in Defendant's Motion for Summary Judgment [Doc. No. 115] and Reply [Doc. No. 127], Plaintiff is prohibited from owning and possessing firearms under the Lautenberg Amendment because his Harassment

5

conviction is categorically a "misdemeanor crime of domestic violence," as that definition was clarified in *United States v. Castleman*, No. 12-1371 (U.S. Mar. 26, 2014).  In light of *Castleman*, the Lautenberg Amendment unambiguously prevents Plaintiff from owning a firearm.  As Plaintiff is prohibited from gun ownership under the Lautenberg Amendment, this Court has no need to address the constitutionality of HRS § 134-7 when that issue is not outcome-determinative. *See Gerling Global Reinsurance Corp. of Am. v. Garamendi*, 400 F.3d 803, 808-10 (9th Cir. Cal. 2005).

### B. *CHOVAN* DOES NOT REQUIRE AN EXPUNGEMENT OR PARDON EXCEPTION TO A FIREARMS BAN.

Contrary to HDF's argument, the Lautenberg Amendment does not require the states to have in place some means to restore an individual's ability to own and possess guns in order for its provisions to apply.  *See* HDF Supp. Brief at p. 3 (HDF incorrectly asserts that in *Chovan* the Ninth Circuit found that the Lautenberg Amendment "is constitutional largely because California has an expungement process which allows domestic violence offenders to regain their firearms rights.").  Rather, 18 U.S.C. § 922(a)(33)(B)(ii), sets forth two exceptions under which the statute will no longer apply: (1) "if the conviction has been expunged or set aside"; or (2) if the offender has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)."

6

In *Chovan*, the Ninth Circuit noted that because the Lautenberg Amendment contains exceptions for expungement, pardons, and set-aside convictions, its burden on Second Amendment rights "is lightened[.]"  But this is not the primary basis for the *Chovan* court's conclusions about the application of intermediate scrutiny or the constitutionality of the Lautenberg Amendment.  The Ninth Circuit does *not* state that intermediate scrutiny applies merely because of the expungement exception.  Indeed, the *Chovan* court stated that "most courts have also found that intermediate scrutiny or its equivalent is the proper standard to apply to Second Amendment challenges to 922(g)(9) and similar statutes."  Even if this Court were to find that strict scrutiny applies, HDF cites absolutely no binding or persuasive authority that would cause the court to require an expungement or pardon exception as a condition of a firearms ban, and Defendants could find no case law to support HDF's argument that HRS § 134-7 is constitutionally invalid. *See Fisher v. Kealoha*, 869 F.Supp.2d 1203, 1224 (D.Haw. 2012) ("Defendants correctly assert that there is 'no case law or legislative action invalidating H.R.S. § 134–7.'").

In fact, courts that have addressed the issue have held that an expungement or pardon exception is not outcome-determinative:

In *United States v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010), the court recognized that § 922(g)(9) tolerates different outcomes for persons convicted in

7

different states, but that this is true of all situations in which a firearms disability (or any other adverse consequence) depends on state law, and that this variability does not call into question federal firearms limits based on state convictions that have been left in place under the states' widely disparate approaches to restoring civil rights.

In *Enos v. Holder*, 855 F. Supp. 2d 1088, 1098-1099 (E.D. Cal. 2012), the court held § 922(g)(9) is not necessarily a lifetime ban as § 921(a)(33)(B)(ii) provides relief to some individuals, but even if it is, it remains constitutional and is a presumptively lawful categorical ban on firearm possession.

In *United States v. Smith*, 742 F. Supp. 2d 855, 869 (S.D. W. Va. 2010), the court held that even assuming the defendant is permanently banned from future firearm possession, it finds § 922(g)(9) reasonably tailored to accomplish the government's compelling interest in prohibiting domestic violence misdemeanants from gun ownership because they are, by statutory definition, violent criminals. *See* 18 U.S.C. § 921(a)(33)(A)(I).

Although there are cases that recognize the presumptive constitutionality of a firearms ban that constitutes a lifetime ban unless fitting within the exceptions in § 921(a)(33)(B)(ii), Defendants could find no case law that require an expungement or pardon exception, and neither Plaintiff nor HDF has presented

any. HDF is asking that this Court require an expungement or pardon exception requirement to the firearm ban where other courts have not done so.

    **C.    EVEN IF *CHOVAN* HAD REQUIRED AN EXPUNGEMENT OR PARDON EXCEPTION, PLAINTIFF'S FIREARMS BAN WOULD BE CONSTITUTIONAL BECAUSE SUCH AN EXCEPTION IS AVAILABLE.**

HDF is incorrect to suggest that "Hawaii has no means to expunge or set aside a conviction of any crime of violence." As this Court correctly noted in its briefing order, Article 5, Section 5 of the Hawaii Constitution states "[t]he governor may grant reprieves, commutations and pardons, after conviction, for all offenses, subject to regulation by law as to the manner of applying for the same." In fact, the Governor's ability to grant pardons is rooted in Hawaii's history. *See In re Cummins*, 20 Haw. 518, 533 (1911) ("It is equally clear that the power confided by Congress to the governor of Hawaii to grant pardons refers to and includes all manner of pardons known to the law."); *Goo v. Hee Fat*, 35 Haw. 827 (1941) ("Section 66 of the Hawaiian Organic Act confers upon the governor an unrestricted power to grant pardons which is not subject to legislative control. It is a prerogative that cannot be fettered by legislative restrictions."). As this Court pointed out, HDF provides no authority for its assertion that the pardon would only apply in Hawaii and must specifically restore constitutional rights.

## III. **CONCLUSION**

Based on the foregoing, Defendants ask this Court to grant summary judgment in Defendants' favor, find that HPD properly denied Plaintiff's application for a permit to obtain firearms, and dismiss Plaintiff's Complaint in its entirety.

DATED: Honolulu, Hawai'i, July 7, 2014.

                DONNA Y. L. LEONG
                Corporation Counsel

     By   /s/Marguerite S. Nozaki
                MARGUERITE S. NOZAKI
                Deputy Corporation Counsel

                Attorney for Defendants
                LOUIS KEALOHA AND CITY AND COUNTY OF HONOLULU

11-07807/350147