IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
─────────────────────────────  )
KIRK C. FISHER,                )
                               )
        Plaintiff,             )
                               )
    vs.                        )  Civ. No. 11-00589 ACK-BMK
                               )
LOUIS KEALOHA, as an individual )
and in his official capacity as )
Honolulu Chief of Police, PAUL  )
PUTZULU, as an individual and in)
his official capacity as former )
acting Honolulu Chief of Police,)
and CITY AND COUNTY OF HONOLULU,)
                               )
        Defendants.            )
─────────────────────────────  )
```

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION**

**PROCEDURAL BACKGROUND**

On September 28, 2011, Plaintiff Kirk Fisher filed a Complaint against Defendants Louis Kealoha, Paul Putzulu, the City and County of Honolulu ("City"), and the Honolulu Police Department ("HPD"). (Doc. No. 1.) Plaintiff asserted two claims against Defendants for alleged violations of his Second, Fifth, and Fourteenth Amendment rights regarding his firearms and attempt to obtain a firearms permit. (Compl. ¶¶ 47-57.)

On December 9, 2011, and January 24, 2012, respectively, the City and Kealoha filed motions for "partial" dismissal of the Complaint. (Doc. Nos. 6 & 16.) On April 19,

-1-

2012, the Court issued an order that (1) dismissed the claims against the City without prejudice; (2) dismissed part of Plaintiff's claims against Kealoha without prejudice; (3) dismissed all claims against HPD with prejudice; and (4) dismissed Plaintiff's Fifth Amendment claims with prejudice. (Doc. No. 25.)

On June 14, 2012, Plaintiff filed the operative Amended Complaint against Kealoha as an individual and in his official capacity, Putzulu as an individual and in his official capacity, and the City.[1/] (Doc. No. 31.) The Amended Complaint contains the following two counts: "Count I - The Second and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 Against All Defendants," and "Count II - The Fourteenth Amendment[] to the United States Constitution and 42 U.S.C. § 1983 Against All Defendants." (Id.)

On March 19, 2012, Plaintiff filed a Motion for Preliminary Injunction. (Doc. No. 18.) On June 29, 2012, the Court issued an order granting Plaintiff's Motion for Preliminary Injunction ("2012 Preliminary Injunction Order"). (Doc. No. 35.)

_____

[1/]Defendant Putzulu has not been served with the Amended Complaint or appeared in this action. (See Doc. No. 31-2 and Doc. Nos. 31-135.) At the September 17, 2013 hearing for Plaintiff's Motion for Summary Judgment and Motion for Permanent Injunction, Plaintiff's counsel voluntarily dismissed Putzulu from this suit. The Court notes, however, that Plaintiff has not filed a Notice of Dismissal. Accordingly, the Court directs Plaintiff to file a Notice of Dismissal, dismissing Putzulu from this action.

-2-

The Court's injunction directed Kealoha to "rescind the prior denial of Plaintiff's permit to acquire firearms and to issue a permit authorizing Plaintiff to acquire firearms." 2012 Preliminary Injunction Order at 36. Kealoha and the City (collectively, "Defendants") filed a Motion for Reconsideration, which the Court subsequently denied. (Doc. Nos. 39 & 50.)

On February 25, 2013, Plaintiff filed a Motion for Summary Judgment and a Motion for Permanent Injunction. (Doc. Nos. 75 & 77.) On September 30, 2013, the Court issued an "Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and Denying Plaintiff's Motion for Permanent Injunction." (Doc. No. 111 ("Sept. 30 Order").) In the Sept. 30 Order, the Court granted in part Plaintiff's Motion for Summary Judgment regarding whether Plaintiff's prior harassment convictions prohibit him from acquiring a firearms permit pursuant to 18 U.S.C. § 922(g)(9), Haw. Rev. Stat. § 134-7(a), and Haw. Rev. Stat. § 134-7(b); denied in part Plaintiff's Motion for Summary Judgment regarding whether Plaintiff is prohibited from acquiring a firearms permit pursuant to Haw. Rev. Stat. § 134-7(c); and denied Plaintiff's Motion for Permanent Injunction. Sept. 30 Order at 62-63.

On April 2, 2014, Defendants filed the instant Motion for Summary Judgment or, in the Alternative, Motion for Reconsideration ("Motion" or "Defs.'s Mot."), along with a

-3-

concise statement of facts. (Doc. Nos. 115 & 116.) On May 23, 2014, Plaintiff filed an Opposition to Defendants' Motion ("Opposition" or "Pl.'s Opp."), along with a concise statement of facts. (Doc. Nos. 124 & 125.) On June 2, 2014, Defendants filed a Reply ("Reply" or "Defs.'s Reply"), along with a Separate and Concise Statement of Facts in Support of Reply and Objections to Plaintiff's Concise Statement of Facts. (Doc. Nos. 127-128.) On June 14, 2014, Plaintiff filed a Motion for Leave to File Additional Exhibits to Supplement Plaintiff's Concise Statement of Facts. (Doc. No. 130.) Plaintiff attached two exhibits to his Motion for Leave to File. (Doc. Nos. 130-2 & 130-3.)[2/]

Amicus curiae Hawaii Defense Foundation ("HDF") requested to file a brief regarding Defendants' Motion. On April 6, 2014, HDF filed a Motion to File Supplemental Amicus Brief. (Doc. No. 119.) HDF attached a twelve-page supplemental amicus brief to its Motion to File. (Doc. No. 119-1.) On April 7, 2014, HDF filed an Errata in order to attach a copy of an academic study to its supplemental amicus brief. (Doc. No. 120.) On April 10, 2014, the Court issued a minute order granting the Motion to File a supplemental amicus brief. (Doc. No. 121.) On April 10, 2014, after the Court issued its minute order, HDF filed a second, sixteen-page supplemental amicus brief ("HDF's April 10

---

[2/]The Court GRANTS this motion and will consider the exhibits attached thereto, notwithstanding the fact that the motion was untimely filed.

Supp. Brief"). (Doc. No. 122.) On April 23, 2014, HDF filed a Notice of Supplemental Authority. (Doc. No. 123.)

The Court held a hearing regarding Defendants' Motion on June 16, 2014. At the hearing Plaintiff acknowledged that HDF raised issues in its supplemental amicus brief, which Plaintiff had not raised in his Amended Complaint, Opposition, or by way of argument at the hearing. Several hours after the hearing Plaintiff filed a Motion to Incorporate and Reference in its Entirety HDF's supplemental amicus brief. (Doc. No. 132.) At the hearing Defendants requested that, if the Court were to consider arguments raised only by HDF, Defendants be given an opportunity to file a brief in response. Defendants noted in their Reply that it was inappropriate for an amicus curiae to raise issues that had not been raised by the parties. (Reply at 10 (citing Artichoke Joe's Cal. Grand Casino v. Norton, 353 F.3d 712, 719 (9th Cir. 2003)); see also Swan v. Peterson, 6 F.3d 1373, 1383 (9th Cir. 1993)).

In light of these circumstances, the Court determined that it will sua sponte in its discretion consider issues raised by HDF, and will allow Defendants to file a brief in response. (Doc. No. 134 ("June 20, 2014 Minute Order").) On the other hand, the Court did not allow HDF and Plaintiff to file further briefing since they had already taken the opportunity to raise and address the subject issues. (Id.)

-5-

On July 7, 2014, Defendants filed a supplemental brief ("Defs.'s Supp. Brief"). (Doc. No. 136.)

## FACTUAL BACKGROUND

On November 5, 1997, Plaintiff was arrested for two counts of harassment in violation of H.R.S. § 711-1106(1)(a). (Defs.'s CSF Ex. A.) That statute provides, in relevant part:

**§ 711-1106 Harassment.**

(1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:

(a) Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact. . .

The state court complaint against Plaintiff alleges that, on or about November 5, 1997, "[Plaintiff], with intent to harass, annoy, or alarm Colette Fisher, did strike, shove, kick, or otherwise touch Colette Fisher in an offensive manner, or subject her to offensive physical contact, thereby committing the petty misdemeanor offense of Harassment in violation of Section 711-1106(1)(a) of the Hawaii Revised Statutes." (Doc. 39-4 ("State of Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233") at 1.)[3/] At the time of the 1997 incident to the present, Colette Fisher has been Plaintiff's wife. (Am. Compl. ¶ 24; Doc. 99-2

_____

[3/]Both parties reference exhibits filed with previous motions that are part of the record in this case. The Court likewise refers to prior exhibits submitted by the parties.

("Deposition of Kirk C. Fisher") at 9-10.) A second count in the state court complaint contains the same allegations with respect to Nicole Fisher, Plaintiff's daughter. (Doc. 39-4 at 1-2.)

On December 3, 1997, Plaintiff pled guilty to two counts of harassment in the Family Court of the First Circuit, State of Hawaii, and was sentenced to six months of probation. (Defs.'s CSF at 2, ¶ 2.) As part of the terms of his probation, the judge ordered Plaintiff "to attend substance abuse assessment and. . . participate in counseling and/or treatment until clinically discharged or as directed by the probation officer." (Id. Ex. C.) Around February 1998, Plaintiff completed a "Twelve Hour Drug and Alcohol Education Course" presented by the "Hawaii Alcohol and Drug Safety Action Program." (Id. Ex. F.) While the record does not indicate the substance underlying Plaintiff's probation requirement to attend the Drug and Alcohol Education Course; this Court noted in its Sept. 30 Order that Plaintiff admitted in his deposition that he had been drinking alcohol (specifically a six-pack of beer) on the day of the alleged domestic violence incident. Sept. 30 Order at 8 n. 8.

In connection with his convictions, Plaintiff was ordered to surrender all firearms, ammunition, permits, and licenses to HPD. (Defs.'s CSF Ex. D.) On November 4, 1998, state judge Dan Kochi issued an "Order Permitting Return of Firearms, Ammunition, Permits and Licenses, With Conditions." (Id. Ex. E.)

The order stated that HPD should return Plaintiff's firearms and ammunition "provided that the provisions of H.R.S. Chapter 134 are satisfied and there are no. . . prohibitions under H.R.S. Section 134-7 . . . or a conviction of a misdemeanor crime of [domestic] violence under 18 U.S.C. section 922(g)(9)." (Id.) HPD promptly returned Plaintiff's firearms as a result of this order. (Defs.'s CSF at 3, ¶ 6.)

In the fall of 2009, Plaintiff submitted an application to HPD seeking to obtain a permit for additional firearms. (Id. at 3-4, ¶ 11.) On October 1, 2009, HPD denied Plaintiff's application via letter on the grounds that Plaintiff was disqualified under H.R.S. § 134-7. (Doc. No. 78-5.)[4/] HPD then ordered Plaintiff to surrender the firearms he possessed to the police or otherwise lawfully dispose of his firearms and ammunition within 30 days of October 1, 2009. (Id.) Plaintiff subsequently transferred ownership and possession of all of his firearms to his wife after she obtained the proper permits. (Am. Compl. ¶ 24.)

Plaintiff asserts that HPD told him he was disqualified from owning firearms under H.R.S. § 134-7(b). (Doc. No. 78-1

---

[4/]The October 1, 2009 letter did not state which subsection of H.R.S. § 134-7 formed the basis for the denial of Plaintiff's firearms permit. (See Doc. No. 78-5.) In his August 31, 2010 letter to Kealoha, Wilkerson (Plaintiff's counsel) indicated that HPD officers stated that the application was denied because Plaintiff had been "convicted of a crime of violence," which would fall under H.R.S. § 134-7(b). (Pl.'s CSF Ex. 1.)

("Declaration of Kirk C. Fisher") ¶ 12.) Defendants dispute this fact and argue that HPD, as indicated in the October 1, 2009 letter, never stated which subsection of H.R.S. § 134-7 formed the basis for the denial of Plaintiff's firearms permit. (Defs.'s Objs. to Pl.'s CSF at 3, ¶ 19.)

According to Defendants, HPD runs a background check on individuals who apply for a firearms permit. (Defs.'s CSF Ex. H ("Nitta Decl.") ¶ 9.) If the applicant has been convicted of harassment, HPD will attempt to determine if the particular conviction involved violent behavior, specifically the use of physical force, and whether such violence occurred within a domestic relationship. (Id.) If HPD determines that an applicant's conviction for harassment includes physical force against the victim, HPD will deny the application. (Id. ¶ 10.)

Regarding the specific procedure used to evaluate Plaintiff's application, HPD ran a background check and reviewed police reports relating to the harassment convictions. (Id. ¶ 11.) Based upon the police reports, HPD concluded that Plaintiff "engaged in conduct which included violent behavior involving the use of physical force against his wife and daughter." (Id.) As a result, HPD denied Plaintiff's application. (Id. ¶ 12.)

On August 31, 2010, Plaintiff through his counsel sent a letter to Kealoha requesting that (1) HPD grant his application for a permit to acquire firearms and (2) HPD rescind the prior

order instructing Plaintiff to surrender or dispose of his firearms. (Pl.'s CSF Ex. 1.) Kealoha responded to Plaintiff's request on September 29, 2010, and affirmed HPD's prior denial of Plaintiff's firearms permit application. (Doc. No. 78-7.) [Sentence deleted.]

On June 29, 2012, as discussed hereinbefore, the Court issued an injunction directing Kealoha to issue a permit authorizing Plaintiff to acquire firearms.[5/] In his declaration, Plaintiff states that sometime following the Court's issuance of the injunction, he submitted an application for a firearms permit to HPD. (Pl.'s CSF Ex. 1 ("Fisher Decl.") ¶ 3.) Plaintiff further states that, as part of the application process, HPD contacted his physician, Dr. Joseph Tsai, in order to "document [Plaintiff's] medical clearance." (Id. ¶ 6.) According to Plaintiff, Dr. Tsai provided medical documentation that he was "not adversely affected by an addiction to, abuse of, or dependence on any alcohol or drug" and that he did "not suffer any mental disease, disorder, or defect." (Id.) Plaintiff asserts that he received a firearms permit because he satisfied all of the conditions of H.R.S. § 134-7, including the "medical clearance documentation" requirement of H.R.S. § 134-7(c)." (Id.

---

[5/]In its 2012 Preliminary Injunction Order, the Court noted that H.R.S. § 134-7(c) may preclude Plaintiff from possessing firearms, and that neither party addressed § 134-7(c). See 2012 Preliminary Injunction Order at 18 n. 14.

¶ 7.)[6]

Defendants acknowledge that Plaintiff submitted an application for a firearms permit after the Court's 2012 Preliminary Injunction Order; however, they argue that he failed to abide by HPD's application procedures. (Defs.'s CSF in Support of Reply at 2, ¶¶ 1-3.) Specifically, Defendants assert that once a complete application is submitted, HPD requires a two-week waiting period during which HPD reviews the application and supporting documents. (Id. ¶ 2.) According to Defendants, after the expiration of the two-week waiting period, there is a six-day period within which the applicant may retrieve his application. (Id.) Defendants assert that Plaintiff did not pick up his application within the allotted period and, therefore, HPD voided his application on August 1, 2012. (Id. ¶ 3.)[7] Defendants further assert that HPD did not contact Dr. Tsai, and that neither Plaintiff nor Dr. Tsai provided HPD with "medical clearance documentation." (Id. ¶ 4.)

At the hearing on June 16, 2014, Plaintiff submitted a declaration from Dr. Tsai, dated June 14, 2014. (Doc. No. 130-2.) Dr. Tsai states in his declaration that Plaintiff "is not

---

[6]Plaintiff has not provided the Court with any documentation indicating that he received a firearms permit from HPD.

[7]The Court is troubled by HPD's application procedures. After the two-week review period, HPD should either approve or deny the firearms permit application and then notify the applicant as such.

adversely affected by [] an addiction to, abuse of, or dependence upon any dangerous drug, harmful drug, detrimental drug, intoxicating compound, or intoxicating liquor." (Dr. Tsai Decl. ¶ 4.)

## STANDARD

### A.  Motion for Summary Judgment

A party may move for summary judgment on any claim or defense - or part of a claim or defense - under Federal Rule of Civil Procedure ("Rule") 56. Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). Under Rule 56, a "party asserting that a fact cannot be or is genuinely disputed must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The substantive law determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted) (emphasis in original).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (quoting Anderson, 477 U.S. at 247). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott, 550 U.S. at 380.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010).[8] If the moving party satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Sluimer v. Verity, Inc., 606 F.3d 584, 587 (9th

---

[8] When the party moving for summary judgment would bear the burden of proof at trial, the movant must present evidence which would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. Miller v. Glenn Miller Prods., 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted). In contrast, when the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may meet its burden by pointing out the absence of evidence from the nonmoving party. Id. (citation omitted).

Cir. 2010). The nonmoving party must present evidence of a "genuine issue for trial," Fed. R. Civ. P. 56(e), that is "significantly probative or more than merely colorable." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted). Summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden of proof at trial." Parth v. Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir. 2010) (citation omitted).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007). The court may not, however, weigh conflicting evidence or assess credibility. In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).[9] Accordingly, if "reasonable minds could differ as to the import of the

---

[9]Nonetheless, a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a genuine issue of material fact. F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 550 U.S. at 380. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012).

-14-

evidence," summary judgment will be denied. <u>Anderson</u>, 477 U.S. at 250–51.

### B.  Motion for Reconsideration

A motion for reconsideration must (1) "demonstrate reasons why the court should reconsider its prior decision" and (2) "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." <u>Hele Ku KB, LLC v. BAC Home Loans Servicing, LP</u>, 873 F. Supp. 2d 1268, 1289 (D. Haw. 2012). The Ninth Circuit has held that reconsideration is appropriate if (1) the district court is presented with "newly discovered evidence," (2) the district court "committed clear error or the initial decision was manifestly unjust," or (3) "if there is an intervening change in controlling law." <u>Nunes v. Ashcroft</u>, 375 F.3d 805, 807 (9th Cir. 2004).

Mere disagreement with a previous order is an insufficient basis for reconsideration. <u>See</u> <u>Leong v. Hilton Hotels Corp.</u>, 689 F. Supp. 1572 (D. Haw. 1988). "Whether or not to grant reconsideration is committed to the sound discretion of the court." <u>Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation</u>, 331 F.3d 1041, 1046 (9th Cir. 2003) (citation omitted).

### <u>DISCUSSION</u>

### I.        Whether Plaintiff Has Standing

Defendants argue that the Court should dismiss

Plaintiff's Amended Complaint in its entirety because Plaintiff lacks standing to bring this lawsuit. Because standing is a threshold requirement, without which a district court lacks jurisdiction, the Court addresses this issue first. Cardenas v. Anzai, 311 F.3d 929, 933 (9th Cir. 2002).

"To satisfy Article III standing, a plaintiff must show: (1) [he] has suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) a 'causal connection between the injury' and the challenged action of the defendant; and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Multistar Industries, Inc. v. U.S. Dep't of Transp., 707 F.3d 1045, 1054 (9th Cir. 2013) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks and alteration omitted)).

Defendants assert that Plaintiff lacks standing to bring this suit because he is precluded from obtaining firearms under H.R.S. § 134-7 and, therefore, cannot establish a violation of his Second Amendment rights. However, Defendants provide no authority for the proposition that a plaintiff lacks Article III standing if he cannot succeed on the merits of his claims. Rather, cases from the Supreme Court, Ninth Circuit, and other federal circuit courts of appeal suggest the opposite. See Davis v. Passman, 442 U.S. 228, 239 n. 18 (1979) (noting that the

question of whether a plaintiff has standing to bring suit, and

thus whether the court has jurisdiction to hear the controversy,

is separate from the question of whether a plaintiff has a

meritorious cause of action); Cardenas v. Anzai, 311 F.3d 929,

933-34 (9th Cir. 2002) (finding that medicaid recipients who

claimed that the state was obligated to distribute funds to them

from the settlement of claims against tobacco companies had

standing, even though their claims were defeated on the merits by

a federal statute); Hightower v. City of Boston, 693 F.3d 61, 65

& 70 (1st Cir. 2012) (finding that former police officer had

standing even though her Second Amendment as-applied and facial

attack claims failed).[10]

Here, it is clear that HPD's denial of Plaintiff's

application for a firearms permit in 2009, subsequent order to

surrender the firearms he possessed, and September 29, 2010

letter affirming the denial of Plaintiff's application,

constitute an "injury-in-fact" sufficient to meet the minimum

---

[10]Defendants further argue that because Plaintiff seeks
declaratory and injunctive relief, he is required to show a "very
significant possibility of future harm" in order to have
standing. (Defs.'s Mot. at 28 (citing Bras v. California Pub.
Util. Comm'n, 59 F.3d 869, 873 (9th Cir. 1995)).) In this case,
Plaintiff can show "future harm" in the form of HPD's continued
denial of his firearms permit application. In any event, as
explained in the Court's 2012 Preliminary Injunction Order,
Defendants' alleged violation of the Second Amendment per se
constitutes irreparable harm. See 2012 Preliminary Injunction
Order at 29-31.

requirements of Article III standing.[11/] See Hightower, 693 F.3d at 70 (finding that the Boston Police Department's revocation of former police officer's firearms license satisfied the requirements of Article III standing) (citing Parker v. District of Columbia, 478 F.3d 370, 376 (D.C. Cir. 2007) ("We have consistently treated a license or permit denial pursuant to a state or federal administrative scheme as an Article III injury."), aff'd sub nom. District of Columbia v. Heller, 554 U.S. 570 (2008).

Accordingly, Plaintiff has standing.

**II.      Whether Federal or Hawaii Law Precludes Plaintiff From Obtaining a Firearms Permit**

The crux of the Amended Complaint is Plaintiff's contention that he is statutorily qualified under both federal and Hawaii law to receive a firearms permit and Defendants' failure to comply with federal and Hawaii law constitutes a denial of his Second Amendment rights. See Sept. 30 Order at 18-19; Am. Compl. 16-17.

In its Sept. 30 Order, the Court found that federal law did not preclude Plaintiff from obtaining a firearms permit because his harassment convictions under H.R.S. § 711-1106(1)(a) did not qualify as "misdemeanor crime[s] of domestic violence" under the Lautenberg Amendment, 18 U.S.C. § 922(g)(9). Sept. 30

---

[11/]Defendants admit that Plaintiff has satisfied the other elements of Article III standing. (See Defs.'s Mot. at 28.)

-18-

Order at 22. Because the Court concluded that federal law did not bar Plaintiff from obtaining a firearms permit, the Court did not decide whether H.R.S. § 134-7(a) precluded Plaintiff from acquiring a firearms permit. Id. at 20 n. 15. In addition, the Court concluded that H.R.S. § 134-7(b) did not disqualify Plaintiff from exercising his Second Amendment rights because his harassment convictions did not constitute "crime[s] of violence." Id. at 54. Finally, the Court found that Plaintiff did not establish that he was qualified under H.R.S. § 134-7(c) to possess firearms. Id. at 61.

In the instant Motion, Defendants request that the Court reconsider its Sept. 30 order in its entirety due to an intervening change in law or, in the alternative, grant summary judgment in their favor as to all claims because Plaintiff is statutorily disqualified under both federal and Hawaii law from acquiring a firearms permit. (Defs.'s Mot. at 1-2.) Defendants' Motion is essentially based on the U.S. Supreme Court's recent 2014 decision in U.S. v. Castleman, 134 S. Ct. 1405 (2014).

The Court will first address whether federal law precludes Plaintiff from obtaining a firearms permit. The Court will then address whether Hawaii law precludes Plaintiff from obtaining a firearms permit.

**A.   Federal Law**

The Lautenberg Amendment, 18 U.S.C. § 922(g)(9),

provides that any person "who has been convicted in any court of a misdemeanor crime of domestic violence" may not "possess in or affecting commerce any firearm or ammunition." The statute defines a "misdemeanor crime of domestic violence" as "an offense that . . . (i) is a misdemeanor under Federal, State, or Tribal law; and (ii) has, as an element, the use or attempted use of physical force . . . committed by a current or former spouse [or] parent." Id. § 921(a)(33)(A).

Plaintiff was convicted of violating H.R.S. § 711-1106(1)(a), which provides that a person "commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person . . . [s]trikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact." The Commentary on this statute states that Subsection 1(a) "is a restatement of the common-law crime of battery, which was committed by any slight touching of another person in a manner which is known to be offensive to that person."

As explained in the Sept. 30 Order, courts use the "categorical approach" to determine whether a conviction for a state crime falls within the federal definition of a particular act or crime. Sept. 30 Order at 22 (citing Descamps v. U.S., 133 S. Ct. 2276, 2281 (2013)). Under the categorical approach, federal law bars Plaintiff from possessing firearms if the state

crime of harassment proscribes the same conduct as the misdemeanor crime of domestic violence defined in the Lautenberg Amendment. Id. However, if H.R.S. § 711-1106(1)(a) prohibits more conduct than 18 U.S.C. § 922(g)(9), then Plaintiff's harassment convictions do not qualify as misdemeanor crimes of domestic violence under federal law. Id.

This Court further explained in the Sept. 30 Order that the Supreme Court has approved a variant of the categorical approach: the so-called "modified categorical approach." Sept. 30 Order at 25. The modified categorical approach "helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the offender's conviction." Id. (quoting Descamps, 133 S. Ct. at 2283). According to the Supreme Court, "the key . . . is elements, not facts." Id. at 26. Thus, to determine the elements underlying the conviction, the Supreme Court has held that courts could examine "reliable" documents such as an indictment or information, jury instructions, a transcript of the plea colloquy or written plea agreement, or a record of findings of fact adopted by the offender upon entering the plea. Id. (citing Taylor v. U.S., 495 U.S. 575, 602 (1990); Shepard v. U.S., 544 U.S. 13, 16 (2005)).

In its Sept. 30 Order, this Court concluded that, under both the categorical and modified categorical approaches,

-21-

Plaintiff's harassment convictions did not disqualify him under Section 922(g)(9) from possessing firearms. Id. at 32-33. Specifically, the Court, relying on the Ninth Circuit's interpretation of the Lautenberg Amendment in U.S. v. Belless, 338 F.3d 1063 (9th Cir. 2003), concluded that H.R.S. § 711-1106(1)(a) prohibited more conduct than 18 U.S.C. § 922(g)(9). Sept. 30 Order at 24. In Belless, the Ninth Circuit held that the phrase "physical force" in the Lautenberg Amendment means "the violent use of force against the body of another individual," and, therefore, does not include "de minimis" touching. Belless, 338 F.3d at 1068. Because H.R.S. § 711-1106(1)(a) prohibited "de minimis" or "slight" touching and the Lautenberg Amendment (as defined by Belless) did not prohibit such conduct, this Court held that a conviction under the Hawaii statute did not categorically qualify as a "misdemeanor crime of domestic violence." Sept. 30 Order at 24.

The Court further determined that it may apply the modified categorical approach because the elements of H.R.S. § 711-1106(1)(a) are listed in the disjunctive. Id. at 27. Because the charging document and the judgment (the only documents deemed reliable by the Court) include the elements of harassment that allow for conviction on the basis of offensive or de minimis touching, the Court found that Plaintiff's convictions were not covered by the Lautenberg Amendment under the modified

categorical approach. Id. at 28.

In the Sept. 30 Order, the Court recognized a split between those federal circuit courts of appeal holding that the "touching" element of common law battery constitutes "physical force" as contemplated by the Lautenberg Amendment and others, such as the Ninth Circuit in Belless, holding that it does not. Id. at 23 n. 16.

In U.S. v. Castleman, 134 S. Ct. 1405 (2014), a decision issued after this Court's Sept. 30 Order, the Supreme Court overruled Belless and several other Circuit Courts of Appeal by holding that § 922(g)(9)'s "physical force" requirement is satisfied by the degree of force that supports a common-law battery conviction - namely, offensive touching. Castleman, 134 S. Ct. at 1410.

Castleman distinguished Johnson v. U.S., 559 U.S. 133 (2010), where the Court considered whether a battery conviction was a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). Similar to the Lautenberg Amendment, ACCA defines a "violent felony" as one that "has as an element the use. . . of physical force." Id. 924(e)(2)(B)(i). Johnson declined to read the common-law meaning of "force," which includes slight offensive touching, into ACCA's definition of "violent felony" because it would be a "comical misfit with the defined term." Johnson, 599 U.S. at 145. In defining a "violent

felony" for purposes of ACCA, the Johnson Court held that the phrase "physical force" must "mea[n] violent force." Id. at 140 (emphasis in original).

In contrast, Castleman held that the common-law meaning of force "fits perfectly" within § 922(g)(9)'s definition of a misdemeanor crime of domestic violence. Castleman, 134 S. Ct. 1410. Specifically, the Court found that "because perpetrators of domestic violence are routinely prosecuted under generally applicable assault or battery laws, it makes sense for Congress to have classified as a misdemeanor crime of domestic violence the type of conduct that supports a common-law battery conviction." Id. at 1411 (internal quotation marks and citation omitted). The Court also found that the term "domestic violence" is a "term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context." Id. The Court's holding was further bolstered by the status of state laws when Congress enacted § 922(g)(9): if offensive touching did not constitute "force," § 922(g)(9) would not have applied in ten states which make up thirty percent of the nation's population. Id. at 1413. As such, the Supreme Court in Castleman concluded that "Congress incorporated the common-law meaning of 'force' - namely, offensive touching - in § 921(a)(33)(A)'s definition of a 'misdemeanor crime of domestic violence.'" Id. at 1410.

Pursuant to Castleman, this Court finds that, under

the categorical approach, Plaintiff's harassment convictions qualify as misdemeanor crimes of domestic violence under federal law. As indicated above, H.R.S. § 711-1106(1)(a) prohibits "offensive touching" or "offensive physical contact" as well as "striking, shoving, and kicking." The Commentary on this statute provides that Subsection 1(a) "is a restatement of the common-law crime of battery, which was committed by any slight touching of another person in a manner which is known to be offensive to that person." Accordingly, the federal "misdemeanor crime of domestic violence," as defined by the Supreme Court in Castleman, proscribes the same conduct as H.R.S. § 711-1106(1)(a). That is, every element of the Hawaii offense satisfies the Supreme Court's definition of "physical force" under § 922(g)(9). This Court therefore holds that Plaintiff is prohibited under federal law from possessing firearms.[12/]

Plaintiff argues "that Castleman must be narrowly construed to apply only to misdemeanor crimes of domestic violence." (Pl.'s Opp. at 8) (emphasis in original.) According to Plaintiff, his H.R.S. § 711-1106(1)(a) harassment convictions are

---

[12/]As discussed above, the Court in its Sept. 30 Order employed the modified categorical approach and found that, because the charging document and the judgment include the elements of harassment that allow for conviction on the basis of de minimis touching, Plaintiff's convictions were not covered by Section 922(g)(9). Now, in light of Castleman, a conviction on the basis of offensive touching is covered by the Lautenberg Amendment. Consequently, federal law disqualifies Plaintiff from obtaining firearms even under the modified categorical approach.

not "misdemeanor crime[s] of domestic violence" because a domestic relationship is not a required element of the Hawaii offense. (Id. at 9.)

As explained in the Sept. 30 Order, state crimes do not need to include the element of a "domestic relationship" in order to fall within Lautenberg's firearms prohibition, pursuant to the Supreme Court's decision in U.S. v. Hayes, 555 U.S. 415 (2009). Sept. 30 Order at 21. In Hayes, the Supreme Court stated that a "misdemeanor crime of domestic violence" must have "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon," and must be "committed by a person who has a specified domestic relationship with the victim." Hayes, 555 U.S. at 421.

Thus, while Castleman focused on its ruling that "Congress incorporated the common-law meaning of 'force' - namely, offensive touching - in § 921(a)(33)(A)'s definition of a 'misdemeanor crime of domestic violence'"; Hayes (which Plaintiff does not even mention in his Opposition) addressed the issue of domestic relationship and held that the Lautenberg Amendment does not require that the predicate state offense include, as a discrete element, the existence of a domestic relationship between the offender and victim. Id. at 421. Rather, it suffices that "a prior conviction [] was, in fact, for 'an offense . . . committed by' the defendant against a spouse or other domestic

victim." Id. Here, Plaintiff admits in his Amended Complaint and deposition that Colette Fisher is currently his wife and that they were married at the time of the 1997 incident. (Am. Compl. ¶ 24; Doc. No. 99-2 ("Deposition of Kirk C. Fisher") at 9-10.)[13/14/]

Having employed the categorical approach and concluded that Plaintiff's harassment convictions qualify as "misdemeanor crime[s] of domestic violence" pursuant to Castleman, this Court need not apply the modified categorical approach. Nevertheless, in an abundance of caution, this Court will address the following assertion by Plaintiff.

Plaintiff asserts that, under the modified categorical approach, the Court cannot consider Plaintiff's admission in his Amended Complaint and deposition that he was married to Colette

---

[13/]This Court also previously addressed Plaintiff's argument in its 2012 Preliminary Injunction Order. In that Order, this Court, in discussing U.S. v. Hayes, 555 U.S. 415 (2009), found that Lautenberg's "domestic relationship" requirement was satisfied because "the Complaint establishe[d] that Plaintiff's crime was committed against family members." 2012 Preliminary Injunction Order at 20-21 n. 17 (citing original Compl. ¶ 16).

[14/]The dissent in Hayes argued that "[u]nder the majority's approach . . . it will often be necessary to go beyond the fact of conviction and 'engage in an elaborate factfinding process regarding the defendant's prior offens[e],' Taylor v. U.S., 495 U.S. 575, 601 (1990), to determine whether it happened to involve domestic violence." Hayes, 555 U.S. at 436. According to the Hayes dissent, such an approach runs contrary to its prior decision in Taylor where the Court adopted a categorical approach to predicate offenses under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Id. (quoting Taylor, 495 U.S. at 600).

Fisher at the time of the 1997 incident. (Pl.'s Opp. at 9-10.)

As discussed above, the modified categorical approach permits courts to examine a limited set of reliable documents, such as an indictment or plea agreement, to ascertain the specific element that a defendant was convicted of violating when a statute contains multiple, alternative elements. Descamps, 133 S. Ct. at 2285. The Ninth Circuit has held that statements or admissions by an offender may not be used under the modified categorical approach if they merely provide "bare facts" instead of demonstrating that an offender's guilty plea was based on that conduct. Huerta-Guevara v. Ashcroft, 321 F.3d 883, 888 (9th Cir. 2003). It therefore appears that this Court cannot consider Plaintiff's admission in his Amended Complaint and deposition that he was married to Colette Fisher at the time of the 1997 incident under the modified categorical approach.

Hayes indicates, however, that it is unnecessary to examine the elements of the predicate offense when analyzing whether that offense was "committed by a person who has a specified domestic relationship with the victim." Rather, courts may look at the facts underlying the conviction to determine whether the "domestic relationship" requirement is satisfied. See Hayes, 555 U.S. at 421 (holding that it suffices that "a prior conviction [] was, in fact, for 'an offense . . . committed by' the defendant against a spouse or other domestic victim")

(emphasis added). Under Hayes, the question of "whether a crime is one of 'domestic violence' depends on the identity of the victim rather than the elements of the offense." U.S. v. Skoien, 614 F.3d 638, 642 (7th Cir. 2010); see also U.S. v. White, 593 F.3d 1199, 1204-05 (11th Cir. 2010) (holding that a domestic relationship must exist as part of the facts giving rise to the predicate offense, but it need not be an element of the prior offense); U.S. v. Griffith, 455 F.3d 1339, 1346 (11th Cir. 2006) (same).

The Hayes dissent and Skoien, a subsequent Seventh Circuit decision interpreting Hayes, confirm that the Supreme Court intended a fact-based inquiry into whether the predicate state offense was committed by a person who has a "specified domestic relationship" with the victim instead of an inquiry based on the elements of the offense. See Hayes, 555 U.S. at 436 ("Under the majority's approach . . . it will often be necessary to go beyond the fact of conviction and engage in an elaborate factfinding process regarding the defendant's prior offense to determine whether it happened to involve domestic violence.") (Roberts, C.J., dissenting) (internal citation and alteration omitted); Skoien, 614 F.3d at 642 (finding that, under Hayes, the domestic nature of the relationship depends on the identity of the victim rather than the elements of the predicate offense).

Pursuant to Hayes, this Court can examine the facts

underlying Plaintiff's harassment convictions to see if there existed a "specified domestic relationship" between Plaintiff and the victim. As noted above, Plaintiff admits in his Amended Complaint and deposition that Colette Fisher is currently his wife and that they were married at the time of the 1997 incident. Accordingly, Plaintiff's relationship with Colette Fisher satisfies Lautenberg's domestic relationship requirement.

Because Plaintiff was convicted under H.R.S. § 711-1106(1)(a) which has "as an element, the use . . . of physical force" and committed this offense against his wife, Plaintiff's convictions qualify as "misdemeanor crime[s] of domestic violence" and, therefore, he is precluded from possessing firearms under federal law. As a result, the Court must conclude that Plaintiff's Amended Complaint must be dismissed in its entirety.

As noted hereinbefore, the focus of the Amended Complaint is Plaintiff's assertion that he is qualified to obtain a firearms permit under federal and Hawaii statutory law and Defendants' failure to provide him with such a permit constitutes a denial of his Second Amendment right to keep and bear arms. Sept. 30 Order at 18-19. Am. Compl. 10-17. Plaintiff also asserts that his Fourteenth Amendment due process rights were violated in connection with his alleged Second Amendment rights. Id. at 15-17. In addition, Plaintiff asserts claims under 42 U.S.C. § 1983,

-30-

which are predicated upon the alleged Second and Fourteenth Amendment violations. Id.

In its Sept. 30 Order, the Court rejected Defendants' contention that Plaintiff was prohibited from possessing firearms under 18 U.S.C. § 922(g)(9) because his harassment convictions did not categorically qualify as misdemeanor crimes of domestic violence. Now, in light of Castleman, the Lautenberg Amendment statutorily disqualifies Plaintiff from obtaining a firearms permit. Accordingly, Plaintiff cannot establish that his Second Amendment rights were violated.

Amicus curiae HDF, citing U.S. v. Chovan, 735 F.3d 1127, 1129-30 (9th Cir. 2013), raises the argument that § 922(g)(9) is unconstitutional as applied to Plaintiff because Hawaii law offers him limited means to restore his Second Amendment rights. (HDF's April 10 Supp. Brief at 3.)[15] According to HDF, "[t]he plain language of the Lautenberg Amendment contemplates some mechanism for reinstating Second Amendment

---

[15] To the extent that HDF also asserts a facial challenge to § 922(g)(9), the analysis to be applied is the same. See Brooklyn Legal Servs. Corp v. Legal Servs. Corp., 462 F.3d 219, 228 (2d Cir. 2006) ("Facial and as-applied challenges differ in the extent to which the invalidity of a statute need be demonstrated . . . . Invariant, however, is the substantive rule of law to be used. In other words, how one must demonstrate the statute's invalidity remains the same for both types of challenges, namely, by showing that a specific rule of law, usually a constitutional rule of law, invalidates the statute, whether in a personal application or to all.") (emphasis in original); see also U.S. v. Salerno, 481 U.S. 739, 745 (1987) (describing the facial challenge standard).

rights after a misdemeanor conviction for domestic violence," and Hawaii does not provide such mechanism. (Id. at 3-4.)

In Chovan, the Ninth Circuit, applying intermediate scrutiny, held that 18 U.S.C. § 922(g)(9) may prohibit an individual who commits a misdemeanor crime of domestic violence from possessing firearms without violating the Second Amendment. 735 F.3d at 1129-30; see also U.S. v. White, 593 F.3d 1199, 1205 (11th Cir. 2010) (considering the constitutionality of § 922(g)(9) and upholding it as a "presumptively lawful longstanding prohibition"); Skoien, 614 F.3d at 641-42 (7th Cir. 2010) (upholding § 922(g)(9) against Second Amendment challenge); U.S. v. Booker, 644 F.3d 12, 25 (1st Cir. 2011) (same); U.S. v. Staten, 666 F.3d 154, 167 (4th Cir. 2011) (same).

Chovan adopted the following two-step inquiry to be applied to Second Amendment challenges: (1) "whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." Chovan, 735 F.3d at 1136. The level of scrutiny depends on (1) "how close the law comes to the core of the Second Amendment right," and (2) "the severity of the law's burden on the right." Id. at 1138 (quoting Ezell v. City of Chicago, 651 F.3d 684, 703 (7th Cir. 2011)).

At the first step of the inquiry, the Chovan court concluded that "by prohibiting domestic violence misdemeanants

-32-

from possessing firearms, § 922(g)(9) burdens rights protected by

the Second Amendment." Id. at 1137.

Proceeding to the second step of the inquiry, the court

found that

> Heller tells us that the core of the Second
> Amendment is "the right of law-abiding,
> responsible citizens to use arms in defense
> of hearth and home." 554 U.S. [570, 635
> (2008)], 128 S.Ct. 2783. Section 922(g)(9)
> does not implicate this core Second Amendment
> right because it regulates firearm possession
> for individuals with criminal convictions.
> "Although [Chovan] asserts his right to
> possess a firearm in his home for the purpose
> of self-defense, we believe his claim is not
> within the core right identified in Heller -
> the right of a law-abiding, responsible
> citizen to possess and carry a weapon for
> self-defense - by virtue of [Chovan's]
> criminal history as a domestic violence
> misdemeanant." [U.S. v. Chester, 628 F.3d
> 673, 682-83 (4th Cir. 2010);] cf. [Ezell v.
> City of Chicago, 651 F.3d 684, 708 (7th Cir.
> 2011] (finding that a challenged statute
> implicated the core Second Amendment right
> because "the plaintiffs are the 'law-abiding,
> responsible citizens' whose Second Amendment
> rights are entitled to full solicitude under
> Heller").

Id. at 1138 (emphasis in original). However, the court held that

the burden § 922(g)(9) places on domestic violence misdemeanants

is "quite substantial" and amounts to a near-total prohibition on

firearm possession. Id. Nevertheless, the court determined that

> . . . Chovan goes too far when he argues that
> § 922(g)(9) is too broad because it "contains
> no provision limiting its applicability." As
> explained above, § 922(g)(9) exempts those
> with expunged, pardoned, or set-aside
> convictions, or those who have had their

-33-

> civil rights restored. Therefore, while we
> recognize that § 922(g)(9) substantially
> burdens Second Amendment rights, the burden
> is lightened by these exceptions.

Id.

In sum, the Chovan court concluded that the Lautenberg Amendment "does not implicate the core Second Amendment right, but it does place a substantial burden on the right." Id. As such, the Court determined that intermediate rather than strict scrutiny was the appropriate standard to apply when addressing § 922(g)(9)'s constitutionality. Id.

Chovan defined the intermediate scrutiny standard as requiring that "(1) the government's stated objective [] be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." Id. at 1139. Applying this standard, the court reasoned that § 922(g)(9) served an important government interest in preventing domestic gun violence. Chovan, 735 F.3d at 1139. In particular, the court found that "the 1996 passage of § 922(g)(9) was motivated by the concern that guns were not being kept away from domestic abusers under felon-in-possession laws because many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies." Id.

The Chovan court concluded that "[k]eeping guns from domestic violence misdemeanants is substantially related to the broader interest of preventing domestic gun violence for four

related reasons." Id. at 1140. First, as the legislative history indicates, Congress enacted the Lautenberg Amendment because perpetrators of domestic violence were not being kept from possessing firearms, as they were not usually convicted of felonies. Id. Second, according to several academic studies, "a high rate of domestic violence recidivism exists." Id. Third, domestic abusers use firearms during incidents of domestic violence. Id. Finally, "the use of guns by domestic abusers is more likely to result in the victim's death." Id.

"Putting these four conclusions together," the Ninth Circuit found that "domestic violence misdemeanants are likely to commit acts of domestic violence again and that, if they do so with a gun, the risk of death to the victim is significantly increased." Id. at 1140-41. Consequently, the court held that § 922(g)(9) was constitutional because the statute's "prohibition on gun possession by domestic violence misdemeanants is substantially related to the important government interest of preventing domestic gun violence." Id. at 1141.

Addressing HDF's argument that § 922(g)(9) is unconstitutional as applied to Plaintiff, the Court observes that § 922(g)(9) establishes three exceptions under which the prohibition under the statute will no longer apply: (1) "if the conviction has been expunged or set aside"; (2) if the offender "has had civil rights restored (if the law of the applicable

jurisdiction provides for the loss of civil rights under such an offense)"; or (3) if the offender "has been pardoned." 18 U.S.C. § 921(a)(33)(B)(ii). Because the exceptions are listed in the disjunctive, Plaintiff only has to satisfy one of the three exceptions under § 921(a)(33)(B)(ii) in order to be statutorily qualified under federal law to possess firearms.

With respect to the first exception, H.R.S. § 831-3.2 (entitled "Expungement [O]rders") provides, in pertinent part, that "[t]he attorney general . . . upon written application from a person arrested for, or charged with <u>but not convicted of a crime</u>, shall issue an expungement order annulling, cancelling, and rescinding the record of arrest." H.R.S. § 831-3.2(a) (emphasis added). The plain language of § 831-3.2 indicates that Plaintiff cannot receive an "expungement order" from the Attorney General of Hawaii annulling his harassment convictions under H.R.S. § 711-1106(1)(a). <u>See</u> also Department of the Attorney General of the State of Hawaii, Hawaii Criminal Justice Data Center, "Expungement Frequently Asked Questions," http://ag.hawaii.gov/hcjdc/expungement-frequently-asked-questions/#convictions (stating that convictions never qualify for expungement).

As to the second exception, § 921(a)(33)(B)(ii) does not define the term "civil rights." In <u>U.S. v. Brailey</u>, however, the Ninth Circuit addressed how to interpret the term. 408 F.3d

-36-

609, 611-13 (9th Cir. 2005). In 1997, Brailey was convicted in
Utah of a misdemeanor crime of domestic violence and, as a
result, was barred from possessing firearms under then-existing
Utah law. Id. at 610-11. In 2000, Utah amended its statutes such
that Brailey and other misdemeanants were allowed to possess
firearms. Id. Brailey was subsequently charged with and convicted
of firearm possession in violation of § 922(g)(9). Id. at 610.

On appeal, Brailey argued that his civil rights had
been restored within the meaning of § 921(a)(33)(B)(ii) because
his right to possess firearms had been restored under Utah law.
Id. The Ninth Circuit rejected that argument, finding that his
civil rights had never been "lost" because his misdemeanor
conviction had not take away his "core civil rights": the right
to vote, to sit as a juror, or to hold public office. Id. at 613.
Because Brailey's civil rights had never been lost, the court
reasoned, they could not have been restored. Id. Thus, the Ninth
Circuit concluded that Brailey failed to meet the civil rights
restored exception. Id.

Under Hawaii law, a misdemeanor conviction does not
take away an offender's "core civil rights." However, a felony
conviction does. Specifically, H.R.S. § 831-2 (entitled "Rights
"[L]ost") provides that "[a] person sentenced for a felony, from
the time of the person's sentence until the person's final
discharge, may not: (1) Vote in an election . . . or (2) Become a

-37-

candidate for or hold public office." H.R.S. § 831-2(a) (emphasis

added). In this case, Plaintiff was convicted of a misdemeanor

and, therefore, is ineligible to have his right to vote or right

to hold public office restored under H.R.S. § 831-2(a).

Accordingly, Plaintiff cannot satisfy § 921(a)(33)(B)(ii)'s

"civil rights restored" exception.

Finally, with respect to the third exception, Article

Five, Section Five of The Constitution of the State of Hawaii

provides in relevant part:

> The governor may grant reprieves,
> commutations and pardons, after conviction,
> for all offenses, subject to regulation by
> law as to the manner of applying for the
> same. The legislature may, by general law,
> authorize the governor to grant pardons
> before conviction, to grant pardons for
> impeachment and to restore civil rights
> denied by reason of conviction of offenses by
> tribunals other than those of this State.

Although there appear to be no Hawaii cases discussing the

contours of the governor's right to grant pardons; the plain

language of Article Five, Section Five of the Hawaii Constitution

indicates that Plaintiff could receive a pardon for his

harassment convictions under H.R.S. § 711-1106(1)(a) and,

therefore, statutorily qualify under federal law to possess

firearms.

HDF asserts, without citing any authority, that such a

pardon (1) "must specifically state it restores Second Amendment

rights" and (2) would not allow Plaintiff "to purchase firearms

in other states in order to own in Hawaii"[16] because the pardon would "only apply within Hawaii." (HDF's April 10 Supp. Brief at 4 n. 1.)

Regarding HDF's first assertion, the Court has conducted extensive independent research and found no authority for the proposition that a pardon for a misdemeanor issued by the Governor of Hawaii restores an offender's Second Amendment right to possess firearms only if the pardon specifically provides as such.[17] Rather, § 921(a)(33)(B)(ii) indicates that a Hawaii pardon will be given full effect and allow the individual to possess firearms "unless the pardon . . . expressly provides that the person may not ship, transport, possess, or receive firearms."

HDF's second assertion is also unpersuasive. Again, the Court has conducted extensive independent research and found no authority for the proposition that a Hawaii pardon would not

---

[16]The Court observes that federal law bars anyone other than a licensed importer, manufacturer, dealer, or collector from transporting into his state of residence a firearm purchased outside that state. 18 U.S.C. § 922(a)(3); U.S. v. Decastro, 682 F.3d 160, 162 (2nd Cir. 2012).

[17]The Court notes that the Hawaii Attorney General, in an opinion letter dated October 14, 1981, and addressed to HPD's police chief, stated "that the mere granting of a pardon by the Governor [does not] relieve[] persons with past felony convictions of any disability relating to the possession of firearms." Hawaii A.G. Opinion No. 81-12 (Oct. 14, 1981), available at 1981 WL 37235 (emphasis added). The Court finds that the opinion letter is inapplicable to the instant case because Plaintiff was convicted of a misdemeanor.

allow Plaintiff to purchase firearms in other states because the pardon would only be given effect in Hawaii. In fact, some decisions suggest that a foreign state may give effect to a Hawaii pardon and allow Plaintiff to acquire firearms in that state. See, e.g., Schlenther v. Dep't of State, Division of Licensing, 743 So.2d 536, 537 (Fla. Dist. Ct. App. 1998) (finding that the State of Florida improperly denied plaintiff's application for a concealed-weapons permit because once a sister state has restored a person's firearms rights, Florida was required to give "full faith and credit" to the restoration of such rights); People v. Van Heck, 252 Mich. App. 207, 208-09, 214 & 217 (Mich Ct. App. 2002) (holding that Michigan must give full effect to a Connecticut pardon because Connecticut law removes all "legal disabilities that flow" from the pardoned conviction and, therefore, a "pardoned individual is no longer considered by the law to have been 'convicted' or otherwise adjudicated guilty of the pardoned crime").

        As such, the Court finds that Plaintiff could receive a pardon for his H.R.S. § 711-1106(1)(a) harassment convictions; and that such a pardon would qualify him to possess a firearm under federal law and restore his Second Amendment rights.

        In its supplemental amicus brief, HDF asserts that the Chovan court found that § 922(g)(9) as applied to the defendant in that case was constitutional because California, unlike

-40-

Hawaii, "has an expungement process which allows domestic violence offenders to regain their firearm[] rights." (HDF's April 10 Supp. Brief at 3.)

The defendant in <u>Chovan</u> argued that "§ 922(g)(9) is unconstitutional as applied to him because his 1996 domestic violence conviction occurred fifteen years before his § 922(g)(9) conviction, he is unlikely to recidivate, and he has in fact been law-abiding for those fifteen years." <u>Chovan</u>, 735 F.3d at 1141. In rejecting the defendant's as-applied constitutional challenge, the <u>Chovan</u> majority noted that § 922(g)(9) has several exceptions under which the prohibition under the statute will no longer apply. However, contrary to HDF's assertion, the <u>Chovan</u> majority did not refer to California's expungement laws when analyzing whether § 922(g)(9) was constitutional as applied to the defendant. <u>Id.</u> at 1141-42.

The concurrence in <u>Chovan</u> used strict scrutiny to analyze whether § 922(g)(9) was unconstitutionally applied to the defendant and addressed California's expungement process. <u>Id.</u> at 1151 (Bea, J., concurring). The <u>Chovan</u> concurrence argued that § 922(g)(9) was "narrowly tailored" because California, where the defendant was convicted, "makes expungement of misdemeanor convictions a right." <u>Id.</u>

In contrast, the <u>Chovan</u> majority used the intermediate scrutiny standard to analyze whether § 922(g)(9) was

-41-

unconstitutionally applied to the defendant and, without discussing California's expungement provision, stated in general that "Congress permissibly created a broad statute that only excepts those individuals with expunged, pardoned, or set aside convictions and those individuals who have had their civil rights restored." Id. at 1141-42.[18/] The Chovan majority found that, even assuming the defendant had no history of domestic violence since his 1996 conviction, he had neither "presented evidence to directly contradict the government's evidence that the rate of domestic violence recidivism is high" nor "directly proved that if a domestic abuser has not committed domestic violence for fifteen years, that abuser is highly unlikely to do so again." Id. at 1142. Accordingly, the majority concluded "that the application of § 922(g)(9) to Chovan is substantially related to the government's important interest of preventing domestic gun violence." Id.

The Chovan majority recognized that Congress created a broad statute which imposes a lifetime ban for domestic violence misdemeanants, subject to several narrow exceptions. Id. While

_____

[18/]The Chovan majority addressed the defendant's "non-constitutional argument that § 922(g)(9) does not apply to him because his civil rights had been restored." Chovan, 735 F.3d at 1131. Applying its prior decision in U.S. v. Brailey, 408 F.3d 609, 611-13 (9th Cir. 2005), the court rejected the defendant's argument that his civil rights had been restored within the meaning of § 921(a)(33)(B)(ii) when his ten-year ban on owning firearms under California state law expired. Chovan, 735 F.3d at 1131-33.

Plaintiff's harassment convictions occurred roughly fourteen

years before he filed his original complaint; <u>Chovan</u> makes clear

that

> [i]f Congress had wanted § 922(g)(9) to apply
> only to individuals with recent domestic
> violence convictions, it could have easily
> created a limited duration rather than
> lifetime ban. Or it could have created a good
> behavior clause under which individuals
> without new domestic violence arrests or
> charges within a certain number of years of
> conviction would automatically regain their
> rights to possess firearms. But Congress did
> not do so. Congress permissibly created a
> broad statute that only excepts those
> individuals with expunged, pardoned, or set
> aside convictions and those individuals who
> have had their civil rights restored. <u>See</u>
> <u>Skoien</u>, 614 F.3d at 641 ("Some categorical
> disqualifications are permissible: Congress
> is not limited to case-by-case exclusions of
> persons who have been shown to be
> untrustworthy with weapons, nor need these
> limits be established by evidence presented
> in court.")

<u>Id.</u> (alteration omitted).

The <u>Chovan</u> court concluded its analysis of §

922(g)(9)'s constitutionality by stating that "[t]he breadth of

the statute and the narrowness of these exceptions reflect

Congress's express intent to establish a 'zero tolerance policy'

towards guns and domestic violence." <u>Id.</u>

Two circuit courts of appeals which have addressed §

922(g)(9)'s constitutionality have found it unnecessary to

address any of the statutory exceptions in § 921(a)(33)(B)(ii).

<u>See</u> <u>U.S. v. White</u>, 593 F.3d 1199, 1205-06 (11th Cir. 2010)

-43-

(upholding the Lautenberg Amendment as a "presumptively lawful longstanding prohibition[]" without examining § 921(a)(33)(B)(ii)'s exceptions); U.S. v. Booker, 644 F.3d 12, 22-26 (1st Cir. 2011) (apparently applying intermediate scrutiny (whether "there is a substantial relationship between § 922(g)(9)'s disqualification of domestic violence misdemeanants from gun ownership and the governmental interest in preventing gun violence in the home") and upholding the constitutionality of § 922(g)(9) without analyzing § 921(a)(33)(B)(ii)'s exceptions).

On the other hand, the Fourth and Seventh Circuits have addressed these exceptions. The Fourth Circuit in Staten observed that § 922(g)(9)'s "prohibitory sweep is . . . narrowed by the fact that, for purposes of § 922(g)(9), a person shall not be considered to have been convicted of a domestic violence misdemeanor" if his conviction has been expunged, set-aside, or pardoned, or if his civil rights have been restored. U.S. v. Staten, 666 F.3d 154, 163 (4th Cir. 2011). "With the narrowness of § 922(g)(9)'s prohibitory sweep in mind," the Fourth Circuit applied intermediate scrutiny and found that the statute was a reasonable fit between the substantial government objective of reducing domestic gun violence and keeping domestic violence offenders from possessing firearms. Id. at 163-67.

In Skoien, the Seventh Circuit, apparently using intermediate scrutiny (whether there is a "substantial relation"

between § 922(g)(9) and the "important governmental objective" of "preventing armed mayhem"), briefly discussed whether the defendant could satisfy any of § 922(g)(9)'s exceptions under the law of the convicting state. U.S. v. Skoien, 614 F.3d 638, 644-45 (7th Cir. 2010). The Skoien court noted that the defendant was convicted in Wisconsin; and Wisconsin provides "misdemeanants an opportunity to seek pardon or expungement." Id. at 645.

Skoien recognized that the Lautenberg Amendment "tolerates different outcomes for persons convicted in different states, but this is true of all situations in which a firearms disability (or any other adverse consequence) depends on state law." Id. at 645. "The [Supreme Court] held in [Logan v. U.S., 552 U.S. 23 (2007)] that this variability does not call into question federal firearms limits based on state convictions that have been left in place under the states' widely disparate approaches to restoring civil rights." Id.

Under Hawaii law, Plaintiff is eligible to have his harassment convictions pardoned, but cannot get his convictions expunged or have his civil rights restored within the meaning of § 921(a)(33)(B)(ii). As discussed above, although Plaintiff's options to restore his Second Amendment rights are more limited than some other states; the Supreme Court has recognized that

> Congress' decision to have restoration
> triggered by events governed by state law
> insured anomalous results. The several states
> have considerably different laws governing

-45-

> pardon, expungement, and forfeiture and
> restoration of civil rights. Furthermore,
> states have drastically different policies as
> to when and under what circumstances such
> discretionary acts of grace should be
> extended. Anomalies generated by [the
> statutory exceptions in § 921(a)(33)(B)(ii)]
> are the inevitable consequence of making
> access to the exemption[s] depend[ent] on the
> differing laws and policies of the several
> states.

Logan, 552 U.S. at 34 (quoting McGrath v. U.S., 60 F.3d 1005, 1009 (2nd Cir. 1995)).

This Court recognizes that the burden the Lautenberg Amendment places on Plaintiff is quite substantial and amounts to a near "total prohibition" on his right to possess firearms. Chovan, 735 F.3d at 1138. However, section 922(g)(9) has several limiting provisions, one of which allows Plaintiff to restore his Second Amendment rights by obtaining a pardon.[19]

For the foregoing reasons, the Court finds that 18 U.S.C. § 922(g)(9) is constitutional as applied to Plaintiff and

---

[19] In their supplemental brief, Defendants cite two federal district court cases for the proposition that the Lautenberg Amendment survives constitutional scrutiny even if the particular offender cannot satisfy any of the statutory exceptions in § 921(a)(33)(B)(ii). See U.S. v. Smith, 742 F.Supp.2d 855, 869 (S.D. W. Va. 2010) (holding that, even assuming the defendant is permanently barred from future firearms possession, § 922(g)(9) is reasonably tailored to accomplish the government's compelling interest in preventing domestic violence misdemeanants from possessing guns); Enos v. Holder, 855 F.Supp.2d 1088, 1098-1100 (E.D. Cal. 2012) (finding that § 922(g)(9) passes constitutional muster even assuming the plaintiffs are without a means to restore their rights or have their convictions set aside, pardoned or expunged).

-46-

statutorily disqualifies him from possessing firearms under federal law. Accordingly, Plaintiff cannot establish that his Second Amendment rights were violated.

Because Plaintiff cannot establish a liberty or property interest under the Second Amendment, the Court further concludes that Plaintiff cannot establish that his Fourteenth Amendment due process rights were violated. See Hewitt v. Grabicki, 794 F.2d 1373, 1380 (9th Cir. 1986) (ruling that a liberty or property interest must exist in order for a plaintiff to establish a due process violation). Consequently, Plaintiff's 42 U.S.C. § 1983 claims, which are predicated on Second and Fourteenth Amendment violations, fail as well. See 42 U.S.C. § 1983; Gibson v. U.S., 781 F.2d 1334, 1338 (9th Cir. 1986) ("To make out a cause of action under section 1983, plaintiff[] must plead that (1) the defendants acting under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes.").

As such, the Court DISMISSES Plaintiff's Amended Complaint in its entirety with prejudice.

### B.  Hawaii Law

Cases from the Supreme Court and Ninth Circuit indicate that federal law can preclude an individual from obtaining firearms, even if that individual is qualified to possess firearms under state law.

-47-

In U.S. v. Brailey, which this Court discusses hereinbefore, Brailey was convicted of violating § 922(g)(9). Brailey, 408 F.3d at 610. Citing the Supreme Court's decision in Caron v. U.S., 524 U.S. 308, 313-14 (1998), Brailey argued that a 2000 amendment to Utah law (allowing misdemeanants like himself to possess firearms) was a state law to which the federal law must give "full effect." The Ninth Circuit affirmed Brailey's conviction under § 922(g)(9) even though he was qualified to possess firearms under Utah law because "Caron decided that the defendant could be convicted of possession of a firearm, in his case a rifle, under federal law, even though his possession of the rifle was permitted under state law. Caron's holding, therefore, is that federal law, not state law, controls the right of a defendant to bear a firearm under a federal statute." Brailey, 408 F.3d at 612; see also Caron, 524 U.S. at 316 ("Restoration of the right to vote, the right to hold office, and the right to sit on a jury turns on so many complexities and nuances that state law is the most convenient source for definition. As to the possession of weapons, however, the Federal Government has an interest in a single, national, protective policy, broader than required by state law.").

As Defendants point out in their supplemental brief, these two cases demonstrate that "Congress anticipated that there would be discrepancies in the various states' procedures

-48-

regarding means to expunge, set aside or pardon convictions, and restoration of civil rights, but that the focus is on a single [national] policy regarding the prohibition of firearm ownership for individuals who commit a misdemeanor crime of domestic violence." (Defs.'s Supp. Brief at 5.)

Similarly, in <u>Chovan</u>, which this Court discusses above, Daniel Chovan was convicted in 1996 of the misdemeanor of inflicting corporal injury on a spouse, in violation of California Penal Code § 273.5(a). <u>Chovan</u>, 735 F.3d at 1130. Under California Penal Code § 12021(c)(1), which at the time applied to misdemeanants generally, Chovan was barred from owning any firearm for a ten-year period following his conviction. <u>Id.</u> However, under  18 U.S.C. § 922(g)(9), Chovan was barred from possessing any firearm for life. <u>Id.</u> In 2010, and after the California ten-year limitations period had run, Chovan was indicted for and convicted of possessing firearms in violation of § 922(g)(9). <u>Id.</u> at 1131. On appeal, the Ninth Circuit affirmed Chovan's conviction under § 922(g)(9), despite the fact that Chovan was statutorily qualified under state law to possess firearms. <u>Id.</u>

Accordingly, pursuant to the <u>Brailey</u>, <u>Caron</u> and <u>Chovan</u> decisions, federal law can preclude Plaintiff from obtaining a firearms permit, even assuming he qualifies under Hawaii statutory law.

In any event, this Court finds that H.R.S. § 134-7(a) bars Plaintiff from possessing firearms. H.R.S. § 134-7(a) was added to § 134-7's statutory scheme in 2006 and allows the police chief to deny a firearms permit to persons who are "prohibited from possessing firearms or ammunition under federal law."

In its Sept. 30 Order, the Court noted that neither party addressed whether the police chief was entitled to retroactively apply H.R.S. § 134-7(a). Sept. 30 Order at 20 n. 15. Because the Lautenberg Amendment (as defined in Belless) did not bar Plaintiff from obtaining a firearms permit, the Court concluded that it need not determine whether it was improper for the police chief to apply § 134-7(a). Now, in light of Castleman, the Court finds that the Lautenberg Amendment prohibits Plaintiff from possessing firearms. Consequently, the issue before the Court is whether the application of § 134-7(a) would have an impermissible retroactive effect.

The Ninth Circuit has articulated a two-step framework for determining whether a statute has an impermissible retroactive effect. Sacks v. S.E.C., 648 F.3d 945, 951 (9th Cir. 2011). First, a court must "determine whether the statute . . . clearly expresses that the law is to be applied retroactively." Id. If not, a court must "consider whether application of the [statute] would have a retroactive effect by 'attaching new legal consequences to events completed before its enactment.'" Id.

-50-

(quoting Mejia v. Gonzales, 499 F.3d 991, 997 (9th Cir. 2007)).

Here, the Court in its review of § 134-7(a)'s legislative history has not found any indication that the Hawaii State Legislature intended the statute to be applied retroactively. See 2006 Haw. Sess. Laws at 28-30; 2006 Haw. Senate Journal of 23rd Legislature at 1200 & 1277; 2006 Haw. House of Representatives Journal of 23rd Legislature at 1497 & 1653. However, proceeding to the second step of the Sacks framework, it appears that application of § 134-7(a) would not have an impermissible retroactive effect in this case. Specifically, the Lautenberg Amendment was enacted in 1996 and, therefore, defined gun rights at the time Plaintiff was convicted in 1997. Accordingly, it appears that the application of § 134-7(a) would not have an impermissible retroactive effect because the state law does not take away or impair rights Plaintiff had before the law was enacted. Landgraf v. USI Film Products, 511 U.S. 244, 269-270 (1994) (holding that a court examining if a law should be applied retroactively should consider whether the "new provision attaches new legal consequences to events completed before its enactment").

For these reasons, the Court concludes that H.R.S. § 134-7(a) precludes Plaintiff from acquiring a firearms permit.[20/]

---

[20/]Because 18 U.S.C. § 922(g)(9) and H.R.S. § 134-7(a) bar Plaintiff from possessing firearms, the Court finds it

(continued...)

Since Plaintiff's constitutional rights have not been violated, it follows that the claims against Kealoha and the City lack merit.[21/]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment or, in the Alternative, Motion for Reconsideration.

All claims against the City and Kealoha are dismissed with prejudice because Plaintiff's prior harassment convictions prohibit him from obtaining a firearms permit pursuant to 18

---

[20/](...continued)
unnecessary to address subsections (b) and (c) of H.R.S. § 134-7.

[21/]Alternatively, the Court finds that Kealoha is entitled to qualified immunity and the City is not subject to municipal liability under Monell v. New York City Dept. Soc. Serv., 436 U.S. 658, 694 (1978).

The qualified immunity defense is a two-part inquiry: (1) whether the facts shown make out a violation of a constitutional or federal statutory right and (2) whether that "right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011). Here, the Court does not have to proceed to the second step of the qualified immunity inquiry: as discussed supra, the Court finds that there was no violation of Plaintiff's Second Amendment rights as he is statutorily disqualified under 18 U.S.C. § 922(g)(9) and H.R.S. § 134-7(a) from possessing firearms. Accordingly, the Court finds that Kealoha is entitled to qualified immunity as to Plaintiff's claims for money damages.

For the same reason, the Court concludes that the City is not liable under Monell. See Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) (finding that to prevail on a Monell claim a plaintiff must establish, inter alia, that he possessed a constitutional right of which he was deprived).

U.S.C. § 922(g)(9) and H.R.S. § 134-7(a).[22] The Court finds that 18 U.S.C. § 922(g)(9) is constitutional as applied to Plaintiff because, inter alia, he can restore his Second Amendment rights by seeking a pardon for his harassment convictions.[23]

In sum, the Court concludes that Plaintiff's recourse from the prohibitions under 18 U.S.C. § 922(g)(9) and H.R.S. § 134-7(a) is to seek a pardon for his harassment convictions.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, July 18, 2014.



_____
Alan C. Kay
Senior United States District Judge

Fisher v. Kealoha et al., Civ. No. 11-00589 ACK-BMK: ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION.

---

[22]Because Plaintiff is statutorily disqualified from possessing firearms under 18 U.S.C. § 922(g)(9) and H.R.S. § 134-7(a), the Court vacates its prior Order, entered on June 29, 2012, in which the Court issued a preliminary injunction directing Kealoha to "rescind the prior denial of Plaintiff's permit to acquire firearms and to issue a permit authorizing Plaintiff to acquire firearms." 2012 Preliminary Injunction Order at 36.

[23]The Court also finds that Section 922(g)(9) is constitutional on its face. See footnote 15, page 31 of this Order (explaining that the analysis to be applied to facial and as-applied constitutional challenges is the same).